IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                        :          06 MDL 1755 (CM) (MDF)

In re Bayou Hedge Funds Litigation    :

                         :

---------------------------------------------------------x
                         :

This Document Relates To         :

                         :

Broad-Brussel Family            :
Limited Partnership, et al.,      :

                         :

       v.                 :         06 Civ. 3026 (CM) (MDF)

                         :

Bayou Group, LLC, et al.,       :

                         :         **Electronically Filed**

---------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT JAMES MARQUEZ'S MOTION TO STAY

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................. ii-iv

PRELIMINARY STATEMENT ............................................... 1-3

FACTUAL BACKGROUND ................................................. 3-4

ARGUMENT:  A FACT SPECIFIC INQUIRY DEMONSTRATES THAT
THE COURT SHOULD DENY DEFENDANT MARQUEZ'S REQUEST
TO STAY THE PROCEEDINGS AND ALLOW PLAINTIFFS TO
FULLY PROCEED AGAINST MARQUEZ ................................... 5-18

    1.    Pre-Indictment Status of the Criminal Proceedings ..................... 6-12

    2.    There is Little Overlap Between the Civil Action and Criminal
        Investigation ................................................ 12-13

    3.    Plaintiffs Will Be Prejudiced by the Stay ........................... 13-15

    4.    Defendant Marquez Will Not Be Prejudiced by the Denial of the Stay .... 15-16

    5.    It Is in the Public's Interest to Allow Plaintiffs to Promptly
        Obtain Justice ............................................... 16-17

    6.    The Court's Interests Require Prompt Adjudication ................... 17-18

CONCLUSION .......................................................... 19

# TABLE OF AUTHORITIES

## *Federal Cases*

*In re Adelphia Communications Securities Litigation,*
    No. 02- CIV-1781, 2003 U.S. Dist. LEXIS 9736
    (E.D. Pa. May 14,  2003)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*American Booksellers Ass'n, Inc., v. Random House, Inc.,*
    No. 96- CIV-0030 (JFK), 1996 U.S. Dist. LEXIS 12775
    (S.D.N.Y. Sept. 4, 1996)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*American Express Business Finance Corporation, v.*
*RW  Professional Leasing Serv. Corp.,*
    225 F. Supp. 2d 263 (E.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Banks v. Yoemick,*
    144 F. Supp. 2d 272 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In the Matter of the Complaint of J.E. Brenneman Co., Inc.,*
    No. 01- CIV-1442, 2003 U.S. Dist LEXIS 4433
    (E.D. Pa. Mar. 18, 2003)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Brock v. Tolkow,*
    109 F.R.D. 116 (E.D.N.Y. 1985*)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Citibank, N.A. v. Hakim,*
    No. 93- CIV-6233 (MBM), 1993 U.S. Dist. LEXIS 16299
    (S.D.N.Y. Nov. 18, 1993)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11, 15-16

*Fidelity Funding of Cal. v. Reinhold,*
    190 F.R.D. 45 (E.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*Hollinger International, Inc. v. Hollinger, Inc.,*
    No. 04- CIV-698, 2005 U.S. Dist. LEXIS 14437
    (N.D. Ill. July 15, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*JHW Greentree Capital, L.P. v. Wittier Trust Co.,*
    No. 05- CIV-2985 (HB), 2005 U.S. Dist LEXIS 14687
    (S.D.N.Y. June 22, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Karimona Investments, LLC v. Weinreb,*
No. 02- CIV-1792 (WHP)(THK), 2003 U.S. Dist. LEXIS 3324
(S.D.N.Y. Mar. 7, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Kudo v. Simels,*
No. 91- CIV-3167 (JFK), 1992 U.S. Dist LEXIS 4590
(S.D.N.Y. Apr. 8, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Mason Tenders Dist. Council Welfare Fund v. Mietek Mason Contractors, Inc.,*
No. 99- CIV-3725 (VM)(KNF), 2000 U.S. Dist. LEXIS 6993
(S.D.N.Y. May 24, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 17-18

*In re Plastics Additives Antitrust Litigation,*
No. 03- CIV-2038, 2004 U.S. Dist. LEXIS 23989
(E.D. Pa. Nov. 30, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Par Pharmaceutical, Inc. Securities Litigation,*
133 F.R.D. 12 (S.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Quint v. Freda,*
No. 98- CIV-4285 (DLC), 1999 U.S. Dist. LEXIS 1399
(S.D.N.Y. Feb. 11, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*R.J.F. Fabrics v. United States,*
651 F. Supp. 1437 (Ct. Int'l Trade 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*SEC. v. Dresser Industries, Inc.,*
628 F. 2d 1368 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*SEC v. Musella,*
38 Fed. R. Serv. 2d (Callaghan) 426 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*State Farm Mutual Automobile Insurance Co. v. Beckham-Easley,*
No. 01- CIV-5530, 2002 U.S. Dist. LEXIS 17896
(E.D. Pa. Sept. 18, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Sterling National Bank v. Hotels International, Inc.,*
175 F. Supp. 2d 573 (S.D.N.Y. 2001 ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Travelers Casualty & Surety Co. v. Vanderbilt Group LLC,*
No. 01- CIV-7927 (DLC), 2002 U.S. Dist. LEXIS 7939
(S.D.N.Y. May 3, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 17

