The investor is our client. *Our clients trust us to establish realistic investment objectives and develop diversified hedge fund portfolios. To achieve these goals, we apply our time tested advisory processes and proprietary research tools.*

*We are "your strategic partner" in hedge fund investing.*

Sincerely,

E. Lee Hennessee and Charles J. Gradante

89.    The Hennessee Group website further boasted that (emphasis added):

Since the beginning, we have been navigating a course of action that balances risk and return among a well diversified hedge fund portfolio. *We have the expertise and experience* to provide clients with a range of investment advisory services, which integrates portfolio size, objectives and suitability.

90.    Also, the Hennessee Group further touted its services to plaintiff Broad-Bussel

Family and the members of the Hennessee Subclass based on the supposedly superior research,

due diligence and monitoring services that it provides (emphasis altered):

In order to understand your portfolio's performance, you need to see more than just returns; you should be able to understand how the returns were achieved and what factors affected them.

### *We provide clients with various research tools:*

*Performance analytics*
*Comparative analyses*
*Manager newsletters and interviews*
*Risk assessments*
*Due diligence reports*
*Monthly client statement "monitors".*

91.    The Hennessee Defendants publicly touted the value of the consulting and

advisory services they provide to hedge fund investors. For example, defendant Gradante

provided a written submission to the SEC in connection with a "Roundtable on Hedge Funds",

48

held on or about May 14-15, 2003. Among other things, Gradante claimed that hedge funds

consultants, like the Hennessee Defendants, are "value added" in providing investors with

guidance and advice:

> The value that hedge fund consultants provide is similar to the
> value consultants provide pensions, endowments, foundations, and
> government entities, which is fundamentally the analysis of the
> customer's investment needs and assistance in determining asset
> allocations, manager selection, and ongoing monitoring.

Gradante further espoused the "special value" of hedge fund consultants, such as the Hennessee

Defendants, based on the unique characteristics of hedge fund investments, stating as follows:

- The hedge fund industry "is relatively difficult to learn
  about from public information."

- Because hedge funds are "less transparent" than other
  investments, consultants "can provide discernment about a
  strategy."

- "The instruments and strategies used by hedge funds can be
  generally more complex than what you find in traditional
  money management, so hedge fund consultants can be
  valued added in identifying inherent strategy risk."

- "Determinations about suitability and what is in the best
  interest of the client can be a difficult exercise without a
  consultant."

- Hedge fund consultants "provide professional expertise in
  evaluating investment opportunities".

92.    The Hennessee Defendants, including specifically defendants Lee Hennessee and

Gradante, told members of the Hennessee Subclass that the integrity, skill, expertise and fidelity

of a hedge fund were factors critical to their recommending hedge fund investments. Moreover,

defendants Lee Hennessee and Gradante marketed themselves personally to plaintiff Broad-

Bussel Family and the Hennessee Subclass as being experts in analyzing fund managers and

selecting appropriate hedge fund investments for their clients. Further defendants Lee Hennessee and Gradante personally solicited plaintiff Broad-Bussel Family and the members of the Hennessee Subclass to make investments in the Bayou Hedge Funds and personally purported to investigate Bayou for plaintiff Broad-Bussel Family and the members of the Hennessee Subclass, and the Hennessee Group was simply the alter ego of defendants Lee Hennessee and Gradante. Absent the purported reputation, skill and expertise of defendants Lee Hennessee and Gradante and their alleged experience in properly investigating hedge fund investments, plaintiff Broad-Bussel Family and members of the Hennessee Subclass would not have sought advisory services and hedge fund recommendations from the Hennessee Defendants.

93.    Similarly, defendant Sterling Stamos touted and represented to members of the Sterling Stamos Subclass that:

a.    Sterling Stamos is an expert in recommending hedge funds for investment and thoroughly investigates the management, operations and safety of those funds recommended, specifically including the Bayou Hedge Funds;

b.    One of the services that Sterling Stamos provides is to make introductions to other funds that Sterling Stamos invests in, specifically including the Bayou Hedge Funds;

c.    Sterling Stamos invests its own money in the hedge funds that it recommends and introduces to its clients, specifically including the Bayou Hedge Funds;

d.    At times when Sterling Stamos recommended to members of the Sterling Stamos Subclass that they invest in the Bayou Hedge Funds, Sterling

50

Stamos represented to investors that the Bayou Hedge Funds were the only recommended funds open to new investors;

e.  Sterling Stamos recommended investment in the Bayou Hedge Funds because those funds purportedly met certain performance criteria and had properly been vetted by Sterling Stamos' due diligence investigations; and

f.  Sterling Stamos told its clients to specifically advise Bayou that they were referred to the Bayou Hedge Funds by Sterling Stamos.

94.  Sterling Stamos also specifically represented and assured the Michelsohn Plaintiffs and the members of the Sterling Stamos Subclass in substance as follows:

a.  that Sterling Stamos treats its investors as partners and always puts their clients' interests first;

b.  that Sterling Stamos seeks to preserve our partners' capital and provide opportunities for capital appreciation through "best in class" investments; and

c.  that Sterling Stamos is a firm its investor clients can rely on and trust for professional service.

95.  By virtue of the Consultant Defendants' superior knowledge and expertise, their representations to the members of the Consultant Subclasses, and their roles in rendering financial and advisory services to the members of the Consultant Subclasses, the Consultant Defendants owed fiduciary and other duties to the members of the Consultant Subclasses. These duties included, among other things, the obligations to: investigate the business practices and financial condition of the investments they recommend; monitor those recommended investments which are made by their clients; render honest and properly investigated financial advice

51

regarding investments by the members of the Consultant Subclasses; and assist Consultant

Subclass member investors in good faith in managing their investment funds.

96.     The investment advisory agreements that the Hennessee Group entered into with

members of the Hennessee Subclass included material terms that were uniform among the Bayou

Hedge Fund Class member investors. For example, those investment advisory agreements

obligated the Hennessee Group to perform due diligence investigations and ongoing monitoring

of investments recommended by the Hennessee Group, including, among other things, as follows

(emphasis added):

> a.     "*provid[e] advice* to Client concerning investments in one
> or more private investment partnerships (each a "Hedge
> Fund" and collectively, the "Portfolio'). These services
> include the initial selection of each Hedge Fund and
> *ongoing monitoring* of the performance of the Portfolio";

> b.     "*perform search, evaluation, selection, and introduction
> services* (collectively, "Structuring Services") and introduce
> Client to one or more Hedge Fund(s) that Hennessee
> *reasonably believes* would be appropriate investment
> vehicles for Client to use based upon the investment
> objectives of Client"; and

> c.     provide "Ongoing Services to the Client, such as its
> obligation to "*monitor* the performance of the Portfolio
> selected by Client and provide *continuous and ongoing*
> Hedge Fund investment advice".

97.     In rendering their services to the Consultant Subclasses, the Consultant

Defendants recommended that members of the Consultant Subclasses invest in the Bayou Hedge

Funds, even if making such an investment required a withdrawal of funds from an existing

investment previously recommended by the Consultant Defendants or other parties. In response

52

to such recommendations, Plaintiff and the members of the Consultant Subclasses invested in the Bayou Hedge Funds.

98.    In making these investment recommendations, the Consultant Defendants provided the members of the Consultant Subclasses with false information regarding the Bayou Hedge Funds' purported financial results, operations and condition.

99.    For example, the Hennessee Defendants touted the business model and operations of the Bayou Hedge Funds, including the Bayou Super Fund. The Hennessee Defendants also advised that the recommended Bayou Super Fund was a relatively liquid investment vehicle and that fund withdrawals can be made on a monthly basis simply with a 15 day advance notice. The Hennessee Defendants advised the Hennessee Subclass as to the total assets of that fund and that the personal investment commitment in that Fund by the portfolio manager, *e.g.*, defendants Bayou Management and Israel, was "Significant".

100.    The Hennessee Defendants also advised the Hennessee Subclass that the Bayou Super Fund uses "a high velocity trading strategy, based on a proprietary model with constant human overlay". The Hennessee Defendants further explained that "[b]efore the markets open, the investment team formulates a trading strategy for the day based on news, SEC filings, insider activity, industry reports, etc." The Hennessee Defendants assured plaintiff Broad-Bussel Family and the members of the Hennessee Subclass in marketing materials that investment risk was controlled and monitored by Bayou Management, in that, among other things, "[long/short investment] exposures are frequently brought down to zero by the closing bell, to prevent gap up/downs" and that "[t]he fund cuts back exposure if daily losses are in the 1% - 1.5% range."

