UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE BAYOU HEDGE FUND INVESTMENT LITIGATION | 06 MD 1755 (CM) |

THIS DOCUMENT RELATES TO:

-------------------------------------------------------- X

|  |  |
|---|---|
| BROAD-BUSSEL FAMILY LIMITED PARTNERSHIP, MARIA LOUISE MICHELSOHN, MICHELLE MICHELSOHN, and HERBERT BLAINE LAWSON, JR., Individually And on Behalf of All Other Persons and Entities Similarly Situated, | No. 06 Civ. 3026 (CM) |
|  | ORAL ARGUMENT REQUESTED |
| Plaintiffs, |  |
| vs. |  |
| BAYOU GROUP LLC, et al., | **Electronically Filed** |
| Defendants. |  |

MEMORANDUM IN SUPPORT OF DEFENDANTS HENNESSEE GROUP LLC,
ELIZABETH LEE HENNESSEE AND CHARLES J. GRADANTE'S MOTION TO DISMISS
THE AMENDED CLASS ACTION COMPLAINT

BRESSLER, AMERY & ROSS
17 State Street, 34th Floor
New York, New York  10004
(212) 425-9300
Attorneys for Defendants
Hennessee Group, LLC,
Elizabeth Lee Hennessee and
Charles J. Gradante

On the Brief:  Lawrence E. Fenster (LF 9378)
               Matthew C. Plant (MP 0328)

TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ........................................................................................................... 1

SUMMARY OF ARGUMENT ........................................................................................ 1

APPLICABLE LAW ....................................................................................................... 6

ARGUMENT ................................................................................................................... 8

I.   PLAINTIFF, A NON-RESIDENT ENTITY, CANNOT RELY ON
     CONNECTICUT'S LONG-ARM STATUTE TO SUE HENNESSEE
     GROUP, A NON-RESIDENT COMPANY, IN CONNECTICUT ................................. 8

II.  PLAINTIFF'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS
     SHOULD   BE   DISMISSED   BECAUSE   THE   INDIVIDUAL
     DEFENDANTS' ALLEGED CONDUCT IS WHOLLY WITHIN THE
     SCOPE OF THEIR EMPLOYMENT ......................................................................... 9

III. PLAINTIFF'S CONNECTICUT UNFAIR TRADE PRACTICES ACT
     CLAIM AGAINST THE HENNESSEE DEFENDANTS SHOULD BE
     DISMISSED   BECAUSE   THE   ACT   DOES   NOT   APPLY   TO
     SECURITIES TRANSACTIONS ............................................................................. 13

IV.  PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM AGAINST
     THE HENNESSEE DEFENDANTS FAILS AS A MATTER OF LAW ........................ 14

V.   PLAINTIFF'S NEGLIGENCE CLAIM AGAINST THE HENNESSEE
     DEFENDANTS FAILS AS A MATTER OF LAW ..................................................... 15

     A.   The Exculpatory Clause Contained in the
          Investment Advisory Agreement Warrants Dismissal .......................... 15

     B.   The Hennessee Defendants' Alleged Negligence
          was not the Proximate Cause of Plaintiff's Damages ......................... 18

VI.  PLAINTIFF DOES NOT PROPERLY PLEAD ITS BREACH OF
     IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
     CLAIM AGAINST THE HENNESSEE GROUP ...................................................... 21

VII. CERTAIN OF PLAINTIFF'S CLAIMS ARE BARRED BY THE
     APPLICABLE STATUTES OF LIMITATION ......................................................... 22

## TABLE OF AUTHORITIES

### **Federal Cases**

Alter v. Bogoricin,
    No. 97 Civ. 0662, 1997 WL 691332 (S.D.N.Y. 1997) ..................................................... 12

AT & T Co. v. City of New York,
    83 F.3d 549 (2d Cir. 1996)..................................................................................... 17

Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.,
    No. 03 Civ. 1537, 2003 WL 23018888 (S.D.N.Y. 2003)
    aff'd 110 Fed.Appx. 191 (2nd Cir. 2004) ........................................................ 14

Beck v. Consolidated Rail Corp.,
    394 F. Supp. 2d 632 (S.D.N.Y. 2005).............................................................. 12

Bisseli Jr. v. Merrill Lynch & Co., Inc. and
Merrill Lynch Pierce, Fenner & Smith Incorporated,
    937 F. Supp. 237 (S.D.N.Y. 1996) aff'd, 157 F.3d 138 (2nd Cir. 1998) ......................... 21

Cap Gemini Ernst & Young v. Nackel,
    346 F. 3d 360 (2d Cir. 2003).................................................................................... 6

Caraballo v. U.S.,
    830 F.2d 19 (2d Cir. 1987)................................................................................ 18, 19, 20

Chateau Hip, Inc. v. Gilhuly, et. al.,
    No. 95 Civ. 10320, 1996 WL 437929 (S.D.N.Y.  1996) .................................................. 14

Craig Test Boring Co. v. Saudi Arabian Airlines Corp.,
    138 F. Supp. 2d 553 (S.D.N.Y. 2001).............................................................. 18

Craig v. First Web Bill,
    No. Civ.A.04-CV-1012, 2004 WL 2700128 (E.D.N.Y. 2004)............................................ 9

Cromer Finance Ltd. v. Berger,
    137 F. Supp. 2d 452 (S.D.N.Y. 2001)................................................................. 7

Fezzani v. Bear, Stearns & Company,
    384 F. Supp. 2d 618 (S.D.N.Y. 2004)................................................................ 23

Finance One Public Company Limited v. Lehman Brothers Special Financing, Inc.,
    414 F.3d 325 (2d. Cir. 2005) aff'd 414 F.3d 325 (2nd Cir. 2005) ...................................... 7

First Nationwide Bank v. Gelt Funding Corp.,
    27 F.3d 763 (2d Cir. 1994)............................................................................ 18

Flickinger v. Harold C. Brown & Co.,
    947 F. 2d 595 (2d Cir. 1991)......................................................................... 14

Freeman v. Complex Computing Co., Inc.,
    119 F. 3d 1044 (2d Cir. 1997)....................................................................... 12

Fuente v. DCI Telecommunications, Inc.,
    206 F.R.D. 369 (S.D.N.Y. 2002) ................................................................... 3

Gianetti v. Greater Bridgeport Individual Practice Assoc.,
    No. X02CV024001685, 2005 WL 2078546, 39 Conn. L. Rptr. 745 (Conn.Super. 2005) 23

GlobalNet Financial Con., Inc. v. Crystal,
    No. 03 Civ.0733, 2004 WL 1632594 (S.D.N.Y. 2004)
    aff'd No. 04-6679-CV, 2006 WL 1195923 (2nd Cir. 2006) ............................... 7

Hudson Highlands Veterinary Med. Group, P.C. v. Wachovia,
    390 F. Supp. 2d 393 (S.D.N. Y. 2005)............................................................ 2

In re Integrated Resources, Inc.,
    851 F. Supp. 556 (S.D.N.Y. 1994) ................................................................ 23

In re Vebeliunas,
    332 F. 3d 85 (2d Cir. 2003)........................................................................... 12

Investimento, S.A. v. Citibank, N.A.,
    No. 03 Civ 1537, 2003 WL 23018888 (S.D.N.Y. 2003)
    aff'd 110 Fed.Appx. 191 (2nd Cir. 2004)....................................................... 14

Jaret Ltd., v. U.S.,
    No. 91 Civ. 0181, 1991 WL 156372 (S.D.N.Y. 1991) .............................. 18, 19

