RECEIVED

APR 1 7 2006

CLERK U.S. DISTRICT OF TEXAS
WESTERN DISTRICT OF TEXAS

BY_____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TRAVIS CO. J.V.,<br>ROGER HILL, SR. and<br>CHRISTOPHER HILL | § § § § § | |
| Plaintiffs, | § § | |
| v. | § | CASE NO. 06-CV-146 |
| | § | |
| HENNESSEE GROUP LLC,<br>ELIZABETH LEE HENNESSEE<br>and CHARLES J. GRADANTE | § § § | |
| Defendants. | § § § | |

## FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME Plaintiffs Travis Co. J.V., Roger Hill, Sr., and Christopher Hill (collectively, "Plaintiffs"), and file this First Amended Complaint against Hennessee Group L.L.C., Elizabeth Lee Hennessee, and Charles Gradante (collectively, "Defendants") complaining as follows:

Travis Co. J.V. ("Travis Co.") is a joint venture organized under the laws of the state of Texas with its principal place of business at 5111 Broadway, San Antonio, Texas 78209.

Roger Hill, Sr. ("Roger"), a Texas citizen who resides in San Antonio, Texas. He was at all times relevant to the Plaintiffs' claims, a general partner of Travis Co.

Christopher Hill ("Chris"), is a Texas citizen who resides in San Antonio, Texas.

Hennessee Group LLC ("Hennessee Group") is a limited liability company organized under the laws of the state of New York with its principal place of business at 500 Fifth Avenue, 47th Floor,

1



New York, NY 10110. Hennessee Group has been served with process.

Elizabeth Lee Hennessee ("Lee") is a citizen of the State of New York and maintains an office at 500 Fifth Avenue, 47th Floor, New York, NY 10110. Lee has been served with process.

Charles Gradante ("Charles") is a citizen of the State of New York and maintains an office at 500 Fifth Avenue, 47th Floor, New York, NY 10110. Charles has been served with process.

### Subject Matter Jurisdiction

On December 30, 2005, Plaintiffs filed an Original Petition in Texas state court, specifically the 131st District Court of Bexar County, Texas. Defendants removed the case to federal court alleging jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. §§1332(a) and 1441(a).

### Personal Jurisdiction

As explained more fully below, the court has personal jurisdiction over Defendants because Defendants have availed themselves of the privilege of conducting business in Texas. Defendants have solicited Texas citizen, including Plaintiffs, as clients, and traveled to San Antonio, Texas to do so. Defendants also have provided investment advice to Texas citizens in Texas, including Plaintiffs, and accepted fees for that service provided to Texas citizens.

### Venue

Venue is proper in the Western District of Texas, San Antonio Division, because the state court proceeding was pending in Bexar County, San Antonio, Texas before it was removed.

### Factual Background

This case arises out of the collapse of the Bayou Group hedge funds, which has resulted in the indictment of two of Bayou's principals and has cost investors tens, perhaps hundreds, of millions of dollars. The warning signs regarding Bayou would have been obvious to the Defendants

had they been performing the investment advisory services, investigations, and due diligence in which they claimed to specialize and that Plaintiffs had specifically hired and relied upon them to perform. However, Defendants apparently did not perform the due diligence that they claims and thus, failed to discover Bayou's fraud. Hence, Defendants continued to recommend Bayou until it was too late, costing Plaintiffs millions of dollars.

Travis Co. is a partnership that serves as an investment vehicle for members of the Hill family. Until December 30, 2005, Roger Hill, Sr. was one of two partners in Travis Co., the other being Travis Co. J.V. Ltd, in which Hill family members are limited partners.

Hennessee Group LLC is a Registered Investment Advisor with the Securities and Exchange Commission. It operates as Hennessee Hedge Fund Advisory Group and specializes in advising investors regarding hedge funds. Defendants Lee and Charles are the managing principals of Hennessee Group. Each holds a Series 65 license as a registered investment adviser representatives. In addition, Lee holds Series 3, 7, 24, and 63 securities registrations.

