ARBITRATION BEFORE THE
NATIONAL ASSOCIATION OF SECURITIES DEALERS

| | | |
|---|---|---|
| TRAVIS CO. J.V., ROGER HILL, Sr. and CHRISTOPHER HILL | § § § | |
| Claimants, | § § § § | CASE NO. _____ |
| ELIZABETH LEE HENNESSEE | § § § | |
| Respondent. | § | |

## STATEMENT OF CLAIM

Claimants Travis Co. J.V., Roger Hill, Sr., and Christopher Hill (collectively, "Claimants"), and file this Statement of Claim against Elizabeth Lee Hennessee ("Hennessee") complaining as follows:

### Parties

1.      Travis Co. J.V. ("Travis Co.") is a joint venture organized under the laws of the state of Texas that serves as an investment vehicle for members of the Hill family, who are limited partners in one of Travis Co.'s partners. Roger Hill Sr. ("Roger") and Christopher Hill ("Chris") are Texas citizens who reside in San Antonio, Texas. Roger, on behalf of Travis Co. and Chris, individually, both used Hennessee and her investment advisory firm, Hennessee Group, LLC to assist them in investing in hedge funds.

2.      Elizabeth Lee Hennessee is a citizen and resident of New York, New York, and maintains an office at 500 Fifth Avenue, 47th Floor, New York, NY 10110. She holds Series 3, 7, 24, 63, and 65 licenses (CRD # 823746) and is an associated



person of NASD member firm BNY Brokerage, Inc. (CRD # 35693), a registered broker/dealer. Hennessee also is a managing principal of Hennessee Group, LLC, a registered investment advisor specializing in hedge fund investments ("Hennessee Group").

### Jurisdiction Before NASD

3.    To bring an NASD arbitration claim against a member or associated person without a signed arbitration agreement the dispute must: (i) be "between a customer and a member firm and/or associated person;" and (ii) be one "arising in connection with the business of such member or in connection with the activities of such associated persons." NASD Rule 10310(a). Significantly, it is not necessary for a person to have a brokerage account with a member firm to be a "customer" and entitled to bring an arbitration claim before NASD. *California Fina Group, Inc. v. Herrin,* 379 F.3d 311 (5th Cir. 2004); *Vestax Securities Corp. v. McWood,* 280 F.3d 1078 (6th Cir. 2002).

4.    As will be clear from the factual background presented below, Claimants are "customers" because: (i) they have "transact[ed] business with" Hennessee, an associated person of a member, and (ii) their complaints against Hennessee "arise in connection with the activities of an associated person," namely Hennessee.

### Venue

5.    Claimants request that the physical arbitration hearing be held in Houston, Texas. Hennessee has solicited Texas citizens as clients, including Claimants and their representatives, and traveled to San Antonio, Texas to do so.

She has conducted business in Texas. She and her company also have provided investment advice to Texas citizens in Texas, including Claimants, and accepted fees for the services provided to Texas citizens.

## Factual Background

6.      This case arises out of the collapse of the Bayou Group hedge funds, which has resulted in the indictment of two of Bayou's principals and has cost investors tens, perhaps hundreds, of millions of dollars.      The warning signs regarding Bayou would have been obvious to Hennessee if she and her company had been performing the investment advisory services, investigations, and due diligence in which they claimed to specialize and that Claimants specifically hired and relied upon them to perform. However, Hennessee and Hennessee Group apparently either did not perform the due diligence that they claimed, and thus, they failed to discover Bayou's fraud; or they ignored the fraud they found. Either way, Hennessee and Hennessee Group continued to recommend Bayou until it was too late, costing Claimants millions of dollars.

The History of the Relationship

7.      Until December 30, 2005, Roger was one of two partners in Travis Co. and served as a representative of Travis Co. Hennessee and Roger met years ago before she founded Hennessee Group. Later, after she and her husband Charles Gradante had formed Hennessee Group, Hennessee made visits to San Antonio. On one of these visits, Hennessee told Roger that Hennessee Group had expertise in advising investors regarding hedge funds and the hedge fund industry. She touted her company's thorough investigations of the funds they recommended to their clients

and their on going monitoring and due diligence of those funds. She said that this due diligence included investigating hedge funds' back office accounting to be sure that the funds had the assets they claimed to have.

