UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X
                          :

IN RE BAYOU HEDGE FUNDS INVESTMENT :     No. 06 MDL 1755 (CM)
LITIGATION                        :
                          :

-------------------------------------------------------------- X
THIS DOCUMENT RELATES TO:
-------------------------------------------------------------- X
                          :

BROAD-BUSSEL FAMILY LIMITED        :     No. 06 Civ. 3026 (CM)
PARTNERSHIP, MARIE-LOUISE          :
MICHELSOHN, MICHELLE MICHELSOHN, and :
HERBERT BLAINE LAWSON, JR., Individually :
and on Behalf of All Other Persons and Entities :
Similarly Situated,                :
                          :
               Plaintiffs,    :
                          :
      - against -        :
                          :     **ORAL ARGUMENT REQUESTED**
BAYOU GROUP LLC, et al.,        :
                          :
            Defendants.   :     ELECTRONICALLY FILED
                          :
-------------------------------------------------------------- X


## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
## TO THE HENNESSEE DEFENDANTS' MOTION TO DISMISS


BERGER & MONTAGUE, P.C.             KOSKOFF, KOSKOFF & BIEDER, P.C.
Merrill G. Davidoff, Esq.                   William M. Bloss, Esq.
Lawrence J. Lederer, Esq.                Neal A. DeYoung, Esq.
Lane L. Vines, Esq.                        350 Fairfield Avenue
1622 Locust Street                        Bridgeport, CT  06604
Philadelphia, PA  19103-6305          Telephone:  (203) 336-4421
Telephone:  (215) 875-3000            Fax:  (203) 368-3244
Fax:  (215) 875-4604

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-vi

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-4

SUMMARY OF PERTINENT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-10

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-25

    I.    Connecticut Law Applies to Plaintiffs' Claims . . . . . . . . . . . . . . . . . . . . . . . 11-13

    II.    Plaintiffs May Rely upon Connecticut
        Long-arm Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-16

    III.    Plaintiffs' Claims Are Properly Pleaded as to
        the Individual Defendants Lee Hennessee and Gradante . . . . . . . . . . . . . . . . 16-18

        A.    Plaintiffs Allege Facts Sufficient to Hold Individual
            Defendants Directly Liable for their Tortious Conduct . . . . . . . . . . . 16-17

        B.    Plaintiffs' Allegations Suffice to Justify Piercing
            the Corporate Veil . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

    IV.    Plaintiffs' CUTPA Claims Are Proper as to the
        Hennessee Defendants' Conduct. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

    V.    Plaintiffs Have Properly Pleaded the Hennessee Defendants'
        Breach of Fiduciary Duties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-21

    VI.    Plaintiffs Have Adequately Pleaded Negligence
        Against the Hennessee Defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-23

        A.    Plaintiffs' Allegations Sufficiently Plead Gross Negligence . . . . . . . . . . 22

        B.    The Exculpatory Clause Does Not Warrant Dismissal . . . . . . . . . . . 22-23

    VII.    Plaintiffs' Have Properly Pleaded Breach of the Implied
        Covenant Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23-24

    VIII.    Plaintiffs' Claims are Timely . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24-25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

*Federal Cases*

Agency Rent-A-Car Sys., Inc. v. Grand Rent-A-Car Corp.,
    98 F.3d 25 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Astroworks, Inc. v. Astroexhibit, Inc.,
    257 F. Supp. 2d 609 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
    171 F.3d 779 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Bastys v. Rothschild,
    No. 97 Civ. 5154 (CM)(GAY), 2000 U.S. Dist. LEXIS 17944,
    (S.D.N.Y. Nov. 20, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Carruthers v. Flaum,
    388 F. Supp. 2d 360 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Chambers v. Time Warner, Inc.,
    282 F.3d 147 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Cody v. Ward,
    954 F. Supp. 43 (D. Conn. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Cortec v. Sum Holding,
    949 F.2d 42 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Craig v. First Web Bill, Inc.,
    No. 04-CV-1012 (DGT), 2004 WL 2700128
    (S.D.N.Y. June 2, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Davis v. United States,
    No. 3:05cv1537 (PCD), 2006 U.S. Dist. LEXIS 24443
    (D. Conn. APR. 27, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

deCiutiis v. Nynex Corp.,
    No. 95 Civ. 9745 (PKL), 1996 U.S. Dist. LEXIS 13122
    (S.D.N.Y. Sept. 9, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Flickinger v. Harold C. Brown & Co.,
    947 F.2d 595 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Foman v. Davis,
    371 U.S. 178 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Fraternity Fund Ltd. v. Beacon Hill Asset Management, LLC,
    376 F. Supp. 2d 385 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Gray v. Seaboard Secs., Inc.,
    241 F. Supp. 2d 213 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Greystone Cmty. Reinvestment Assocs. v. First Union Nat'l Bank,
    No. 3:00CV871(CFD), 2002 U.S. Dist. LEXIS 2529
    (D. Conn. Jan. 25, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,
    763 F.2d 55 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

International Shoe Co. v. Washington,
    326 U.S. 310 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Kahn v. Kohlberg,
    970 F.2d 1030 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Lucente v. IBM,
    75 F. Supp. 2d 169 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Mashantucket Pequot Tribe v. Redican,
    309 F. Supp. 2d 309 (D. Conn. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

McCoy v. Goldberg,
    810 F. Supp. 539 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

MDCM Holdings, Inc. v. Credit Suisse First Boston Corp.,
    216 F. Supp. 2d 251 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 24

Norman v. Salomon Smith Barney, Inc.,
    350 F. Supp. 2d 382 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 22, 23

Nuclear Mgmt. Corp. v. Combustion Eng'g, Inc.,
    No. 3:94CV00403(WWE), 1997 U.S. Dist. LEXIS 970,
    (D. Conn. Jan. 22, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Phelps v. Kapnolas,
    308 F.3d 180 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Pierce v. Marano,
   No. 01 Civ. 3410 (JSR) (AJP), 2002 U.S. Dist. LEXIS 14870
   (S.D.N.Y. Aug. 13, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Siedel v. Lee,
   1994 U.S. Dist. LEXIS 21534, (D. Del. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Sunward Elec., Inc v. McDonald,
   362 F.3d 17 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Taylor v. Meirick,
   712 F.2d 1112 (7th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Transamerica Mortgage Advisors, Inc. v. Lewis,
   444 U.S. 11 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 23

Travelers Indemnity Company of Connecticut v. The Losco Group, Inc.,
   136 F. Supp. 2d 253 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

Travellers Int'l, A.G. v. Trans World Airlines,
   41 F.3d 1570 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.,
   216 F. Supp. 2d 198 (S.D.N.Y., 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Vertrue Inc. v. Meshkin,
   No. 3:05cv1809 (PCD), 2006 U.S. Dist. LEXIS 24844
   (D. Conn. Apr. 27, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Federal Statutes and Rules*

15 U.S.C. § 80b-6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

15 U.S.C. § 80b-15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Civ. P. 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fed. R. Civ. P. 15(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*State Cases*

Abrahams v. Young & Rubicam, Inc.,
    692 A.2d 709 (Conn. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Alaimo v. Royer,
    448 A.2d 207 (Conn. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