*Trustees of the Plumbers and Pipefitters National Pension Fund v.*
*Transworld Mechanical, Inc.,*
    886 F. Supp. 1134 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. $557,933.89, More or Less,*
    No. 95- CIV-3978 (JG), 1998 U.S. Dist. LEXIS 22252
    (E.D.N.Y. Mar. 9, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Certain Real Property and Premises Known as*
*1344 Ridge Road, Laurel Hollow, Syosset, New York,*
    751 F. Supp. 1060 (E.D.N.Y. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States Commodity Futures Trading Comm'n v. Templeton Group, Inc.,*
    297 F. Supp. 2d 531 (E.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

*United States v. Lewis Enterprises, Inc.,*
    No. 04- CIV-4105 (JPG), 2006 U.S. Dist. LEXIS 22065
    (S.D. Ill. Apr. 21, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Private Sanitation Industry Assoc. of Nassau/Suffolk, Inc.,*
    811 F. Supp. 802 (E.D.N.Y. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Volmar Distributors, Inc. v. The New York Post Co., Inc.,*
    152 F.R.D. 36 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Walsh Securities Inc. v. Cristo Property Management, Ltd.,*
    7 F. Supp. 2d 523 (D.N.J. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Wehling v. Columbia Broadcasting System,*
    608 F.2d 1084 (5th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

### State Cases

*In the Matter of Albert Isernio v. U.S.I. Holdings Corporation,*
    182 Misc. 2d 121 (N.Y. Supr. Ct. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Plaintiffs Broad-Bussel Family Limited Partnership ("Broad-Bussel"), Marie-Louise

Michelsohn, Michelle Michelsohn and Herbert Blain Lawson, Jr. (collectively, "plaintiffs"),

individually and on behalf of all other persons and entities similarly situated (the "Class"),

respectfully submit this memorandum of law in opposition to defendant James Marquez's

("Marquez") Motion to Stay ("Motion to Stay"), which seeks to stay proceedings in the above-

captioned litigation "pending final determination by the Office of the United States Attorney for

the Southern District of New York ... regarding its criminal investigation of Mr. Marquez."

Motion to Stay at p.1.

## PRELIMINARY STATEMENT

This is an action brought by plaintiffs, who have invested in hedge funds operated by one

or more of the various Bayou entities (the "Bayou Hedge Funds" or the "Funds")[1], against

numerous defendants for their role in perpetuating one of the biggest and most audacious hedge

fund frauds in this country's history. In sum, plaintiffs allege that Samuel Israel, III ("Israel")

and Daniel Marino ("Marino") used various Bayou entities[2] (collectively, with the Bayou Hedge

Funds, "Bayou" or the "Bayou Defendants") to fraudulently lure investors to invest hundreds of

million of dollars in the Bayou Hedge Funds through a scheme of improper acts and blatant

misrepresentations regarding the Funds' financial results. Plaintiffs further allege that, while

representing to their investor clients that Bayou was profitable and operated properly, Bayou's

---

[1]    The hedge funds include Bayou Super Fund, LLC, Bayou No Leverage Fund, LLC, Bayou Affiliates Fund, LLC, Bayou Accredited Fund, LLC, Bayou Offshore Fund, LLC, and Bayou Fund, LLC.

[2]    The Bayou entities include Bayou Group LLC, Bayou Management LLC, Bayou Securities LLC, Bayou Securities, LTD, Bayou Partners LLC, Bayou Affiliates, LLC, Bayou Equites, LLC, IM Partners and IMG, LLC.

main principals, Israel and Marino, unlawfully pilfered millions of dollars that plaintiffs and the

Class had entrusted to them as financial investments, eventually leading to the collapse of the

Bayou Hedge Funds and to Israel and Marino pleading guilty to multiple criminal acts.

Plaintiffs allege that Israel and Marino perpetuated their financial fraud with the help of

certain aider and abetter defendants,[3] chief among them being defendant Marquez who with

Israel was a principal and co-founder of Bayou Securities LLC and Bayou Securities, Ltd.

(collectively, "Bayou Securities") and some or all of the Bayou Hedge Funds. Plaintiffs

specifically allege that beginning in 1998 Marquez helped Israel and Marino devise a system to

conceal outsized losses in the Bayou Hedge Funds, by creating a bogus accounting firm to

produce fake audits of the Funds' performance, and by allowing Bayou Securities to at least

partially kickback to the Funds commissions generated from executing trades for it.[4]

Marquez now seeks to stay this litigation against him because his lawyers claim that they

have been engaging in discussions with the U.S. Attorney's Office (the "U.S.A.O") concerning

Marquez's role in the Bayou fraud. Plaintiffs oppose this motion because contrary to his

lawyers' assertions, Marquez is alleged to have facilitated Bayou in carrying out this financial

---

[3]     These parties include Richmond-Fairfield Associates, CPA, Jeffrey Fotta, Eqyty
Research and Management, LLC, Eqyty Research and Management, Ltd., Citibank N.A., Faust
Rabbach & Oppenheim LLP, Steven Oppenheim, Hennessee Group LLC, Elizabeth Lee
Hennessee and Charles Gradante.