53

101.    The Hennessee Defendants represented to the Hennessee Subclass that the Bayou

Super Fund was based on an "Opportunistic" style, a characterization which was defined by the

Hennessee Defendants' marketing materials to mean:

> Long/short equities managers who maintain a flexible net exposure
> to reflect changing dynamics of the market on a minute-to-minute
> or daily day trading basis.  Managers typically utilize technical
> and/or fundamental analysis.  Portfolio turnover can be high as
> managers implement trading disciplines such as tight stop losses
> and defined exit target prices.

The Hennessee Defendants represented that the Bayou Super Fund had a "Low/Moderate"

expected volatility.

102.    The Hennessee Defendants also touted the historical financial performance of the

Bayou Super Fund, providing non-publicly available monthly and annual investment returns for

the years 1997 through 2003, including for example specifically as follows:

| Year | Investment Performance |
|---|---|
| 2003 | 10.66% |
| 2002 | 11.22% |
| 2001 | 7.05% |
| 2000 | 19.62% |
| 1999 | 26.06% |
| 1998 | 17.55% |
| 1997 | 32.52% |
| Annualized Compound Return (1997-2003) | 18.22% |

54

103.    The Hennessee Defendants also personally facilitated the Bayou investments of plaintiff Broad-Bussel Family and the members of the Hennessee Subclass.  For example, the Hennessee Defendants' made direct requests to Bayou for Bayou offering documents on behalf of members of the Hennessee Subclass.

104.    The Hennessee Defendants knew that the integrity, skill, expertise and fidelity of the Bayou Hedge Funds, their manager, Bayou Management, and its officers -- including in particular, defendant Israel -- were critical to a proper due diligence analysis and recommendation of investments in the Bayou Hedge Funds.

105.    Defendant Sterling Stamos also touted the Bayou Hedge Funds and recommended to the Sterling Stamos Subclass investments in those funds.  For example, in steering members of the Sterling Stamos Subclass to Bayou, Sterling Stamos told members of the Subclass that Sterling Stamos is an expert in recommending hedge funds and that in making such recommendations Sterling Stamos properly investigates the management, operations and safety of the hedge funds it recommends, including specifically the Bayou Hedge Funds.  Further, Sterling Stamos represented to the Sterling Stamos Subclass that it recommended the Bayou Hedge Funds because the Bayou Hedge Funds met certain performance criteria.  In fact, Sterling Stamos represented that it had invested its own money in the recommended Bayou Hedge Funds. Moreover, at the times when certain members of the Sterling Stamos Subclass were introduced to Bayou by Sterling Stamos, Sterling Stamos represented to them that Bayou was the only additional recommended fund open to new investors.

106.    Following the time the members of the Consultant Subclasses invested in the Bayou Hedge Funds, the Consultant Defendants transmitted other false and misleading

55

information, all of which omitted to disclosed adverse material facts about Bayou and the Bayou

Hedge Funds, including as described more fully below.

### The "Red Flags" Regarding the Bayou Defendants' Misconduct
### Which the Consulting Defendants Missed or Ignored

107.    The members of the Consultant Subclasses relied on the expertise of the

Consultant Defendants to investigate, analyze and timely report material information regarding

the Bayou Hedge Funds.

108.    The Consultant Defendants failed to conduct a proper due diligence review of the

Bayou Hedge Funds, Bayou Management and Bayou's principal officers, including in particular,

defendants Israel and Marino.  Similarly, the Consultant Defendants failed to properly monitor

and advise members of the Consultant Subclasses concerning their investments in the Bayou

Hedge Funds, which is precisely what Consultant Subclass member investors retained them to

do.  In failing to conduct proper due diligence reviews and ongoing monitoring of the Bayou

Hedge Funds, Bayou Management and Bayou's principal officers, the Consultant Defendants

failed to uncover or ignored numerous "red flags" (the "Red Flags") that were either indicative of

the Bayou Defendants' misconduct, or should have led the Consultant Defendants to investigate

further and timely communicate adverse information to the members of the Consultant

Subclasses, examples of which include the following:

a.    The Paul Westervelt Action:  On or about March 26, 2003, Paul

Westervelt, Jr. ("Westervelt") and his son, Paul Westervelt, III, filed a civil lawsuit in Louisiana

federal court (No. 03-0860 (E.D. La.)) against defendants Israel, Marino, Bayou Management,

Bayou Fund and Bayou Securities, alleging breach of contract, unjustified employment

termination and violation of Louisiana's Whistleblower Statute, L.S.A.-R.S. 23:967 (the

"Westervelt Action"). Westervelt alleged that he was hired in or about September 2002 to serve as a principal of Bayou in connection with hedge fund management. According to paragraph 13 of the Westervelt complaint, after being hired Westervelt "discovered what he perceived to be possible violations of S.E.C. regulations governing the operation of hedge funds, as well as other perceived possible violations of S.E.C. and N.A.S.D. rules and regulations." In addition, Westervelt allegedly "observed Marino engaged in [certain unspecified] conduct toward the other employees of Bayou on numerous occasions" that could "expose Bayou ... to potential civil liability." Westervelt, as a Bayou principal, requested that Israel and Marino provide him with access to "financial documentation relating to Bayou, including income statements, balance sheets, monthly account statements and other financial documents evidencing the ongoing business activities of Bayou"; in response, Israel and Marino denied those requests, and reportedly "deliberately obstructed" Westervelt's attempts to access those requested documents. Nevertheless, Westervelt was able to obtain certain documentation which showed that (emphasis added):

> *Bayou's capital trading account at Spear, Leeds &*
> *Kellogg ("Spear Leeds"), had been depleted by*
> *more than $7 million in December 2002. As*
> *evidenced by the December 2002 account*
> *statement ... Bayou's capital account at Spear*
> *Leeds had a balance of more than $7.8 million on*
> *December 1, 2002, and a balance of only $379,000*
> *as of December 31, 2002 ....*

Although Westervelt repeatedly asked Israel and Marino to explain this capital account depletion, Westervelt never received any explanation or further information. Further, the Consultant Defendants failed to alert Class member investors to even the existence of these proceedings and

57

allegations despite being hired for the purpose of advising certain of the Class members of precisely such types of Red Flags.

        b.    <u>Bayou's Statement Regarding the Westervelt Action</u>: On or about November 3, 2004, defendant Israel, in his capacity as the so-called General Partner of the Bayou Group, sent a letter to investors of the Bayou Hedge Funds to address the Westervelt Action. That letter was also sent to and/or received by the Consultant Defendants. Israel's letter attempted to defuse any negative impact that had been created by the Westervelt Action by trying to discredit Westervelt personally and by denying all allegations of wrongdoing. For example, Israel claimed that Westervelt had been hired by Bayou because of Westervelt's "self-described deteriorating situation" with his prior employer; however, Westervelt alleged that he "agreed to leave his successful business arrangement" with his prior employer in exchange for Bayou's promise to pay him an annual salary of $800,000 and give him an immediate 25% ownership in Bayou Management (Westervelt Complaint, ¶ IX). Also, Israel claimed that Westervelt was fired because he "would simply not follow the Bayou trading methods"; however, Westervelt alleged that he resigned essentially because he refused to participate in the illegal conduct being committed by Israel, Marino and the other Bayou defendants. Israel's letter also noted that another Bayou employee, Ray Oelkers ("Oelkers"), had also been fired by Israel and that Oelkers had also filed a lawsuit. Israel similarly insinuated that Oelkers needed a job, and that Israel hired Oelkers but then fired him because Oelkers refused to perform "[t]he duties and responsibilities of the position ... outlined for him" -- in other words, Oelkers refused to participate in the Bayou Defendants' fraud. In sum, such allegations and counter-allegations are

precisely the type of information that the members of the Consultant Subclasses relied upon the Consultant Defendants to investigate, analyze and, at a minimum, timely advise of.

        c.    Admitted Conflicts of Interests:  Defendant Israel acted as the Chief Investment Officer, manager and head trader for the Bayou Hedge Funds.  The securities brokerage and trading functions for the Bayou Hedge Funds were performed by Bayou Securities, which during the Class Period was owned by Israel.  The Bayou Hedge Funds' proclaimed "trading strategy" consisted of daily, continual high-volume trading activity -- thus resulting in substantial corresponding commissions for Bayou Securities, and in turn substantial income personally for defendant Israel.  In other words, the more that Israel churned, or turned-over, the stock portfolios of the Bayou Hedge Funds, the more commissions he would earn.  In fact, according to the Marino Confession, the Bayou Defendants fraudulently funneled portions of their Bayou Securities' hefty commissions back to the Bayou Hedge Funds to help conceal trading losses in or about 1997 and 1998.  As their fraud grew, the Bayou Defendants ceased funneling those commissions in or about 1998 and simply reported wholly fictitious financial results and balances for the Bayou Hedge Funds, with Israel still retaining personally substantial revenues from those commissions.  Such false financial reports were made possible because the Bayou Defendants falsely reported that the data had been audited by an independent accounting firm, Richmond-Fairfield -- which in actuality was a bogus company that was created, owned and registered by defendant Marino, and which never properly performed, or even could perform, such audits.

        d.    Phoney Audit/Accounting Firm:  Richmond-Fairfield was formed in or about 1998 by defendant Marino with the direct approval and participation of defendants Israel

59

and Marquez. Richmond-Fairfield was formed specifically in order to help conceal the Bayou

Defendants' expanding fraud. In fact, New York state regulatory filings show that the firm was

not even registered with the state of New York, or any other state, until October 10, 2000.