Kahn v. Kohlberg,
    970 F. 2d 1030 (2d. Cir. 1992)..................................................................... 23

Kinsey v. Cendant Corporation,
    No. 04 Civ.0582, 2005 WL 1907678, Fed. Sec. L. Rep. P 93,328 (S.D.N.Y. 2005) ....... 17

Lazard Freres & Co. v. Protective Life Insurance Company,
108 F. 3d 1531 (2d Cir. 1997)............................................................................ 7

Lewis v. Rosenfeld,
No. 00 Civ. 5368, 2002 WL 441185 (S.D.N.Y. 2002) ................................................ 14

Mady v. Oxford Health Plans, Inc.,
    328 F. Supp. 2d 469 (S.D.N.Y. 2004) aff'd 421 F.3d 96 (2nd Cir. 2005) .......................... 3

MDC Corporation, Inc., v. John H. Harland Company,
    228 F. Supp. 2d 387 (S.D.N.Y. 2002)............................................................................. 10

Merine on Behalf of Prudential-Bache Utility Fund, Inc. v. Prudential-Bache Utility Fund, Inc.,
    859 F. Supp. 715 (S.D.N.Y. 1994) .................................................................................. 22

Mills v. Polar Molecular Corp.,
    12 F. 3d 1170 (2nd Cir. 1993)........................................................................................... 9

Mobile Data Shred v. United Bank of Switzerland,
    No. 99 Civ. 10315, 2000 WL 351516 (S.D.N.Y. 2000) .................................................. 10

Official Committee of Unsecured Creditors v.
Donaldson, Lufkin & Jenrette Securities Corporation,
    No. 00 Civ. 8688, 2002 WL 362794 (S.D.N.Y. 2002) ..................................................... 15

Scharff v. Claridge Gardens,
    No. 88 Civ. 2047, 1993 WL 287734 (S.D.N.Y. 1993) ..................................................... 23

Sira v. Morton,
    380 F.3d 57 (2d Cir. 2004)................................................................................................. 2

Smith Barney v. Lichtensteinische Landesbank,
    No. 92 Civ. 2528, 1993 WL 97286 (S.D.N.Y. 1993) ...................................................... 21

Sobek v. Quattrochi et al.,
    No. 03 Civ.10219, 2004 WL 2809989 (S.D.N.Y. 2004) .................................................. 14

Tevdorachvili v. The Chase Manhattan Bank,
    103 F. Supp. 2d 632 (E.D.N.Y. 2000) ............................................................................. 17

Triemer v. Bobsan Corp.,
    70 F. Supp. 2d 375 (S.D.N.Y. 1999)................................................................................ 12

West Haven v. Commercial Union Ins. Co.,
    894 F.2d 540 (2d Cir. 1990)............................................................................................. 22

**State Cases**

New York

Akins v. Glens Falls City Sch. Dist.,
   53 N.Y. 2d 325, 424 N.E. 2d 531, 441 N.Y.S. 2d 644 (1981)..........................................18

Colnaghi, U.S.A., Ltd. v. Jewelers Protection Servs. Ltd.,
   81 N.Y. 2d 821, 595 N.Y.S.2d 381(1993)..........................................................15

George T. Piercy, v. Citibank N. A., Formerly First National City Bank,
   101 Misc. 2d 302, 424 N.Y.S.2d 76 (NY Sup. 1978)
   aff'd, 48 N.Y.2d 900, 424 N.Y.S.2d 897 (1979)..............................................16

Gross v. Sweet,
   49 N.Y.2d 102, 424 N.Y.S.2d 365 (1979)........................................................16

Independence Leasing Corp. v. Aquino,
   445 N.Y.S.2d 893 (City Ct. 1981)..................................................................22

Kalisch-Jarcho, Inc. v. City of New York,
   58 N.Y. 2d 377, 461 N.Y.S.2d 746, 448 N.E.2d 413 (1983).............................16

Matter of Karp v. Hults,
   12 A.D.2d 718 (1960), aff'd 9 N.Y.2d 85 .........................................................16

Silvester v. Time Warner, Inc.,
   1 Misc. 3d 250, 763 N.Y.S.2d 912 (N.Y.Sup. 2003)........................................22

Stuart v. Grattan,
   217 A.D. 336, 216 N.Y.S. 727 (3rd Dept. 1926)..............................................23

Roman v. City of Bristol,
   No. CV040525667S, 2005 WL 2429927, 39 Conn. L. Rptr. 897 (Conn.Super. 2005)....18

Connecticut

B&D Associates, Inc. v. Russell,
   73 Conn. App. 66, (Conn. App. 2002)............................................................18

Champaigne v. Scarso,
   No. CV 970348470, 1999 WL 732516, 25 Conn. L. Rptr. 368 (Conn.Super. 1999).......14

Fox Steel Co. v. Rohlf's Stained & Leaded Glass,
   No. CV044000971S, 2005 WL 1433184, 39 Conn. L. Rptr. 353 (Conn.Super. 2005)......9

Gusick v. Soundview Capital Management Corp.,
      No. CV90 0112490 S, 1991 WL 162155,  4 Conn. L. Rptr. 771 (Conn.Super. 1991)..... 13

Harman v. Bench Securities Corp.,
      No. CV 950534266S, 1998 WL 46691 (Conn.Super. 1998)........................................... 13

Hyson, v. White Water Mountain Resort,
      265 Conn. 636, 829 A. 2d 827 (2003) .............................................................................. 17

Medcalf v. Washington Heights Condominium Association, Inc.,
      57 Conn. App. 12, 747 A.2d 532 (Conn. App. 2000)....................................................... 19

New Milford Savings Bank v. Lois Zandy et al.,
      No. CV990078766S, 2001 WL 79830 (Conn.Super. 2001)............................................ 21

O'Connor v. O'Connor,
      201 Conn. 632, 519 A.2d 13 (1986) ................................................................................. 8

RK Constructors, Inc. v. Fusco Corporation,
      231 Conn. 381, 384 650 A.2d 153 (1994) ........................................................................ 18

Rosina v. Bilides Building & Excavating, LLC,
      No. CV020462976S, 2002 WL 3189806 (Conn. Super. 2002)........................................ 13

Russell v. Dean Witter Reynolds, Inc.,
      200 Conn. 172, 188 (1986) .............................................................................................. 13

Veals v. Consolidated Edison Company of New York,
      114 Misc. 2d 626, 452 N.Y.S.2d 153 (Civ. Ct. Kings. Co. 1982) ................................... 16

## **State Statutes**

### New York

NY CLPR § 214................................................................................................................ 22

### Connecticut

Conn. Gen. Stat. § 33-929(f)........................................................................................... 8

Conn. Gen. Stat. § 52-57................................................................................................. 22

## INTRODUCTION

On March 6, 2006, Plaintiffs filed the Amended Class Action Complaint (the "Amended Complaint") against, inter alia, Defendants Hennessee Group LLC, (the "Hennessee Group"), Elizabeth Lee Hennessee and Charles J. Gradante (the "Individual Defendants") (Hennessee and the Individual Defendants are hereinafter collectively referred to as the "Hennessee Defendants"). The Hennessee Defendants submit this memorandum in support of their motion, pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiffs' Amended Complaint.