Lee and Roger met in San Antonio years ago before she began Hennessee Group. Later, after she and Charles had formed Hennessee Group, and on another visit to San Antonio, Lee told Roger that Hennessee Group had expertise in advising investors regarding hedge funds and the hedge fund industry. She touted the company's thorough investigations of the funds they recommended to their clients and their on going monitoring and due diligence of those funds. She said that this due diligence included investigating hedge funds' back office accounting to be sure that the funds had the assets they claimed to have.

Another time, Lee asked Roger to set up a luncheon in San Antonio for individuals who might be prospective clients of Hennessee Group. At that luncheon, Lee made a presentation

3

regarding Hennessee Group's investment advisory services in which she made the same claims regarding her firm's expertise in, its research of, and its thorough due diligence on hedge fund managers.

Chris Hill, one of Roger's sons, received similar information regarding what Hennessee Group's advice would be based upon and what services it could and would perform for him. Chris was told that the Hennessee Group performed extensive investigations of the hedge fund managers it recommended and that it had a staff dedicated to nothing but this due diligence.

The Hennessee Group's brochure, which was given to Plaintiffs, reiterates all of these claims. It opens with a letter signed by Lee and Charles explaining that the company's "clients trust us to . . . develop diversified hedge fund portfolios," which Hennessee Group does by applying "our time tested advisory process and proprietary research tools" (Brochure at 1). The Brochure goes on to describe one of the company's "core competencies" as its "depth of proprietary research and due diligence" (Brochure at 3).

Similarly, Hennessee Group's website (www.hennesseegroup.com) boasts of the company's "Disciplined Five Step Fund Due Diligence Process," which purportedly entails evaluating both quantitative performance numbers and qualitative aspects of the fund manager such as "the components of the hedge fund manager's organization, its culture and philosophy, size and growth patterns." The website goes on to assure investors that "As an added element of supervision, the Hennessee Group's Investment Committee reviews each step of the research team's due diligence process." (Research and Services page).

Travis Co and the Hill family had had past experience investing in hedge funds, and had been burned by one investment where the fund turned out to be a fraud. This experience was due, in part,

4

to the difficulty of researching hedge funds, which are largely unregulated, and therefore, are not required to provide the same kinds of government-mandated reporting as other types of investments. In particular, Travis Co. had invested in Lancer Partners without the benefit of an investment advisor. This fund turned out, like Bayou, to be not an investment partnership, but a fraudulent scheme to steal investor's money. Roger related this experience to Lee and emphasized to her that Travis Co. did not consider itself able to perform the necessary investigations and due diligence for its hedge fund investments. Roger told Lee that Travis Co. wanted to avoid a repeat of an experience similar to the one with Lancer by having Hennessee Group do the investigations and due diligence that are difficult for individual investors, but in which Hennessee Group proclaimed itself an expert. In short, Plaintiffs wanted the "value added research," investigation of managers, and other "due diligence" that Lee and her firm were offering (Brochure at 6).

Based on these and other representations by Lee and Hennessee Group, Roger, acting on behalf of Travis Co. signed an "Investment Advisory Agreement" with Hennessee Group. Under that agreement, Hennessee Group would act as an Investment Adviser and provide advice to Travis Co. regarding hedge funds, including selecting appropriate hedge funds for Travis Co. and monitoring the portfolio of hedge funds that it helped Travis Co. build. In January 2003, Travis Co., acting on Hennessee Group's advice, invested millions of dollars in several different funds.

Based on the representations made to him and his family members, in 2002 Chris also hired Hennessee Group as his hedge fund investment advisor. Though Chris never had a written agreement with Hennessee Group, Hennessee Group recommended a number of hedge funds in which Chris should invest and Hennessee Group received thousands of dollars in fees from Chris's investments. On Hennessee Group's advice, Chris invested millions of dollars of his personal funds

5

in several hedge funds.

Bayou Super Fund ("Bayou Fund") was one of the hedge funds recommended to Plaintiffs. As with all the funds they recommended, Hennessee Group claimed to have thoroughly investigated the Bayou Fund. In fact, Lee and Charles claimed in depth personal knowledge of the Bayou Fund, its manager, Sam Israel, III, and its CFO, Daniel E. Marino.