8.    Another time, Hennessee asked Roger to set up a luncheon in San Antonio for individuals who might be prospective clients of Hennessee Group. At that luncheon, Hennessee made a presentation regarding Hennessee Group's investment advisory services in which she made the same claims regarding her firm's expertise in, research of, and thorough due diligence on hedge fund managers.

9.    Claimant Chris Hill, one of Roger's sons, received similar information regarding what Hennessee Group's advice would be based upon and what services Hennessee Group could and would perform for him. Chris was told that Hennessee Group performed extensive investigations of the hedge fund managers it recommended and that it had a staff dedicated to nothing but this due diligence.

10.    The Hennessee Group's brochure, which was given to Claimants, reiterates all of these claims. It opens with a letter signed by Hennessee and her husband and business partner, Charles Gradante ("Gradante"), explaining that the company's "clients trust us to . . . develop diversified hedge fund portfolios," which Hennessee Group does by applying "our time tested advisory process and proprietary research tools" (Brochure at 1). The Brochure goes on to describe one of the company's "core competencies" as its "depth of proprietary research and due diligence" (Brochure at 3).

11.    Similarly, Hennessee Group's website (www.hennesseegroup.com) boasts of the company's "Disciplined Five Step Fund Due Diligence Process," which

purportedly entails evaluating both quantitative performance numbers and a hedge fund manager's qualitative aspects, such as "the components of the hedge fund manager's organization, its culture and philosophy, size and growth patterns." The website goes on to assure investors that "As an added element of supervision, the Hennessee Group's Investment Committee reviews each step of the research team's due diligence process." (Research and Services page). Claimants believe that as one of only two owners and managing principles and one of only three officers of Hennessee Group, Hennessee is a member of Hennessee Group's Investment Committee.

12.     Travis Co. and the Hill family had experience investing in hedge funds prior to their relationship with Hennessee and her firm. Unfortunately, their experience included one investment where the fund turned out (like the Bayou Fund that is the basis for these claims) to be not an investment partnership, but a fraudulent scheme to steal investor's money. Roger related his past experience to Hennessee personnel and told them that Travis Co. wanted to avoid another experience similar to their earlier one by having Hennessee Group do the investigations and due diligence in which Hennessee and Hennessee Group proclaimed expertise. In short, Claimants wanted the "value added research," investigation of managers, and other "due diligence" that Hennessee and her firm were offering (Brochure at 6).

13.     Based on these and other representations by Hennessee and Hennessee Group, Roger, acting on behalf of Travis Co., signed an "Investment Advisory Agreement" with Hennessee Group. Under that agreement, Hennessee Group would act as an Investment Advisor to Travis Co. regarding hedge funds, including selecting

suitable hedge funds for Travis Co. and monitoring the portfolio of hedge funds that it helped Travis Co. build. In January 2003, Travis Co., acting on Hennessee Group's advice, invested millions of dollars in several different funds.

14. In 2002, based on the representations Hennessee and Hennessee Group had made to multiple Hill family members, Chris also relied on Hennessee Group as his hedge fund investment advisor. Though Chris never had a written agreement with Hennessee Group, the firm did recommend a number of hedge funds in which Chris should invest; and he invested millions of dollars of his personal funds in several of those hedge funds. Furthermore, Hennessee Group received thousands of dollars in fees from Chris's investments.

The Bayou Recommendation

15. Bayou Super Fund ("Bayou Fund") was one of the hedge funds Hennessee and Hennessee Group recommended to Claimants. As with all the funds they recommended, Hennessee Group was supposed to thoroughly investigate the Bayou Fund. In fact, Hennessee and Charles Gradante claimed in depth personal knowledge of the Bayou Fund, its manager, Sam Israel, III, and its CFO, Daniel E. Marino. At one point, Hennessee even told Chris that she trusted Israel completely because she knew "everything" about him and had even seen the scar on his back.