EBC I, Inc. v. Goldman Sachs & Co.,
    832 N.E.2d 26 (N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Gentile v. Garden City Alarm Co.,
    541 N.Y.S.2d 505 (N.Y. App. Div. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Hanks v. Powder Ridge Restaurant Corp.,
    885 A.2d 734 (Conn. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Kilduff v. Adams, Inc.,
    593 A.2d 478 (Conn. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

McPhillips v. Ellis,
    717 N.Y.S.2d 743 (N.Y. App. Div. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Michaud v. Gurney,
    362 A.2d 857 (Conn. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Mossberg v. Union Trust Co.,
    No. CV-93-0520230 S, 1994 Conn. Super. LEXIS 1236
    (Conn. Super. May 11, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Nadler v. Grayson Constr. Co.,
    No. CV020190015S, 2003, Conn. Super. LEXIS 1008
    (Conn. Super. Apr. 15, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Roach v. Ivari International Centers, Inc.,
    822 A.2d 316 (Conn. App. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Schneider v. Wein & Malkin LLP,
    Index No. 600400/03, 2004 NY Slip Op 51328U
    (N.Y. Supr. Nov. 1, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Sergeants Benevolent Assoc. Annuity Fund v. Renck,
    796 N.Y.S.2d 77 (N.Y. App. Div. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Seymour Ambulance v. Marcucio,
    No. CV054002561S, 2005 Conn. Super. LEXIS 3168
    (Conn. Super. Nov. 23, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

United Electrical Contractors, Inc. v. Progress Builders, Inc., et al.,
    603 A.2d 1190 (Conn. App. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Ventres et al. v. Goodspeed Airport, LLC,
    881 A.2d 937 (Conn. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Warner v. Konover,
    553 A.2d 1138 (Conn. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Zartolas v. Nisenfeld,
    440 A.2d 179 (Conn. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

### Other Authorities

Restatement (Second) of Conflict of Laws § 145 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

18B Am. Jur. 2d 607 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

N.Y.C.P.L.R. 302 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Conn. Gen. Stat. § 33-929(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Conn. Gen. Stat. § 42-110a, et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Conn. Gen. Stat. § 52-59b(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Plaintiffs Broad-Bussel Family Limited Partnership ("Broad-Bussel Family"), Marie-Louise Michelsohn, Michelle Michelsohn and Herbert Blain Lawson, Jr. (collectively, the "plaintiffs"), individually and on behalf of all other persons and entities similarly situated (the "Class" and "Hennessee Subclass"), respectfully submit this memorandum of law in opposition to the Motion to Dismiss filed by defendants Hennessee Group LLC (the "Hennessee Group"), Elizabeth Lee Hennessee ("Lee Hennessee") and Charles J. Gradante ("Gradante") (collectively, the "Hennessee Defendants").

## INTRODUCTION

This class action is brought by plaintiffs, who invested in hedge funds operated by one or more of the various Bayou entities (the "Bayou Hedge Funds" or the "Funds")[1], against the

---

[1]    The specific Funds include Bayou Super Fund, LLC, Bayou No Leverage Fund, LLC, Bayou Affiliates Fund, LLC, Bayou Accredited Fund, LLC, Bayou Offshore Fund, LLC, and Bayou Fund, LLC.

Specifically, the proposed Class includes those who, during the period December 31, 1996 through August 25, 2005 (the "Class Period"), invested funds or maintained investments in the Bayou Hedge Funds, and suffered damages thereby. Plaintiffs also bring this action on behalf of the Hennessee Subclass, which includes all members of the Class who, during the Class Period, were advised to invest in the Bayou Hedge Funds pursuant an investment advisory relationship with the Hennessee Group, and suffered damages thereby. The Hennessee Group was one of the primary firms which advised numerous investors to invest in the Bayou Hedge Funds.

Another defendant in this litigation, Citibank, N.A., has also moved to dismiss; plaintiffs' opposition to that motion is being filed separately. Defendants Jeffrey D. Fotta, Eqyty Research and Management, LLC, Eqyty Research and Management, LTD, and James G. Marquez have already filed Answers. None of the Bayou Defendants have answered or moved against the plaintiffs' Amended Complaint. However, on May 30, 2006, the Bayou Defendants filed for protection under the federal bankruptcy laws, with the exception of defendants Samuel Israel, Daniel Marino, Bayou Securities LLC, Bayou Securities Ltd., Bayou Offshore Fund, LLC, IM Partners, and IMG, LLC, who are thus in default in these proceedings. Defendants Faust Rabbach & Oppenheim LLP and Steven D. Oppenheim have been served and are expected to respond in the near future.

1

Hennessee Defendants and other defendants for their role in facilitating one of the biggest and most audacious hedge fund frauds in this country's history. Almost since their inception in 1996, the Bayou Hedge Funds essentially operated as a massive financial sham and Ponzi scheme that was orchestrated principally by Bayou's CEO and Chief Investment Officer, Samuel Israel, III ("Israel"), and its CFO, Daniel Marino ("Marino"). During the course of the Class Period, plaintiffs and members of the Class invested more than $450 million in the Bayou Hedge Funds.

In carrying out this massive fraud, Israel and Marino created and used various Bayou entities[2] (collectively, with the Bayou Hedge Funds, "Bayou" or the "Bayou Defendants") to fraudulently lure investors to invest hundreds of million of dollars in the Bayou Hedge Funds through a scheme of improper acts and blatant misrepresentations regarding the Funds' financial results -- using wholly falsified investment results, phoney résumés and even a fictitious, purportedly "outside" auditing firm, Richmond-Fairfield Associates ("Richmond-Fairfield") -- which in fact was actually owned exclusively by defendant Marino himself. However, it was simply not possible for the fraud to have been accomplished without the active and substantial participation -- and gross negligence -- of third party investment advisors such as the Hennessee Defendants.

Indeed, particularly critical to the success of the Bayou Defendants' fraud was the need for investors who would unknowingly pump hundreds of millions of dollars into this scheme. That need was met in significant part through the Hennessee Defendants who failed to properly investigate Bayou and its principals and steered tens of millions of dollars to Bayou by

---

[2]    The Bayou entities include Bayou Group LLC, Bayou Management LLC, Bayou Securities LLC, Bayou Securities, LTD, Bayou Partners LLC, Bayou Affiliates, LLC, Bayou Equities, LLC, IM Partners and IMG, LLC.

improperly advising their clients to invest in the Bayou Hedge Funds and directly facilitating those investments. The Hennessee Defendants held themselves out to plaintiffs and the Hennessee Subclass as highly experienced and competent experts, even self-proclaimed "pioneers", in hedge fund consulting. The Hennessee Defendants formed fiduciary relationships with these investors in rendering investment advisory services and advice. Plaintiffs and the Hennessee Subclass reposed trust and confidence in the integrity, fidelity and adequacy of the Hennessee Defendants' business practices.