[4]     Marquez's contention that he had ceased any association with Bayou and Israel
long before plaintiff Broad-Bussel invested in the Bayou Hedge Funds in December 2003 is
irrelevant, since Marquez's actions were alleged to have been integral in establishing a system
which helped the Bayou defendants defraud plaintiffs. Moreover, plaintiffs bring this action on
behalf of similarly situated persons who between December 31, 1996 and August 25, 2005 (the
"Class Period") invested in Bayou, a period of time during which Marquez -- by his own
admission -- was still directly involved with Bayou's operations.

fraud, and is expected to have clearly relevant information to which plaintiffs are entitled in

prosecuting their action against the numerous defendants.  More importantly, because the

U.S.A.O. has yet to indict Marquez and the scope of its purported criminal investigation is

unknown, plaintiffs do not know when or even if the U.S.A.O. will ever indict Marquez.

Accordingly, as is recognized almost universally by the case law in this and other Circuits,

Marquez's concerns about protecting his Fifth Amendment rights does not provide a sufficient

basis to take the drastic step of staying this lawsuit against him and thereby denying plaintiffs the

opportunity to obtain prompt justice.

### STATEMENT OF FACTS

On September 29, 2005, defendants Israel and Marino pled guilty to federal charges in the

Southern District of New York in connection with their management of the Bayou Defendants.

Affidavit of Doreen Klein, Esq. ("Klein Aff.), ¶ 2.  On or about November 17, 2005, plaintiffs

filed their class action complaint in the U.S. District Court for the District of Connecticut on

behalf of themselves and similarly situated investors who were damaged by investing in the

Bayou Hedge Funds.  Klein Aff, ¶ 3.

On March 6, 2006, plaintiffs filed their amended complaint consistent with the

scheduling Order of Judge Arterton.  Klein Aff, ¶ 7.  The amended complaint alleges in detail

how Israel and Marino first fraudulently lured investors to invest hundreds of millions of dollars

in the Bayou Hedge Funds by among other things creating a bogus accounting firm to issue fake

audit reports of the Funds' performance, and then pilfered millions of such fiduciary dollars from

the Funds to their own bank accounts.  *Id.*  The amended complaint further alleges that Marquez

played an integral role in devising this fraud, describing how in December 1998 Marquez, Israel

3

and Marino concocted a scheme to hide millions of dollars in trading losses suffered by the Bayou Hedge Funds in the previous two years. *Id*. at ¶ 72.

Specifically, Marquez, then a principal and co-founder of the Bayou Hedge Funds, agreed that Bayou should replace its long-time auditor, Grant Thornton LLP, and create a bogus accounting firm to produce fake audit reports of the Funds' performance. *Id*. Israel would then show these fake audit reports to potential investors when attempting to raise new investment proceeds. *Id*. Marquez also agreed that at least part of the commissions generated by the Bayou Hedge Funds' trades -- which were executed by his and Israel's own brokerage firm, Bayou Securities -- would be credited back to the Funds to help offset and conceal the losses. *Id*. Although defendant Marquez now claims to the contrary, the amended complaint alleges that Marquez left Bayou in 2004 as Bayou began to plunge into insolvency. *Id*. at ¶ 31.

Marquez contends that his attorneys have been engaging "in ongoing discussions with the U.S.A.O. in connection with the U.S.A.O.'s criminal investigation [of him]," and that "Mr. Marquez is a target of the criminal investigation." Klein Aff., ¶ 9. However, at this juncture the U.S.A.O. has not yet indicted Marquez, and plaintiffs do not know when or even if Mr. Marquez will be indicted. Marquez's lawyers have also not even indicated whether he is the subject of a grand jury investigation, nor given any information concerning the specifics of either the U.S.A.O.'s allegedly ongoing investigation or the substance or subject matter of his lawyers' negotiations with the U.S.A.O.

4

## ARGUMENT

### A FACT SPECIFIC INQUIRY DEMONSTRATES THAT THE COURT SHOULD DENY MARQUEZ'S REQUEST TO STAY THE PROCEEDINGS AND ALLOW PLAINTIFFS TO FULLY PROCEED AGAINST MARQUEZ

"It is well settled law that a court has the authority to stay an action pending criminal investigation." *JHW Greentree Capital, L.P. v. Wittier Trust Co.,* No. 05- CIV-2985 (HB), 2005 U.S. Dist LEXIS 14687, at *2 (S.D.N.Y. June 22, 2005). However, "[i]t is also clear that a stay 'is not constitutionally required whenever a litigant finds himself facing the dilemmas inherent in pursuing civil litigation while being the subject of a related criminal investigation.'" Id., quoting, *Sterling National Bank v. Hotels International, Inc.*, 175 F. Supp. 2d 573, 575-76 (S.D.N.Y. 2001). Indeed, "absent an indictment, a stay is an extraordinary remedy and disfavored," as "it would be disfavored if plaintiffs who claim to be the victims of criminal activity were to receive slower justice than other plaintiffs because the behavior they allege is sufficiently egregious to have attracted the attention of the criminal authorities." *Sterling National Bank*, 175 F. Supp. 2d at 576.

To determine whether granting a stay in a civil action is appropriate when a defendant is under criminal investigation, courts look at the following six factors:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice caused by the delay; (4) the private interests of and burden on the defendant; (5) the public interest; and (6) the interest of the Court in the efficient management of cases.