Moreover, those regulatory filings show that the owner of Richmond-Fairfield is Bayou's CFO,

defendant Marino. As defendant Marino has admitted, the Bayou Defendants concocted this

phoney accounting firm in order to facilitate their financial fraud. Among other things, the

phoney firm provided false audit opinions that certified that Bayou's financial statements,

reported profits and fund valuations were fairly stated and had been prepared in accordance with

GAAP.

      e.    <u>Complete Absence of Verification</u>: The Consultant Defendants did not

obtain any independent verification or confirmation as to the Bayou Hedge Funds' asset balances

or securities transactions. Absent such verification or confirmation, the Consultant Defendants

could not have performed any reasonable or meaningful due diligence or monitoring of Bayou or

the Bayou Hedge Funds. At a very minimum, the lack of any such verification or confirmation

should have caused the Consultant Defendants to further investigate and advise Plaintiffs and

members of the Consultant Subclasses that the Consultant Defendants did not obtain such

verification or confirmation, and that they therefore had not performed any meaningful due

diligence and monitoring of the Bayou Hedge Funds.

      f.    <u>Bayou Used Paid Promoters</u>: According to materials provided to the

Consultant Defendants by Bayou during the Class Period, Bayou acknowledged that it retained

several outside marketers and promoters for the Bayou Hedge Funds and paid those persons

based on either a percentage of assets raised or through commissions to the promoters'

designated brokers/dealers. These practices created clear conflicts of interest, but the Consultant Defendants failed to properly investigate and advise the members of the Consultant Subclasses. These paid promoters included, among others, Aris Partners, Altegris Investments and Consulting Services Group, some or all of whom reportedly received as much as 3% of the assets they raised.

       g.    Israel's Falsified Resume: The Bayou Defendants falsified and materially embellished the professional credentials and biographical information regarding defendant Israel -- the manager and Chief Investment Officer of the Bayou Hedge Funds. Indeed, there are several material discrepancies between Israel's *curriculum vitae* that was included in the Bayou Group's marketing materials for the Bayou Hedge Funds, which was received by the Consultant Defendants, as compared to the C.R.D. that was on file with securities regulators.[5] For example, Israel's marketed biography omits several of his prior employers and his history of bouncing from one brokerage firm to another, and falsely stated that Israel had been a head trader at the respected hedge fund Omega Advisors and exaggerated the period of time that Israel worked for that entity.

       h.    Bayou's Falsified Company History: The Bayou Defendants also falsified the history of Bayou and the Bayou Hedge Funds. These falsified data were used to distort Bayou's true operating history in order to gloss over and conceal Bayou's track record of poor performance. For example, the Bayou Defendants gave prospective investors, including members of the Class, documents that falsely stated that defendant Israel started the Bayou funds

---

    [5]    C.R.D. is a regulatory filing maintained by the NASD that reports the qualification, employment and disclosure histories of registered securities employees of NASD member firms.

in 1997. In fact, the Bayou funds actually began in 1996. However, Israel and Bayou had delivered such a poor performance prior to 1997 that the Bayou Defendants simply blotted out the 1996 operations entirely from Bayou's reported history.

    i.    <u>Prior Regulatory Violation and Fine</u>: On September 10, 2003, the Connecticut Banking Commissioner entered a Consent Order with respect to Bayou Securities. The Consent Order stated that Bayou Securities, a Connecticut-registered broker-dealer, failed to keep the records required by Section 36b-31-14a(a) of the Regulations under the Connecticut Uniform Securities Act. The Consent Order required that Bayou Securities pay $7,500 to the department as an administrative fine and provide the Securities and Business Investments Division with copies of any customer complaints on a quarterly basis for two years.

    j.    <u>Unusually Favorable Fees and Restrictions</u>: Bayou offered unusually favorable fees and terms for the Bayou Hedge Funds, which successfully served as enticements for investors, including members of the Class, to choose the Bayou Hedge Funds over other hedge funds. Indeed, according to the Marino Confession, such favorable terms were used for precisely this purpose. For example, unlike most hedge funds, Bayou did not charge investors the traditional hedge fund management fee of 1% to 2% of the investment assets, plus a percentage of the gains the fund realizes. Instead, Bayou claimed to limit its fees to 20% of the funds' gains. However, in actuality, this meant that the more fictitious gains Bayou reported, the larger Bayou's fees. In addition, the minimum investment Bayou required of its investors was $250,000 -- an amount that was much smaller than the $1 million minimum used by other funds. Also, Bayou did not have a long lockup period -- meaning that investors could enter and exit the

Bayou Hedge Funds on a monthly basis, as opposed to lock-up periods of a year or more that are used by other hedge funds.

109.     The Consultant Defendants were obligated to reasonably investigate the operations, finances and history of the Bayou Hedge Funds that they recommended to the Plaintiffs and the Consultant Subclasses.  Additionally, after Plaintiffs and members of the Consultant Subclasses invested in the Bayou Hedge Funds, the Consultant Defendants were required to monitor such investments and promptly advise Plaintiffs and the members of the Consultant Subclasses of any material information concerning same and whether circumstances had materially changed regarding such investments.  Indeed, the members of the Consultant Subclasses retained the Consultant Defendants not only to advise regarding the initial investments, but also to timely advise Consultant Subclass members of any events or changes thereafter so Consultant Subclass members could make informed decisions regarding their investments.

110.     In addition to the foregoing Red Flags, the Consultant Defendants also had the ability to inspect the books and record of the Bayou Hedge Funds.  For example, the respective Operating Agreements governing Class member investments in the Bayou Hedge Funds provided as follows:

> The books and records shall at all times be maintained at the principal executive office of the Company and shall be open to the reasonable inspection and examination of the Members, Economic Owners, or their duly authorized representatives during reasonable business hours.

111.     The Consultant Defendants failed to inspect the books and records of the Bayou Hedge Funds altogether, or at least to do so in a proper manner, and to timely advise members of

the Consultant Subclasses as to material adverse information concerning Bayou and the Bayou Hedge Funds.

112.    The Consultant Defendants wrongfully ignored or failed to uncover the foregoing Red Flags in recommending that the members of the Consultant Subclasses invest in the Bayou Hedge Funds. Had the Consultant Defendants conducted proper due diligence and monitoring, they would have learned the truth about Bayou or further investigated and alerted members of the Consultant Subclasses to reject investing in the Bayou Hedge Funds or to withdraw their investments in the Bayou Hedge Funds, thus preventing or mitigating the damages that were ultimately suffered by Plaintiffs and the Consultant Subclasses when the Bayou Hedge Funds collapsed in or about July 2005.

## Piercing the Corporate Veil

113.    Defendants Israel and Marino acted in concert with, dominated and otherwise controlled the operations of Bayou Group, Bayou Management, Bayou Securities, Bayou Partners, Bayou Advisors, Bayou Equities, Bayou Super Fund, Bayou No Leverage Fund, Bayou Affiliates Fund, Bayou Accredited Fund, Bayou Offshore Fund, Bayou Offshore Fund A, Bayou Offshore Fund B, Bayou Offshore Fund C, Bayou Offshore Fund D, Bayou Offshore Fund E, Bayou Offshore Fund F, Bayou Offshore Master Fund, Bayou Fund, Richmond-Fairfield, IM Partners and IMG (collectively, the "Dominated Entities"). In addition, defendants Israel and Marino planned, orchestrated and executed the wrongdoing as alleged on behalf of themselves individually and through the Dominated Entities, which Israel and Marino controlled and operated for their own personal benefit and as their own alter egos. Among other things, defendants Israel and Marino completely dominated and controlled the Dominated Entities

64

(particularly with respect to the Misrepresentations and Omissions regarding Class member investor funds and the misappropriation and other dissipation of the Bayou Hedge Funds). Israel and Marino exercised that domination and control to facilitate and enable the alleged fraud and other misconduct that resulted in the damages suffered by Plaintiffs and the Class. Accordingly, the acts and omissions of each of the Dominated Entities should be attributed to one another and to defendants Israel and Marino personally.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

#### (For Fraud Against the Bayou Defendants)

114.    Plaintiffs and the Class reallege each of the foregoing allegations as if fully set forth herein.

115.    Plaintiffs and the Class bring this claim for fraud against the Bayou Defendants.

116.    During the Class Period, the Bayou Defendants made numerous and continuing material misrepresentations and omissions regarding the financial results, operations and conditions and the business practices of the Bayou Hedge Funds. Among other things, as alleged above, the Bayou Defendants' Misrepresentations and Omissions included issuing false reports of the Bayou Hedge Funds' rates of return and total value; false reports of Class members' accumulated profits and net asset valuations in the Bayou Hedge Funds; false reports that the Bayou Hedge Funds were being independently and truthfully audited when, in fact, the Bayou Hedge Funds were essentially a sham and the Bayou Defendants were engaged in a massive fraud on the Class; and false reports regarding the financial condition and results for the Bayou Hedge

65

Funds, when in reality, the Bayou Defendants had wrongfully converted or otherwise dissipated hundreds of millions of dollars from Class member investments, all as alleged more fully above.