## SUMMARY OF ARGUMENT

Plaintiff Broad-Bussel Family Limited Partnership ("Plaintiff") purports to assert claims on its own behalf and on the behalf of "all members of the Class who, during the Class Period December 31, 1996 through August 25, 2005, were advised to invest in the Bayou Hedge Funds pursuant [to] an investment advisory relationship with the Hennessee Group, and suffered damages thereby (the 'Hennessee Subclass')." See ¶49 of the Amended Complaint (hereinafter cited to as the "Am. Compl."). As against the Hennessee Defendants, Plaintiff alleges claims for violation of Connecticut's Unfair Trade Practices Act ("CUTPA"), breach of fiduciary duty, negligence and unjust enrichment. As against the Hennessee Group, Plaintiff alleges claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of Sections 206 and 215 of the Investment Adviser Act of 1940.

As demonstrated in Part I, all claims against the Hennessee Group should be dismissed because the Court lacks personal jurisdiction over the Hennessee Group. All claims against the Individual Defendants should be dismissed on the grounds that Plaintiff has failed to allege facts

showing anything more than that the individual Defendants acted within the scope of their employment. See Part II.

Plaintiff's claims are also deficient on several other grounds -- first, the Court should dismiss the CUTPA claim because CUTPA has uniformly been held not to apply to securities transactions. See Part III. Second, Plaintiff's breach of fiduciary duty claim should be dismissed on the grounds that Plaintiff has failed to plead the element of "deceitful intent" required to assert such a claim. See Part IV. Third, as shown in Part V, Plaintiff's negligence claim should be dismissed because: a) the Investment Advisory Agreement signed by Plaintiff contains an exculpatory clause precluding such a claim; b) Plaintiff has not pleaded facts showing proximate cause; and c) Plaintiff's allegations that its losses were caused by the intervening criminal acts of Samuel Israel, Daniel Marino and the Bayou Defendants preclude any finding of proximate cause as against the Hennessee Defendants. Fourth, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing fails because, as with its breach of fiduciary duty claim, Plaintiff has failed to plead the necessary intent element for such a claim. See Part VI. Certain claims described in Part VII, should be dismissed on the grounds that they are barred by the applicable statutes of limitation.

Finally, although a court ruling on a motion to dismiss generally may not consider matters extraneous to the complaint, it may consider any written instrument attached to it as an exhibit, material incorporated in it by reference, and documents that, although not integrated by reference, are "integral" to the complaint. Sira v. Morton, 380 F.3d 57, 66 - 67 (2d Cir. 2004); Hudson Highlands Veterinary Med. Group, P.C. v. Wachovia, 390 F. Supp. 2d 393, 395 (S.D.N. Y. 2005); Mady v. Oxford Health Plans, Inc., 328 F. Supp. 2d 469, 475 (S.D.N.Y. 2004) aff'd

421 F.3d 96 (2nd Cir. 2005); <u>Fuente v. DCI Telecommunications, Inc.</u>, 206 F.R.D. 369, 375 (S.D.N.Y. 2002).

The Hennessee Defendants submit herewith three documents in support of the instant motion: 1) a true and correct copy of an excerpt from the Hennessee Group's website; 2) "Comments of Hennessee Group LLC for the U.S. Securities Exchange Commission, Roundtable on Hedge Funds, May 13 – 14, 2003"; and 3)the Investment Advisory Agreement entered into between Plaintiff and the Hennessee Group ("Advisory Agreement"). <u>See</u> Exhibit A, B and C, respectively, to the Declaration of Charles Gradante (hereinafter referred to as the "Gradante Dec.").

The statements and terms contained in each of these documents are alleged to have been the basis for duties owed by the Hennessee Defendants to Plaintiff and each of the three submitted documents is quoted in the Amended Complaint, incorporated by reference therein, and is integral to Plaintiff's pleading. <u>See</u> Am. Compl. ¶¶ 90 – 93 and 95.

STATEMENT OF FACTS

The Hennessee Group, a hedge fund advisory firm, is a Registered Investment Advisor with the Securities and Exchange Commission. <u>See</u> ¶ 3 of the Declaration of Charles Gradante (the "Gradante Dec.")  The Hennessee Group conducts due diligence and monitoring of hedge funds and pursuant to Investment Advisory Agreements, provides clients with recommendations concerning hedge fund investments for a fee. <u>See</u> ¶ 3 of the Gradante Dec.  The Hennessee Group also provides its clients with various research tools including performance analytics, comparative analyses, manager interviews, risk assessments and monthly client statement "monitors". <u>See</u> ¶ 3 of the Gradante Dec.  The Hennessee Group also prepares and provides clients with a Monthly Hennessee Hedge Fund Review, ongoing Manager Performance Monitor

reports, Annual Hennessee Hedge Fund Manager Survey and Annual Hennessee Hedge Fund Investor Survey.  See ¶ 3 of the Gradante Dec.

The Individual Defendants are Managing Principals of the Hennessee Group and are domiciled in New York.  See ¶ 4 of the Gradante Dec.  The Hennessee Group is organized under the laws of New York and has its principal place of business in New York.  See ¶ 5 of the Gradante Dec.  Due diligence and monitoring of hedge funds, including that performed with respect to the Bayou Hedge Funds, was performed by the Hennessee Group almost exclusively in New York.  See ¶ 6 of the Gradante Dec.  Moreover, the client statements, reports, reviews and other publications prepared by the Hennessee Group were also prepared in New York.  See ¶ 6 of the Gradante Dec.

The Hennessee Group maintains a website located at www.hennesseegroup.com (see ¶ 7 of the Gradante Dec.), which includes a Company Profile section that states, in pertinent part:

> At the Hennessee Group, pioneers in hedge fund consulting, we are committed to a singular mission: achieving the investment goals of our clients by applying the expertise, creativity and commitment of our people. Our business philosophy differentiates us from most of our competitors. We emphasize investment advice through "hands on" experience, direct client access to our managing principals and a conservative but creative corporate culture. **We do not market money managers. The investor is our client.** Our clients trust us to establish realistic investment objectives and develop diversified hedge fund portfolios. To achieve these goals, we apply our time tested advisory process and proprietary research tools.
>
> We take great pride in our growth and success on behalf of our clients. In 1997, following eleven years as a business division of several major financial institutions, we formed an independent entity, Hennessee Group LLC. We are "your strategic partner" in hedge fund investing.
>
> Sincerely,
>
> E. Lee Hennessee and Charles J. Gradante
> (emphasis original)

See ¶ 8 of the Gradante Dec. and Exhibit A thereto.

The Hennessee Group's website also contains "Comments of Hennessee Group LLC for the U.S. Securities Exchange Commission, Roundtable on Hedge Funds, May 14 – 15, 2003", which appears in the "SEC Hedge Fund Roundtable – May 2003" subsection of the "Featured Articles" section of the website. See ¶ 9 of the Gradante Dec. The publication provides, in a section entitled "What Types of Services Do Consultants Provide", that:

> Consultants are value added and can provide a useful service to investors. We haven't surveyed the consulting industry, so Hennessee Group can only speak from its own vantage point.

See ¶ 10 of the Gradante Dec. and Exhibit B, p. 18 thereto.

On or about April 2, 2001, Plaintiff and the Hennessee Group entered into a non-discretionary Investment Advisory Agreement ("Advisory Agreement"), executed by both parties for the provision of consulting services by the Hennessee Group. See ¶ 11 of the Gradante Dec. Section XIII of the Advisory Agreement contains a governing law clause which provides:

> This Agreement will be governed by and construed in accordance with the laws of the State of New York without giving effect to any conflict or choice of law provisions of that State, provided that nothing in this Agreement will be construed inconsistent with the Investment Advisers Act, or any rule or order of the Securities and Exchange Commission under the Investment Advisers Act.