Hennessee Group also described the fund as a particularly safe investment, with low volatility. In fact, one Hennessee Group representative characterized Bayou Fund as almost a substitute for a money market fund (but with better returns) because withdrawals could be made each month on fifteen (15) days notice. Of course, low volatility and high returns are easy to accomplish when you are making up the numbers, as Bayou was doing.

Based on Hennessee Group's recommendation of and claimed investigations of Bayou, Travis Co. and Chris both invested in Bayou. Each initially invested $1 million. Later, upon a further recommendation of Hennessee Group, Travis Co. increased its investment by $500,000. Over the course of the next few years, Chris added an additional $1.45 million to his Bayou Fund investment, and withdrew $1million.

In a letter dated July 27, 2005, Bayou manager, Sam Israel, III, wrote Bayou investors to say that he was retiring, Bayou was closing its doors, and Bayou's hedge funds would distribute "100%" of investors' money soon. Within weeks it became clear that Bayou was not distributing any money to investors. In fact, media reports began coming out saying that Bayou had been incurring losses for years, but hiding them from investors by lying about their assets and using a sham auditing firm to rubber stamp their books without double checking Bayou's numbers.

From the time of its initial recommendations up until August 2005, Hennessee Group

consistently recommended Bayou to the Plaintiffs. It now appears, however, that Defendants made and maintained these recommendations without doing the investigations of and research on Bayou Fund that it had promised and that Plaintiffs had hired them to do. In fact, if Defendants had been looking, the available evidence would have alerted them that Bayou was not what it claimed.

For instance, the funds' manager, Sam Israel, III, claimed he had been "head trader and partner at Omega Advisors from 1992-1996." This was false. Similarly, in early 2005, Roger pointed out to Brian Snider, a Hennessee Group representative, that he had heard that Dan Marino, Bayou's CFO, also was a partner in Bayou's purportedly independent auditing firm, Richmond-Fairfield. Charles got back to Roger, saying that Hennessee Group had looked into Roger's concern about the CFO and the auditor. Charles told Roger that he could relax because Marino was no longer associated with Richmond-Fairfield, having resigned from that firm to become CFO of Bayou. While this may have been technically true, it was irrelevant since Richmond-Fairfield was a sham auditor created by Marino to pose as an independent auditor and to certify Bayou's fabricated financial statements that showed Bayou's hedge funds were earning profits.

Both Israel's inaccurate resume and Bayou's sham auditor would have been uncovered by anyone doing the type of due diligence that Defendants claimed that Hennessee Group performed. Thus, either Defendants accepted both of these lies by Bayou at face value and simply failed to perform the due diligence they had told Plaintiffs that they conducted; or Defendants knew that Bayou was lying and for some reason (perhaps because of the referral fees Bayou was paying Hennessee Group) Defendants chose to ignore the lies and recommend Bayou to Plaintiffs anyway.

7

## Causes of Action

Breach of Contract

Roger, on behalf of Travis Co., contracted with Hennessee Group for Hennessee Group (1) to "perform search, evaluation, [and] selection" of hedge funds to which Hennessee Group "reasonably believes would be appropriate investment vehicles for Client," (2) to provide "ongoing monitoring of the performance of the Portfolio," and (3) provide Travis Co. the "research and analyses it compiles about numerous hedge funds." While the agreement was unwritten, Chris also had a contract with Hennessee Group under which Hennessee Group would perform these same services for him.

Hennessee Group failed to perform the promised services, materially breaching its contracts with Travis Co. and Chris. Hennessee Group's failures and breach proximately caused damage to Travis Co. of at least the $1.5 million that Travis Co.'s invested in Bayou Fund. Hennessee Group's failures proximately caused damages to Chris of at least the $1.45 million that Chris invested and did not withdraw from Bayou Fund.

Breach of Fiduciary Duty

As their investment advisors, Defendants owe Plaintiffs fiduciary duties. These duties include a duty of care, which requires Defendants to act competently and to exercise diligence in making suitable investment recommendations. Defendants breached this duty in a number of ways, including but not limited to the following:

a. Failing to act competently in researching, investigating, and performing due diligence regarding the hedge funds Defendants recommended;

b. Failing to diligently investigate and research the hedge funds Defendants recommended;

8

and

    c. On information and belief, by basing investment recommendations on Defendants' personal relationships with managers and other principals of hedge funds.