16. In terms of Bayou Funds' investment style, Hennessee Group also described the fund as a particularly safe hedge fund investment, with low volatility. They explained that this was partly because Bayou purportedly converted all of its positions to cash over most weekends to avoid potential adverse market news. In fact, one Hennessee Group representative characterized Bayou Fund as almost a

-6-

substitute for a money market fund (but with better returns) because withdrawals could be made each month on fifteen (15) days notice. Of course, low volatility and high returns are easy to accomplish when you are making up the numbers, as Bayou was doing.

17.    Based on Hennessee and Hennessee Group's recommendation, knowledge, and claimed investigations of Bayou, Travis Co. and Chris both invested in Bayou Fund. Each initially invested $1 million. Later, to bring the amount up to Hennessee Group's original recommendation, Travis Co. increased its investment by $500,000. Likewise, over the course of the next few years, Chris made additional contributions and withdrawals, adding $1.45 million to his Bayou Fund investment, and withdrawing $1 million.

18.    In a letter dated July 27, 2005, Bayou manager, Sam Israel, III, wrote Bayou investors to say that he was retiring, Bayou was closing its doors, and Bayou's hedge funds would distribute "100%" of investors' money soon. Within weeks it became clear that Bayou was not distributing any money to investors. In fact, media reports began coming out saying that Bayou had been incurring losses for years, but hiding them from investors by lying about their assets and using a sham auditing firm to rubber stamp their books without double checking Bayou's numbers.

19.    From the time of their initial recommendations up until August 2005, Hennessee and Hennessee Group consistently recommended Bayou Fund to the Claimants. However, if they had been looking, the available evidence would have alerted them that Bayou was not what it claimed.

20.    For instance, the funds' manager, Sam Israel, III, claimed he had been

"head trader and partner at Omega Advisors from 1992-1996." This was false. Similarly, in early 2005, Roger pointed out to Brian Snider, a Hennessee Group representative, that he had heard that Dan Marino, Bayou's CFO, also was a partner in Bayou's purportedly independent auditing firm, Richmond-Fairfield. Charles Gradante got back to Roger, saying that Hennessee Group had looked into Roger's concern about the CFO and the auditor. Gradante told Roger that he could relax because Marino was no longer associated with Richmond-Fairfield, having resigned from that firm to become CFO of Bayou. While this may have been technically true, it was irrelevant since Richmond-Fairfield was a sham auditor created by Marino to pose as an independent auditor and to certify Bayou's fabricated financial statements, which showed Bayou's hedge funds were earning profits.

21.    Both Israel's inaccurate resume and Bayou's sham auditor would have been uncovered by anyone doing the type of due diligence that Hennessee and Hennessee Group claimed that they performed. Thus, they appear to have accepted both of Bayou's assertions without verifying them, and thus, failed to perform the investigations and due diligence that they told Claimants they conducted, and that Claimants hired them to do.

## Causes of Action

Breach of Fiduciary Duty

22.    As their investment advisors, Hennessee and Hennessee Group owe Claimants fiduciary duties. These duties include a duty of care, which requires them to act competently and to exercise diligence in making suitable investment recommendations. Hennessee and Hennessee Group breached this duty in a number

of ways, including but not limited to the following:

    a.  Failing to act competently in researching, investigating, and performing due diligence regarding the Bayou Fund;

    b.  Failing to diligently investigate and research the Bayou Fund;

    c.  On information and belief, by basing investment recommendations on Hennessee's personal relationships with managers and other principals of the Bayou Fund;

    d.  Hennessee breached this duty by failing to train and supervise her employees and/or by relying on information provided to her by employees whom she had failed to properly train or supervise; and

    e.  On information and belief, Hennessee, as an Investment Committee member, failed to review the research team's work.

    23.    Hennessee and Hennessee Group's fiduciary duties also entail a duty of loyalty to act in the Claimants' best interest in making investment recommendations. On information and belief, Hennessee and Hennessee Group breached this duty by, among other things, (a) making investment recommendations based on Hennessee's personal relationship with the managers and other principals of the hedge funds Hennessee and Hennessee Group recommended; and/or (b) making investment recommendations that generated undisclosed fees; and/or (c) making investment recommendations based on the size of the fees they generated for Hennessee Group.