Among the most basic services and duties the Hennessee Defendants owed to these investors was to conduct proper up-front due diligence and ongoing monitoring of the investments they recommended. Indeed, plaintiff Broad-Bussel Family and other Subclass member investors retained the Hennessee Defendants for the express purposes of conducting properly such due diligence prior to investing and for ongoing monitoring thereafter. However, despite the presence of numerous red flags regarding Bayou's finances, operations and principals, the Hennessee Defendants steered plaintiff Broad-Bussel Family and other investors to Bayou, but failed to reveal and advise plaintiff Broad-Bussel Family and other investors of a fraud that had been occurring for years. Among other things, these red flags included that Bayou purportedly been audited by an independent accounting firm when, in fact, that firm been established and owned by defendant Marino solely to facilitate the fraud; the existence of "whistle-blower" lawsuits filed by a former principal and a former employee of Bayou; known conflicts of interests in Bayou's operations; falsified corporate résumés for the Bayou entities; a falsified professional résumé for defendant Israel; Bayou's prior regulatory violations; and the Hennessee Defendants' inexplicable failure to obtain any independent verification or

3

confirmation as to the Bayou Hedge Funds' asset balances or securities transactions. Had the

Hennessee Defendants conducted proper due diligence and monitoring, they would have learned

the truth about Bayou or further investigated, and they would have never recommended that

Broad-Bussel Family invest in Bayou and/or alerted members of the Hennessee Subclass to reject

investing in the Bayou Hedge Funds or to withdraw their investments -- thus preventing or

mitigating the damages that were ultimately suffered by plaintiff Broad-Bussel Family and the

Hennessee Subclass when the Bayou Hedge Funds publicly collapsed in or about August 2005.

In addition, the principals of defendant Hennessee Group, defendants Lee Hennessee and

Gradante (the "Individual Defendants"), are liable for their own tortious conduct and because

they were the alter egos and controlled the acts of defendant Hennessee Group; personally

solicited and recommended Bayou investments to plaintiff Broad-Bussel Family and other

investors; personally failed to investigate properly Bayou and Bayou's principals; and received

direct or indirect compensation and were unjustly enriched thereby.

Contrary to the Hennessee Defendants' position, dismissal is not warranted here.

Plaintiffs' allegations comply fully with the requirements of Federal Rule of Civil Procedure

8(a), and state clearly a *prima facie* case against each of those Defendants. In addition, this Court

has personal jurisdiction over those defendants, and plaintiffs' claims are timely in all respects.

## SUMMARY OF PERTINENT FACTS

### A.    The Hennessee Defendants Held Themselves Out as Highly Experienced and Competent Hedge Fund Experts

In 1997, defendants Lee Hennessee and Charles Gradante co-founded the Hennessee

Group, a registered investment adviser and New York limited liability company based in New

4

York City. ¶¶ 39-41.[3] Since that time, both Lee Hennessee and Gradante have served as the

Managing Principals of the Hennessee Group. ¶¶ 40-41. In sum, the Hennessee Defendants

advise hedge fund investors on asset allocation, manager selection, ongoing monitoring of hedge

fund managers and asset reallocation. ¶¶ 39, 93. As a result of their positions and roles as

principals and officers of the Hennessee Group, defendants Lee Hennessee and Gradante

dominated and controlled the business operations and practices of the Hennessee Group, which is

essentially the alter ego of Lee Hennessee and Gradante. ¶¶ 5, 94, 113.

In holding themselves out to the investing community, including the members of the

Hennessee Subclass, the Hennessee Defendants touted themselves not only as highly experienced

and competent experts, but as self-proclaimed "pioneers" in hedge fund consulting. ¶ 89. For

example, the Hennessee Group website further proclaimed that, "We have the expertise and

experience to provide clients with a range of investment advisory services, which integrates

portfolio size, objectives and suitability." ¶ 91. Among other things, the Hennessee Group

touted its services based on supposedly superior research, due diligence and monitoring services,

claiming that it provide clients with various research tools: "Performance analytics; Comparative

analyses; Manager newsletters and interviews; Risk assessments; Due diligence reports; [and]

Monthly client statement 'monitors'". ¶ 92.

In addition, defendants Lee Hennessee and Charles Gradante personally and publicly

touted their personal expertise and the need for their advisory services. For example, the

Hennessee Group website posted an open letter to investors, personally signed by defendants Lee

---

[3]    The facts are taken from plaintiffs' Amended Complaint (the "complaint"),
citations to which are referenced as " ¶ ___".

Hennessee and Gradante, which states in pertinent part (¶ 90) (emphasis altered):

> *The investor is our client. Our clients trust us to establish*
> *realistic investment objectives and develop diversified hedge fund*
> *portfolios. To achieve these goals, we apply our time tested*
> *advisory processes and proprietary research tools.*

Defendant Gradante also personally touted publicly the value of and inherent need for competent consulting and advisory services for hedge fund investors. In a written submission to the SEC in connection with its May 2003 "Roundtable on Hedge Funds", Gradante claimed that hedge funds consultants like the Hennessee Defendants are "value added" in providing investors with guidance and advice. ¶ 93. Gradante further espoused the "special value" of and specific need for hedge fund consultants such as the Hennessee, based on the unique characteristics of hedge fund investments. ¶ 93 (explaining that the hedge fund industry "is relatively difficult to learn about from public information" and that "[d]eterminations about suitability and what is in the best interest of the client can be a difficult exercise without a consultant").

The Hennessee Defendants, including defendants Lee Hennessee and Gradante also specifically represented to Broad-Bussel Family and other members of the Hennessee Subclass that the integrity, skill, expertise and fidelity of a hedge fund were factors critical to their recommending hedge fund investments. ¶¶ 94, 104. Moreover, defendants Lee Hennessee and Gradante marketed themselves personally to plaintiff Broad-Bussel Family and the Hennessee Subclass as being experts in analyzing fund managers and selecting appropriate hedge fund investments for their clients. ¶ 94.

Further, defendants Lee Hennessee and Gradante *personally solicited* these investors to make investments in the Bayou Hedge Funds and *personally purported to investigate* Bayou for

6

plaintiff Broad-Bussel Family and the members of the Hennessee Subclass. ¶¶ 5, 94, 161.

Absent the purported reputation, skill and expertise of defendants Lee Hennessee and Gradante

and their alleged experience in properly investigating hedge fund investments, plaintiff Broad-

Bussel Family and members of the Hennessee Subclass would not have sought advisory services

and hedge fund recommendations from the Hennessee Defendants. ¶ 94.

### B. The Hennessee Defendants Served as Investment Advisors and Fiduciaries for Plaintiffs and the Hennessee Subclass

During the Class Period, the Hennessee Defendants entered into fiduciary relationships

with plaintiff Broad-Bussel Family and each of the members of the Hennessee Subclass to

provide investment advisory services. ¶¶ 43, 195. In connection with those relationships,

members of the Hennessee Subclass executed Investment Advisory Agreements with the

Hennessee Group. ¶¶ 95, 185, 187. In exchange for the Hennessee Defendants' investment

advisory services, the Hennessee Defendants received advisory fees. ¶¶ 39, 179.

The Hennessee Defendants' investment advisory services included, among other things,

their selecting and recommending investments for the members of the Hennessee Subclass. ¶¶

90, 91, 93, 94, 96, 106. In making such recommendations, the Hennessee Defendants were

obligated to conduct, and specifically represented that they had conducted, proper due diligence

of those investments prior to recommending. ¶¶ 5, 43, 92, 93, 95, 104, 107, 111, 113, 150, 153,

157, 178, 185, 187, 195. In addition, the Hennessee Defendants were also obligated to perform

ongoing monitoring of those recommended investments. ¶¶ 39, 43, 92, 93, 95, 107, 111, 113,

150, 153, 157, 178, 185, 187, 195. Nevertheless, during the Class Period, the Hennessee

Defendants recommended the fraudulent Bayou Hedge Funds to plaintiff Broad-Bussel Family

and members of the Hennessee Subclass, thereby facilitating investments -- and ultimately losses -- totaling in the of tens of millions of dollars by those investors.  ¶ 39.