*JHW Greentree Capital*, at *2-*3.

Because Marquez has yet to be indicted and plaintiffs do not know when or even if Marquez will be indicted, consideration of these six factors strongly militates against staying the proceedings against Marquez. *See Sterling National Bank*, 175 F. Supp. 2d at 577 ("[T]he consensus that a party seeking a stay bears a heavier burden when he has not yet been indicted derives logically from the balancing test set out by the courts of appeals that have considered the question.").

### 1.    Pre-Indictment Status of the Criminal Proceedings

"In analyzing the status of the criminal case, the most significant issue is whether the investigation has ripened into an indictment." *Hollinger International, Inc. v. Hollinger Inc.*, No. 04- CIV-698, 2005 U.S. Dist LEXIS 14437, at *11 (N.D. Ill. July 15, 2005). The case for staying civil proceedings "is far weaker when the defendant has not been indicted and thus 'no Fifth Amendment privilege is threatened.'" *Id.* at *12-*13, *quoting S.E.C. v. Dresser Industries, Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980). The reason for this is that "[w]hen a defendant has been indicted his situation is particularly dangerous, and takes certain priority, [as the] risk to his liberty, the importance of safeguarding his constitutional rights, and even the strain on his resources and attention that makes defending satellite civil litigation particularly difficult, all weigh in favor of his interest. Moreover, if the potential prejudice to the defendant is particularly high post-indictment, the prejudice to the plaintiff of staying proceedings is somewhat reduced, since the criminal litigation has reached a crisis that will lead to a reasonably speedy resolution." *Sterling National Bank*, 175 F. Supp. 2d at 577. With respect to pre-indictment, however, "[although] many of the same risks to the civil defendants are present, the dangers are at least

6

somewhat more remote, and it is inherently unclear to the Court just how much the unindicted defendant really has to fear." *Id.*

Courts in this Circuit as a general matter decline to stay proceedings when defendants have not yet been indicted, even if they are clearly subjects of a criminal investigation. *See e.g., U.S. Commodity Futures Trading Comm'n v. Templeton Group, Inc.*, 297 F. Supp. 2d 531 (E.D. N.Y. 2003) (denying stay where defendant traders had not been indicted or subpoenaed by a grand jury; defendants' interest in "avoiding the use of their Fifth Amendment privilege was minimal because any parallel criminal proceeding was purely speculative."); *Karimona Investments, LLC v. Weinreb*, No. 02- CIV-1792 (WHP)(THK), 2003 U.S. Dist. LEXIS 3324 (S.D.N.Y. Mar. 7, 2003) (same); *Travelers Casualty & Surety Co. v. Vanderbilt Group, LLC*, No. 01- CIV-7927 (DLC), 2002 U.S. Dist. LEXIS 7939, at *7 (S.D.N.Y. May 3, 2002) (denying defendants' motion to stay because defendants were only under criminal investigation); *Sterling National Bank*, 175 F. Supp. 2d at 575-581; *Banks v. Yoemick*, 144 F. Supp. 2d 272 (S.D.N.Y. 2001); *Mason Tenders Dist. Council Welfare Fund v. Mietek Mason Contractors, Inc.*, No. 99- CIV-3725 (VM)(KNF), 2000 U.S. Dist. LEXIS 6993 (S.D.N.Y. May 24, 2000) (denying stay where defendants, although clearly subjects of a criminal investigation, had not yet been indicted); *American Booksellers Ass'n, Inc., v. Random House, Inc.*, No. 96- CIV-0030 (JFK), 1996 U.S. Dist. LEXIS 12775 (S.D.N.Y. Sept. 4, 1996) (denying defendants' requested stay because the FTC's administrative proceedings on the same issues were unlikely to be resolved in the immediate future); *Citibank, N.A. v. Hakim*, No. 93- CIV-6233 (MBM),1993 U.S. Dist. LEXIS 16299, at *3 (S.D.N.Y. Nov. 18, 1993) ("Although defendant Hakim allegedly is a target of a continuing grand jury investigation, he does not claim to have been indicted. Accordingly,

7

Hakim's pre-indictment motion to stay can be denied on this ground alone."); *Kudo v. Simels*,

No. 91- CIV-3167 (JFK), 1992 U.S. Dist LEXIS 4590 (S.D.N.Y. Apr. 8, 1992); *Par*

*Pharmaceutical, Inc. Securities Litigation*, 133 F.R.D. 12 (S.D.N.Y. 1990); *S.E.C. v. Musella,* 38

Fed. R. Serv. 2d (Callaghan) 426 (2d Cir. 1983).[5]

   More importantly, in situations strikingly similar to case at bar -- *i.e.* where one defendant

only seeks to stay proceedings against it, and allow the action to proceed against the other

defendants -- courts in this Circuit routinely do not stay proceedings when the defendant

requesting the stay has not yet been indicted.  In *JHW Greentree Capital*, a fraud action involving

numerous defendants, Todd Loftis, one of the defendants, moved to stay the civil proceedings on

the grounds that he was under grand jury investigation in the Northern District of Texas.  2005