117. Similarly, Plaintiffs and the Class were fraudulently induced to enter into contractual, legal, fiduciary and other relationships with the Bayou Defendants, as alleged more fully above. As a result, any contractual or other purported disclaimers of liability or limitation on the plaintiff Class' right to sue are void *ab initio*, including without limitation any agreement purportedly requiring some or all of the claims to be submitted to arbitration.

118. The Bayou Defendants knew or recklessly ignored that their misrepresentations and omissions and fraudulent acts and practices in misleading Class member investors and misappropriating Class member assets would damage the members of the Class.

119. The Bayou Defendants' Misrepresentations and Omissions and fraudulent acts and practices were a substantial, direct and proximate cause of damages suffered by Plaintiffs and the Class.

120. By reason of the foregoing, the Bayou Defendants have committed fraud on Plaintiffs and the Class and are liable for the damages caused thereby in an amount to be established at trial.

## SECOND CLAIM FOR RELIEF

### (For Violation of the Connecticut Uniform Securities Act Against the Bayou Defendants)

121. Plaintiffs and the Class reallege each of the foregoing allegations as if fully set forth herein.

122. Plaintiffs and the Class bring this claim for violation of the Connecticut Uniform Securities Act, Conn. Gen. Stat. §§ 36b-2 to 36b-33, against the Bayou Defendants.

66

123. In connection with the acquisition of interests in the Bayou Hedge Funds by Plaintiffs and the Class, the Bayou Defendants, directly or indirectly: (1) employed devices, schemes and artifices to defraud; (2) made untrue statements of a material fact and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; and (3) engaged in acts, practices, or a course of business which operated as a fraud and deceit upon Plaintiffs and the Class, all in violation of Conn. Gen. Stat. § 36b-4.

124. The Bayou Defendants' deceptive devices, schemes, courses of business and misrepresentations of fact concerned the Bayou Hedge Funds' business practices and financial results, operations and condition, all as alleged more fully above. The Bayou Defendants engaged in these deceptive acts and practices and made these material misrepresentations and omissions of fact with the intention that, *inter alia*, Plaintiffs and the Class would directly or indirectly rely on them, and Plaintiffs and the Class did directly or indirectly, individually and/or through their agents, so rely. As alleged more fully above, the Bayou Defendants' deceptive acts, practices and misrepresentations and omissions of fact concerned the following, among others:

a. that the Bayou Hedge Funds' reported financial results, rates of return and asset valuations were accurate and represented Bayou's true financial position, operations and results;

b. that the accounting for the profits and losses of the Bayou Hedge Funds conformed to GAAP;

c. that the Bayou Hedge Funds' were being independently and properly audited and that Bayou's purported auditor, defendant Richmond-Fairfield, was legitimate and

independent when, in fact, it was simply a sham company set up by Bayou's CFO, defendant Marino;

         d.     that between at least in or about the fall of 2003 through in or about May 2005, the Bayou Defendants entered and attempted to enter into private financial transactions using money from the Bayou Hedge Funds without properly or timely disclosing to Class member investors the actual nature of those transactions;

         e.     that in or about the spring of 2004, the Bayou Defendants secretly ceased all trading for the Bayou Hedge Funds, liquidated all investments in the Bayou Hedge Funds, and withdrew all of the remaining monies from Bayou and the Bayou Hedge Funds' bank accounts at Citibank, with Citibank's approval, without being authorized to do so and without informing the members of the Class;

         f.     that from at least in or about July 1996 through in or about August 2005, the Bayou Defendants fraudulently induced members of the Class to contribute in excess of $450 million to the Bayou Hedge Funds at least significant portions of which the Bayou Defendants then wrongfully converted for their own personal use; and

         g.     that Bayou and the Bayou Hedge Funds were being operated properly when, in fact, Bayou and the Bayou Hedge Funds were essentially being operated as a fraud and Ponzi scheme on Plaintiffs and the Class.

     125.    Further, the Bayou Defendants knowingly or recklessly disregarded that numerous representations made in the reports regarding the Bayou Hedge Funds that they disseminated to Class member investors were false and misleading and failed to timely and accurately disclose the true facts, also in violation of the Connecticut Uniform Securities Act.

126.    Plaintiffs and the Class did not know that the Bayou Defendants' statements were untrue and that the Bayou Defendants had made material omissions of fact and could not, in the exercise of reasonable diligence, have timely uncovered the truth.

127.    As a direct and proximate result of the Bayou Defendants' violations of the Connecticut Uniform Securities Act, Plaintiffs and the members of the investor Class acquired interests in the Bayou Hedge Funds at artificially inflated prices, were fraudulently induced to continue holding those interests, and were damaged thereby in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF

**(For Violation of the Connecticut Unfair
Trade Practices Act Against the Bayou Defendants and
defendants Lee Hennessee, Charles Gradante and Sterling Stamos)**

128.    Plaintiffs and the Class reallege each of the foregoing allegations as if fully set forth herein, except for allegations related to fraud.

129.    Plaintiffs and the Class bring this claim for violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq.*, against the Bayou Defendants.  In addition, plaintiff Broad-Bussel Family and the members of the Hennessee Subclass bring this claim against defendants Lee Hennessee and Charles Gradante, and the Michelsohn Plaintiffs and the members of the Sterling Stamos Subclass bring this claim against defendant Sterling Stamos.

130.    At all times relevant, the Bayou Defendants and defendants Lee Hennessee, Charles Gradante and Sterling Stamos were engaged in the conduct of trade or commerce pursuant to the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a.

69

131.    In connection with the acquisition of interests in the Bayou Hedge Funds by

Plaintiffs, the Class and the respective members of the Consultant Subclasses, the Bayou

Defendants, directly or indirectly, engaged in unfair trade practices by, among other things:  (1)

employing misleading devices, schemes and artifices; (2) making untrue statements of material

fact and withholding material facts necessary in order to make the statements made, in the light

of the circumstances under which they are made, not misleading; and (3) converting for their own

use or otherwise wrongfully dissipating the Class' invested funds in the Bayou Hedge Funds, all

as set forth more fully above.

132.    In connection with their financial consulting and advisory services to the

respective members of the Consultant Subclasses, defendants Lee Hennessee, Charles Gradante

and Sterling Stamos, directly or indirectly, engaged in unfair trade practices by, among things:

(1) employing misleading devices, schemes and artifices; (2) making untrue statements of

material fact and withholding material facts necessary in order to make the statements made, in

the light of the circumstances under which they are made, not misleading; and (3)

misrepresenting the services that they rendered to the respective Consulting Subclasses.

133.    The misconduct of the Bayou Defendants and defendants Lee Hennessee, Charles

Gradante, and Sterling Stamos was done intentionally or as a result of their own gross negligence

or recklessness, and was immoral, unethical, oppressive and unscrupulous and offended public

policy and established concepts of fairness.

134.    As a direct and proximate result of their misconduct, the Bayou Defendants and

defendants Lee Hennessee, Charles Gradante, and Sterling Stamos violated the Connecticut

70

Unfair Trade Practices Act. Plaintiffs and the respective members of the Class and the Consultant Subclasses were damaged thereby in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF

#### (For Conversion Against the Bayou Defendants)

135.    Plaintiffs and the Class reallege each of the foregoing allegations as if fully set forth herein, except for allegations related to fraud.

136.    Plaintiffs and the Class bring this claim for conversion against the Bayou Defendants.

137.    During the Class Period, Plaintiffs and other members of the Class transferred hundreds of millions of dollars to the Bayou Defendants as investments in the Bayou Hedge Funds.

138.    Plaintiffs and the Class have, actually or constructively, requested the return of their investments and all other related interest, profits, income or other appreciation.

139.    The Bayou Defendants have not returned to Plaintiffs and the Class these proceeds, but have instead deprived Plaintiffs and the Class of their rightful investment proceeds. For example, defendant Israel and Marino received millions of dollars from the Bayou Hedge Funds based on the phoney profits reported by the Bayou Hedge Funds, which were falsely generated by Israel and Marino themselves.