See ¶ 12 of the Gradante Dec. and Exhibit C, p. 7 thereto

The Advisory Agreement also contains a broadly worded exculpatory clause that provides:

> Client agrees to indemnify and hold Hennessee harmless from: (a) any liability, expense, judgment, amount paid in settlement or loss incurred as a result of Client's investment in a Hedge Fund for which Hennessee provided services as set forth in Section II [Hedge Fund Advisory Services] hereof; or (b) any loss arising from Hennessee's adherence to a Client's written or oral

> instructions; or (c) any act or failure to act, whether fraudulent or otherwise, by a Hedge Fund or its manager(s): affiliates; assigns; agents; employees or counterparties associated in any way with the Hedge Fund; or (d) any errors or omissions committed by Hennessee, its employees or agents in the discharge of its duties hereunder, unless such errors or omissions constitute gross neglect or willful misfeasance; provided, however, that this clause shall not relieve Hennessee from any liability imposed by federal or state securities laws or other applicable laws which cannot be waived. (emphasis added)

See ¶ 13 of the Gradante Dec. and Exhibit C, Section VIII, p. 5 thereto.

Based upon the foregoing facts and the analysis of the applicable law contained herein, all claims against the Hennessee Group and the Individual Defendants, as well as Plaintiff's Connecticut Unfair Trade Practices claim, breach of fiduciary duty claim and negligence claim against the Hennessee Defendants and its breach of the implied covenant of good faith and fair dealing claim against the Hennessee Group and all claims barred by the applicable statutes of limitation should be dismissed.

## APPLICABLE LAW

Section XIII of the Investment Advisory Agreement (the "Advisory Agreement") provides, under the heading "Governing Law", that:

> This Agreement will be governed by and construed in accordance with the laws of the State of New York without giving effect to any conflict or choice of law provisions of that State, provided that nothing in this Agreement will be construed inconsistent with the Investment Advisers Act, or any rule or order of the Securities and Exchange Commission under the Investment Advisers Act.

See Exhibit C of the Gradante Dec., p. 7.

Where a choice of law provision is expressly set forth in an agreement, it is presumed to be the parties' intent, and federal courts in New York will enforce it, absent fraud or violation of public policy. See e.g., Cap Gemini Ernst & Young v. Nackel, 346 F. 3d 360, 366 (2d Cir. 2003).

6

On its face, the Advisory Agreement expresses the parties intent that New York law govern the Advisory Agreement and its construction, including, inter alia, those provisions relating to the Hennessee Group's performance of due diligence and monitoring.

The parties' choice-of-law provision contained in the Advisory Agreement should also govern Plaintiff's tort claims. Under the New York conflicts of law doctrine, to determine the applicable law in tort cases, courts apply the interest analysis test, focusing on the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation. See Finance One Public Company Limited v. Lehman Brothers Special Financing, Inc., 414 F.3d 325, 337 (2d. Cir. 2005) aff'd 414 F.3d 325 (2nd Cir. 2005) and Lazard Freres & Co. v. Protective Life Insurance Company, 108 F. 3d 1531, 1539 (2d Cir. 1997). Cromer Finance Ltd. v. Berger, 137 F. Supp. 2d 452, 492 (S.D.N.Y. 2001).

In the instant case, New York is the jurisdiction having the most significant relationship to the occurrences at issue between Plaintiff and the Hennessee Defendants as well as the most contacts with the parties. First, the Hennessee Defendants -- the Hennessee Group and the Individual Defendants -- are domiciled in New York. Second, New York plainly has a stronger interest in the potential liability of a corporation having its principal place of business in New York, conducting business in New York and organized under New York law. See GlobalNet Financial Con., Inc. v. Crystal, No. 03 Civ.0733, 2004 WL 1632594 *5 (S.D.N.Y. 2004) aff'd No. 04-6679-CV, 2006 WL 1195923 (2nd Cir. 2006). Third, Plaintiff's claims relate almost exclusively to the Hennessee Group's due diligence and monitoring activities which are conducted primarily in New York. Thus, the location of the alleged wrongful conduct in this case is New York. By contrast, the Amended Complaint is devoid of allegations that any

wrongful conduct on the part of the Hennessee Defendants took place in Connecticut. Furthermore, the Advisory Agreement expressly provides for the application of New York law in interpreting its provisions, including the provisions that concern the Hennessee Group's obligations to perform due diligence and monitoring of hedge funds..

Even if Connecticut's "most significant relationship analysis" conflict of law analysis is applied, the conclusion would be the same. See O'Connor v. O'Connor, 201 Conn. 632, 649-652, 519 A.2d 13 (1986). Under either the "interest analysis" test of the "most significant relationship" test, New York plainly has the strongest relationship with the occurrences at issue and has the most significant contact with the parties. Accordingly, the Court should apply New York law in deciding the Hennessee Defendants' Motion to Dismiss.

ARGUMENT

## I.    PLAINTIFF, A NON-RESIDENT ENTITY, CANNOT RELY ON CONNECTICUT'S LONG-ARM STATUTE TO SUE HENNESSEE GROUP, A NON-RESIDENT COMPANY, IN CONNECTICUT

Plaintiff instituted this action against the Hennessee Group, a foreign corporation, in Connecticut. The relevant statutory provision governing personal jurisdiction over a foreign corporation is Conn. Gen. Stat. § 33-929(f), which provides in relevant part, that:

> Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state . . .

Plaintiff alleges that it is a limited partnership organized under the laws of North Carolina with registered offices located in Chapel Hill, North Carolina. See Am. Compl. ¶ 15. Plaintiff is neither a resident of Connecticut nor has a usual place of business in that state. Thus, it cannot invoke Connecticut's long-arm statute to sue the Hennessee Group before a court in Connecticut. Simply put, "Connecticut's long-arm statutes do not confer jurisdiction over actions committed

8

by a nonresident party against another nonresident." <u>Fox Steel Co. v. Rohlf's Stained & Leaded Glass</u>, No. CV044000971S, 2005 WL 1433184 *2, 39 Conn. L. Rptr. 353 (Conn.Super. 2005). Plaintiff's inability to use Connecticut's long-arm statute and the resulting lack of personal jurisdiction over the Hennessee Group requires that all claims against the Hennessee Group be dismissed.

II.    PLAINTIFF'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED BECAUSE THE INDIVIDUAL DEFENDANTS' ALLEGED CONDUCT IS WHOLLY WITHIN THE SCOPE OF THEIR EMPLOYMENT

Plaintiff's allegations that the Individual Defendants violated CUTPA, breached a fiduciary duty owed to Plaintiff, were negligent and were unjustly enriched, cannot be sustained because Plaintiff fails: a) to allege any conduct on the part of the Individual Defendants that is outside the scope of their employment; b) to allege a single fact indicating that the Individual Defendants misused the Hennessee Group for their personal benefit; and c) to show any relationship between the alleged wrong and the alleged abuse of the Hennessee Group by the Individual Defendants. [1]

Federal courts in this Circuit acknowledge that "[o]fficers, directors or employees of a corporation are not personally liable...if they act on behalf of the corporation and within the scope of their duties." <u>Craig v. First Web Bill</u>, No. Civ.A.04-CV-1012, 2004 WL 2700128 *9 (E.D.N.Y. 2004) (internal citation omitted). <u>See</u> <u>Mills v. Polar Molecular Corp.</u>, 12 F. 3d 1170 (2nd Cir. 1993). Personal liability can be imposed only when it is shown that the defendant acted outside the scope of his employment, by committing an independent tort, or by pursuing personal, and not corporate, interests. <u>See</u> <u>Mobile Data Shred v. United Bank of Switzerland</u>,

---

[1]    Plaintiff's CUTPA, breach of fiduciary duty and negligence claims should be dismissed against the Individual Defendants on other grounds as well. <u>See</u> Parts III, IV and V, infra.