Defendants' fiduciary duties also entail a duty of loyalty to act in the Plaintiffs' best interest in making investment recommendations. Defendant breached this duty in a number of ways, including, but not limited to, the following:

    a. On information and belief, by making investment recommendations which produced undisclosed remuneration to Defendants; and

    b. On information and belief, by making investment recommendations based on Defendants' personal relationship with the managers and other principals of the hedge funds Defendants recommended.

Finally, Defendants owed Plaintiffs a duty to disclose all material information regarding: (i) the relationship between them; (ii) the advice and recommendations Defendants are giving Plaintiffs; and (iii) the Plaintiffs' investments. Defendants breached this duty in the following non-exclusive ways:

    a. Hennessee Group did not do the research, investigations, and/or due diligence that it claimed to do in its marketing materials or that its representatives had told Plaintiffs it did, would do, or had done;

    b. On information and belief, by failing to disclose to Plaintiffs all of the fees and other remuneration Defendants received from the hedge funds that Defendants recommended; and

    c. On information and belief, by failing to inform Plaintiffs that Defendants would make

9

investment recommendations based upon Defendants' personal relationships with the managers and other principals of the hedge funds.

These breaches of fiduciary duty by Defendants resulted in damage to Plaintiffs.

## Fraud or Negligent Misrepresentation

Defendants made representations about Hennessee Group's services and about Bayou, including but not limited to the following:

a.  Hennessee Group would research, investigate, and perform due diligence of a hedge fund both before recommending the fund and after the client invested in the fund;

b.  Hennessee Group's due diligence included investigating hedge fund's back office accounting to be sure it had the assets it claimed;

c.  Hennessee Group's Investment Committee reviews each step of the research team's due diligence process;

d.  Hennessee Group had investigated concerns about the relationship between Bayou's CFO and its allegedly independent auditor;

e.  Bayou Fund was a suitable investment for Plaintiffs;

f.  Bayou Fund was a legitimate hedge fund investment; and

g.  Bayou Fund's performance was good and the fund was earning positive returns for investors.

h.

These and other representations by Defendants, which were made for others to rely upon in the

10

course of Defendants' business of providing investment advice, were false.

Defendants either (i) made the statements knowing that the statements were false; (ii) made the statements when Defendants knew or should have known that they were false; or (iii) Defendants made the statements without exercising reasonable care to determine whether or not the statements were true. Defendants also failed to disclose material facts, including but not limited to the fact that Hennessee Group had not done the research, investigations, and due diligence it promised, even though Defendants knew that Plaintiffs were ignorant of those facts and lacked an equal opportunity to discover them.

Defendants intended for Plaintiffs to rely upon Defendants' false statements and omissions. Plaintiffs did in fact rely upon the false statements and omissions of Defendants and were damaged thereby.

Negligence/Gross Negligence

As Plaintiffs' investment advisor, Defendants owned Plaintiffs a duty of care to, among other things, recommend suitable investments. Defendants breached that duty, proximately causing damage to Plaintiffs.

Further, Defendants' negligent actions towards Plaintiffs involved an extreme degree of risk of which Defendants were aware, but to which Defendants were consciously indifferent. Thus, Plaintiffs are entitled to exemplary damages.

Deceptive Trade Practices Act Violations ("DTPA")

Plaintiffs are consumers who purchased investment advisory services from Defendants.

11

Defendants have used false, misleading, or deception acts or practices in their transactions with Plaintiffs, which Plaintiffs have relied upon to their detriment and which have caused Plaintiffs' damages. Specifically, Defendants have:

   a.  represented that their services have characteristics, uses, or benefits that they do not have, TEX. CIV. PRAC. REM. CODE §17.46(b)(5);

   b.  represented that their services are of a particular standard quality or grade when they are not, TEX. CIV. PRAC. REM. CODE §17.46(b)(7);

   c.  representing that an agreement confers or involves rights, remedies, or obligations that it does not have, TEX. CIV. PRAC. REM. CODE 17.46(b)(12);

   d.  representing that work has been performed when it has not, TEX. CIV. PRAC. REM. CODE 17.46(b)(22); and

   e.  failing to disclose information about their services, which was known at the time of the transaction, where the failure to disclose such information was intended to induce the consumer into a transaction that the consumer would not have entered had the information been disclosed, TEX. CIV. PRAC. REM. CODE 17.46(b)(24).