    24.    Finally, Hennessee and Hennessee Group owe Claimants a duty to disclose all material information regarding: (i) the relationship between them; (ii) the

advice and recommendations Hennessee and Hennessee Group are giving Claimants; and (iii) the Claimants' investments. Hennessee and Hennessee Group breached this duty to disclose in the following non-exclusive ways:

a. Failing to disclose that neither she nor Hennessee Group had done the research, investigations, and/or due diligence that they claimed that they would do or had done;

b. On information and belief, by failing to disclose to Claimants all of the fees and other remuneration and/or all of the details of the fees that Hennessee and Hennessee Group received from the hedge funds that they recommended;

c. On information and belief, by failing to inform Claimants that Hennessee Group would make investment recommendations based upon Hennessee's personal relationship with the managers and other principals of the hedge funds;

d. Failing to disclose that Hennessee did not properly train and supervise her employees; and

e. Failing to inform Claimants that the Investment Committee did not review the research team's work.

25.    Claimants have been damaged as a result of these breaches of Hennessee and Hennessee Group's fiduciary duties.


Fraud or Negligent Misrepresentation

26.    Hennessee and Hennessee Group made representations about

Hennessee Group's services and about Bayou, including but not limited to the following:

    a.   Hennessee Group would research, investigate, and perform due diligence of a hedge fund both before recommending the fund and after the client invested in the fund;

    b.   Hennessee Group's due diligence included investigating hedge fund's back office accounting and detailed portfolio examination to be sure it had the assets it claimed;

    c.   Hennessee Group's Investment Committee reviews each step of the research team's due diligence process;

    d.   Hennessee Group had investigated concerns about the relationship between Bayou's CFO and its allegedly independent auditor;

    e.   Bayou Fund was a suitable investment for Claimants;

    f.   Bayou Fund was a legitimate hedge fund investment; and

    g.   Bayou Fund's performance was good and the fund was earning positive returns for investors.

These and other representations by Hennessee and Hennessee Group, which were made for Claimants to rely upon in the course of Hennessee and Hennessee Group's business of providing investment advice, were false.

    27.    Hennessee and/or Hennessee Group (i) made the statements knowing that the statements were false; or (ii) made the statements when they knew or should have known that the statements were false; or (iii) made the statements without exercising reasonable care to determine whether or not the statements were true.

Hennessee and Hennessee Group also failed to disclose material facts, including but not limited to, the fact that Hennessee Group had not done the research, investigations, and due diligence it promised, even though Hennessee and Hennessee Group knew that Claimants were ignorant of those facts and lacked an equal opportunity to discover them.

28.    Hennessee and Hennessee Group intended for Claimants to rely upon their misstatements and omissions. Claimants did in fact rely upon those misstatements and omissions and were damaged thereby.

Negligence/Gross Negligence

29.    As Claimants' investment advisor, Hennessee and Hennessee Group owed Claimants a duty of care to, among other things, recommend suitable investments. Further, Hennessee owed Claimants a duty to train and supervise her employees. Hennessee and Hennessee Group breached these duties, proximately causing damage to Claimants.

30.    In addition, Hennessee and/or Hennessee Group's negligent actions towards Claimants involved an extreme degree of risk of which Hennessee and Hennessee Group were aware, but to which they was consciously indifferent. Thus, Claimants are entitled to exemplary damages.

Deceptive Trade Practices Act Violations ("DTPA")

31.    Claimants are consumers who purchased investment advisory services from Hennessee and Hennessee Group. Hennessee and Hennessee Group have used false, misleading, or deception acts or practices in their transactions with Claimants, which Claimants have relied upon to their detriment and which have caused

-12-

Claimants' damages. Specifically, Hennessee and Hennessee Group have:

     a. represented that Hennessee Group's services have characteristics, uses, or benefits that they do not have, TEX. CIV. PRAC. REM. CODE §17.46(b)(5);

     b. represented that Hennessee Group's services are of a particular standard quality or grade when they are not, TEX. CIV. PRAC. REM. CODE §17.46(b)(7);

     c. represented that an agreement confers or involves rights, remedies, or obligations that it does not have, TEX. CIV. PRAC. REM. CODE 17.46(b)(12);

     d. represented that work has been performed when it has not, TEX. CIV. PRAC. REM. CODE 17.46(b)(22); and

     e. failed to disclose information about Hennessee Group's services, which was known at the time of the transaction, where the failure to disclose such information was intended to induce the consumer into a transaction that the consumer would not have entered had the information been disclosed, TEX. CIV. PRAC. REM. CODE 17.46(b)(24).