### C.    The Bayou Hedge Fund Fraud

During the period between at least December 31, 1996 and August 25, 2005 (the "Class Period"), defendants Israel and Marino solicited, sold and operated the Bayou Hedge Funds -- a family of hedge funds based in Stamford, Connecticut.  ¶ 2.  Although touted and sold as legitimate investment vehicles, the Bayou entities were actually being operated as a massive financial sham and Ponzi scheme.  ¶¶ 2, 73, 124.  Specifically, Israel and Marino fraudulently lured investors during the Class Period to invest and maintain hundreds of millions of dollars in Bayou, through a scheme of improper acts and continuing misrepresentations and omissions regarding Bayou's business practices and financial results, operations and condition.  ¶¶ 86-88.

Misstatements about Bayou were made to the Class via weekly newsletters, monthly reports, quarterly reports, annual reports and investor conference calls, all of which portrayed that Bayou was being operated properly and in accordance with the law.  ¶ 60.

On or about July 27, 2005, defendant Israel sent Class member investors, including Plaintiffs, a letter that abruptly announced that the Bayou Hedge Funds would be closed at the end of July 2005.  ¶ 64.  During the next couple of weeks, defendant Israel sent Class member investors additional letters discussing the status of winding up the Bayou Hedge Funds and promising to return promptly all funds to the respective Class member investors.  ¶¶ 65-68.

On August 25, 2005, however, the financial press began to reveal that Bayou had long been operated as a fraud, with its principals having misappropriated literally millions of investor

dollars. ¶ 1. That day, *The New York Times* shocked Class members and other investors by reporting that "[s]tate and federal officials in Connecticut are investigating the possible collapse of the Bayou Group, a hedge fund and brokerage firm in Stamford that managed an estimated $400 million for its investors". ¶¶ 7, 69. On August 27, 2005, *The New York Post* reported that federal agents had seized boxes of records and other material from Bayou's offices in Stamford, Connecticut, amid fears that up to $500 million of its investors' money has "disappeared". ¶ 70.

Since Bayou's shocking collapse, numerous investigations have been commenced by state and federal agencies, and Bayou's two principals, defendants Israel and Marino, have pleaded guilty to multiple criminal counts, and face long prison sentences. ¶¶ 2, 8, 85.

### D.    The Hennessee Defendants Fail to Conduct Proper Due Diligence and Monitoring

In recommending the Bayou Hedge Funds to plaintiff Broad-Bussel Family and the members of the Hennessee Subclass, the Hennessee Defendants failed to perform their most basic advisory and fiduciary obligations -- to wit, conduct proper due diligence of the Bayou Hedge Funds and Bayou's principal officers, defendants Israel and Marino. ¶¶ 5, 43, 107, 110. The Hennessee Defendants knew that the integrity, skill, expertise and fidelity of the Bayou Hedge Funds, their manager, Bayou Management, and its officers were critical to a proper due diligence analysis and recommendation of investments in the Bayou Hedge Funds. ¶ 104. Nevertheless, the Hennessee Defendants simply ignored or failed to reveal numerous red flags with regard to the Bayou Hedge Funds which should have been properly investigated and timely reported to those investors, including for example (¶¶ 107, 111):

- A March 2003 civil lawsuit by a former Bayou principal, Paul Westerfelt, under Louisiana's Whistleblower Statute specifically alleging that Bayou was then

9

engaged in "violations of S.E.C. and N.A.S.D. rules and regulations";

- The Hennessee Defendants' receipt of letter from defendant Israel in November 2003, which specifically acknowledged the Westerfelt litigation and disclosed that another Bayou employee, Ray Oelkers, had filed a similar lawsuit;

- Bayou's overt conflicts of interests, in that Bayou made securities trades through, and paid commissions to, defendant Israel's personally-owned brokerage, Bayou Securities LLC;

- New York regulatory filings showing that the owner of Richmond-Fairfield -- Bayou's supposed independent auditor -- was Bayou's CFO, defendant Marino;

- The Hennessee Defendants' complete failure to obtain any independent verification or confirmation as to the Bayou Hedge Funds' asset balances and securities transactions;

- Bayou's acknowledgment that it paid commissions and percentage of sales to several outside marketers and promoters for the Bayou Hedge Funds;

- The falsified and grossly embellished résumé of defendant Israel -- the manager and Chief Investment Officer of the Bayou Hedge Funds;

- The falsified company résumés for Bayou and the Bayou Hedge Funds;

- The Connecticut Banking Commissioner's September 2003 sanction of Bayou Securities for failure to keep certain records in violation of Connecticut law; and

- Bayou's unusually favorable fees and terms for the Bayou Hedge Funds, which successfully served as enticements for investors.

As a result, plaintiff Broad-Bussel Family and the members of the Hennessee Subclass were left unaware and uninformed of the Bayou Defendants' massive fraud, and have lost tens of millions of dollars of their invested funds.

## ARGUMENT

In ruling on a motion to dismiss pursuant to Fed R. Civ. P. Rule 12(b)(6), courts are to accept all factual allegations in the complaint as true, as well as draw all reasonable inferences in

the plaintiffs' favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). At the motion to dismiss stage, the question is "'not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" Phelps v. Kapnolas, 308 F.3d 180, 184-85 (2d Cir. 2002) (quoting Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998)). Accordingly, the court's role in ruling on a Rule 12(b)(6) motion is "'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Pierce v. Marano, No. 01 Civ. 3410 (JSR) (AJP), 2002 U.S. Dist. LEXIS 14870, at *3 (S.D.N.Y. Aug. 13, 2002) (citation omitted).

## I.    CONNECTICUT LAW APPLIES TO PLAINTIFFS' CLAIMS

Defendants' assertion that New York law applies to plaintiffs' claims is incorrect. Hennessee Br. at p.6-8. Here, Connecticut clearly has the most significant relation to this litigation. Although Defendants' alleged misconduct in recommending and facilitating investments in Bayou was national in scope, the common denominator is that the fraudulent Bayou entities and their principals were based in Connecticut.

Under Connecticut choice of law analysis, "the court should apply the law of the state which, *with respect to the tort(s) at issue here*, has the most significant relationship to the occurrence and the parties." Vertrue Inc. v. Meshkin, No. 3:05cv1809 (PCD), 2006 U.S. Dist. LEXIS 24844, at *65 (D. Conn. Apr. 27, 2006) (emphasis added) (citing Restatement (Second)

of Conflict of Laws § 145).[4]  As was the case in <u>Vertrue Inc. v. Meshkin</u>, "[t]his case, rather than

involving the relationships 'inter se' of the Corporations, primarily involves an external third

party's tort claims" against two individuals and their limited liability company.  <u>Id.</u>  In

determining which state's law applies, the court should consider: "(a) the place where the injury

occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence,

nationality, place of incorporation and place of business of the parties, and (d) the place where

the relationship, if any, between the parties is centered."  <u>Id.</u>

Here, the injury and the conduct causing the injury -- <i>i.e.</i>, Defendants' tortiously deficient

due diligence of Bayou -- undeniably took place in Connecticut, where plaintiffs and other

investors invested in the Bayou Hedge Funds.  ¶¶ 13, 17-25, 56.  The scheme causing the injury,

though ultimately national in scope, was engineered in Stamford, Connecticut, the headquarters

and principal offices for the fraudulent Bayou Hedge Funds and all of the various Bayou and

related entities.  <u>Id.</u>  Hence, the parties' relationship centered in Connecticut, as the Hennessee

Defendants directed facilitated investors' investments into Connecticut-based hedge funds.