U.S. Dist LEXIS 14687, at *2.  While conceding that Loftis had received a target letter from

federal prosecutors and was clearly the subject of a grand jury investigation, the court, in denying

his requested stay, concluded "the difference between being a 'target' of an investigation and

indicted weighs significantly against the granting of a stay." *Id.* at *4. *See also Quint v. Freda*,

No. 98- CIV-4285 (DLC), 1999 U.S. Dist. LEXIS 1399 (S.D.N.Y. Feb. 11, 1999) (denying a

defendant's request to stay the action against him, while allowing it to proceed against other

defendants; defendant was only notified by federal prosecutors that he was a "target" of an

---

   [5]     Similarly, New York state courts and other federal district courts will not stay a
civil proceeding for an unindicted defendant under criminal investigation. *See, e.g., In the
Matter of Albert Isernio v. U.S.I. Holdings Corporation*, 182 Misc. 2d 121 (N.Y. Supr. Ct. 1999);
*United States v. Lewis Enterprises, Inc.*, No. 04- CIV-4105 (JPG), 2006 U.S. Dist. LEXIS 22065
(S.D. Ill. Apr. 21, 2006); *Hollinger International*, 2005 U.S. Dist. LEXIS 14437; *In re Plastics
Additives Antitrust Litigation*, No. 03- CIV-2038, 2004 U.S. Dist. LEXIS 23989 (E.D. Pa. Nov.
30, 2004); *State Farm Mutual Automobile Insurance Co. v. Beckham-Easley*, No. 01- CIV-5530,
2002 U.S. Dist. LEXIS 17896 (E.D. Pa. Sept. 18, 2002).

investigation, and had not been indicted); *United States v. Private Sanitation Industry Assoc. of Nassau/Suffolk, Inc.*, 811 F. Supp. 802 (E.D.N.Y. 1992) (same).

Indeed, in *Fidelity Funding of Cal. v. Reinhold*, 190 F.R.D. 45 (E.D.N.Y. 1997), a case involving a civil fraud action against two alleged co-conspirators, the court went to the extent of granting a stay for one defendant who had been indicted, while simultaneously denying a stay for the other defendant who had not yet been indicted. The court noted that its decision would result in the somewhat inequitable scenario of forcing the unindicted defendant who arguably had less culpability than his indicted counterpart to face the Hobson choice of deciding "whether to testify and face later possible criminal prosecution or leaving the evidence against him uncontested," while his indicted co-conspirator "was protected from civil liability until such time he could testify without fear of self-incrimination." *Id.* at 53.

Applying the case law here, this factor strongly militates in favor of denying Marquez's request for a stay. Indeed, the case for denying Marquez's request is even stronger here than in the above cited cases, as there is no evidence that a grand jury has yet been convened to indict him nor has Marquez indicated that he has even yet received a "target letter" from federal prosecutors. *See JHW Greentree Capital*, 2005 U.S. Dist LEXIS 14687, at *2 (defendant received target letter from federal prosecutors that he was under grand jury investigation); *Mason Tenders*, 2000 U.S. Dist. LEXIS 6993, at *6 (defendants were clearly subjects of a criminal investigation by the New York District Attorneys Office); *Quint v. Freda*, 1999 U.S. Dist. LEXIS 1399, at *5 (defendant received target letter from federal prosecutors that he was under grand jury investigation); *Kudo*, 1992 U.S. Dist. LEXIS 4590, at *4-*5( defendants were clearly subjects of a criminal investigation by the New York District Attorneys Office); *Par*

9

*Pharmaceutical*, 133 F.R.D. at 14 (defendants were alleged targets of grand jury investigations); *Hollinger International*, 2005 U.S. Dist. LEXIS 14437, at *4 (federal prosecutors publicly disclosed that they were investigating defendants seeking the stay); *State Farm Mutual*, 2002 U.S. Dist. LEXIS 17896, at *6 (defendants received target letters from federal prosecutors). Marquez's bald statement that his lawyers are merely in "discussions" with federal prosecutors and that he may or may not reach a plea is a woefully insufficient basis to premise a stay.

The cases cited by Marquez do not support staying this litigation. First, many of the cases that Marquez cites in his brief involve indicted defendants and are thus completely distinguishable. *See In re Adelphia Communications Securities Litigation*, No. 02- CIV-1781, 2003 U.S. Dist. LEXIS 9736 (E.D. Pa. May 14, 2003); *In the Matter of the Complaint of J.E. Brenneman Co., Inc.*, No. 01- CIV-1442 , 2003 U.S. Dist LEXIS 4433 (E.D. Pa. Mar. 18, 2003); *American Express Business Finance Corporation v. RW Professional Leasing Serv. Corp.*, 225 F. Supp. 2d 263 (E.D.N.Y. 2002); *Trustees of the Plumbers and Pipefitters National Pension Fund v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134 (S.D.N.Y. 1995); *Volmar Distributors, Inc. v. The New York Post Co., Inc.*, 152 F.R.D. 36 (S.D.N.Y. 1993).