140.    The Bayou Defendants were not authorized to withhold and withdraw Plaintiffs' and the Class' original investments and other monies.

141.    The Bayou Defendants' unauthorized withholding and misappropriation of Plaintiffs' and the Class' original investments and other monies was a substantial, direct and proximate cause of damages suffered by Plaintiffs and the Class.

142.    By reason of the foregoing, the Bayou Defendants have committed conversion of Plaintiffs' and the Class' property and are liable for the substantial damages caused thereby in an amount to be established at trial.

### FIFTH CLAIM FOR RELIEF

### (For Theft Against the Bayou Defendants)

143.    Plaintiffs and the Class reallege each of the foregoing allegations as if fully set forth herein.

144.    Plaintiffs and the Class bring this claim for statutory theft, under Conn. Gen. Stat. § 52-564, against the Bayou Defendants.

145.    In engaging in unauthorized withholdings of Plaintiffs' and the Class' original investments and other monies related to the Bayou Hedge Funds, the Bayou Defendants intended to and did, in fact, deprive Plaintiffs and the Class of their property.

146.    By reason of the foregoing, the Bayou Defendants have committed statutory theft of Plaintiffs' and the Class' property and are liable for the substantial damages caused thereby in an amount to be established at trial.  Under Conn. Gen. Stat. § 52-564, the Bayou Defendants are liable to Plaintiffs and the Class in an amount treble their damages.

## SIXTH CLAIM FOR RELIEF

### (For Breach of Fiduciary Duty Against the
### Bayou Defendants and the Consultant Defendants)

147.    Plaintiff and the Class reallege each of the foregoing allegations as if fully set

forth herein, except for allegations related to fraud.

148.    Plaintiffs and the Class bring this claim for breach of fiduciary duty against the

Bayou Defendants and the Consultant Defendants.

149.    The Bayou Defendants were fiduciaries of Plaintiffs and the Class by virtue of

their acts in soliciting, receiving, managing and controlling the investments that Class members

made to the Bayou Hedge Funds; by holding themselves out as professional and reputable

experts in the field of hedge fund investments and as financial advisors; and because of their

superior knowledge concerning hedge fund investments generally and the Bayou Hedge Funds

specifically.  Plaintiffs and the Class reasonably reposed trust and confidence in the integrity and

fidelity of the Bayou Defendants in connection with the investments that Class members made in

the Bayou Hedge Funds.

150.    The Consultant Defendants were fiduciaries of the Plaintiffs and the members of

the Consultant Subclasses, respectively, by virtue of their status as financial and investment

advisors; by having been entrusted with Plaintiffs' and the Consultant Subclasses' confidential

and proprietary financial and investment information; by their acts in soliciting and advising

Plaintiffs and members of the Consultant Subclasses in their investments in the Bayou Hedge

Funds; by their acts and omissions in investigating, monitoring and managing Plaintiffs' and the

Consultant Subclasses' investments in the Bayou Hedge Funds; by holding themselves out as

professional and reputable experts in the field of hedge fund investments and as financial

73

advisors; and by virtue of their superior knowledge concerning hedge fund investments generally and the Bayou Hedge Funds specifically. Plaintiffs and the members of the Consultant Subclasses reasonably reposed trust and confidence in the integrity, fidelity and adequacy of the Consultant Defendants' business practices, including but not limited to the Consultant Defendants' purported due diligence and monitoring of Bayou and the Bayou Hedge Funds.

151. As fiduciaries, the Bayou Defendants and the Consultant Defendants owed Plaintiffs and other similarly situated Class members duties of loyalty, due care and fair dealing, including, *inter alia*: to protect the interests of the Class and Consultant Subclasses; to refrain from doing any act injurious to, or which would deprive the Class and Consultant Subclasses of, any profit or advantage; to provide members of the Class and Consultant Subclasses with accurate and materially complete information; and to not elevate their own interests ahead of Plaintiffs and other similarly situated members of the Class.

152. The Bayou Defendants violated their fiduciary duties to Plaintiffs and the members of the Class by, *inter alia*: engaging in a sham hedge fund fraud; making numerous material Misrepresentations and Omissions of facts regarding the Bayou Hedge Funds; and wrongfully converting Plaintiffs' and the Class' property for the use of the Bayou Defendants, all as alleged more fully above.

153. The Consultant Defendants violated their fiduciary duties to Plaintiffs and the members of the Consultant Subclasses by, *inter alia*: failing to perform proper due diligence and ongoing monitoring for Consultant Subclass members' investments in the Bayou Hedge Funds, ignoring or failing to uncover and timely disclose to Consultant Subclass member investors the Red Flags identified above; and failing to properly update Consultant Subclass

74

members regarding their investments in the Bayou Hedge Funds, all as alleged more fully above.

154.    As a direct and proximate result of the Bayou Defendants' and the Consultant Defendants' breaches of fiduciary duties, Plaintiffs and members of the Class and the Consultant Subclasses were damaged in an amount to be determined at trial.

### SEVENTH CLAIM FOR RELIEF

### (For Negligence Against All Defendants)

155.    Plaintiffs and the Class reallege each of the foregoing allegations as if fully set forth herein, except for allegations related to fraud.

156.    Plaintiffs and the Class bring this claim against all of the Defendants.

157.    During the Class Period, all of the Defendants owed a duty of reasonable care to the members of the Class and Consultant Subclasses in regard to those investors' investments in the Bayou Hedge Funds. In particular, the Bayou Defendants had a duty, among other things: to act as reasonable financial managers of the Class' Bayou Hedge Fund investments; to provide the Class with accurate and materially complete information; and to avoid acting or failing to act in a manner that would foreseeably injure Bayou investor Class members. Aider/Abettor Defendants Marquez and Fotta had a duty, *inter alia*, to properly operate Bayou, and Citibank had a duty to not transfer to defendant Israel personally millions of dollars in proceeds which it knew or ignored were fiduciary investment funds beneficially owned by Class member investors. The Consultant Defendants had a duty, among other things:  to act as reasonable financial advisors to the Consultant Subclasses; perform proper due diligence and monitoring of the Bayou Hedge Funds; properly investigate and timely alert Consultant Subclass members to the Red Flags

75

alleged above; and timely advise Consultant Subclass members of any material developments regarding their investments in the Bayou Hedge Funds, all as alleged more fully above.

158.    The Bayou Defendants violated their duties to the Class by, among other things, engaging in numerous improper acts and practices and making numerous and material Misrepresentations and Omissions regarding the financial results, operations and conditions and the business practices of the Bayou Hedge Funds. Among other things, the Bayou Defendants' Misrepresentations and Omissions included issuing false reports regarding the Bayou Hedge Funds' rates of return and total value; false reports of Class members' accumulated profits and net asset valuations in the Bayou Hedge Funds; false reports that the Bayou Hedge Funds were being independently and truthfully audited; and false reports regarding the propriety of the Bayou Defendants' operations when, in fact, the Bayou Defendants had wrongfully converted or otherwise dissipated hundreds of millions of dollars from the investments made by the Class in the Bayou Hedge Funds.

159.    The Aider/Abettor Defendants violated their duties to the Class in that, *inter alia*:

a.    Defendants Marquez and Fotta were principals of the Bayou Defendants and directly controlled the dissemination of the Bayou Defendants' Misrepresentations and Omissions. In addition, Marquez was directly involved in orchestrating the Bayou Defendants' misconduct beginning at least as early as 1998 and oversaw the operations of Bayou Securities and thereby directly or indirectly participated in the wrongdoing. Defendant Richmond-Fairfield was a sham accounting firm created by the Bayou Defendants to render false audit opinions for Bayou and the Bayou Hedge Funds in order to conceal the misconduct of the Bayou Defendants.

76

Defendant Eqyty Research received monies that were misappropriated from the Bayou Hedge

Funds and Bayou Securities. In return for their wrongful participation in allowing the Bayou

Defendants to negligently misrepresent and omit to disclose material facts concerning the Bayou

Hedge Funds, Aider/Abettor Defendants Marquez, Fotta, Richmond-Fairfield and Eqyty

Research received monetary compensation directly or indirectly from monies that rightfully

belonged to Plaintiffs and the members of the Class.

        b.     As alleged more fully above, defendant Citibank aided and abetted the

Bayou Defendants' misconduct by, among other things, allowing defendant Israel to wrongfully

deplete five Bayou bank accounts in or about July 2004. More particularly, Citibank permitted

defendant Israel to withdraw and convert $161 million of Bayou's then remaining funds, and in

actually transferred those funds to one or more of Israel's *personal accounts* in foreign and other

banks.