No. 99 Civ. 10315, 2000 WL 351516 (S.D.N.Y. 2000). A corporate officer can be held personally liable for his conduct only if he acts outside the scope of employment by committing an "independent tort or predatory acts directed to another." MDC Corporation, Inc., v. John H. Harland Company, 228 F. Supp. 2d 387, 398 (S.D.N.Y. 2002) (citation omitted). In short, a plaintiff alleging that the defendant acted outside the scope of employment must plead, in nonconclusory language, facts demonstrating such conduct.

In the Amended Complaint, Plaintiff fails to allege any facts indicating that either of the Individual Defendants acted outside the scope of their employment. Indeed, the wrongful conduct the Individual Defendants are alleged to have engaged in is identical to that in which their employer, the Hennessee Group, is alleged to have engaged. For example, Plaintiff asserts that the Individual Defendants personally marketed themselves as experts, personally solicited Plaintiff to invest and personally purported to investigate the Bayou Hedge Funds. See Am. Compl. at ¶¶ 94 and 161. However, Plaintiff alleges that the Hennessee Group did the very same things, see Am. Compl. at ¶¶ 51(b), 89, 93, 96, 97, 150 and 195, which of necessity were done through the Individual Defendants, or by employees who are under the direct supervision of one or both of the Individual Defendants. See ¶ 14 of the Gradante Dec. Plaintiff's allegations fail to show that the Individual Defendants either committed an independent tort, or otherwise pursued personal, rather than corporate, interests. Indeed, nothing in the Amended Complaint indicates that the Individual Defendants did anything other than act in good faith as principals of the Hennessee Group.

Plaintiff attempts to support its allegation that the Individual Defendants were the "alter ego" of the Hennessee Group by referring to an "open letter to investors, signed by defendants Lee Hennessee and Gradante." See Am. Compl. at ¶ 90. A review of the entire "open letter,"

however, makes clear that the statements are expressly made on behalf of the <u>Hennessee Group</u>, not the Individual Defendants. In its complete form, the "open letter," which appears on the Company Profile section of the Hennessee Group's website (emphasis added to the portions omitted by Plaintiff) states that:

> **At the Hennessee Group, pioneers in hedge fund consulting,** we are committed to a singular mission: achieving the investment goals of our clients by applying the expertise, creativity and commitment of our people. **Our business philosophy differentiates us from most of our competitors. We emphasize investment advice through "hands on" experience, direct client access to our managing principals and a conservative but creative corporate culture.** *We do not market money managers. The investor is our client.* Our clients trust us to establish realistic investment objectives and develop diversified hedge fund portfolios. To achieve these goals, we apply our time tested advisory process and proprietary research tools.
>
> **We take great pride in our growth and success on behalf of our clients. In 1997, following eleven years as a business division of several major financial institutions, we formed an independent entity, Hennessee Group LLC.** We are "your strategic partner" in hedge fund investing.
>
> Sincerely,
>
> E. Lee Hennessee and Charles J. Gradante

<u>See</u> Exhibit A to the Gradante Dec.

Plaintiff also alleges that "Gradante provided a written submission to the SEC" and that "Gradante claimed that hedge funds [sic] consultants, like the Hennessee Defendants, are 'value added' in providing investor with guidance and advice". <u>See</u> Am. Compl. at ¶ 93. The "written submission" is a document entitled "Comments of Hennessee Group LLC for the U.S. Securities Exchange Commission, Roundtable on Hedge Funds, May 14 – 15, 2003", which appears on the Hennessee Group's website. On its face, the Comments are attributed to the <u>Hennessee Group</u>, not Charles Gradante in his individual capacity. In fact, the section quoted by Plaintiff leads off

with the following sentences, omitted by Plaintiff, which make clear that the statement is from the Hennessee Group:

> Consultants are value added and can provide a useful service to investors. We haven't surveyed the consulting industry, so **Hennessee Group** can only speak from its own vantage point. (emphasis added)

See Exhibit B, p. 18 to the Gradante Dec.

Plaintiff's selective quotations from the above-referenced documents are flatly misleading. In their complete form, the documents contradict the notion that the Individual Defendants acted outside the scope of their employment.

Further, New York courts are reluctant to disregard the corporate entity to hold corporate officers personally liable. Under New York law, a party seeking to pierce the corporate veil must make a three-part showing: "(1) the owner exercised such control that the corporation has become a mere instrumentality of the owner, who is the real actor; (2) the owner used this control to commit a fraud or 'other wrong'; and (3) the fraud or wrong results in an unjust loss or injury to the plaintiff." In re Vebeliunas, 332 F. 3d 85, 91-92 (2d Cir. 2003) (internal citation omitted); see also Freeman v. Complex Computing Co., Inc., 119 F. 3d 1044, 1052 (2d Cir. 1997); Beck v. Consolidated Rail Corp., 394 F. Supp. 2d 632 (S.D.N.Y. 2005) and Triemer v. Bobsan Corp., 70 F. Supp. 2d 375 (S.D.N.Y. 1999). To avoid dismissal, a party seeking application of the doctrine must "allege facts sufficient to establish that defendants 'misused the corporate form for [their] personal ends so as to commit the wrong against' [the plaintiff]. . . . [P]laintiff must establish a relationship between the alleged wrong against [the plaintiff] and defendants' alleged abuse of the corporation form." Alter v. Bogoricin, No. 97 Civ. 0662, 1997 WL 691332 *5 (S.D.N.Y. 1997) (emphasis added, internal citation omitted).

Here, Plaintiffs assert, in wholly conclusory fashion, that the Individual Defendants "controlled the acts" of the Hennessee Group, failed to "uncover" fraud by Bayou and "received direct or indirect compensation." See Am. Compl. at ¶¶ 5, 42 and 113. Plaintiff, however, fails to allege facts either as to how the Individual Defendants allegedly misused the corporate form for their personal ends or facts showing the existence of a relationship between the alleged wrong caused by the Individual Defendants and the Individual Defendants' alleged abuse of the Hennessee Group, as required under New York law.

Under Connecticut law, Plaintiff's claims would likewise be dismissed. e.g. Rosina v. Bilides Building & Excavating, LLC, No. CV020462976S, 2002 WL 31898066 *3 (Conn.Super. 2002) (where the court found that the plaintiff pleaded legal conclusion rather than sufficient fact to support piercing the corporate veil.)

Having failed to sufficiently plead facts showing that the Individual Defendants acted outside the scope of their employment or any basis upon which the Court should pierce the corporate veil and hold the Individual Defendants personally liable for the alleged acts of the Hennessee Group, the Court should dismiss all claims against the Individual Defendants.