Plaintiffs have suffered economic damages as a result of Defendants' violations of the DTPA. Plaintiffs also have incurred reasonable and necessary attorneys' fees and court costs in pursuing their claims. Further, Defendants' violations of the DTPA were committed with actual awareness of the falsity or misleading nature of Defendants' acts or practices, thus entitling Plaintiffs to up to three times the amount of economic damages.

12

## Federal Securities Law (Section 10(b)) Violations

Defendants made material representations and omissions regarding Hennessee Group's services and about Bayou Fund, including but not limited to the following:

a. Hennessee Group would research, investigate, and perform due diligence on a hedge fund both before recommending the fund and after the client invested in the fund;

b. Hennessee Group's due diligence included investigating the hedge funds' back office accounting to be sure they had the assets they claimed;

c. Hennessee Group's Investment Committee reviews each step of the research team's due diligence process;

d. Hennessee Group had investigated concerns about the relationship between Bayou's CFO and its allegedly independent auditor;

e. Bayou Fund was a suitable investment for Plaintiffs;

f. Bayou Fund was a legitimate hedge fund investment;

g. Bayou Fund's performance was good and the fund was earning positive returns for investors;

h. Failing to inform Plaintiffs that Hennessee Group's research, investigations, and due diligence was less than promised when such disclosures were necessary to prevent Defendants' other statements from being misleading to Plaintiffs.

These and other representations by Defendants were false. However, Defendants (i) made the statements knowing that the statements were false; and/or (ii) made the statements with reckless disregard for whether or not the statements were true; and/or (iii) made the material omissions knowing that knowledge of the omitted facts was necessary to keep Defendants' other statements

13

from being misleading.

Plaintiffs justifiable relied upon Defendants' false statements and omissions by purchasing the Bayou Fund for their portfolio and continuing to hold the Bayou Fund until its demise. As a result of Defendants' false statements and/or omissions, Plaintiffs have been damaged.

## State Securities Law Violations

The Texas Securities Act, Tex. Rev. Civ. Stat. art. 581-12 (2003), prohibits the rendering of services as an investment adviser or as an investment adviser representative in Texas without first registering under the Act or submitting a notice filing required by the Act. Though they have acted as investment advisers and investment adviser representatives in Texas, Defendants have neither registered nor submitted a notice filing. Thus, pursuant to article 581-33-1 of the Act, Plaintiffs are entitled to damages in the amount of all compensation received by Defendants for their services.

## Prayer

WHEREFORE, premises considered, Plaintiffs request that upon trial of this cause, the Court enter a final judgment against Defendants granting Plaintiffs the following:

     a. Actual damages;

     b. Exemplary or treble damages;

     c. Prejudgment and post-judgment interest;

     d. Attorneys' fees;

     e. Court costs; and

     f. Any other relief to which Plaintiffs may be entitled in law or equity.

14

Respectfully submitted,

PIPKIN, OLIVER & BRADLEY, L.L.P.
1020 N.E. Loop 410, Suite 810
San Antonio, Texas 78209
Telephone: (210) 820-0082
Facsimile: (210) 930-8500


By: _____
     MARVIN G. PIPKIN
     State Bar No. 16026600
     KORTNEY M. KLOPPE-ORTON
     State Bar No. 00794104
     **ATTORNEYS FOR PLAINTIFFS**


## _CERTIFICATE OF SERVICE_

I hereby certify that a true and correct copy of the foregoing document has been sent via certified mail, return receipt requested, to the following counsel of record on this the 17th day of April, 2006:

Seagal V. Wheatley
Jenkens & Gilchrist, P.C.
113 E. Pecan Street, Suite 900
San Antonio, Texas 78205-1533

Ellen Bush Sessions
Jenkens & Gilchrist, P.C.
1445 Ross Avenue, Suite 3200
Dallas, Texas 75202-2799

Bennett Falk
Brian Amery
Matt Wolper
Bressler, Amery & Ross, P.C.
2801 S.W. 149th Ave., Suite 300
Miramar, Florida 33027

15