     32.    Claimants have suffered economic damages as a result of Hennessee and Hennessee Group's violations of the DTPA, and have incurred reasonable and necessary attorneys' fees and court costs in pursuing their claims. Further, Hennessee and Hennessee Group's violations of the DTPA were committed with actual awareness of the falsity or misleading nature of their acts or practices, thus entitling

Claimants to up to three times the amount of economic damages.

State Securities Law Violations

33.     The Texas Securities Act, TEX. REV. CIV. STAT. art. 581-12 (2003),
prohibits rendering services as an investment adviser or as an investment adviser
representative in Texas without first registering under the Act or submitting a notice
filing required by the Act.   Though she has acted as an investment adviser
representative in Texas, Hennessee has neither registered nor submitted a notice
filing.   Thus, pursuant to article 581-33-1 of the Act, Claimants are entitled to
damages in the amount of the compensation received by Hennessee for those
services.

34.   It also is a violation of the Texas Securities Act to aid the sale of
securities when that sales is obtained by means of a material misstatement of fact or
an omission of a fact necessary to make other statements non-misleading and where
the aiding party acts with reckless disregard for the truth.   TEX. REV. CIV. STAT. art.
581-33(A)(2)&(F)(2) (2003).   Hennessee has recklessly aided Bayou's sale of the
Bayou Fund by means of material untrue statements and omissions of material facts.
Accordingly, Hennessee should be liable under the Texas Securities Act for damages,
*id.* at 581-33(D)(3), for expenses incurred, *id.* at 581-33(D)(6), and for reasonable
attorneys' fees, *id.* at 581-33(D)(7).

Disregarding Hennessee Group's Separate Existence

35.     Hennessee and her husband own all or a substantial majority of
Hennessee Group and are two of its three officers.   Charles Gradante told Roger that

it would be useless to make a claim against Hennessee Group because he and Hennessee leave little cash in the company. For this reason, Claimants believe that the company is undercapitalized. Given these facts, Hennessee Group's separate existence should be disregarded and Hennessee should be liable for not only her own actions, but also should be liable for the actions of Hennessee Group.

36.    The company should be treated as the alter ego of Hennessee and its separate existence disregarded because it was a sham employed to perpetrate a fraud on clients such as Claimants. Specifically, Hennessee Group is a means by which Hennessee seeks to derive all of the benefits and profits of her activities in dispensing investment advice, while avoiding any liability that may result from those activities. Hennessee, therefore, should be liable for the breaches of fiduciary duty, negligence, gross negligence, misrepresentations, and statutory violations by the Hennessee Group that have been described above.

## Prayer

WHEREFORE, premises considered, Claimants request that upon trial of this cause, the NASD Panel enter a final award against Hennessee granting Travis Co. J.V., Roger Hill, and/or Chris Hill the following:

   a. Actual damages;

   b. Exemplary or treble damages;

   c. Prejudgment and post-judgment interest;

   d. Attorneys' fees;

   e. Fee Forfeiture

   f. Arbitration costs; and

g. Any other relief to which Claimants may be entitled in law or

equity.

Respectfully submitted,

PIPKIN, OLIVER & BRADLEY, L.L.P.
1020 N.E. Loop 410, Suite 810
San Antonio, Texas 78209
Telephone: (210) 820-0082
Facsimile: (210) 930-8500

By: _____
MARVIN G. PIPKIN
State Bar No. 16026600
KORTNEY M. KLOPPE-ORTON
State Bar No. 00794104
**ATTORNEYS FOR CLAIMANTS**