Further, to conduct due diligence and monitor Bayou properly as they were hired to do, the

Hennessee Defendants by definition were investigating Connecticut-based hedge funds and

Connecticut-based hedge fund managers.  <u>Id.</u>  In addition, the Hennessee Defendants' due

---

[4]     By Order of the Judicial Panel on Multidistrict Litigation entered April 18, 2006,
the instant action and other Bayou-related actions were transferred to this Court for pretrial
proceedings.  <u>See also</u> Broad Bussel Family L.P., et al. v. Bayou Group, LLC, et al., No. 06 Civ.
3026 (CM) (MDF), slip op. at p.3 (S.D.N.Y. June 6, 2006) (McMahon, J.) (holding that the
transferred cases will be "prepared for trial and then returned to the courts from whence they
came").  Because this case was originally brought in Connecticut federal court, Connecticut
choice of law principles apply in this, the transferee, forum.  <u>See</u> Lucente v. IBM, 75 F. Supp. 2d
169 (S.D.N.Y. 1999) (McMahon, J.).

diligence and monitoring activities involved travel to Connecticut.[5]  Accordingly, as in <u>Vertrue Inc. v. Meshkin</u>, it would certainly "not be unfair to apply Connecticut law." <u>Id.</u>  In any event, defendants should not be allowed to use a premature resolution of choice of law as a basis for dismissal of any of plaintiffs' claims at this juncture.

The Hennessee Defendants also argue that New York law should apply because of a choice of law provision that is allegedly set forth in the investment advisory agreements some Class members executed.  However, this argument ignores the fact that plaintiffs' federal law claims under §§ 206 and 215 of the Investment Advisers Act of 1940 ("IAA"), 15 U.S.C. § 80b-6 and 15 U.S.C. § 80b-15, seek rescission of those agreements.  ¶¶ 194-199; Complaint, Prayer for Relief, ¶ 7.  <u>See, e.g.</u>, <u>Transamerica Mortgage Advisors, Inc. v. Lewis</u>, 444 U.S. 11, 19 (1979) (providing plaintiffs the right to any and all remedies that are "the customary legal incidents of voidness", including restitution); <u>Norman v. Salomon Smith Barney, Inc.</u>, 350 F. Supp. 2d 382, 389 (S.D.N.Y. 2004) (holding that such rescinded contracts are void *ab initio*).  In addition, defendants Lee Hennessee and Charles Gradante do not claim to even be parties to such agreements, rendering any choice of law provision inapplicable to them personally.

## II.    PLAINTIFFS MAY RELY UPON CONNECTICUT LONG-ARM JURISDICTION

Contrary to Defendants' contentions, the relevant statutory provision governing personal jurisdiction over a foreign corporation is *not* Conn. Gen. Stat. § 33-929(f), which governs service of process on a foreign corporation.  Rather, the relevant statute is Conn. Gen.

---

[5]    In his Declaration in support of the Hennessee Defendants' motion to dismiss (at ¶ 6), defendant Gradante makes the self-serving assertion that the Hennessee Defendants' due diligence was performed "almost exclusively in New York."  Such a bald assertion of fact is unavailing on a motion to dismiss.

Stat. § 52-59b(a), which provides, in relevant part:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association, or over the executor or administrator of such nonresident individual, foreign partnership or foreign voluntary association, who in person or through an agent: (1) transacts any business within the state; (2) commits a tortious act within the state ....

C.G.S.A. § 52-59b(a); see Nadler v. Grayson Constr. Co., No. CV020190015S, 2003 Conn. Super. LEXIS 1008, at *13-14 (Conn. Super. Apr. 15, 2003) (holding the phrase "foreign partnership" may include a foreign limited liability company). See also Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir. 1985) (holding that jurisdiction need only be established "by a preponderance of the evidence", with any doubts being resolved in plaintiffs' favor).

At least two provisions of § 52-59b(a) provide jurisdiction over the Hennessee Defendants here, as Defendants have both *transacted business* within Connecticut and *committed a tortious act* within Connecticut.

In construing Section 52-59b, the Connecticut Supreme Court has interpreted and applied N.Y.C.P.L.R. 302, which served as a model for Section 52-59b. See, e.g. Zartolas v. Nisenfeld, 440 A.2d 179, 180-81 (Conn. 1981). See Mashantucket Pequot Tribe v. Redican, 309 F. Supp. 2d 309, 315 n. 6 (D. Conn. 2004). The Second Circuit, in turn, has held that the question of whether an out-of-state defendant "transacts business" in New York under N.Y.C.P.L.R. 302 is determined by considering a variety of factors, including (i) whether defendant has an on-going contractual relationship with a New York business, (ii) whether the contract was negotiated or executed in New York, (iii) whether the defendant has visited New York for the purpose of

14

meeting with parties to the contract regarding the relationship, (iv) whether the contract contains

any choice-of-law clause, and (v) whether the contract requires the defendant to send

communications or payments into the forum state or subjects the defendant to supervision there.

Sunward Elec., Inc v. McDonald, 362 F.3d 17, 22-23 (2d Cir. 2004); Agency Rent-A-Car Sys.,

Inc. v. Grand Rent-A-Car Corp., 98 F.3d 25, 29 (2d Cir. 1996).

     Applying those factors here, there is simply no doubt that the Hennessee Defendants are

subject fairly to Connecticut law.  In the course of their engagement with the plaintiffs alone, the

Hennessee Defendants:  facilitated the contract between the Connecticut-based hedge fund and

the plaintiffs to invest; solicited and recommended investments in the Connecticut-based hedge

funds; purportedly performed due diligence and ongoing monitoring of plaintiffs' investments in

Connecticut; received direct or indirect compensation by recommending Connecticut-based

hedge funds; and communicated or facilitated communications between themselves, investors

and the Connecticut hedge funds.  ¶¶ 5, 13.

     Further, plaintiffs also sufficiently allege that the Hennessee Defendants committed

tortious acts within Connecticut.  The prevailing precedents hold that the proper forum is the site

where the original event that caused the injury occurred.  See Bank Brussels Lambert v. Fiddler

Gonzalez & Rodriguez, 171 F.3d 779 (2d Cir. 1999) (holding the proper forum is the situs of

injury or the location of the original event which caused the injury, not the location where the

resultant damages are subsequently felt).  Here, the Hennessee Defendants are alleged to have

failed to diligently and reasonably investigate Connecticut-based hedge funds and their operators

which led directly to the plaintiffs' investments in those funds.  Accordingly, the events that

caused the injuries here cannot reasonably be said to be centered anywhere but Connecticut.