Moreover, the cases cited by Marquez which involve unindicted defendants are factually and legally dissimilar. For example, in *United States v. $557,933.89, More or Less*, No. 95-CIV-3978 (JG), 1998 U.S. Dist. LEXIS 22252 (E.D.N.Y. Mar. 9,1998), *United States v. Certain Real Property and Premises Known as 1344 Ridge Road, Laurel Hollow, Syosset, New York,* 751 F. Supp. 1060 (E.D.N.Y. 1989), *R.J.F. Fabrics v. United States.*, 651 F. Supp. 1437 (Ct. Int'l Trade 1986) and *Brock v. Tolkow*, 109 F.R.D. 116 (E.D.N.Y. 1985), the federal government -- not a private party -- were the plaintiffs in the civil lawsuits, and the courts in granting the

defendants' stays were concerned that the government was attempting "to escalate pressure on the defendants by manipulating simultaneous criminal and civil proceedings that it controlled." *Sterling National Bank*, 175 F. Supp. 2d at 578-79. As such, courts in this Circuit have repeatedly distinguished these cases for this precise reason when denying stays to unindicted defendants allegedly under criminal investigation. *See generally Sterling National Bank*, 175 F. Supp. 2d at 579 (distinguishing *Brock* on account that federal government in that case brought both the civil and criminal actions; "[i]n such circumstances, there is a special danger that the government can effectively undermine rights that would exist in a criminal investigation by conducting a defacto criminal investigation using nominally civil means."); *United States Commodity Futures Trading Comm'n*, 297 F. Supp. 2d at 534 (distinguishing *Brock* and *1344 Ridge Road* because the federal government in those cases controlled both the civil and criminal proceedings); *Hakim*, 1993 U.S. Dist LEXIS 16299, at *7 (distinguishing *Brock* because the federal government in that case controlled both the civil and criminal actions).

The other two cases -- *Walsh Securities Inc. v. Cristo Property Management, Ltd.*, 7 F. Supp. 2d 523 (D.N.J. 1998) and *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084 (5th Cir. 1979) -- that defendant Marquez cites to support the contention that courts readily stay civil actions against unindicted defendants allegedly under criminal investigation are equally distinguishable. In *Walsh Securities*, the court stayed the civil proceedings for a brief period of time, establishing a set date where discovery could resume again (*id.* at 529), while in *Wehling* the party seeking the stay was the plaintiff (who was under criminal investigation and had brought a defamation lawsuit against the defendants), and the court granted the plaintiff's requested stay only because his inability to respond to basic discovery would have resulted in the

11

dismissal of his action. *Id*. at 1088-89.

### 2. There is Little Overlap Between the Civil Action and Criminal Investigation

Defendant Marquez baldly asserts that there is a significant overlap of the issues between this lawsuit and the ongoing criminal investigation. Motion to Stay at p. 6. However, "[a]bsent indictment the scope and nature of the criminal investigation is unknown," and as such, the Court should not conclude based on an unsubstantiated record that there is a significant overlap between an alleged criminal investigation (that has yet to ripen into an indictment) and a related civil action. *JHW Greentree Capital*, 2005 U.S. Dist LEXIS 14687, at *3.

In *State Farm Mutual*, a case in which the unindicted defendants seeking stays were only under criminal investigation, the court refused to find that there was significant overlap between the civil action whose alleged predicate acts were the subject of the criminal investigation, and the criminal investigation. 2002 U.S. Dist. LEXIS 17896, at *4. Specifically, the court held: "There are no criminal proceedings pending in the instant case. The defense simply asserts that the 'complaint is similar to allegations currently under investigation by an investigating [g]rand [j]ury.' The only information concerning the issues under investigation is derived from target letters received by [the] two defendants. ... Consequently, [this] factor weighs in favor of the denying the stay." *Id*. at *4-*5.

Similarly, in *Sterling National Bank*, where the defendants who had been sued for fraud by plaintiff bank were also simultaneously being criminally investigated by federal prosecutors for the underlying actions that gave rise to bank's lawsuit, the court held: "While it can be assumed on this record that there is substantial overlap between allegations in this complaint and

12

the grand jury's investigation ... the Court has no way of knowing whether the grand jury's inquiry has expanded or will expand beyond these allegations." 175 F. Supp. 2d at 578; *see also In re Plastics Additives Antitrust Litigation*, 2004 U.S. Dist. LEXIS 23989, at *17 ("While the initiation and resolution of the California grand jury proceedings against the defendants may narrow the scope of this litigation, this possibility is too remote to be considered at this stage [where the defendants have not yet been indicted]"); *Hollinger International*, 2005 U.S. Dist LEXIS 14437, at *18 ("From the U.S.A.O.'s brief description of the investigation, however, it cannot be said with certainty that the criminal investigation involves all of the same transactions referenced in the [civil] complaint.").

Accordingly, Marquez, much like the defendants in *State Farm* and *Sterling National Bank*, simply asserts that he is currently being investigated by the U.S.A.O. without providing even any substantive detail as to the scope of the alleged investigation. Under these circumstances, there is no possible way for this Court to gauge the degree of overlap between this action and any related criminal investigation.