        160.    The Hennessee Defendants and defendant Sterling Stamos were grossly negligent

in violating their respective duties to plaintiff Broad-Bussel Family, the Michelsohn Plaintiffs

and the members of the Consultant Subclasses by failing to properly advise Consultant

Subclass members and monitor their investments in the Bayou Hedge Funds. Among other

things, the Consultant Defendants ignored or failed to uncover numerous Red Flags

concerning the Bayou Defendants' misconduct and failed to timely advise members of the

Consultant Subclasses of material adverse information regarding Bayou, all as alleged more

fully above.

        161.    Defendants Lee Hennessee and Gradante also owed a duty of care to plaintiff

Broad-Bussel Family and other members of the Hennessee Subclass because they personally

rendered financial advisory services to plaintiff Broad-Bussel Family and other Hennessee

Subclass members; solicited plaintiff Broad-Bussel Family and other Hennessee Subclass

members to retain them for such financial advisory services; personally recommended that

plaintiff Broad-Bussel Family and other Hennessee Subclass members not only invest in the

Bayou Hedge Funds, but also liquidate other existing investments and redirect such funds as

investments in the Bayou Hedge Funds; and continued to recommend that plaintiff Broad-

Bussel Family and other Hennessee Subclass members maintain and even increase their Bayou

investments despite the presence of the numerous Red Flags which the Hennessee Defendants

either knew or ignored and failed to timely and properly disclose. In addition, defendants Lee

Hennessee and Gradante are also personally liable to plaintiff Broad-Bussel Family and the

members of the Hennessee Subclass because they undertook specific acts in connection with

the Bayou investments they recommended to the Hennessee Subclass, examples of which

follow:

        a.    Defendants Lee Hennessee and Gradante were responsible for personally

investigating, among other things, defendant Richmond-Fairfield and actually knew or should

have known well before the August 2005 collapse of the Bayou Hedge Funds that Bayou's

supposedly independent auditor, Richmond-Fairfield, was registered solely in the name of

Bayou's CFO, defendant Marino. Nevertheless, Lee Hennessee and Gradante failed to

disclose this highly material fact to plaintiff Broad-Bussel Family and the other Hennessee

Subclass members. Moreover, Lee Hennessee and Gradante failed to properly supplement

their investigation of Richmond-Fairfield and timely and properly advise the Hennessee

Subclass after they learned or should have learned that defendant Richmond-Fairfield was registered solely in the name of Marino.

   b. Defendants Lee Hennessee and Gradante also investigated personally defendant Israel's employment history, reportedly including by speaking directly with Leon Cooperman -- the head of Omega Advisors, a New York money management firm. Nevertheless, Lee Hennessee and Gradante *failed to properly uncover basic information* and disclose to plaintiff Broad-Bussel Family and the members of the Hennessee Subclass that Israel had materially misstated his prior employment history and credentials, including for example, that Israel was not a "head trader" at Omega Advisors, all as set forth more fully above. To the contrary, according to recent media reports, the truth was that Israel was simply "an order taker" and that "Israel was not a fundamental stock picker, and he had no trading authority at Omega."

   c. Defendants Lee Hennessee and Gradante also failed to properly investigate and advise plaintiff Broad-Bussel Family and the other members of the Hennessee Subclass regarding the Westervelt Action. In particular, defendants Lee Hennessee and Gradante were specifically aware of the serious allegations of wrongdoing alleged in the Westervelt Action but failed to investigate those proceedings and advise plaintiff Broad-Bussel Family and the other members of the Hennessee Subclass. Indeed, after the Westervelt Action was ordered into NASD arbitration, defendants Lee Hennessee and Gradante *simply and incorrectly assumed* that such action would lead the NASD to fully "scrutinize Bayou's books", thereby relieving the Hennessee Defendants of any obligation to further investigate or even alert plaintiff Broad-Bussel Family and other members fo the Hennessee Subclass

regarding the highly material facts alleged in the Westervelt Action. Indeed, defendants Lee Hennessee's and Gradante's failure to further investigate Bayou in light of the Westervelt Action is particularly inexcusable given that they knew or ignored that the NASD's jurisdiction was limited. Indeed, the NASD has stated that it never looked at Bayou's hedge-fund books because it only had jurisdiction over Bayou's NASD-registered brokerage operations.

162.    It was foreseeable that Defendants' wrongful conduct would cause Plaintiffs and the members of the Class and the Consultant Subclasses to suffer damages.

163.    Defendants' negligence and gross negligence were substantial, direct and proximate causes of damages suffered by Plaintiffs and members of the Class and Consultant Subclasses.

164.    By reason of the foregoing, the Defendants are liable to the Plaintiffs and members of the Class and Consultant Subclasses for the substantial damages they caused in an amount to be established at trial.

## EIGHTH CLAIM FOR RELIEF

### (For Commercial Bad Faith Against Defendant Citibank)

165.    Plaintiffs and the Class reallege each of the foregoing allegations as if fully set forth herein.

166.    Plaintiffs and the Class bring this claim for commercial bad faith against defendant Citibank.

167.    As alleged more fully above, defendant Citibank wrongfully participated in the Bayou Defendants' misconduct by, among other things, allowing defendant Israel to deplete five

Bayou bank accounts in or about July 2004 and by permitting defendant Israel to withdraw and

convert some $161 million of Bayou's then remaining funds directly to Israel's own personal

accounts in foreign and other banks. Accordingly, defendant Citibank owed and breached a duty

of commercial good faith to Class members because, *inter alia*, it knew or ignored that the

transferred proceeds were fiduciary funds beneficially owned by Plaintiffs and other Class

member investors. Indeed, defendant Citibank knew or ignored that these proceeds were

beneficially owned by Plaintiffs and other Class member investors because many of those Class

members had sent their Bayou investment funds directly to Citibank.

168. Defendant Citibank's knowing participation in the Bayou Defendants'
misconduct amounted to commercial bad faith.

169. Defendant Citibank's commercial bad faith was a substantial, direct and
proximate cause of damages suffered by Plaintiffs and the Class.

170. By reason of the foregoing, defendant Citibank is liable to the Plaintiffs and the
Class for the substantial damages they caused in an amount to be established at trial.

### NINTH CLAIM FOR RELIEF

#### (For Breach of Contract Against the Bayou Defendants
#### and defendants Hennessee Group and Sterling Stamos)

171. Plaintiffs and the Class reallege each of the foregoing allegations as if fully set
forth herein, except for allegations related to fraud.

172. Plaintiffs and the Class bring this claim for breach of contract against the Bayou

Defendants and defendants Hennessee Group and Sterling Stamos. In addition, although Bayou

Management is the actual contracting party in the Subscription Agreements and the Operating

Agreements entered by Class members for the Bayou Hedge Funds, defendants Israel and Marino

so dominated and ignored the corporate form of all of the Bayou Defendants as alleged more fully above that the Bayou Defendants should be deemed one entity and liable as additional contracting parties for purposes of this claim.

173.    The Bayou Defendants entered into, and duly executed, the Subscription Agreements for one or more of the Bayou Hedge Funds with members of the Class. In accordance with the terms of those agreements, Plaintiffs and other members of the Class made an investment in one or more of the Bayou Hedge Funds in accordance with the terms of the Operating Agreement applicable to the specific Bayou Hedge Fund.

174.    The material terms of the Operating Agreements were uniform across the several Bayou Hedge Funds in that, among other things, all such contracts required that the Bayou Defendants to:  maintain proper and complete records and books; account fully and accurately for all transactions and other matters; compute all profits and losses of the Bayou Hedge Funds in accordance with GAAP; and maintain proper internal controls.

175.    The Bayou Defendants materially breached the foregoing contractual obligations by materially falsifying the books and records of the Bayou Hedge Funds, reporting phoney profits and valuations, failing to adhere to GAAP, failing to maintain proper internal accounting controls and procedures, and improperly operating the Bayou Hedge Funds, all as alleged more fully above.

176.    Similarly, Plaintiffs and members of the Hennessee Subclass and the Sterling Stamos Subclass entered into written or verbal contracts with defendants Hennessee Group and Sterling Stamos, respectively, for financial advisory and related services.

82

177. In connection with those agreements, defendants Hennessee Group and Sterling Stamos advised and recommended that Plaintiffs and the members of the Consultant Subclasses invest in one or more of the Bayou Hedge Funds.

178. Defendants Hennessee Group and Sterling Stamos materially breached their contractual obligations to Plaintiffs and the members of the Consultant Subclasses by failing to properly perform the advisory, due diligence and monitoring services in accord with their contractual obligations. For example, the Hennessee Group and Sterling Stamos defendants failed to investigate, among other things: Bayou's prior and pending litigations; conflicts of interests in Bayou's business practices; the independence and authenticity of Bayou's purported auditor; Bayou's actual financial condition, operations and results; and the accuracy and truthfulness of Israel's resume and Bayou's company history and past regulatory violations, all as alleged more fully above.