III.    PLAINTIFF'S CONNECTICUT UNFAIR TRADE PRACTICES ACT CLAIM AGAINST THE HENNESSEE DEFENDANTS SHOULD BE DISMISSED BECAUSE THE ACT DOES NOT APPLY TO SECURITIES TRANSACTIONS

In Russell v. Dean Witter Reynolds, Inc., 200 Conn. 172, 188 (1986), the Connecticut Supreme Court squarely held that CUTPA "does not apply to deceptive practices in the purchase and sale of securities." See also Gusick v. Soundview Capital Management Corp., No. CV90 0112490 S, 1991 WL 162155 *4, 4 Conn. L. Rptr. 771 (Conn.Super. 1991) (noting that CUTPA does not apply to securities transactions); Harman v. Bench Securities Corp., No. CV 950534266S, 1998 WL 46691 *2 (Conn.Super. 1998) ("CUTPA is not an appropriate cause of

action in a securities matter."); Champaigne v. Scarso, No. CV 970348470, 1999 WL 732516 *1, 25 Conn. L. Rptr. 368 (Conn.Super. 1999) ("CUTPA does not apply to deceptive practices in the purchase and sale of securities." (citation omitted))

CUTPA has uniformly been held by Connecticut courts not to apply to the transactions that are the basis of Plaintiff's allegations against the Hennessee Defendants. Plaintiff's cause of action for alleged violations of CUTPA should therefore be dismissed.

## IV. PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM AGAINST THE HENNESSEE DEFENDANTS FAILS AS A MATTER OF LAW

To state a claim for a breach of fiduciary duty, plaintiff must allege facts that give rise to the nature of the duty and what acts defendant took in violation of that duty. Sobek v. Quattrochi et al., No. 03 Civ.10219, 2004 WL 2809989 *9 (S.D.N.Y. 2004). The Second Circuit has long required, however, that "an action for breach of fiduciary duty. . .requires a showing of "deceitful intent" on the part of the fiduciary." Flickinger v. Harold C. Brown & Co., 947 F. 2d 595, 599 (2d Cir. 1991) (internal citation omitted); Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A., No. 03 Civ. 1537, 2003 WL 23018888 (S.D.N.Y. 2003) aff'd 110 Fed.Appx. 191 (2nd Cir. 2004); Lewis v. Rosenfeld, No. 00 Civ. 5368, 2002 WL 441185 (S.D.N.Y. 2002). See also Chateau Hip, Inc. v. Gilhuly, et. al., No. 95 Civ. 10320, 1996 WL 437929 (S.D.N.Y. 1996).

The Amended Complaint is devoid of any allegation of the Hennessee Defendant's intent -- deceitful or otherwise -- either in connection with its breach of fiduciary duty claim or with respect to any other claim. Rather, Plaintiff merely alleges that the Hennessee Defendants "ignored" or "failed to uncover" alleged "red flags" (see Am. Compl. ¶¶ 5, 43, 107, 111, 153, 160) and failed to "properly investigate" the alleged "red flags". See Am. Compl. ¶¶ 107, 110, 178 and 187. Plaintiff has not, however, alleged a single fact indicating that the Hennessee

Defendants' conduct constitutes anything more than mere negligence, the allegations of which fail for the reasons stated in Part V, infra.

Having failed to allege facts sufficient to show the necessary element of deceitful intent, Plaintiff's cause of action for breach of fiduciary duty should be dismissed.

V.    PLAINTIFF'S NEGLIGENCE CLAIM AGAINST THE HENNESSEE DEFENDANTS FAILS AS A MATTER OF LAW

A.    The Exculpatory Clause Contained in the
Investment Advisory Agreement Warrants Dismissal

Section VIII of The Advisory Agreement, executed by Plaintiff, contains a broadly worded, enforceable exculpatory clause that provides:

> Client agrees to indemnify and hold Hennessee harmless from: . . .
> (d) **any errors or omissions committed by Hennessee, its
> employees or agents in the discharge of its duties hereunder,**
> unless such errors or omissions constitute gross neglect or willful
> misfeasance; provided, however, that this clause shall not relieve
> Hennessee from any liability imposed by federal or state securities
> laws or other applicable laws which cannot be waived. (emphasis
> added)

The plain language of the exculpatory clause relieves the Hennessee Defendants of any errors or omissions committed by the Hennessee Defendants -- including negligence claims -- unless the errors or omissions constitute gross negligence, willful misfeasance or liability under federal or state securities laws. Plaintiff has neither asserted such claims against the Hennessee Defendants nor any factual allegations that could form the basis for such claims.

In New York, unambiguous contractual clauses absolving a party of liability from its own ordinary negligence are enforceable. See The Official Committee of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Securities Corporation, No. 00 Civ. 8688, 2002 WL 362794 (S.D.N.Y. 2002), Colnaghi, U.S.A., Ltd. v. Jewelers Protection Servs. Ltd., 81 N.Y.2d 821, 823, 595 N.Y.S.2d 381, 382 (1993) ("New York law generally enforces contractual provisions

absolving a party from its own negligence"). Exculpatory clauses will only be deemed unenforceable and against public policy if they apply to "willful or grossly negligent acts" or to conduct that "smacks of intentional wrongdoing" or "betokens a reckless indifference to right of others." Kalisch-Jarcho, Inc. v. City of New York, 58 N.Y.2d 377, 385-86, 461 N.Y.S.2d 746, 749-50, 448 N.E.2d 413 (1983). See also Gross v. Sweet, 49 N.Y.2d 102, 106, 424 N.Y.S.2d 365, 367 (1979), Matter of Karp v. Hults, 12 A.D.2d 718 (1960), aff'd, 9 N.Y.2d 857 and George T. Piercy, v. Citibank N. A., Formerly First National City Bank, 101 Misc. 2d 302; 424 N.Y.S.2d 76 (NY Sup. 1978) aff'd, 48 N.Y.2d 900, 424 N.Y.S.2d 897 (1979) (Court held exculpatory clause in investment advisory agreement valid and barred plaintiff's negligence cause of action). Here, the Advisory Agreement's exculpatory clause expressly excludes claims of "gross neglect or willful misfeasance" or liability under federal or state securities laws. Accordingly, the Court should enforce the contractual provision and dismiss Plaintiff's negligence claim.

Further, Plaintiff has failed to properly plead a gross negligence claim. In Paragraph 160 of the Amended Complaint's Seventh Claim for Relief (For Negligence Against All Defendants), Plaintiff asserts, in wholly conclusory language, that the Hennessee Defendants were "grossly negligent" by failing to uncover "red flags," etc., in virtually the same language parroted in other causes of action. Plaintiff, however, fails to allege any factual allegations to support anything beyond the purported negligence claim which is precluded by the exculpatory clause.

Under New York law, "…gross negligence means that the defendant is so extremely careless that it is equivalent to recklessness. Gross negligence involves the thoughtless disregard of consequences without any attempt to avoid them." Veals v. Consolidated Edison Company of New York, 114 Misc. 2d 626, 628, 452 N.Y.S.2d 153, 155 (Civ. Ct. Kings. Co. 1982). The act or omission that gives rise to gross negligence must be of an aggravated character, as distinguished

from a failure to exercise ordinary care. In other words, "gross negligence is conduct that evidences a reckless disregard for the rights of others or smacks of intentional wrongdoing." AT & T Co. v. City of New York, 83 F.3d 549, 556 (2d Cir. 1996).

Conclusory allegations of recklessness, as plead by Plaintiff, will not suffice: "conclusory allegations that Defendants 'acted recklessly and/or with conscious disregard' does not meet the standard required to adequately plead a gross negligence claim." Kinsey v. Cendant Corporation, No. 04 Civ.0582, 2005 WL 1907678 *7, Fed. Sec. L. Rep. P 93,328 (S.D.N.Y. 2005). Plaintiff has to plead something more than just facts constituting ordinary negligence. Kinsey, 2005 WL 1907678 *7 "A cause of action based on harm suffered due to reckless conduct must be supported by specific and particular allegations of extreme wrongdoing." Tevdorachvili v. The Chase Manhattan Bank, 103 F. Supp. 2d 632, 643-644 (E.D.N.Y. 2000).