Hence, personal jurisdiction is plainly warranted, as the Hennessee Defendants could reasonably

expect to be sued in Connecticut for the conduct at issue in this case. See, e.g., Cody v. Ward,

954 F. Supp. 43, 47 (D. Conn. 1997); Agency Rent A Car Sys. v. Grand Rent A Car Corp., 98

F.3d 25, 32 (2d Cir. 1996); International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

## III.  PLAINTIFFS' CLAIMS ARE PROPERLY PLEADED AS TO THE INDIVIDUAL DEFENDANTS LEE HENNESSEE AND GRADANTE

### A.  Plaintiffs Allege Facts Sufficient to Hold Individual Defendants Directly Liable for Their Tortious Conduct

Plaintiffs' complaint establishes a strong basis for holding the Individual Defendants

personally responsible for tortious acts they are alleged to have committed, specifically:  (1)

violating the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a, *et*

*seq.*, (¶¶ 128-134); (2) breaching their fiduciary duties (¶¶ 147-154); (3) committing negligence

(¶¶ 160-164); and (4) being unjustly enriched as a result of their actions (¶ 218).

If a corporate manager commits a tort in the course of corporate business, he or she is

liable under tort or agency rules.  The general, if not universal, rule is that an officer of a

corporation who takes part in the commission of a tort by a corporation is personally liable. See

Ventres et al. v. Goodspeed Airport, LLC, 881 A.2d 937, 961-62 (Conn. 2005) (citing 18B Am.

Jur. 2d 607, Corporations §607 for the proposition that "a director or officer [of a defendant

corporation] who commits the tort or who directs the tortious act done, or participates or operates

therein, is liable to third persons injured thereby, *even though liability may also attach to the*

*corporation for the tort*") (emphasis added); McPhillips v. Ellis, 717 N.Y.S.2d 743, 745 (N.Y.

App. Div. 2000) (noting that corporate officers can be personally liable who commit or

participate in the commission of a tort, even if the commission or participation is for the

16

corporation's benefit); Kilduff v. Adams, Inc., 593 A.2d 478, 488 (Conn. 1991) ("It is black letter law that an officer of a corporation who commits a tort is personally liable to the victim regardless of whether the corporation is itself liable.").[6]

### B.    Plaintiffs' Allegations Suffice to Justify Piercing the Corporate Veil

In the alternative, plaintiffs' allegations against the Individual Defendants are sufficient to justify the Court piercing the corporate veil and holding Lee Hennessee and Charles Gradante liable for the acts and omissions of the Hennessee Group.

Connecticut courts will pierce the corporate veil when a claimant alleges that individual corporate officers, directors or shareholders exercised (1) "complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had no separate mind, will or existence of its own"; (2) "that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of the plaintiff's legal rights"; and (3) "that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." United Electrical Contractors, Inc. v. Progress Builders, Inc., et al., 603 A.2d 1190, 1193-94 (Conn. App. 1992) (citations and quotations omitted).[7]

---

[6]    The cases cited by the Hennessee Defendants, by contrast, are inapplicable because they involve claims seeking to impose liability on corporate officers for tortious interference with contracts entered into on behalf of their corporations. See, e.g., Craig v. First Web Bill, Inc., No. 04-CV-1012 (DGT), 2004 WL 2700128, at *9-10 (S.D.N.Y. June 2, 2005).

[7]    New York law is generally in accord. United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc., 216 F. Supp. 2d 198, 223 (S.D.N.Y., 2002) ("[E]ither when there is a fraud or when the corporation has been used as an alter ego,' and under the alter ego theory of liability, a veil-piercing claimant may prevail by 'identifying some non-fraudulent "wrong"

Plaintiffs' complaint alleges specifically that the Individual Defendants acted in concert with, dominated and otherwise controlled the operations of the Hennessee Group; planned, orchestrated and executed the wrongdoing on behalf of themselves individually and through the Hennessee Group; controlled and operated the Hennessee Group for their own personal benefit and as their own alter ego; and that the acts and omissions of the Hennessee Group should be attributed to them personally. ¶ 113. These allegations are sufficient under both Connecticut and New York law, and indeed go beyond the liberal pleading requirements of Fed. R. Civ. P. 8(a). Accord Astroworks, 257 F. Supp. 2d at 615.

## IV.    PLAINTIFFS' CUTPA CLAIMS ARE PROPER AS TO HENNESSEE DEFENDANTS' CONDUCT

The Hennessee Defendants assert that plaintiffs' Connecticut Unfair Trade Practices Act ("CUTPA") claim is based on the purchase of securities and that since CUTPA does not apply to the purchase or sale of securities, the claim must be dismissed. (Hennessee Br. at 13-14.) Defendants are incorrect because plaintiffs' CUTPA claim is premised on the allegedly deficient hedge fund advisory services that the Hennessee Defendants rendered to plaintiffs and Class member investors. Where, as here, a CUTPA claim is based on common law tort causes of action, the CUTPA claim should not be dismissed; this remains true even if it involves a securities transaction. See, e.g., Greystone Cmty. Reinvestment Assocs. v. First Union Nat'l Bank, No. 3:00CV871(CFD), 2002 U.S. Dist. LEXIS 2529, at *3-4 (D. Conn. Jan. 25, 2002)

---

attributable to the defendant's complete domination' of the corporation in question.") (citations omitted). Allegations of veil-piercing not premised on fraud are subject to the liberal notice-pleading requirements of Fed. R. Civ. P. 8(a). See Astroworks, Inc. v. Astroexhibit, Inc., 257 F. Supp. 2d 609, 615 n.9 (S.D.N.Y. 2003).

(rejecting dismissal of CUTPA claim grounded in tort which involves securities).[8]

## V. PLAINTIFFS HAVE PROPERLY PLEADED THE HENNESSEE DEFENDANTS' BREACH OF FIDUCIARY DUTIES

Plaintiffs have alleged adequately a breach of fiduciary duty claim against the Hennessee Defendants; this remains so regardless of whether New York or Connecticut law is applied.

To state a cognizable claim for breach of fiduciary duty under New York law, a plaintiff must allege: (1) the existence of a fiduciary relationship; (2) a knowing breach of a duty that relationship imposes; and (3) damages. Carruthers v. Flaum, 388 F. Supp. 2d 360, 381 (S.D.N.Y. 2003) (McMahon, J.) (citations omitted). In determining whether a fiduciary relationship exists, New York courts will "'look to whether a party reposed confidence in another and reasonably relied on the other's superior expertise or knowledge.'" Sergeants Benevolent Assoc. Annuity Fund v. Renck, 796 N.Y.S.2d 77, 79 (N.Y. App. Div. 2005).[9]

---

[8]        Plaintiffs' CUTPA claim involve advisory services and thus is different than the cases Defendants cite which do not involve hedge fund advisory services but rather traditional securities fraud claims. See, e.g., Nuclear Mgmt. Corp. v. Combustion Eng'g, Inc., No. 3:94CV00403(WWE), 1997 U.S. Dist. LEXIS 970, at *13 n.1 (D. Conn. Jan. 22, 1997) (noting a difference between traditional cases regarding the purchase and sale of securities and cases that merely involve securities). Here, by contrast, the CUTPA claims focus on the parties' advisory relationship. Because there is no allegation of securities violations against the Hennessee Defendants, plaintiffs' CUTPA claim should not be dismissed. See, e.g., Mossberg v. Union Trust Co., No. CV-93-0520230 S, 1994 Conn. Super. LEXIS 1236, at *3-4 (Conn. Super. May 11, 1994) (sustaining CUTPA claim where there is no allegation of securities violations, but only a claim that relates to defendant's management).