### 3.    **Plaintiffs Will Be Prejudiced by the Stay**

Defendant Marquez argues that plaintiffs will not be prejudiced by a stay because Marquez was a secondary player in this epic fraud, and plaintiffs still have the opportunity to proceed with the litigation against the other defendants. Motion to Dismiss at p. 10. However, this argument simply ignores the reality of the situation, as Marquez is alleged to have been a central figure in helping Bayou establish a scheme to hide its losses from potential investors. Marquez was a principle of the Bayou Hedge Funds and Bayou Securities, and was present at the infamous meeting in December 1998 during which he, Israel and Marino decided to create a

13

bogus accounting firm to create fake audit reports. As a chief operating officer of Bayou Securities, Marquez also played an extensive role in structuring and overseeing the alleged kickback of trading commissions from Bayou Securities to the Bayou Hedge Funds to hide the Funds' outsized losses. Accordingly, Marquez is alleged to highly knowledgeable concerning Bayou and the underlying fraud. In sum, as his central role in this litigation is clear, plaintiffs most certainly would be prejudiced if forced to prosecute this litigation without his participation.

Additionally, the fact that Marquez has yet to be indicted strongly disfavors any stay. In his brief, Marquez provides the barest facts about his attorneys' discussions with the U.S.A.O., refusing to elucidate on the status of the discussions and whether an indictment is imminent. Plaintiffs have no clue when or even if a criminal case will be filed, and it would be unfair to expect plaintiffs to wait months or perhaps even longer for the U.S.A.O. to either file a criminal action against Marquez or to reach a settlement agreement with him to find out further critical facts about the Bayou fraud.

Plaintiffs are also concerned that a stay would frustrate any real financial recovery from Marquez, whose assets may be dissipated to pay for his defense. Courts have consistently recognized this exact point, holding that plaintiffs, in opposing requested stays from unindicted defendants under criminal investigation, are entitled to a speedy resolution of their actions, especially to prevent the dissipation of a defendant's assets. *JHW Greentree Capital*, 2005 U.S. Dist LEXIS 14687, at *5; *Sterling National Bank*, 175 F. Supp. 2d at 577 ("Conversely, the delay imposed on the defendant is indefinite. There is no telling how complicated the government investigation may be, whether the allegations of the particular civil plaintiffs are merely the tip of an iceberg that result in a lengthy and open-ended investigation, what priority the government

14

assigns to the investigation, whether it will result in charges that will have to be litigated, or how time-consuming the criminal case will be. Under these circumstances, the likelihood that a civil party can make the necessary showing to obtain the 'extraordinary' remedy of a stay [citation omitted] is inevitably much reduced."); *State Farm Mutual*, 2002 U.S. Dist LEXIS 17896, at *8 ("The threat of the dissipation of assets during a stay has been recognized as a substantial burden for plaintiffs.").

### 4.    Defendant Marquez Will Not Be Prejudiced By The Denial Of The Stay

Contrary to defendant Marquez's assertions, because of his unindicted status and the general nature of the criminal investigation against him, Marquez will not be prejudiced by the denial of the stay. Courts consistently dismiss the Fifth Amendment concerns of unindicted defendants involved in civil actions who are facing simultaneous criminal investigations as "speculative", "remote" and "inherently unclear as just how much the unindicted defendant really has to fear." *JHW Greentree Capital*, 2005 U.S. Dist LEXIS 14687, at *6-*7; *Karimona Investments*, 2003 U.S. Dist. LEXIS 3324, at *11-*12; *Sterling National Bank*, 175 F. Supp. 2d at 577; *Hollinger International*, 2005 U.S. Dist. LEXIS 14437, at *20-*22; *In re Plastic Additives*, 2004 U.S. Dist. LEXIS 23989 at *18-*21; *State Farm Mutual*, 2002 U.S. Dist LEXIS 17896, at *8-*9. Courts have also made the sensible point that less extreme measures than granting a stay could be taken to mitigate an unindicted defendant's Fifth Amendment concerns, such as sealing and/or limiting the use of depositions and/or interrogatory answers. *See Hakim*, 1993 U.S. Dist. LEXIS 16299 at *7.

In his brief, Marquez does not identify any particular facts that would differentiate his

15

predicament from that of the defendants in the above cited cases. Rather, he simply reiterates the point that he would have "to choose between waiving his Fifth Amendment rights during the pendency of this case or asserting the privilege and with the attendant damages to his defense of this case." Motion to Dismiss at p. 11. Plaintiffs see no reason why Marquez should be treated differently than the defendants in the above-cited cases.

### 5.    It Is in the Public's Interest to Allow Plaintiffs to Promptly Obtain Justice

Defendant Marquez attempts to make the absurd argument that it is not in the public's interest for a private party to obtain a prompt adjudication so that it may promptly recover funds that have been fraudulently misappropriated. Motion to Dismiss at p. 13. Yet, courts have repeatedly found that it is in the public's interest for a private party to promptly recover fraudulently misappropriated funds from an unindicted defendant. *See generally JHW Greentree Capital*, 2005 U.S. Dist LEXIS 14687, at *7; *Karimona Investments*, 2003 U.S. Dist. LEXIS 3324, at *14; *Hakim*, 1993 U.S. Dist. LEXIS 16299, at *8; *Hollinger International*, 2005 U.S. Dist. LEXIS 14437, at *26-*27. "This interest is even greater when the nature of the litigation is a class action lawsuit," for the plaintiff is no longer just attempting to recover funds on his behalf. *In re Plastic Additives*, 2004 U.S. Dist. LEXIS 23989, at *26-*27. Indeed, the court in *Sterling National Bank* was faced with a similar factual situation, and explicitly held that "[t]he public interest in financial institutions promptly recovering misappropriated funds is significant, particularly when weighed against the interest in a merely conjectural criminal investigation." 175 F. Supp. 2d at 580. Further, "it would ill serve the public interest to stay the private enforcement action, thus either forcing the government to consume resources that might better be