179. As a direct and proximate result of defendants Hennessee Group's and Sterling Stamos' contractual breaches, Plaintiffs and the members of the Consultant Subclasses invested in and remained invested one or more of the Bayou Hedge Funds and suffered damages thereby, including but not limited to their investment in the Bayou Hedge Funds and the fees they paid directly or indirectly to defendants Hennessee Group and Sterling Stamos in connection therewith.

180. The contractual breaches of Bayou Defendants and defendants Hennessee Group and Sterling Stamos were a substantial, direct and proximate cause of damages suffered by Plaintiffs and members of the Class and Consultant Subclasses.

83

181. By reason of the foregoing, the Bayou Defendants and defendants Hennessee Group and Sterling Stamos are liable to the Plaintiffs and the members of the Class and Consultant Subclasses for the substantial damages they caused in an amount to be established at trial.

## TENTH CLAIM FOR RELIEF

### (For Breach of the Implied Covenant of Good Faith and Fair Dealing Against the Bayou Defendants and defendants Hennessee Group and Sterling Stamos)

182. Plaintiff and the Class reallege each of the foregoing allegations as if fully set forth herein, except for allegations related to fraud.

183. Plaintiffs and the Class bring this claim for breach of the implied covenant of good faith and fair dealing against the Bayou Defendants and defendants Hennessee Group and Sterling Stamos. In addition, although Bayou Management is the actual contracting party in the Class member Subscription Agreements and the Operating Agreements for the Bayou Hedge Funds, defendants Israel and Marino so dominated and ignored the corporate form of all of the Bayou Defendants as alleged more fully above that the Bayou Defendants should be deemed one entity and liable as additional contracting parties for purposes of this claim.

184. The Bayou Defendants were obligated to act in good faith, to deal fairly, and to adhere to the terms and spirit of the Subscription Agreements and Operating Agreements for the respective Bayou Hedge Funds entered into with Plaintiffs and the Class, as the common law has long recognized that an implied covenant of good faith and fair dealing exists between parties to a contract. These obligations included, among other things, accurate and timely disclosure to Plaintiffs and the Class of the actual business practices and financial results, operations and

condition of Bayou and the Bayou Hedge Funds, so that the true value of the Bayou Hedge

Funds, and consequently the full consideration to which Class members were actually entitled,

could be determined fairly and in good faith.

185.    Defendants Hennessee Group and Sterling Stamos were obligated to act in good

faith, to deal fairly, and to adhere to the terms and spirit of the investment advisory agreements

they entered into with members of the Consultant Subclasses, as the common law has long

recognized that an implied covenant of good faith and fair dealing exists between parties to a

contract.  These obligations included, among other things, proper and timely financial advisory

services and proper due diligence and monitoring of Bayou and the investments in the Bayou

Hedge Funds made by Plaintiffs and the members of the Consultant Subclasses.

186.    The Bayou Defendants breached their implied covenant of good faith and fair

dealing that accompanied their performance and obligations under those contracts by

misrepresenting and omitting to disclose material facts concerning the actual business practices

and financial results, operations and condition of Bayou and the Bayou Hedge Funds, and by

misrepresenting and misappropriating Class member funds in connection therewith, all as alleged

more fully above.

187.    Defendants Hennessee Group and Sterling Stamos breached their implied

covenant of good faith and fair dealing that accompanied their performance of, and obligations

under, the investment advisory agreements they entered into, respectively, with plaintiff Broad-

Bussel Family and the members of the Hennessee Subclass and the Michelsohn Plaintiffs and

the members of the Sterling Stamos Subclass, through their failure to properly perform the

advisory, due diligence and monitoring services in accord with the spirit of their contractual

85

obligations. Among other things, defendants Hennessee Group and Sterling Stamos failed to

investigate Bayou's prior and pending litigations, conflicts of interests in Bayou's business

practices, the independence and authenticity of Bayou's purported auditor, the actual financial

condition, operations and results of Bayou, the accuracy and truthfulness of Israel's resume

and Bayou's company history, and Bayou's past regulatory violations, all as alleged more fully

above.

188.    The breaches of the implied covenant by the Bayou Defendants and defendants

Hennessee Group and Sterling Stamos were a substantial, direct and proximate cause of

damages suffered by Plaintiffs and the members of the Class and Consultant Subclasses.

189.    By reason of the foregoing, the Bayou Defendants and defendants Hennessee

Group and Sterling Stamos are liable to the Plaintiffs and the respective members of the Class

and Consultant Subclasses for the substantial damages they caused in an amount to be

established at trial.

### ELEVENTH CLAIM FOR RELIEF

#### (For Aiding and Abetting Fraud Against
the Aider/Abettor Defendants)

190.    Plaintiffs reallege each of the foregoing allegations as if fully set forth herein.

191.    Plaintiffs and the Class bring this claim for aiding and abetting fraud against the

Aider/Abettor Defendants.

192.    The Aider/Abettor Defendants participated in a common plan or course of

conduct, in conjunction with the Bayou Defendants and each other, that was designed to commit

a fraud upon Plaintiffs and the Class.

86

193.    Each of the Aider/Abettor Defendants participated in the alleged fraudulent course of conduct through active participation, aid, encouragement and/or ratification of the fraudulent misconduct alleged above, for its/his/her own benefit, and did so having known of that fraud, or but for its/his/her gross negligence or recklessness should have known of the fraudulent nature of that course of conduct, in particular as follows, all as alleged more fully above:

a.    Defendants Marquez and Fotta were principals of the Bayou Defendants and directly controlled the dissemination of the Bayou Defendants' Misrepresentations and Omissions. In addition, Marquez was directly involved in orchestrating the Bayou Defendants' misconduct beginning in at least 1998 and oversaw the operations of Bayou Securities and thereby directly or indirectly participated in the wrongdoing. Defendant Richmond-Fairfield was a sham accounting firm created by the Bayou Defendants to render false audit opinions for Bayou and the Bayou Hedge Funds in order to conceal the misconduct of the Bayou Defendants. Defendant Eqyty Research received monies that were misappropriated from the Bayou Hedge Funds and Bayou Securities. In return for their wrongful participation in allowing the Bayou Defendants to misrepresent and omit to disclose material facts concerning the Bayou Hedge Funds, the Aider/Abettor Defendants Marquez, Fotta, Richmond-Fairfield and Eqyty Research received monetary compensation directly or indirectly from monies that rightfully belonged to Plaintiffs and the Class.

b.    As alleged more fully above, defendant Citibank aided and abetted the Bayou Defendants' fraudulent scheme by, among other things: allowing defendant Israel to wrongfully deplete five Bayou bank accounts in or about July 2004; permitting defendant Israel

87

to withdraw and convert at least $161 million of Bayou's then remaining funds; and actually

transferring those funds to Israel's *personal accounts* in foreign and other banks.

194.   Plaintiffs and the Class were injured by the violations of the Aider/Abettor

Defendants alleged above.  The Aider/Abettor Defendants are therefore jointly and severally

liable to Plaintiffs and the Class for all damages incurred resulting therefrom in an amount to be

proven at trial.

## TWELFTH CLAIM FOR RELIEF

### (For Aiding and Abetting Breach of Fiduciary Duty
### Against the Aider/Abettor Defendants)

195.   Plaintiffs reallege each of the foregoing allegations as if fully set forth herein.

196.   Plaintiffs and the Class bring this claim for aiding and abetting breach of fiduciary

duty against the Aider/Abettor Defendants.

197.   Each of the Aider/Abettor Defendants participated in an alleged course of conduct

that aided and abetted numerous breaches of fiduciary duties that were committed by the Bayou

Defendants, all as alleged more fully above.

198.   Each of the Aider/Abettor Defendants actively participated in the Bayou

Defendants' misconduct and aided, encouraged and/or ratified such misconduct for its/his/her

own benefit, including more particularly as follows, all as more fully alleged above:

a.   Defendants Marquez and Fotta were principals of the Bayou Defendants

and directly controlled the dissemination of the Bayou Defendants' Misrepresentations and

Omissions. In addition, Marquez was directly involved in orchestrating the Bayou Defendants'

misconduct beginning in at least 1998 and oversaw the operations of Bayou Securities and

thereby directly or indirectly participated in the wrongdoing.  Defendant Richmond-Fairfield was

88

a sham accounting firm created by the Bayou Defendants to render false audit opinions for Bayou

and the Bayou Hedge Funds in order to conceal the misconduct of the Bayou Defendants.