Here, Plaintiff has failed to allege any facts indicating "a reckless disregard for the rights of others or . . . intentional wrongdoing." AT & T Co. v. City of New York, 83 F.3d 549, 556 (2d Cir. 1996). Rather, Plaintiff states, without factual support, that the Hennessee Defendants were "grossly negligent" (see Am. Compl. ¶¶ 133 and 160) and that the Hennessee Defendants "ignored or failed to uncover" alleged "red flags" (see Am. Compl. ¶¶ 43, 107, 111, 153 and 160). Plaintiff further concludes, once again without factual support, that the Hennessee Defendants "failed to properly investigate" the Bayou Hedge Funds and the alleged "red flags". See Am. Compl. at ¶¶ 107, 110, 178 and 187. These statements do not constitute "specific and particular allegations of extreme wrongdoing," Tevdorachvili, 103 F. Supp. 2d at 643-644 that would be sufficient to plead a negligence claim, let alone a claim of gross negligence.

Plaintiff's negligence claim should be dismissed even if Connecticut law is applied. See e.g. Hyson, v. White Water Mountain Resort, 265 Conn. 636, 643, 829 A. 2d 827 (2003) (strict

judicial construction liberalized for exoneration clauses between sophisticated parties), B&D Associates, Inc. v. Russell, 73 Conn. App. 66, 72 (Conn. App. 2002) (words conveying a similar import as "negligence" will suffice.) and Roman v. City of Bristol, No. CV040525667S, 2005 WL 2429927, 39 Conn. L. Rptr. 897 (Conn.Super. 2005) (broadly worded release clause between business entities was sufficient ).

B.    The Hennessee Defendants' Alleged Negligence
       was not the Proximate Cause of Plaintiff's Damages

Under New York law, Plaintiff must plead and prove three elements in a negligence claim: a duty of care, a breach of the duty and that defendant's breach was the proximate cause of the injury to plaintiff. Craig Test Boring Co. v. Saudi Arabian Airlines Corp., 138 F. Supp. 2d 553 (S.D.N.Y. 2001), citing Akins v. Glens Falls City Sch. Dist., 53 N.Y. 2d 325, 333, 424 N.E. 2d 531, 535, 441 N.Y.S. 2d 644, 648 (1981). The same elements are required under Connecticut law as well. See RK Constructors, Inc. v. Fusco Corporation, 231 Conn. 381, 384, 650 A.2d 153 (1994).

Proximate cause is defined "as that which in natural sequence, unbroken by any new cause, produces that event and without which that event would not have occurred." Caraballo v. U.S., 830 F.2d 19, 22 (2d Cir. 1987) (internal citation omitted). When an action of a third person intervenes "between the defendant's conduct and the injury, the defendant is liable for negligence only when the intervening acts are normal and foreseeable consequence of the defendant's conduct." Caraballo, 830 F.2d 19, 22 (2d Cir. 1987) See also First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d Cir. 1994). Usually, the question of whether the third party's intervening act breaks the causal connection is an issue of fact for the jury. Jaret Ltd., v. U.S., No. 91 Civ. 0181, 1991 WL 156372 *2 (S.D.N.Y. 1991) (internal citation omitted). However, "...where only one conclusion may be drawn from the facts, the question of legal

cause may be decided as a matter of law. These cases generally involve independent intervening acts which operate upon but do not flow from the original negligence." Jaret Ltd., 1991 WL 156372 *2. "Where the actual cause of the injury is undisputed, the question whether the defendant's negligence was the proximate cause of plaintiff's injury is the question of law for the court." Caraballo, 830 F.2d at 22 (internal citation omitted).

Connecticut law is the same as New York in this regard. See Medcalf v. Washington Heights Condominium Association, Inc., 57 Conn. App. 12; 747 A.2d 532 (Conn. App. 2000). (plaintiff must establish proximate cause, which "becomes a question of fact when a mind of a fair and reasonable person could reach only one conclusion." Medcalf, 57 Conn. App. at 17, and "an intervening intentional or criminal act relieves a negligent defendant of liability. . .". Medcalf, 57 Conn. App. at 17 (internal citation omitted)).

Plaintiff's negligence claim alleges that the Hennessee Defendants had a duty to conduct due diligence on and monitor the Bayou Hedge Funds they recommended to Plaintiff and that the Hennessee Defendants breached that duty by failing to "properly investigate and timely alert" Plaintiff to alleged "red flags" concerning the Bayou Hedge Funds, failing "to uncover" and failing to "timely and properly disclose" such "red flags." See Am. Compl. at ¶¶ 157, 160, and 161.

None of the purported "red flags," however, is the cause of the losses alleged by Plaintiff. The cause of Plaintiff's losses, conceded by Plaintiff in the Amended Complaint, was the fraud committed by the Bayou Defendants:

> [T]he Bayou Defendants fraudulently lured investors to invest and maintain hundreds of millions of dollars in the Bayou Hedge Funds during the Class Period, through a scheme of improper acts and continuing misrepresentations and omissions regarding the business practices and financial results, operations and condition of Bayou and the Bayou Hedge Funds. The Bayou Defendants, and

> in particular their principals including defendants Samuel Israel, III ("Israel") and Daniel E. Marino ("Marino"), then unlawfully pilfered and squandered hundreds of millions of dollars that Plaintiff and the Class had entrusted to them as financial investments. Subsequently, both Israel and Marino have pled guilty to multiple criminal acts, and the Bayou Funds have essentially collapsed.

See Am. Compl. at ¶ 2.

Indeed, Plaintiff's Amended Complaint repeatedly alleges—in statements that must be taken as true for the purposes of this motion—that Defendants Israel and Marino illegally converted funds invested in the Bayou Hedge Funds by Plaintiff and the purported Class. See Am. Compl. at ¶¶ 2, 73, 74, 75, 76, 83 and 86g.

Plaintiff's allegations flatly contradict the notion that the Hennessee Defendants' alleged negligence is "that which in natural sequence . . . produce[d] that event and without which that event would not have occurred." Caraballo, 830 F.2d at 22 (internal citation omitted). Rather, they plainly show that the fraud committed by the Bayou Defendants, to which Defendants Israel and Marino have pled guilty, is an intervening act between the Hennessee Defendants' conduct and the alleged injury. Moreover, it cannot be said that the intervening act was a normal and foreseeable consequence of the Hennessee Defendants' conduct. Plaintiff does not and cannot allege that the Bayou Defendants' fraud -- the actual cause of injury to Plaintiff -- was even tangentially related to, let alone was "produced" by, the conduct of the Hennessee Defendants. As such, under no reading of the Amended Complaint can it fairly be said that the Hennessee Defendants' alleged negligence was the proximate cause of injury to Plaintiff.