[9]        New York courts have routinely found that a fiduciary relationship exists between investment advisors and their clients. See, e.g., EBC I, Inc. v. Goldman Sachs & Co., 832 N.E.2d 26, 33 (N.Y. 2005); Fraternity Fund Ltd. v. Beacon Hill Asset Management, LLC, 376 F. Supp. 2d 385, 415 (S.D.N.Y. 2005); Sergeants Benevolent Assoc. Annuity Fund, 796 N.Y.S.2d at 79. The law in Connecticut is in accord. See, e.g., Alaimo v. Royer, 448 A.2d 207, 209 (Conn. 1982) (refusing to "define a fiduciary relationship in precise detail ... [so as not] to exclude new situations, choosing instead to leave the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other").

Here, plaintiffs sufficiently allege all of the requisite elements. Specifically, plaintiffs allege that they "reposed confidence in [the Hennessee Defendants] and reasonably relied on [the Hennessee Defendants'] superior expertise or knowledge" (¶¶ 89, 92, 94); that the Hennessee Defendants held themselves out to be highly experienced and competent experts, even self-proclaimed "pioneers", in hedge fund consulting (¶ 89); and that the Hennessee Defendants touted their "value added" expertise in providing investors with guidance and advice, absent which investors would be unlikely to sufficiently understand the unique characteristics of hedge fund investments. ¶¶ 90, 94. Second, plaintiffs have specified multiple instances of the Hennessee Defendants' alleged breaches of those fiduciary duties -- including notably Defendants' failure to conduct any meaningful due diligence or monitoring of Bayou or the Bayou Hedge Funds (¶¶ 5, 43, 106-111), and failure to uncover or disclose numerous red flags concerning the Bayou Defendants' operations, see, e.g., ¶¶ 106-111. Finally, plaintiffs have alleged that they suffered damages caused by the Hennessee Defendants' breaches, see, e.g., ¶¶ 111, 113, 154. Accordingly, plaintiffs have more than adequately pleaded their breach of fiduciary duty claims.

Contrary to the Hennessee Defendants' assertions, an action for breach of fiduciary duty does not require a showing of "deceitful intent," Hennessee Br. at 14. See McCoy v. Goldberg, 810 F. Supp. 539, 548 (S.D.N.Y. 1993) (noting that "the principle articulated by Justice Cardozo in [Meinhard v. Salmon, 249 N.Y. 458, 464 (N.Y. 1928)] – that a fiduciary may be held liable without proof of deceitful intent – has long remained the uniform law of New York") (citations omitted); see also Schneider v. Wein & Malkin LLP, Index No. 600400/03, 2004 NY Slip Op 51328U, at *18 (N.Y. Supr. Nov. 1, 2004) (stating that "[d]eceitful intent is not an element of a

20

cause of action for breach of fiduciary duty as it has consistently been articulated by the New

York courts (citations omitted) .... ***Federal cases to the contrary on which defendants rely are***

***based on a misreading of New York law***") (emphasis added). Accordingly, the Hennessee

Defendants' reliance on Flickinger v. Harold C. Brown & Co., 947 F.2d 595 (2d Cir. 1991), is

clearly misplaced. See also Fraternity Fund Ltd. v. Beacon Hill Asset Management, LLC, 376 F.

Supp. 2d 385, 415 (S.D.N.Y. 2005) (finding Flickinger is "not persuasive authority for the

proposition that deceitful intent is an element of a breach of fiduciary duty claim").

Further, the determination of a fiduciary relationship and a breach are in generally issues

usually left to the trier of fact and are inappropriate to resolve on a motion to dismiss. See, e.g.,

MDCM Holdings, Inc. v. Credit Suisse First Boston Corp., 216 F. Supp. 2d 251 (S.D.N.Y. 2002)

(sustaining breach of fiduciary duty claim); Seymour Ambulance v. Marcucio, No.

CV054002561S, 2005 Conn. Super. LEXIS 3168, *7-8 (Conn. Super. Nov. 23, 2005).

## VI.    PLAINTIFFS HAVE ADEQUATELY PLEADED NEGLIGENCE AGAINST THE HENNESSEE DEFENDANTS

Defendants contend that plaintiffs have not pleaded sufficiently a negligence claim.

Defendants also contend that plaintiffs' allegations cannot amount to a claim for gross

negligence. Neither contention is correct.

At the outset, Defendants' argument seeks to bypass the well-pleaded allegations in

plaintiffs' complaint -- namely, that as plaintiffs' investment advisors, the Hennessee Defendants

owed investors a duty of care, that Defendants failed in that duty, and that investors as a result

lost millions of dollars. The elements of a negligence claim under both Connecticut and New

York law include a duty to the plaintiff; breach of that duty; and an actual injury caused by the

21

breach. See Gray v. Seaboard Secs., Inc., 241 F. Supp. 2d 213, 222 (S.D.N.Y. 2003); Roach v.

Ivari International Centers, Inc., 822 A.2d 316, 320 (Conn. App. 2003) (accord). Here, plaintiffs

allege in detail Defendants' abdication of their duties owed to investors and the damages and that

were caused thereby. These allegations are plainly sufficient under Fed. R. Civ. P. 8(a), and

remain so whether the standard applied to plaintiffs' claims is ordinary negligence, gross

negligence or even recklessness.

### A.    Plaintiffs' Allegations Sufficiently Plead Gross Negligence

Connecticut does not recognize the tort of gross negligence as a basis for liability separate

from negligence. Hanks v. Powder Ridge Restaurant Corp., 885 A.2d 734, 748 (Conn. 2005).

However, courts in Connecticut have routinely held that "the conclusion of negligence is

necessarily one of fact," and that "issues of negligence are ordinarily not susceptible of summary

adjudication but should be resolved by trial in the ordinary manner." Michaud v. Gurney, 362

A.2d 857, 859 (Conn. 1975). Accord Abrahams v. Young & Rubicam, Inc., 692 A.2d 709, 712

(Conn. 1997).[10] Here, as noted above, even if the elements of plaintiffs' negligence claims are

scrutinized fully at this stage, plaintiffs have pleaded adequately each of the requisite elements --

including duty (¶¶ 157, 161), breach (¶¶ 158-61), causation and damages (¶¶ 162-64).

### B.    The Exculpatory Clause Does Not Warrant Dismissal

Defendants contend that clauses in their advisory agreements with certain Class members

---

[10]    By contrast, New York does appear to recognize gross negligence as a separate tort, though like Connecticut, the issue of gross negligence is a question of fact for a jury, or at least must await full discovery to be adjudicated properly. Travelers Indemnity Company of Connecticut v. The Losco Group, Inc., 136 F. Supp. 2d 253, 256-257 (S.D.N.Y. 2001)(McMahon, J.); Gentile v. Garden City Alarm Co., 541 N.Y.S.2d 505, 509 (N.Y. App. Div. 1989).

insulates them from plaintiffs' negligence claims. However, as demonstrated above, plaintiffs'

claims under the IAA seek rescission of those investment advisory agreements, including these

clauses; such relief that has been uniformly recognized in analogous cases. See, e.g., Norman v.

Salomon Smith Barney, Inc., 350 F. Supp. 2d at 389 (citing Transamerica Mortgage Advisors,

Inc. v. Lewis, 444 U.S. at 19). By rescinding those agreements, Defendants cannot insulate

themselves from any liabilities.[11]

## VII. PLAINTIFFS HAVE PROPERLY PLEADED BREACH OF THE IMPLIED COVENANT CLAIMS

Plaintiffs' claim for breach of the implied covenant is likewise sufficient under both New

York and Connecticut law. "Under New York law, the implied covenant of good faith and fair

dealing inheres in every contract." Travellers Int'l, A.G. v. Trans World Airlines, 41 F.3d 1570,

1575 (2d Cir. 1994). "Even when a contract confers decision-making power on a single party,

the resulting discretion is nevertheless subject to an obligation that it be exercised in good faith."