16

spent on other priorities, or remitting the plaintiff to a criminal remedy that might, for the government's own reasons, never be sought." *Id.* at 580-81. *See also State Farm Mutual*, 2002 U.S. Dist LEXIS 17896, at *11 ("There is a public interest in having financial institutions promptly recover misappropriated funds, especially when weighed against the interest of defendants facing speculative criminal charges.").

In attempting to recover misappropriated funds both for themselves and for others similarly situated as a result of one of the most blatant hedge fund frauds in the history of American finance, the public clearly has an interest in seeing that plaintiffs promptly obtain justice. This fact is especially true here because one does not know when or even if the government will bring criminal proceedings against Marquez.

### 6.    The Court's Interests Require Prompt Adjudication

In half-heartedly arguing that the court does not have an interest in efficiently managing this litigation, defendant Marquez concedes that granting a stay "may create some difficulties for this Court," which would now be forced to carve out a separate schedule for Marquez. Motion to Dismiss at p.12. Generally, when denying stays to unindicted defendants under criminal investigations, courts hold that it is in their interest to manage their dockets "efficiently" and to "speedily resolve all litigation." *See generally JHW Greentree Capital*, 2005 U.S. Dist LEXIS 14687, at *7 ("[T]his Court's interest in is managing its cases and docket efficiently and resolving this litigation."); *Karimona Investments*, 2003 U.S. Dist. LEXIS 3324, at *13, ("The Court has an obvious interest in managing its cases and efficiently resolving litigation."); *Travelers Casualty & Surety*, 2002 U.S. Dist. LEXIS 7939, at *11-12 ("With respect to the

17

remaining factors, the Court's interest in the expeditious resolution of cases before it weighs against granting a stay."); *Sterling National Bank*, 175 F. Supp. 2d at 580 (same); *Mason Tenders,* 2000 U.S. Dist. LEXIS 6993, at *6-*7 ("The parties, the public and the Court all have an interest in achieving a speedy resolution to the litigation and a concomitant interest in avoiding prejudice to anyone."); *Hollinger International*, 2005 U.S. Dist. LEXIS 14437, at *26 ("[T]he Court has an interest in the speedy resolution of its cases, and 'this interest is enhanced in complex litigation.'") (citation omitted); *State Farm Mutual*, 2002 U.S. Dist. LEXIS 17896, at *9 ("The Court has an interest in managing its caseload with efficiency.").

If the Court were to grant Marquez's motion, plaintiffs would have to prosecute this litigation on two different schedules, turning those already complex proceedings into two separate proceedings. Needless to say, this would consume far more of the Court's resources. Indeed, the courts denied stays in many of the above cases even when not faced with the added problem of defendants seeking to carve out separate schedules for themselves. *See, e.g., Karimona Investments*, 2003 U.S. Dist. LEXIS 3324, at *13; *Mason Tenders*, 2000 U.S. Dist. LEXIS 6993, at *6-*7; *Hollinger International*, 2005 U.S. Dist. LEXIS 14437, at *26; *State Farm Mutual*, 2002 U.S. Dist. LEXIS 17896, at *9. Here, the fact that Marquez effectively seeks to split this case into two litigations militates firmly against granting any such stay.

18

**CONCLUSION**

For the foregoing reasons, plaintiffs respectfully request that the Court deny defendant

James Marquez's Motion to Stay, and allow plaintiffs to proceed with their action against him.


Dated:  May 11, 2006                              Respectfully submitted,
New York, New York
                                                  BERGER & MONTAGUE, P.C.



                                                  Merrill G. Davidoff, Esq.
                                                  Lawrence J. Lederer, Esq.
                                                  Lane L. Vines, Esq.
                                                  David Anziska, Esq.
                                                  1622 Locust Street
                                                  Philadelphia, PA  19103
                                                  Telephone:  (215) 875-3000
                                                  Fax:  (215) 875-4604

                                                  *Attorneys for Plaintiff Broad-Bussel*
                                                  *Family Limited Partnership*


                                                  KOSKOFF, KOSKOFF & BIEDER, P.C.
                                                  William M. Bloss, Esq.
                                                  Neal A. DeYoung, Esq.
                                                  350 Fairfield Avenue
                                                  Bridgeport, CT  06604
                                                  Telephone:  (203) 336-4421
                                                  Fax:  (203) 368-3244

                                                  *Attorneys for Plaintiffs Marie-Louise*
                                                  *Michelsohn, Michelle Michelsohn and*
                                                  *Herbert Blaine Lawson, Jr.*


19

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2006, I caused a copy of the foregoing Plaintiffs' Memorandum of Law in Opposition to Defendant James Marquez's Motion to Stay to be filed electronically and served by email to all parties by operation of the Court's electronic filing system.

_/s/ David Anziska_
David Anziska

405368_03.wpd