Defendant Eqyty Research received monies that were misappropriated from the Bayou Hedge

Funds and Bayou Securities. In return for their wrongful participation in allowing the Bayou

Defendants to misrepresent and omit to disclose material facts concerning the Bayou Hedge

Funds, the Aider/Abettor Defendants Marquez, Fotta, Richmond-Fairfield and Eqyty Research

received monetary compensation directly or indirectly from monies that rightfully belonged to

Plaintiffs and the Class.

        b.    As alleged more fully above, defendant Citibank aided and abetted the

Bayou Defendants' misconduct by, among other things: allowing the defendant Israel to

wrongfully deplete five Bayou bank accounts in or about July 2004; permitting defendant Israel

to withdraw and convert at least $161 million of Bayou's then remaining funds; and actually

transferring those funds to Israel's *personal accounts* in foreign and other banks.

    199.    Plaintiffs and the Class were injured by the violations of the Aider/Abettor

Defendants alleged above. The Aider/Abettor Defendants are therefore jointly and severally

liable to Plaintiffs and the Class for all damages incurred resulting therefrom in an amount to be

proven at trial.

### THIRTEENTH CLAIM FOR RELIEF

#### (For Aiding and Abetting Negligence
#### Against the Aider/Abettor Defendants)

    200.    Plaintiffs reallege each of the foregoing allegations as if fully set forth herein.

    201.    Plaintiffs and the Class bring this claim for aiding and abetting negligence against

the Aider/Abettor Defendants.

202. Each of the Aider/Abettor Defendants participated in the Bayou Defendants' misconduct and either knew, or but for their negligence and/or gross negligence should have known, of the false and misleading information that the Bayou Defendants were providing to investors and others regarding the Bayou Hedge Funds.

203. Each of the Aider/Abettor Defendants participated in the alleged fraudulent course of conduct through active participation, aid, encouragement and/or ratification of the negligent misrepresentations and omissions alleged above, for its/his/her own benefit, including in particular as follows, all as more fully alleged above:

a. Defendants Marquez and Fotta were principals of the Bayou Defendants and directly controlled the dissemination of the Bayou Defendants' Misrepresentations and Omissions. In addition, Marquez was directly involved in orchestrating the Bayou Defendants' misconduct beginning in at least 1998 and oversaw the operations of Bayou Securities and thereby directly or indirectly participated in the wrongdoing. Defendant Richmond-Fairfield was a sham accounting firm created by the Bayou Defendants to render false audit opinions for Bayou and the Bayou Hedge Funds in order to conceal the misconduct of the Bayou Defendants. Defendant Eqyty Research received monies that were misappropriated from the Bayou Hedge Funds and Bayou Securities. In return for their wrongful participation in allowing the Bayou Defendants to misrepresent and omit to disclose material facts concerning the Bayou Hedge Funds, the Aider/Abettor Defendants Marquez, Fotta, Richmond-Fairfield and Eqyty Research received monetary compensation directly or indirectly from monies that rightfully belonged to Plaintiffs and the Class.

b.    As alleged more fully above, defendant Citibank substantially facilitated the Bayou Defendants' fraudulent scheme by, among other things: allowing the Bayou Defendants to wrongfully deplete five Bayou bank accounts in or about July 2004; permitting defendant Israel to withdraw and convert at least $161 million of Bayou's then remaining funds; and actually transferring those funds to Israel's *personal accounts* in foreign and other banks.

204.    Plaintiffs and the Class were injured by the violations of the Aider/Abettor Defendants alleged above. The Aider/Abettor Defendants are therefore jointly and severally liable to Plaintiffs and the Class for all damages incurred resulting therefrom in an amount to be proven at trial.

## FOURTEENTH CLAIM FOR RELIEF

### (For Unjust Enrichment and Restitution Against All Defendants)

205.    Plaintiffs and the Class reallege each of the foregoing allegations as if fully set forth herein, except for allegations related to fraud.

206.    Plaintiffs and the members of the Class bring this claim against all of the Defendants.

207.    Plaintiffs and the members of the Class entered into fiduciary, legal and/or other business or other relationships with the Defendants as alleged above.

208.    Plaintiffs and the members of the Class and the respective Consultant Subclasses conferred compensation and other financial benefits upon Defendants in various forms of direct and indirect fees, compensation and other charges for services that were to be rendered in connection with the management and trading of investments in the Bayou Hedge Funds. In particular, the Bayou Defendants and defendant Marquez received fees, commissions, salaries

91

and bonuses in connection with the management and operations of the Bayou Hedge Funds;

defendant Citibank received fees and other benefits in connection with its banking services to

the Bayou Hedge Funds and defendant Israel; defendants Eqyty Research and Fotta received

fees in connection with assisting in operating Bayou and purported stock research; and the

Consultant Defendants received fees and commissions in connection with recommending the

Bayou Hedge Funds as investments for Plaintiffs and the respective members of the Consultant

Subclasses. All of the foregoing benefits were requested, voluntarily accepted, and retained

by Defendants with knowledge of the material facts.

209.    Defendants derived benefits from their relationships with Plaintiffs and the

members of the Class. Through their inequitable conduct, Defendants obtained fees,

compensation and other emoluments and benefits which they did not properly earn or were

rightfully entitled to, and Defendants have thus been unjustly enriched. It would be

inequitable for the Defendants to retain such fees, compensation and other benefits they

derived from Plaintiffs and the members of the Class and Consultant Subclasses in connection

the Bayou Hedge Funds without repaying to members of the Class and the respective

Consultant Subclasses the value thereof.

210.    By reason of the foregoing, Defendants have been unjustly enriched in an

amount to be proven at trial which, in justice and fairness and in the alternative to the extent

not duplicative of any of the other claims for relief requested herein, and/or to the extent

Plaintiffs and the members of the Class and Consultant Subclasses are for any reason denied

relief on account of the other claims set forth herein, should be paid over to the Plaintiffs and

the other members of the Class and respective Consultant Subclasses.

## BASIS OF ALLEGATIONS

Plaintiffs have made the foregoing allegations, other than those concerning themselves, based upon the investigation of Plaintiffs' counsel which, among other things, included a review of various media reports and press releases concerning the Defendants and other persons and entities; public and other documents concerning the financial and business operations, condition and results of Defendants and other persons and entities; state and other regulatory filings regarding Defendants and other persons and entities; on-line databases and other computer research; court filings and proceedings in other litigations, including but not limited to the criminal charges against, and guilty pleas entered by, defendants Israel and Marino; and a review of other documents and information. Plaintiffs believe that additional evidentiary support will exist for their allegations after they are afforded a reasonable opportunity for discovery.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the proposed Class and respective Consultant Subclasses, pray for the following relief:

1.    declaring this action to be a class action properly maintained on behalf of the Class under Rules 23(a), (b)(1)(B) and (b)(3) of the Federal Rules of Civil Procedure and certifying plaintiff Broad-Bussel Family and the Michelsohn Plaintiffs as the Class representatives thereof;

2.    declaring that the Consultant Subclasses are properly certified as subclasses under Federal Rules 23(a) and 23(b)(3), and that plaintiff Broad-Bussel Family is certified as the representative of the Hennessee Subclass and the Michelsohn Plaintiffs are certified as the representatives of the Sterling Stamos Subclass;

3.   finding that Defendants committed the misconduct and violations alleged;

4.   awarding Plaintiffs and the members of the Class and the respective Consultant Subclasses damages, including but not limited to compensatory, treble and punitive damages, together with interest thereon, to the maximum extent permitted by law;

5.   awarding Plaintiffs and the members of the Class and the Consultant Subclasses their costs and expenses of this litigation, including but not limited to reasonable attorneys' fees, experts' fees and other costs and disbursements;

6.   directing that all funds traceable to the Bayou Hedge Funds be placed in a constructive trust and distributed ratably to Plaintiffs and the members of the Class and the respective Consultant Subclasses consistent with such investors' damages; and

7.   awarding Plaintiffs and the members of the Class and the Consultant Subclasses such other and further relief as may be just and proper in the circumstances.

94

## JURY DEMAND

Plaintiffs, individually and on behalf of the Class and respective Consultant Subclasses, demand a trial by jury of all claims and issues so triable..

THE PLAINTIFFS

By _____

William M. Bloss
Federal Bar No. ct01008
Koskoff Koskoff & Bieder, P.C.
350 Fairfield Avenue
Bridgeport, CT 06604
Tel:   203-336-4421
FAX: 203-368-3244
Email:  bbloss@koskoff.com

Attorneys for Plaintiffs Marie-Louise
Michelsohn, Michelle Michelsohn and
Herbert Blaine Lawson, Jr.

And

Merrill G. Davidoff
Todd S. Collins
Lawrence J. Lederer
Lane L. Vines
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19102
Tel:   215-875-3000
FAX: 215-875-4604

Attorneys for Plaintiff Broad-Bussel
Family Limited Partnership