VI.   PLAINTIFF DOES NOT PROPERLY PLEAD ITS BREACH OF IMPLIED
      COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM AGAINST THE
      HENNESSEE GROUP

"Under New York law, [a] party's actions may implicate the implied covenant of good

faith when it acts so directly to impair the value of the contract for another party that it may be

assumed that they are inconsistent with the intent of the parties." Bisseli Jr. v. Merrill Lynch &

Co., Inc. and Merrill Lynch Pierce, Fenner & Smith Incorporated, 937 F. Supp. 237, 247

(S.D.N.Y. 1996) aff'd, 157 F.3d 138 (2nd Cir. 1998) (internal citation omitted). "An implied

covenant of good faith and fair dealing arises only out of the known reasonable expectations of

the other party which arise out of the agreement entered into. The covenant does not create duties

which are not fairly inferable from the express terms of that contract." Bisseli Jr., 937 F. Supp. at

248. A plaintiff claiming breach of the covenant of good faith and fair dealing must show: "1)

fraud, 2) malice, 3) bad faith, 4) other intentional wrongdoing, or 5) reckless indifference to the

right of others such as gross negligence." Smith Barney v. Lichtensteinische Landesbank, No. 92

Civ. 2528, 1993 WL 97286 * 5 (S.D.N.Y. 1993). Likewise, Connecticut law requires Plaintiff to

show bad faith, which "means more than mere negligence. It involves dishonest purpose." New

Milford Savings Bank v. Lois Zandy et al., No. CV990078766S, 2001 WL 79830 *4

(Conn.Super. 2001) (internal citation and quotation omitted).

Plaintiff's Amended Complaint is devoid of any factual allegations of fraud, malice, bad

faith or intentional wrongdoing against the Hennessee Group.   Instead, Plaintiff alleges

conclusorily, that the Hennessee Group breached the implied covenant of good faith and fair

dealing by failing to perform certain obligations under the Advisory Agreement—i.e., the

identical conduct which allegedly supports Plaintiff's other claims. Plaintiff's instant claim must

therefore fail for the same reasons as set forth above as to Plaintiff's failure properly to plead its

negligence and breach of fiduciary duty claims.  For these reasons Plaintiff's claim for breach of the implied covenant of good faith and fair dealing should be dismissed.

VII.    CERTAIN OF PLAINTIFF'S CLAIMS ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATION

Plaintiff brings this action on behalf of "all members of the Class who, during the Class Period December 31, 1996 through August 25, 2005, were advised to invest in the Bayou Hedge Funds pursuant [to] an investment advisory relationship with the Hennessee Group, and suffered damages thereby (the 'Hennessee Subclass')." See Am. Compl. at ¶ 49.  The relevant time period defining the Hennessee Subclass is therefore a period of approximately eight years and eight months.

Two statutes of limitations apply to Plaintiff's claims.  Under New York law, Plaintiff's negligence and breach of fiduciary duty claims are governed by a three year statute of limitations, See Independence Leasing Corp. v. Aquino, 445 N.Y.S.2d 893 (City Ct. 1981) (A claim for money damages arising from alleged negligence constitutes an "injury to property" within NY CPLR § 214 and is subject to a three-year statute of limitations) and Merine on Behalf of Prudential-Bache Utility Fund, Inc. v. Prudential-Bache Utility Fund, Inc., 859 F. Supp. 715, 725 (S.D.N.Y. 1994) (breach of fiduciary duty claims governed by three years statute of limitation for action to recover damages for any injury to property).  Connecticut applies the same statute of limitation (see Conn. Gen. Stat. § 52-577) except for a duty of good faith and fair dealing which has a three-year statute of limitations.  See West Haven v. Commercial Union Ins. Co., 894 F.2d 540, 546 (2d Cir. 1990)

Plaintiff's remaining claims (other than Plaintiff's claim under the Investment Advisers Act of 1940), are governed by a six year statute of limitations.  See Silvester v. Time Warner, Inc., 1 Misc. 3d 250, 258-259, 763 N.Y.S.2d 912, 919 (N.Y.Sup. 2003) (breach of implied

covenant of good faith and fair dealing is subject to a six-year statute of limitations), <u>Scharff v. Claridge Gardens</u>, No. 88 Civ. 2047, 1993 WL 287734 (S.D.N.Y. 1993) (N.Y. C.P.L.R. 213 provides a six year statute of limitation for actions based on breach of contract, which begins to run when the contractual obligation is breached), <u>Stuart v. Grattan</u>, 217 A.D. 336, 216 N.Y.S. 727 (3rd Dept. 1926) (unjust enrichment action is governed by six years statute of limitation, which claim accrues upon commission of the wrongful act creating a duty of restitution). Connecticut applies the same statute of limitation for an action for breach of the contract (<u>see</u> Conn. Gen. § 52-576 (a)) and unjust enrichment. <u>See</u> <u>Gianetti v. Greater Bridgeport Individual Practice Assoc.</u>, No. X02CV024001685, 2005 WL 2078546 *8, 39 Conn. L. Rptr. 745 (Conn.Super. 2005). Pursuant to the New York Civil Practice Laws and Rules, the statute begins to run when a cause of action "accrues." CPLR § 203(a).

The statute of limitations applicable to Plaintiff's claim under the Investment Advisers Act of 1940 is one year from discovery and three years from the alleged violation. <u>See</u> <u>Kahn v. Kohlberg</u>, 970 F. 2d 1030, 1039 (2d. Cir. 1992) and <u>In re Integrated Resources, Inc</u> 851 F. Supp. 556, 567 (S.D.N.Y. 1994). The one year prong of the statute of limitations runs from the date on which Plaintiff discovered Defendant's alleged violation; Plaintiff, however, cannot sue for a violation that occurred more than three years before bringing suit, irrespective of the date of discovery. <u>See</u> <u>Fezzani v. Bear, Stearns & Company</u>, 384 F. Supp. 2d 618, 631 (S.D.N.Y. 2004).

Plaintiff served its original Complaint on the Hennessee Defendants on November 30, 2005 (and served its Amended Complaint containing its '40 Act claim on March 6, 2006). Therefore, pursuant to the applicable statutes of limitation, any claims based on negligence and breach of fiduciary duty that accrued prior to November 30, 2002 (and March 6, 2003 for Plaintiff's '40 Act claim) are time barred and should be dismissed. Likewise, any claims based

on breach of implied covenant of good faith and fair dealing[2], breach of contract or unjust enrichment that accrued prior to November 30, 1999 are time barred and should be dismissed.

## CONCLUSION

As the foregoing demonstrates, all claims against the Hennessee Group and the Individual Defendants should be dismissed. On independent grounds, the Court should dismiss Plaintiff's CUTPA claim, breach of fiduciary duty and negligence claims against the Hennessee Defendants and dismiss the breach of the implied covenant of good faith and fair dealing claim against the Hennessee Group. Moreover, the Court should dismiss all claims that are barred by the applicable statutes of limitation. Consistent with the Connecticut Court's statement that "…there is not leave to amend further once the issues raised in a motion to dismiss, a 12(b)(6) motion directed to the allegations of the complaint, have been decided" the Hennessee Defendants respectfully request that in granting the relief sought in its Motion to Dismiss this Court dismiss Plaintiff's Claims with prejudice.

Dated: May 31, 2006

Respectfully submitted,

By: _Lawrence E. Fenster_
    Lawrence E. Fenster (LF 9378)
    Matthew C. Plant  (MP 0328)
    BRESSLER, AMERY & ROSS
    17 State Street, 34th Floor
    New York, New York  10004
    (212) 425-9300
    (212) 425-9337
    lfenster@bressler.com
    Attorneys for Defendants
    Hennessee Group LLC, Elizabeth Lee
    Hennessee and Charles J. Gradante

---

[2] Under Connecticut law, Plaintiff's claims for breach of the duty of good faith and fair dealing that accrued prior to November 30, 2002 are time barred.

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2006, a copy of the *Memorandum In Support of Defendants Hennessee Group LLC, Elizabeth Lee Hennessee And Charles J. Gradante's Motion To Dismiss the Amended Class Action Complaint* was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Matthew C. Plant (MP 0328)