Id. Accord Warner v. Konover, 553 A.2d 1138 (Conn. 1989).

Plaintiffs allege that the Hennessee Group failed to act in good faith or fairly carry out the

spirit of advisory agreement because it recommended investment in the Bayou Hedge Funds

without any meaningful due diligence -- thus exemplifying a complete disregard for the fiduciary

recommendations it undertook to render. Whether plaintiffs' claim encompasses conduct falling

---

[11]     Further, even if plaintiffs do not prevail on their IAA claim and the exculpatory
clause applies, Defendants concede that their exculpatory clauses specifically except acts of gross
negligence and recklessness, which are among the claims alleged here. See ¶¶ 133, 160, 163.
Accordingly, these clauses provide no basis for dismissal in circumstances such as here. See
generally Travelers Indemnity Company of Connecticut v. The Losco Group, Inc., 136 F. Supp.
2d at 256-57 (noting that "while waiver clauses in commercial contracts 'are enforceable to limit
recovery for claims based on ordinary negligence, they will not preclude recovery in tort or
breach of contract where the losses are the result of gross negligence.'") (citation omitted)).

within the parties' reasonable expectations, or whether plaintiff can ultimately prove its implied

covenant claim, are not issues that should be resolved on a motion to dismiss.  <u>Accord</u>  <u>MDCM</u>

<u>Holdings, Inc. v. Credit Suisse First Boston Corp.</u>, 216 F. Supp. 2d at 260 (S.D.N.Y. 2002);

<u>deCiutiis v. Nynex Corp.</u>, No. 95 Civ. 9745 (PKL), 1996 U.S. Dist. LEXIS 13122 (S.D.N.Y.

Sept. 9, 1996).

## VIII.  <u>PLAINTIFFS' CLAIMS ARE TIMELY</u>

Defendants correctly assert that the statute of limitations applicable to the plaintiffs'

claim under the IAA is one year from the discovery and three years from the alleged violation.

However, Defendants conspicuously fail to acknowledge that the courts have long recognized a

"continuing wrong theory" which provides that "if a plaintiff is injured by a defendant's conduct

which is part of a continuing course of conduct, an action does not violate the statute of

limitations if the last act evidencing the continuing conduct falls within the limitations period."[12]

Here, plaintiffs' complaint adequately alleges a continuing course of conduct by

Defendants in violation of the IAA.  <u>See</u> ¶¶ 92, 95, 190-99 (alleging that as part of their advisory

services, the Hennessee Defendants were to conduct due diligence and to provide "[m]onthly

client statement 'monitors'" and "continuous and ongoing" investment advice to the plaintiff).

Thus, the alleged violations first began when plaintiffs invested in Bayou, but they were not

concluded until much later, when the Bayou Defendants stole Class member funds; here, plaintiff

---

[12]     <u>Siedel v. Lee</u>, 1994 U.S. Dist. LEXIS 21534, at * 9-10 (D. Del. 1994) (citing
<u>Keystone Ins. Co. v. Houghton</u>, 863 F.2d 1125, 1129 (3d Cir. 1988)).  <u>See also</u> <u>Kahn v.</u>
<u>Kohlberg</u>, 970 F.2d 1030, 1039 (2d Cir. 1992) (holding that "[f]ederal courts do recognize a
continuing wrong theory" and the "doctrine applies when the defendant's conduct causes plaintiff
to sustain damages after the time when the statue of limitations would have expired if it
commenced at the time of defendant's first act...[i]nstead, the claim accrues each time the
plaintiff sustains damages").  <u>Accord</u> <u>Taylor v. Meirick</u>, 712 F.2d 1112, 1119 (7th Cir. 1983).

Broad-Bussel Family first invested as early as December 2003, with the last investment occurring in June 2005. In addition, the violations continued as the Hennessee Defendants continued to recommend Bayou and failed to advise plaintiffs of the Bayou fraud. For example, plaintiffs allege they received monthly monitoring reports, including for March, April, and May 2005 -- constituting further acts evidencing the continuing course of Defendants' misconduct. Moreover, discovery of the Bayou Defendants' fraud did not occur until August 25, 2005, when the financial press began to reveal that Bayou was a fraud. ¶¶ 1, 7, 69. Because plaintiffs' IAA claims were filed at least by March 2006,[13] all of the Hennessee Defendants' violations are well within the relevant limitations period.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court deny the Hennessee Defendants' motion to dismiss.[14]

---

[13]    Under Fed. R. Civ. P 15(c), the claim relates back to the filing of plaintiffs' original Complaint on November 17, 2005. See Bastys v. Rothschild, No. 97 Civ. 5154 (CM)(GAY), 2000 U.S. Dist. LEXIS 17944, at *124-25 (S.D.N.Y. Nov. 20, 2000) (McMahon, J.) (holding that defendant had "adequate notice" of the new claims based on "the general fact situation alleged in the original pleading"). Nevertheless, plaintiffs' claims are timely even if the date of filing of the Amended Complaint is employed. Cf. Davis v. United States, No. 3:05cv1537 (PCD), 2006 U.S. Dist. LEXIS 24443, at *16 (D. Conn. Apr. 27, 2006) (denying motion to dismiss; finding issue of timeliness is more appropriate for summary judgment). Indeed, statutes of limitation issues also typically involve factual issues unsuitable for resolution on a barren record.

[14]    If for any reason the Court were inclined to grant the Hennessee Defendants' motion, plaintiffs request an opportunity to amend. See Cortec v. Sum Holding, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."); Foman v. Davis, 371 U.S. 178, 182 (1962) (holding that "refusal to grant the leave without any justifying reason appearing for the denial is ... merely abuse of that discretion and inconsistent with the spirit of the Federal Rules").

Dated:  June 30, 2006
New York, New York

Respectfully submitted,

BERGER & MONTAGUE, P.C.

Merrill G. Davidoff, Esq.
Lawrence J. Lederer, Esq.
Lane L. Vines, Esq.
1622 Locust Street
Philadelphia, PA  19103
Telephone:  (215) 875-3000
Fax:  (215) 875-4604

KOSKOFF, KOSKOFF & BIEDER, P.C.
William M. Bloss, Esq.
Neal A. DeYoung, Esq.
350 Fairfield Avenue
Bridgeport, CT  06604
Telephone:  (203) 336-4421
Fax:  (203) 368-3244

*Attorneys for Broad-Bussel Family Limited
Partnership, Marie-Louise Michelsohn, Michelle
Michelsohn and Herbert Blaine Lawson, Jr.*

## CERTIFICATE OF SERVICE

I, Lane L. Vines, hereby certify that I caused today the following to be electronically filed with the Clerk of Court by using the ECF System: Plaintiffs' Memorandum of Law in Opposition to the Hennessee Defendants' Motion to Dismiss. The foregoing filing will be served on counsel electronically through the Court's ECF System, and by U.S. First Class mail on any counsel that has not signed up for electronic service. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

Dated: June 30, 2006

_____
Lane L. Vines