UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE:  BAYOU HEDGE FUNDS INVESTMENT
      LITIGATION

)
)
)
)
)
)
)
)
)
)
)

NO. 7:06-md-01755-CM

*Broad-Bussel Family LP, et al. v. Bayou Group,*
*LLC, et al., D. Connecticut, C.A. No. 3:05-1762*

---

**MEMORANDUM OF THE DEFENDANTS**
**FAUST RABBACH & OPPENHEIM LLP AND STEVEN OPPENHEIM**
**IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

RIVKIN RADLER LLP
Attorneys for Defendants
FAUST RABBACH & OPPENHEIM LLP and
STEVEN D. OPPENHEIM
926 Reckson Plaza
Uniondale, New York 11556-0926
(516) 357-3000

Shari Claire Lewis (SCL-0527)
Janice J. DiGennaro (JJD-9706)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

FACTS.............................................................................................................................. 2

POINT I - THE CONCLUSORY ALLEGATIONS OF THE AMENDED
      COMPLAINT NEITHER STATE A CLAIM FOR RELIEF NOR
      SATISFY MINIMAL NOTICE PLEADING REQUIREMENTS ............................... 5

  A.  Plaintiffs' Conclusory Allegations Are Not Entitled To Any Favorable Inferences............ 5

  B.  The Complaint Fails To Meet Even The Minimal  Notice Pleading
      Requirement Of Rule 8(a) ...................................................................................... 6

POINT II - NO CLAIM FOR NEGLIGENCE MAY BE STATED
      AS A MATTER OF LAW....................................................................................... 7

POINT III - PLAINTIFFS CANNOT STATE ANY CLAIM FOR
      AIDER  AND ABETTOR LIABILITY AGAINST FR&O ..................................... 10

  A.  Plaintiffs Allege No Facts Suggesting That the Faust
      Rabbach Defendants Had Knowledge of Bayou's Alleged Fraud .................................... 11

  B.  Plaintiffs Allege No Facts that Show "Substantial Assistance"
      by FR&O ................................................................................................................ 15

POINT IV- THE ALLEGATIONS OF THE COMPLAINT FAIL TO MEET
      THE PARTICULARITY REQUIREMENTS OF RULE 9(b).................................... 19

POINT V - THE PLAINTIFFS CANNOT STATE A CLAIM FOR UNJUST
      ENRICHMENT BASED UPON FR&O'S RECEIPT OF LEGAL
      FEES FOR SERVICES RENDERED TO BAYOU ................................................. 21

  A.  FR&O Did Not Receive Any Unjust Direct  Benefit From Plaintiffs................................ 22

  B.  Plaintiffs Cannot Demonstrate That FR&O  Received A Benefit
      That They Are Not Entitled To Keep...................................................................... 24

  CONCLUSION .......................................................................................................... 25

1951870 v2

i

## TABLE OF AUTHORITIES

### CASES

*Ahmed v. Trupin*, 809 F. Supp. 1100 (S.D.N.Y. 1993) ...................................................9

*Albany Welfare Rights Org. Day Care Ctr., Inc. v. Schreck*, 463 F.2d 620
(2d Cir. 1972), *cert. denied,* 410 U.S. 944 (1973)........................................................5

*Bazak International Corp. v. Tarrant Apparel Group*, 347 F. Supp. 2d 1
(S.D.N.Y. 2004)........................................................................................................22

*Beekman Investment Partners. L.P. v. Alene Candles, Inc.*, 2006 U.S. Dist.
LEXIS 5341 (S.D.N.Y. Feb. 14, 2006) ....................................................................23

*Biller Associates v. Peterken*, 269 Conn. 716, 849 A.2d 847 (2004).............................8

*Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57
(2d Cir. 1985) .........................................................................................................18

*Calore v. Town of Stradford*, 2001 Conn. Super. LEXIS 73
(Sup. Ct. Fairfield Dist., Jan. 5, 2001)................................................................11, 12

*Chief Executive Officers Club v. CEO China Clubs China Ltd.*, 2006 Bankr.
LEXIS 482 (Bankr. S.D.N.Y. Mar. 8, 2006) ..........................................................20

*Colonial Surety Company v. Lenard Engineering, Inc.*, 2004 Conn. Super.
LEXIS 3421 (Sup. Ct. Waterbury November 10, 2004) ..........................................8

*Cortec Industries, Inc. v. Sum Holding, L.P.*, 949 F.2d 42 (2d Cir. 1991),
*cert denied,* 503 U.S. 960 (1992)............................................................................3

*Crossland Savings FSB v. Rockwood Insurance Company*, 692 F. Supp. 1510
(S.D.N.Y. 1988)........................................................................................................8

*Cumis Insurance Society, Inc. v. Windsor Bank & Trust*, 736 F. Supp. 1226
(D.Conn. 1990) ...........................................................................................11, 16, 17, 18

*Decker v. Massey-Ferguson, Ltd.*, 681 F. 2d 111 (2d Cir. 1982)................................21

*Denny v. Barber*, 576 F.2d 465 (2d Cir. 1978).........................................................20

*Dover Ltd. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 303 (S.D.N.Y. 2006) .......................19

*Dugan v. Mobile Medical Testing Services, Inc.*, 265 Conn. 791,
830 A.2d 752 (2003)................................................................................................7

*Elias v. United Nations Plaza Tower Associates LLP.*, 2000 U.S. Dist.
    LEXIS 11929 (S.D.N.Y. Aug. 21. 2000) ............................................................24

*Fabri v. Untited Technologies International, Inc.*, 387 F.3d 109 (2d Cir. 2004)..........................24

*Fed. Treasury Enterprise Sojuzplodoimport v. Spirits International N.V.*,
    425 F. Supp. 2d 458 (S.D.N.Y. 2005) ................................................................23

*Filler v. Hanvit Bank*, 339 F. Supp. 2d 553 (S.D.N.Y. 2004),
    *aff'd,* 156 Fed. Appx. 413 (2d Cir. 2005) ................................................10, 12, 18

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994),
    *cert. denied,* 513 U.S. 1079 (1995).........................................................................5

*Fraternity Fund Ltd. v. Beacon Hill Asset Management LLC*,
    376 F. Supp. 2d 385 (S.D.N.Y. 2005) ..............................................6, 13, 14

*Friedman v. Arizona World Nurseries Ltd. Ptrs.*, 730 F. Supp. 521
    (S.D.N.Y. 1990), *aff'd without op.*, 927 F.2d 584 (2d Cir. 1991).........................21

*Friedman v. Hartman*, 1994 U.S. Dist LEXIS 3404 (S.D.N.Y. March 23, 1994) ...................9, 17

*Gould v. Mellick and Sexton*, 263 Conn. 140, 819 A.2d 219 (2003)........................................7, 9, 17

*Griffin v. Anslow*, 17 A.D.3d 889, 793 N.Y.S.2d 615 (3d Dep't 2005) ...........................................9

*Hayden v. Feldman*, 753 F. Supp. 116 (S.D.N.Y. 1990)..........................................................21

*IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049 (2d Cir. 1993),
    *cert. denied,* 513 U.S. 822 (1994).........................................................................5

*Kaye v. Grossman*, 202 F.3d 611 (2d Cir. 2000)....................................................................22

*Kolbeck v. LIT America*, 939 F. Supp. 240 (S.D.N.Y. 1996),
    *aff'd without op.*, 152 F.3d 918 (2d Cir. 1998) ............................................11, 12

*Krawczyk v. Stingle*, 208 Conn. 239, 543 A.2d 733 (1988) ..............................................................8

*Lieberman v. Emigrant Mortgage Co.*, 2006 U.S. Dist. LEXIS 40891
    (D. Conn. June 2, 2006)......................................................................................23

*McCarthy v. Sturm Ruger & Co., Inc.*, 916 F. Supp. 366 (S.D.N.Y. 1996),
    *aff'd,* 119 F.3d 148 (2d Cir. 1997) ........................................................................7

*McLaughlin v. Anderson*, 962 F.2d 187 (2d Cir. 1992)....................................................................19

*Michelsen v. Brush*, 224 F. Supp. 951 (E.D.N.Y. 1963) ................................................. 6

*National Westminster Bank USA v. Weksel*, 124 A.D.2d 144, 511 N.Y.S.2d
    626 (1st Dep't 1987), *appeal denied*, 70 N.Y.2d 604,
    519 N.Y.S.2d 1027 (1987)............................................................. 8, 15, 17, 21

*Nolfi v. Melson*, 2000 Conn. Super. LEXIS 1521
    (Sup. Ct. Bridgeport Dist. June 12, 2000) ......................................................... 23

*Palmieri v. Lee*, 1999 Conn. Super. LEXIS 3201
    (Conn. Super. Ct. Nov. 24, 1999)............................................................. 12, 18

*Pantelopoulos v. Pantelopoulus*, 2005 Conn. Super.
    LEXIS 981 (Sup. Ct. Jud. Dist. March 31, 2005).................................................. 7

*In re: Parmalat Securities Litigation*, 412 F. Supp. 2d 302 (S.D.N.Y. 2006).................................. 5

*Pope v. Rice*, 2005 U.S.Dist LEXIS 4011
    (S.D.N.Y. March 15, 2005) ................................................... 6, 8, 10, 12, 16, 17, 20

*Redhead v. Winston & Winston, P. C.*, 2002 U.S. Dist
    LEXIS 17780 (S.D.N.Y. Sept. 20, 2002) ......................................................... 5, 8

*In re Rezulin Products Liability Litigation*, 392 F. Supp. 2d 597 (S.D.N.Y. 2005)........................ 7

*Richardson v. Artrageous, Inc.*, 1993 U.S. Dist. LEXIS 15567
    (S.D.N.Y. Nov. 4, 1993)................................................................. 24, 25

*Sable v. Southmark/Envicon Capital Corp.*, 819 F. Supp. 324 (S.D.N.Y. 1993)....................20, 21

*Sathianathan v. Smith Barney, Inc.*, 2006 U.S. Dist. LEXIS 9828
    (S.D.N.Y. Feb. 24, 2006).................................................................... 19

*Segal v. Gordon*, 467 F. 2d 602 (2d Cir. 1972) ........................................................... 20

*Sharp International Corp. v. State Street Bank*,
    403 F.3d 43 (2d Cir. 2005) ........................................................ 10, 15, 16, 17

*Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442 (2d Cir. 1971)........................................ 20

*Shields v. Citytrust Bancorp., Inc.*, 25 F.3d at 1124, 1127 (2d Cir. 1994) .............................. 19, 20

*Stamboulis v. Sullivan*, 2001 Conn. Super. LEXIS 2173
    (Sup. Ct. Hartford Dist. July 30, 2001) ......................................................... 23

*Steed Finance v. Laser Advisors, Inc.*, 258 F. Supp. 2d 272, 282
    (S.D.N.Y. 2003)...................................................................... 10, 13

*Success Universal Ltd. v. CWJ Int'l Trading, Inc.*, 1996 U.S. Dist. LEXIS 13793
(S.D.N.Y. Sept. 20, 1996)..................................................................................5

*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002) ........................................6

*In re Towers Fin. Corp. Noteholders Litig.*, 936 F. Supp. 126 (S.D.N.Y. 1996)...........17

*Tribune Co. v. Abiola*, 66 F.3d 12 (2d Cir. 1995) ........................................22

*Tribune Company v. Pucigliotti*, 869 F. Supp. 1076 (S.D.N.Y. 1994),
*aff'd sub. nom, Tribune Co. v. Abiola*, 66 F.3d 12 (2d Cir. 1995) ..............22, 24

*Tyszka v. Edward McMahon Agency*, 188 F. Supp. 2d 186 (D. Conn. 2001)...............17

*United Coastal Industries, Inc. v. Clearheart Constr. Co., Inc.*, 71 Conn. App.
506, 802 A.2d 901 (2002)..................................................................................22

*VTech Holdings Ltd. v. PriceWaterhouse Coopers LLP*, 348 F. Supp. 2d 225
(S.D.N.Y. 2004)..................................................................................15

*Vertex, Inc. v. City of Waterbury*, 2006 Conn. LEXIS 199 (June 13, 2006)................22

Defendants Faust Rabbach & Oppenheim LLP and Steven D. Oppenheim ("Oppenheim") (collectively "FR&O") submit this Memorandum in support of their motion to dismiss the Seventh, Twelfth, Thirteenth, Fourteenth and Fifteenth Claims for Relief of the Amended Class Action Complaint (the "Complaint") pursuant to Fed. R. Civ. P. 8(a), 9(b) and 12(b)(6).

## PRELIMINARY STATEMENT

This action concerns the plaintiffs' alleged financial losses as a result of the fraudulent conduct of defendants Samuel Israel ("Israel") and Daniel E. Marino ("Marino") and the Bayou Defendants that they created, dominated and controlled.[1]  Based on their guilty pleas (Compl. ¶ 85), there is no dispute that Israel and Marino operated the Bayou hedge funds as an elaborate Ponzi scheme that successfully fooled the sophisticated, high net worth, experienced investors it attracted, including the named plaintiffs.

FR&O are attorneys who performed certain legal services for the Bayou Defendants. The action purports to state direct claims of negligence and unjust enrichment and for aiding and abetting common law fraud, breach of fiduciary duty and negligence against FR&O, despite the absence of any relationship with, or duty to any of the Bayou investors, including plaintiffs. Plaintiffs sue these professionals on the misguided notion that attorneys can be found liable for "aiding and abetting" their client's fraudulent activities solely as a result of having represented their clients in the formation of business entities or providing other, unspecified acts of legal representation.  The Amended Complaint does not contain a single factual allegation suggesting that FR&O knew of Bayou's alleged Ponzi scheme or knowingly participated in it.  Indeed, plaintiffs tacitly concede that no such facts exist when they allege, in the alternative, that FR&O "should have known" or had a duty to uncover Bayou's fraud.

---

[1] *See* Exhibit "A", Amended Complaint ¶ 1 (hereinafter "Compl. ¶ __").  All exhibits are annexed to the accompanying declaration of Shari C. Lewis.

As more fully set forth herein, each of the claims pled against FR&O fail as a matter of law. An attorney has no duty to non-client third parties, such as the plaintiffs, in the absence of which there can be no claim for negligence. Nor will the use of an aiding and abetting theory permit the extension of liability to third parties without the aider and abettor's actual knowledge of the primary wrongdoing and substantial assistance in its commission. The law will not presume that client's share their fraudulent schemes with their lawyers. Plaintiffs have alleged no fact even remotely suggesting that FR&O had such knowledge or performed any act in furtherance of the fraud. Plaintiffs likewise have no claim for unjust enrichment against FR&O based upon their receipt of payment for legal services rendered to Bayou as no direct benefit was received by FR&O from the plaintiffs' to plaintiffs detriment nor is it inequitable for FR&O to retain fees they duly earned.

Simply put, plaintiffs' scant factual allegations and their conclusory assertions fail to support a claim for relief against FR&O.

## **FACTS**

Plaintiffs are individuals or entities who invested in various Bayou hedge funds operated by Israel and Marino. Compl. ¶¶ 1, 15 and 16. It is alleged that the Bayou Hedge Funds were "generated as a massive Ponzi scheme" "orchestrated by the Bayou Defendants" from its inception in 1996 until its demise in August 2005. Compl. ¶ 2.

On August 29, 2005, Marino left a "suicide note and confession" in which he admitted that "Marino, Israel and others" were "implicated "in a massive fraud on investors of the Bayou Funds dating back to 1996. Compl. ¶ 7. Significantly, however, Marino expressly exculpated FR&O, including Mr. Oppenheim, stating that they had no knowledge or participation in the

fraud. *See* Exhibit "B".[2] It is disingenuous for plaintiffs to rely on the contents of the suicide note as proof of the alleged fraud, while selectively and silently disregarding Marino's exculpation of FR&O to allege, in wholly conclusory fashion, that FR&O were participants in the scheme.

In stark contrast to the detailed allegations against the Bayou Defendants, FR&O's sole alleged role in the Ponzi scheme was serving as counsel to Bayou. Indeed, of the 220 paragraphs comprising the 100 page Amended Complaint, only <u>12</u> even refer to FR&O. The claims against these lawyers are bare conclusions. None contain allegations of actionable conduct against them, much less the type of factual detail required to meet the particularity standards of Fed. R. Civ. P. 9(b) for claims sounding in fraud.

Plaintiffs allege:

- That FR&O are among a group of defendants, collectively referred to as "Aider and Abettor Defendants," who were alleged to have been "close associates" of the Bayou Defendants, and who were "directly or indirectly" involved in planning, orchestrating and/or executing the alleged fraud. No facts are pled in support of the allegations in this paragraph. Compl. ¶ 4;

- That Bayou Management LLC, Bayou Advisors, LLC and Bayou Equities, LLC have their "principal offices at the law firm" of FR&O. No facts are pled in support of the allegations in this paragraph, although we suspect it is based solely on the deliberately misleading fact that incorporation documents designate the firm address as the location for service of process. Compl. ¶¶ 19, 20, 21;

- The unsupported claim that the three named Bayou entities had their principal place of business at the Faust Rabbach offices and otherwise asserts that that FR&O "served as counsel for the Bayou during all or some of the Class period and [were] otherwise substantially involved in facilitating the operations of Bayou." Nevertheless, neither acting as counsel, nor "facilitating the operations" of Bayou (as opposed to knowingly and substantially assisting the fraudulent scheme), is an adequate predicate for liability against FR&O. Compl. ¶ 36;

---

[2] The suicide note is properly considered by this Court in regard to the motion to dismiss, inasmuch as it is expressly referred to and relied on by the plaintiffs in the Amended Complaint for purposes of establishing the Bayou Fund Ponzi scheme. *See Cortec Industries, Inc. v. Sum Holding, L.P.*, 949 F.2d 42 (2d Cir. 1991), *cert denied*, 503 U.S. 960(1992).

- That Mr. Oppenheim is an attorney and certified public accountant who was elected to serve as a Governor of the American Stock Exchange in 2005. That for one year, from 1990 to 1991, he was affiliated with the accounting firm, Grant Thornton. Five years after Mr. Oppenheim left Grant Thornton, it became Bayou's auditor. Thus, Mr. Oppenheim's relationship with Grant Thornton ended five years before the class period began or any Bayou entity is alleged to have come into existence and is completely irrelevant to the claims. Compl. ¶ 37[3]

- That FR&O provided advice in "planning, forming or operating" the fraudulent hedge funds and were "privy to non-public information," in order to support their erroneous and legally insufficient conclusion that Faust Rabbach "knew or should have known" of the Bayou fraud or that FR&O owed a professional duty to the plaintiffs. The nature of such non-public information is not stated, nor what conduct constituted the firm's alleged participation in the fraud. Compl. ¶ 38.

The remaining allegations against FR&O solely relate to the various legal theories asserted against them and, beyond repeated conclusory allegations that FR&O, acting as counsel, participated directly or indirectly in the operation of the Bayou entities, offer no factual support whatsoever. Accordingly, the Seventh Claim for Relief (Negligence) alleges in conclusory fashion that FR&O breached their duty to the plaintiff. Compl. ¶ 159(b). Plaintiffs' Fifteenth Claim for Relief (Unjust Enrichment and Restitution) merely alleges that FR&O received legal fees for services as "counsel and agents of Bayou." Compl. ¶ 218.

Finally, plaintiffs' Twelfth Claim for Relief (Aiding and Abetting Fraud), Thirteenth Claim for Relief (Aiding and Abetting Breach of Fiduciary Duty) and Fourteenth Claim for Relief (Aiding and Abetting Negligence) depend on substantially identical conclusory allegations the factual basis for which plaintiffs ironically claim are "alleged more fully above." Compl. ¶¶ 203(b), 208(b) and 213(b). However, plaintiffs' reference to the paltry allegations set forth

---

[3] Nevertheless, plaintiffs juxtapose their allegation that Grant Thornton was Bayou's auditor until 1998 and that "Bayou...continued to falsely tell investors as late as 2002 that Grant Thornton audited Bayou's books" (Compl. ¶ 37 (c)) in a transparent effort to create an illogical inference connecting Mr. Oppenheim's one year period of employment with Grant Thornton to *Bayou's alleged false statement* to its investors *more than a decade later*.

"above" is like the proverbial shell game, designed to hide the absence of any factual basis or cognizable claim for relief against FR&O.

## ARGUMENT

### POINT I

### THE CONCLUSORY ALLEGATIONS OF THE AMENDED COMPLAINT NEITHER STATE A CLAIM FOR RELIEF NOR SATISFY MINIMAL NOTICE PLEADING REQUIREMENTS

**A.    Plaintiffs' Conclusory Allegations Are Not Entitled To Any Favorable Inferences**

In ruling on this motion, the Court must accept the well-pleaded allegations in the Complaint as true, together with such *reasonable* inferences as may be drawn in their favor. *See IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052 (2d Cir. 1993), *cert. denied*, 513 U.S. 822, 115 S. Ct. 86 (1994).[4] Legal conclusions are irrelevant and should be ignored. *Albany Welfare Rights Org. Day Care Ctr., Inc. v. Schreck*, 463 F.2d 620 (2d Cir. 1972), *cert. denied*, 410 U.S. 944, 93 S. Ct. 1393 (1973). Unwarranted deductions of fact are not admitted. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994), *cert. denied*, 513 U.S. 1079, 115 S. Ct. 728 (1995). The court need not defer to sweeping, unsupported conclusions made on information and belief, such as those alleged in this case, in evaluating the sufficiency of the Complaint. *Success Universal Ltd. v. CWJ Int'l Trading, Inc.*, 1996 U.S. Dist. LEXIS 13793, at *2 (S.D.N.Y. Sept. 20, 1996).

Conclusory allegations or legal conclusions masquerading as facts are insufficient to defeat a motion to dismiss. *Redhead v. Winston & Winston, P.C.*, 2002 U.S. Dist LEXIS 17780 *21 (S.D.N.Y. Sept. 20, 2002). Instead, plaintiffs must identify the source of the purported facts

---

[4] Although this matter was transferred to the court from the District of Connecticut, a transferee court in the Second Circuit applies its interpretation of federal law. *In re: Parmalat Securities Litigation*, 412 F. Supp. 2d 302, 306 (S.D.N.Y. 2006).

on which they base their belief in order to establish that the source had some basis for knowledge of the alleged fact and, moreover, must show that the underlying factual allegations justify the inference that plaintiffs urge. *Fraternity Fund Ltd. v. Beacon Hill Asset Management LLC*, 376 F. Supp. 2d 385, 394 (S.D.N.Y. 2005) (dismissing aiding and abetting claim against investors' advisor in the absence of facts to support an inference of actual knowledge of hedge fund fraud.)

### B.   The Complaint Fails To Meet Even The Minimal Notice Pleading Requirement Of Rule 8(a)

Fed. R. Civ. P. 8(a), applicable to all pleadings no matter the theory of relief, requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Rule requires pleadings to give "fair notice" of the claim and the "grounds on which they rest" "in order to enable the opposing party to answer and prepare for trial and to identify the nature of the case." *Pope v. Rice*, 2005 U.S. Dist LEXIS 4011 *16-17 (S.D.N.Y. March 15, 2005) (holding that bald allegations of attorney-client relationship without any support in the facts did not satisfy Rule 8(a)) *citing Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992 (2002). In other words, the pleading must set forth the "fundamental facts" of the case in order to allow the defendant to refute them if they are untrue and prepare a defense thereto. *Michelsen v. Brush,* 224 F. Supp. 951, 954 (E.D.N.Y. 1963).

The Amended Complaint does not give fair notice to FR&O as to the claims specifically asserted against them. For example, in one of the very few paragraphs solely addressed to Faust Rabbach, the plaintiffs assert that "Faust Rabbach served as counsel for Bayou during all or some of the Class Period..." Compl. ¶ 36. Such allegation does not identify which Bayou Defendant FR&O was alleged to be "counsel for" or what acts are the basis of plaintiffs' claims.

Even more problematic, the complaint is ambiguous as to <u>when</u> the allegedly actionable acts as counsel occurred beyond "all or some" of the Class period, which is defined elsewhere as

6

December 31, 1996 – August 25, 2005. Compl. ¶ 1. FR&O are thereby deprived of their ability to assess and present their defenses, such as statute of limitations, despite the clear implication that some of their alleged acts during the proposed class period are time barred. Such conclusory and inexact pleading does not provide the fair and adequate notice that Rule 8(a) requires.[5]

## POINT II

### NO CLAIM FOR NEGLIGENCE MAY<br>BE STATED AS A MATTER OF LAW

Plaintiffs' Seventh Claim for Relief, purportedly sounding in negligence, relies on the legally mistaken premise that FR&O owed a duty to the plaintiffs and that the duty was breached "by serving as counsel for Bayou. . ." Compl. ¶ 159(a). *See also,* Compl. ¶ 36. (FR&O "...served as counsel for Bayou during some or all of the Class period and was otherwise substantially involved in facilitating the operations of Bayou..."). It is not alleged that FR&O were ever retained by plaintiffs or indeed had any contact with them of any kind. The Complaint is barren of any factual basis to create any duty owed to the plaintiffs or any member of the class by FR&O, in the absence of which no claim for negligence may be stated, as a matter of law.[6]

Under either Connecticut or New York law, the question of whether a duty exists is a question of law and only if such a duty exists will the question of breach of that duty be reached. *Gould v. Mellick and Sexton,* 263 Conn. 140, 153, 819 A.2d 219 (2003). *See also McCarthy v.*

---

[5] Alternatively, FR&O expressly reserves the right to assert all defenses to the complaint that are not subject to motion at this time, including but not limited to statute of limitations, due to the paucity of facts in plaintiffs' pleading.

[6] When an action is transferred as part of an MDL, the transferee court applies the choice of law rules of the state in which the case was first filed, in this case, Connecticut. *See In re Rezulin Products Liability Litigation,* 392 F. Supp. 2d 597, 607 (S.D.N.Y. 2005). Although New York or Connecticut law could potentially apply to this dispute, under Connecticut law there is a "false conflict" when application of either state's law would lead to the same result, and no conflict of law analysis need be undertaken. *See, e.g., Dugan v. Mobile Medical Testing Services, Inc.,* 265 Conn. 791, 798, 830 A.2d 752 (2003). *See also, Pantelopoulos v. Pantelopoulus,* 2005 Conn. Super. LEXIS 981 *11 (Sup. Ct. Jud. Dist. March 31, 2005). Here, application of New York or Connecticut law leads to the same result – dismissal of all claims against FR&O.

*Sturm Ruger & Co., Inc.*, 916 F. Supp. 366 (S.D.N.Y. 1996), *aff'd*, 119 F.3d 148 (2d Cir. 1997) (holding that whether a legal duty exists is a question of law which may be resolved by a court).

It is the long established law of the State of New York that an attorney will not be liable for negligence in the provision of professional services adversely affecting one with whom the attorney is not in contractual privity. *Redhead v. Winston & Winston, P. C.*, 2002 U.S. Dist LEXIS 17780 *16 (S.D.N.Y. Sept. 20, 2002); *National Westminster Bank USA v. Weksel*, 124 A.D.2d 144, 146, 511 N.Y.S.2d 626 (1st Dep't 1987), *appeal denied*, 70 N.Y.2d 604, 519 N.Y.S.2d 1027 (1987); *Crossland Savings FSB v. Rockwood Insurance Company*, 692 F. Supp. 1510 (S.D.N.Y. 1988).

It is equally well-established under Connecticut law that attorneys are not liable to persons other than their clients for the negligent rendering of services. *See, e.g., Krawczyk v. Stingle*, 208 Conn. 239, 244, 543 A.2d 733 (1988). *See also*, *Colonial Surety Company v. Lenard Engineering, Inc.*, 2004 Conn. Super. LEXIS 3421 *9-10 (Sup. Ct. Waterbury November 10, 2004) ("Courts have consistently demonstrated an unwillingness to weaken the privity rule and this state has so held.")

Connecticut's requirement of privity is based on its concern that extension of negligence liability to third parties would jeopardize the "central dimension of the attorney-client relationship. . . namely the attorney's duty of undivided loyalty to his or her client." *Biller Associates v. Peterken*, 269 Conn. 716, 726, 849 A.2d 847 (2004). New York's privity requirement "likewise has its roots in ethical considerations since the interest of the attorney's client may not be harmonious with other persons" and might otherwise interfere with attorney client privilege. *Pope v. Rice*, 2005 U.S. Dist. LEXIS 4011 *35-36 (S.D.N.Y. March 14, 2005).

Plaintiffs neither claim nor provide any facts from which any relationship between the plaintiffs and FR&O can be inferred. Indeed, plaintiffs unambiguously state that FR&O were

counsel for the Bayou entities.  Plaintiffs' status as investors or shareholders in the Bayou

entities does not thereby create any attorney-client relationship with FR&O.  *See, e.g., Friedman*

*v. Hartman*, 1994 U.S. Dist LEXIS 3404 *21 (S.D.N.Y. March 23, 1994) (Limited partners are

not in privity with the attorney for the partnership because *inter alia*, EC 5-18 requires that an

attorney's sole allegiance is owed to the entity that retained him and not any person connected to

that entity); *Ahmed v. Trupin*, 809 F. Supp. 1100, 1106 (S.D.N.Y. 1993); *Griffin v. Anslow*, 17

A.D.3d 889, 793 N.Y.S.2d 615 (3d Dep't 2005) (concluding that attorney for business venture is

not in privity with individuals involved in the venture.)

The Connecticut Supreme Court case of *Gould v. Mellick and Sexton,* 263 Conn. 140,

153, 819 A.2d 219 (2002) is factually analogous and dispositive.  Plaintiffs were investors who

had purchased limited partnerships in a real estate development project that ultimately failed

because the partnership had insufficient funds to carry out its objective.  Unlike the absence of

any interaction between FR&O and the plaintiffs at bar, the *Gould* plaintiffs alleged that the

defendant attorney had participated in the preparation of, *inter alia*, private placement

memoranda, preliminary summaries of offerings, tax and securities compliance opinions and

escrow agreements.  Nevertheless, the Supreme Court determined that the attorney owed no duty

to the investors and dismissed the investor's negligence claim, stating as follows:

> "It is clear that the partnership retained the defendant to further its
> own interests and not those of the plaintiffs and other investors,
> with whom it engaged in arm's length transactions. The imposition
> of a concomitant duty to protect the plaintiffs' interests would
> interfere with the defendant's duty of undivided loyalty to its
> client. Under these circumstances the defendant did not owe a duty
> of care to the plaintiffs."

*Gould,* 263 Conn. at 155.

9

The same conclusion is warranted herein. In the absence of any legal duty to the plaintiffs, no claim for negligence can be stated against FR&O and the claim should be dismissed with prejudice.

**POINT III**

**PLAINTIFFS CANNOT STATE ANY CLAIM FOR AIDER
AND ABETTOR LIABILITY AGAINST FR&O**

The essential elements of a claim for aider and abettor liability are designed "to ensure that entities already one step removed from the alleged wrongful acts are not subject to suit for unforeseeable harms in which they had no active role and from which they received no benefit." *Filler v. Hanvit Bank*, 339 F. Supp. 2d 553 (S.D.N.Y. 2004), *aff'd*, 156 Fed. Appx. 413 (2d Cir. 2005). The required elements are functionally identical under New York and Connecticut law.

Under New York law, a claim for aiding and abetting fraud requires 1) the existence of the underlying fraud; 2) defendant's actual knowledge of the fraud, and 3) that the defendant provided substantial assistance to advance the fraud's commission. *Steed Finance v. Laser Advisors, Inc.*, 258 F. Supp. 2d 272, 282 (S.D.N.Y. 2003). Similarly, to state a claim for aiding and abetting a fiduciary duty a plaintiff must demonstrate 1) the breach of fiduciary duty by others of which the aider and abettor had "actual knowledge", 2) that the defendant knowingly induced or participated in the breach, and 3) damages as a result thereof. *Sharp International Corp. v. State Street Bank*, 403 F.3d 43, 49 (2d Cir. 2005); *Pope v. Rice*, 2005 U.S.Dist LEXIS 4011 * 39 (S.D.N.Y. Mar. 14, 2005).

Aider and abettor liability is premised on the Restatement Second of Torts § 876, which states that a person may be liable for "harm resulting to a third person from the tortious conduct of another…if he…knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other…" Accordingly, the Restatement provides

10

the predicate from which the three essential elements of aiding and abetting liability are drawn, no matter how the underlying tortious conduct is characterized. *See*, *Kolbeck v. LIT America*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996), *aff'd without op.*, 152 F.3d 918 (2d Cir. 1998) (relying upon an analysis of the Restatement Second to determine the elements of the claim under New York law).[7]

Similarly, under Connecticut law, the tort of aiding and abetting is based upon the principles outlined in the Restatement Second of Torts § 876. *Calore v. Town of Stradford*, 2001 Conn. Super. LEXIS 73 * 13-14 (Sup. Ct. Fairfield Dist., Jan. 5, 2001). Connecticut law thus requires that the same three elements be shown in order to establish aider - abettor liability, to wit, 1) fraud by the primary violator; 2) knowledge of the fraud by the alleged aider –abettor; and 3) substantial assistance to the principal in committing the fraud. *Cumis Insurance Society, Inc. v. Windsor Bank & Trust,* 736 F. Supp. 1226, 1234 (D.Conn. 1990); *see also, Calore,* 2001 Conn. Super. LEXIS 73 at *14.

### A.    Plaintiffs Allege No Facts Suggesting That the Faust Rabbach Defendants Had Knowledge of Bayou's Alleged Fraud

Section 876(b) of 4 *Restatement (Second) of Torts* (1977) requires that the alleged aider and abettor *"knows* that the other's conduct constitutes a breach of duty." (Emphasis added). There is no mention of an alternative standard, such as "recklessness" or "having reason to know" or "should have known."

---

[7] Although the Complaint alleges a claim for "aiding and abetting Bayou's negligence", no such claim appears to be cognizable as a matter of law. Logically, it would appear to be impossible to aid and abet someone's negligence, as aiding and abetting requires deliberate and knowing scienter which is antithetical to the principles of negligence. Moreover, although nominally referring to negligence, the relevant paragraphs actually allege aiding and abetting Bayou's fraud, to wit, "Bayou's provision of false and misleading information to investors." Compl. ¶ 212. Nevertheless, to the extent that any claim for relief can be stated for aiding and abetting negligence, it would be governed by the same three-part analysis set forth in the Restatement Second and controlling case law.

11

Both Connecticut and New York rigorously apply the requirement that the alleged aider-abettor have actual knowledge of the primary violation if aiding and abetting liability is to attach. In either jurisdiction, the complaint must allege facts that demonstrate that the defendant had actual knowledge of the primary violation. *See Filler v. Hanvit Bank*, 339 F. Supp. 2d 553, 557 (S.D.N.Y. 2004), *aff'd*, 156 Fed. Appx. 413 (2d Cir. 2005) (holding that "constructive knowledge of the primary fraud –the possession of information which would cause a person exercising reasonable care and diligence to become aware of the fraud—is not sufficient to support and aiding and abetting claim."); *Pope*, 2005 U.S. Dist LEXIS 4011 at 39 (concluding that complaint must plead actual, not constructive knowledge of the breach of fiduciary duty to support an aiding and abetting claim); *Calore*, 2001 Conn. Super. LEXIS 73 at *16 (recognizing that the Restatement simply does not allow aiding and abetting liability to be premised on allegations of constructive knowledge of the underlying tort); *Palmieri v. Lee,* 1999 Conn. Super. LEXIS 3201 *19 (Conn. Super. Ct. Nov. 24, 1999) (holding that imputed knowledge is not the equivalent of being "generally aware" as the scienter element is sometimes stated under Connecticut law.); *Kolbeck v. LIT America,* 939 F. Supp. 240, 246 (S.D.N.Y. 1996), *aff'd without op.*, 152 F.3d 918 (2d Cir. 1998) (stating that actual rather than constructive knowledge is necessary no matter what the nature of the primary tort). For this reason, plaintiffs' failure to adequately allege knowledge of the underlying fraud requires dismissal of the aider and abettor claims.

The reasoning behind this requirement is sound. An aiding and abetting claim does not sound in negligence, but requires the party asserting the claim to plead and prove that the other party knew or at least was generally aware of his participation in the *wrongful activity*. *Calore*, 2001 Conn. Super. LEXIS 73 at *16. The alternative pleading of "knew or should have known" would impermissibly "allow a common law claim for aiding and abetting to be maintained if the

12

defendants were negligent in not knowing the conduct of the other party constituted a breach of its duties." *Id.* The failure to adequately allege knowledge of the underlying violation requires dismissal of the aiding and abetting claims. *See Fraternity Fund Ltd. v. Beacon Hill Asset Management LLC*, 376 F. Supp. 2d 385, 394 (S.D.N.Y. 2005) (dismissing aiding and abetting fraud claim against investment advisor in the absence of factual identification of the source and reliability of the source of the allegation, and demonstration that the *facts* actually supported the inference that advisor knew of hedge fund fraud); *Steed Finance*, 285 F. Supp. 2d at 282.

The case of *Steed Finance*, *supra*, makes the palpable inadequacy of plaintiffs' claim against FR&O apparent. There, plaintiffs were also investors in certain hedge funds in which the defendants acted as investment advisors and portfolio managers. The third-party defendants were sponsors of the hedge fund in which plaintiffs invested with responsibility for organizing and marketing the fund. The main action alleged that the lead portfolio manager of the hedge fund mispriced the funds and the value of plaintiffs' investment portfolio allegedly to conceal the true performance of plaintiffs' investment. The third-party defendants were sued under theories of aiding and abetting fraud and breach of fiduciary duty of the advisors. The third-party complaint alleged that the third-party defendants "had actual knowledge of the alleged mispricings or acted with reckless disregard for the truth in that they ignored the obvious warning signs of alleged mispricings. . ." These conclusory claims were made without any factual support and were, in any event, found insufficient because they did not establish the third-party defendants' actual knowledge of the fraud or breach of fiduciary duty alleged. The same conclusion is compelled herein.

Here, FR&O are even further removed from the hedge fund, its operation or the alleged fraud than the sponsors of the hedge fund in *Steed*. Plaintiffs have not alleged any facts supporting or even suggesting that FR&O knew of the underlying Bayou Ponzi scheme. Rather,

13

they allege in boilerplate language pertaining to all "Aider/Abettor Defendants" that all Aider/Abettor Defendants knew or "but for its/his/her gross negligence or recklessness should have known of the ..." alleged fraud and/or purported negligence by the Bayou Defendants. Compl. ¶ 203, 212.[8]  Such equivocal pleading is clear evidence of the inadequacy of these claims.  If such equivocal boilerplate language as herein presented could satisfy the actual knowledge standard, the standard would be toothless. *See, e.g., Fraternity Fund Ltd. v. Beacon Hill Asset Management LLC*, 376 F. Supp. 2d 385, 412 (S.D.N.Y. 2005) (recognizing that allegations of constructive knowledge or recklessness are insufficient to state a claim for aider and abettor liability).

Moreover, the sparse "facts" that are pled against FR&O fail to support the inference that FR&O had any knowledge of the Bayou Ponzi scheme.  Plaintiffs' infer that FR&O had "knowledge" of the scheme based on the wholly conclusory and ambiguous allegation that they acted as counsel for the Bayou Defendants during "some or all" of the class period, including the creation and operation of several Bayou entities.  (*See* Compl. ¶¶ 203(b), 208(b) and 213(b)). FR&O's incorporation of several Bayou entities does not support an inference of knowledge that the entities would later lie about their assets or performance and plaintiffs' wholly conclusory allegations of FR&O's involvement in the Bayou entities operation does not otherwise save the claim. Similarly no reasonable inference of knowledge of the fraud can be drawn from the fact that Oppenheim was affiliated with the accounting firm, Grant Thornton, *five years* before any Bayou entity existed and *ten years* before the Bayou Defendants allegedly misrepresented that Grant Thornton was their auditor.  Finally, it is pled that solely as a result of their performance as legal counsel for Bayou, FR&O were "privy" to unspecified "non-public information"

---

[8] Ironically, plaintiffs do not even repeat the boilerplate inadequate allegation of constructive knowledge in connection with their Thirteenth Claim for Aiding and Abetting a Fiduciary Breach. Compl. ¶¶ 205-209.

concerning the Bayou Defendants. *See* Compl. ¶¶ 36-38. These allegations are neither factually sufficient to bolster their claim nor an adequate premise to infer that FR&O had any knowledge of the Bayou Ponzi scheme. *See VTech Holdings Ltd. v. PriceWaterhouse Coopers LLP*, 348 F. Supp. 2d 225 (S.D.N.Y. 2004) (recognizing that allegation of unlimited access by auditor to company's financial books and records did not support inference that auditor actually knew of the company's fraudulent activities, which is not otherwise supplied by repeated allegation of "actual knowledge" without factual support).

The seminal case of *National Westminster Bank USA v. Weskel*, 124 A.D.2d 144, 511 N.Y.S.2d 626 (1st Dep't), *appeal denied,* 70 N.Y.2d 604, 519 N.Y.S.2d 1027 (1987), discussed the concerns as to unfettered extension of liability to attorneys for the fraudulent acts of their client. The Court noted that the allegations in that Complaint that the attorneys represented the defrauders in certain transactions, even those that may have been part of the fraud, did not give rise to any inference that the attorneys were aware of the "unfolding fraud." *National Westminster*, 124 A.D.2d at 148. Accordingly, actual knowledge of the fraud could not be established merely based on the provision of legal services to the defrauder. The same conclusion is warranted here. Plaintiffs' paltry allegations against FR&O allege nothing more than their provision of legal services to Bayou which is inadequate to establish that they had actual knowledge of Bayou's fraudulent acts.

### B.    Plaintiffs Allege No Facts that Show "Substantial Assistance" by FR&O

Compounding plaintiffs' failure to satisfy the "scienter" element, plaintiffs have also failed to establish that FR&O "substantially assisted" the achievement of a primary violation, which is another essential element of an aider and abettor claim. *See Sharp*, 402 F.3d at 50

15

(noting that aiding and abetting liability depends on pleading and proof that the defendant induced or participated in the conduct that actually causes damages to the plaintiff).

Substantial assistance occurs only when a defendant affirmatively assists, helps conceal, or fails to act when required to do so, thereby enabling the primary violation to occur. *Pope*, 2005 U.S.Dist LEXIS 4011 at 39-40 (dismissing aiding and abetting claim against law firm as inadequately pled under Rule 8(a) in the absence of factual allegations on which to base substantial assistance.)  Plaintiffs must plead and prove that the defendants undertook affirmative acts to assist or conceal the direct tort in order to establish the element of substantial assistance. *Sharp*, 402 F.3d at 50-51.  In light of the high degree of scienter which is akin to "actual intent to commit fraud," the plaintiff must show that the defendant knowingly completed acts with the purpose of aiding and abetting the principal. *Cumis Ins. Co.*, 736 F. Supp. at 1234.

The plaintiffs herein do not identify a single *affirmative* act by FR&O which substantially assisted Bayou's primary violations.  There are no factual allegations as to their participation in the Bayou Defendants' fraudulent conduct. Beyond their reiteration of unsupported conclusions about "facilitating the operations of Bayou" the only conduct alleged is that FR&O provided legal representation of some sort to some Bayou entities during some portion of the proposed class period.

Accordingly, plaintiffs' claim is based on the inadequate hypothesis that FR&O had general knowledge of the Bayou entities sufficient to alert FR&O to the fraud but did not disclose it to plaintiffs. *See*, *e.g.*, Compl. ¶ 38.  Such a claim is simply inadequate to constitute "substantial assistance" as a matter of law.

FR&O owed no duty of disclosure to the plaintiffs.  In the absence of a fiduciary duty to speak, there is no liability for aiding and abetting based on silence even in the face of alleged knowledge of the fraud. *Cumis Ins. Co.*, 736 F. Supp. at 1234 (holding that where there is no

16

duty of disclosure, defendant could not be liable for aiding and abetting check kiting scheme in the absence of allegations of "wrongful or illegal acts" even if "but for" the defendants' legal acts the scheme could not have been perpetrated. *Id.* 736 F. Supp. at 1235.) Failure to act is not a basis for aider and abettor liability absent a duty to act. *Tyszka v. Edward McMahon Agency*, 188 F. Supp. 2d 186, 195 (D. Conn. 2001). The mere inaction of an alleged aider and abettor is insufficient unless the alleged aider and abettor owes a fiduciary duty *directly* to the plaintiff. *Sharp*, 402 F.3d at 50-51; *see also Pope*, 2005 U.S. Dist. LEXIS 4011 at 39-40

As discussed in Point II, *supra*, FR&O, as counsel to Bayou, did not owe any duty to the plaintiffs and in fact, owed their duty of undivided loyalty to the Bayou entities they represented. Where, as here, the complaint was "barren of any allegation of even the most minimal contact or relationship between" the law firm and plaintiffs, the law firm lacked any duty to the plaintiffs and therefore could not be liable by reason of their alleged inaction. *National Westminster*, 124 A.D.2d at 148. Plaintiffs do not, and cannot, suggest that FR&O owed them any fiduciary duty. *See In re Towers Fin. Corp. Noteholders Litig.*, 936 F. Supp. 126, 127 (S.D.N.Y. 1996) (noting that there could be no liability against a law firm for failing to disclose to investors that its client was engaging in a Ponzi scheme in the absence of any "suggestion -- let alone allegation -- that [the attorney] had a fiduciary relationship with anyone but his own client"). *See also Gould v. Mellick and Sexton*, 263 Conn. 140, 153, 819 A.2d 219 (2002); *Friedman v. Hartman*, 1994 U.S. Dist LEXIS 3404 *21 (S.D.N.Y. March 23, 1994).

Here, FR&O are not alleged to have had any communication or contact whatsoever with the plaintiffs or direct impact upon their investment decisions and hence, as a matter of law, they could not be deemed to have "substantially assisted" any scheme to defraud these plaintiffs.

Moreover, no facts connect any "conduct" by FR&O to the losses sustained by plaintiffs. It is well-established that substantial assistance must be directed to the commission of the

primary violation and must "proximately cause" the harm on which the primary liability is predicated. Even where the alleged aider and abettor is charged with knowledge of some secondary falsification, the claim will be dismissed absent allegations that the defendant knowingly and substantially assisted the primary violator in the fraud that proximately caused plaintiff's damages. *Filler,* 339 F. Supp. 2d at 558. The plaintiff must show that the defendants' conduct was a substantial factor in causing the resultant tort. *Palmieri v. Lee*, 1999 Conn. Super. LEXIS 3201 *19 (Conn. Super. Ct. Nov. 24, 1999) (holding that merely entering into transactions do not, of themselves, suffice to establish substantial assistance.) Only conduct that proximately causes plaintiff's injury can constitute "substantial assistance." Thus it has been held that:

> In alleging the requisite "substantial assistance" by the aider and abettor, the complaint must allege that the acts of the aider and abettor proximately caused the harm ... on which the primary liability is predicated.    Allegations of a "but for" causal relationship are insufficient.

*Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 62-63 (2d Cir. 1985). *See also Cumis Ins.*, 736 F. Supp. at 1235.

No such proximate causation is demonstrated by plaintiffs' Amended Complaint. The plaintiffs claim that the vehicles of the Bayou fraud was *Bayou's* monthly Net Asset Valuations, which were prepared and sent by *Marino and Israel*. It is alleged that the Net Asset Valuations fundamentally lied about the total assets of the Bayou Hedge funds and their trading results, thereby misleading the plaintiffs and other investors as to the value of their investments. It is also alleged that the Bayou Defendants lied when they claimed that the hedge funds were being independently audited when that was not the case. *See Compl.* ¶¶ 59–63. Significantly, there is no allegation FR&O made any of the aforementioned representations, participated in the preparation of the Net Asset Valuations or audits, or were aware of their allegedly false

18

representations. Accordingly, plaintiffs' complaint wholly fails to create any causal nexus between FR&O' legal representation of Bayou and their financial losses.

## POINT IV

### THE ALLEGATIONS OF THE COMPLAINT FAIL TO MEET THE PARTICULARITY REQUIREMENTS OF RULE 9(b)

Fed. R. Civ. P. 9(b) requires that in all allegations of fraud, "the circumstances constituting fraud . . . be stated with particularity. *See Shields v. Citytrust Bancorp., Inc., 25* F.3d 1124, 1127 (2d Cir. 1994). The particularity requirements of Rule 9(b) apply to claims of aiding and abetting fraud no less than to direct fraud claims. *Filler v. Hanvit Bank*, 156 Fed. Appx. 413, 417 (2d Cir. 2005). To the extent that the plaintiffs allege aiding and abetting a fraud, their claim is legally insufficient and lacks the requisite specificity to state a claim for relief. *See Fredriksen v. Fredriksen,* 2006 N.Y. App. Div. LEXIS 7403 *4 (2d Dep't June 6, 2006). Likewise, when, as here, the underlying breach of fiduciary duty claims are based on fraud, allegations of aiding and abetting liability must also meet the particularity requirements of Rule 9(b). *Nisselson v. Ford Motor Co. (In re Monahan Ford Corp.)*, 340 B.R. 1, 42 (Bankr. E.D.N.Y. 2006); *Kolbeck v. LIT Am.*, 939 F. Supp. 240, 245 (S.D.N.Y. 1996)

An allegation of fraud in a complaint must specify: (1) those statements the plaintiff thinks were fraudulent; (2) the speaker; (3) the time and place the statements were made; and (4) why the plaintiff believes the statements were fraudulent. *Dover Ltd. v. A.B. Watley, Inc.,* 423 F. Supp. 2d 303, 317 (S.D.N.Y. 2006); *Sathianathan v. Smith Barney, Inc.*, 2006 U.S. Dist. LEXIS 9828, 58-59 (S.D.N.Y. Feb. 24, 2006) *citing Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 51 (2d Cir. 1995) and *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992). While fraudulent intent may be averred generally, the Second Circuit requires "plaintiffs to allege facts that give

rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d at 1128 (citations omitted).

An accusation of fraud, especially against lawyers, is a serious charge. That accusation alone causes substantial harm to professionals. *Sable v. Southmark/Envicon Capital Corp.*, 819 F. Supp. 324, 337 (S.D.N.Y. 1993). Rule 9(b) is designed to protect reputations from injury caused by unsubstantiated charges of fraud and protect against strike suits, as well as to give defendants fair notice of the claims against them. *Chief Executive Officers Club v. CEO China Clubs China Ltd.*, 2006 Bankr. LEXIS 482 *22 (Bankr. S.D.N.Y. Mar. 8, 2006). The Second Circuit therefore vigorously enforces Rule 9(b) where fraud is alleged against professionals such as attorneys. *See Denny v. Barber,* 576 F.2d 465 (2d Cir. 1978); *Segal v. Gordon*, 467 F. 2d 602, 607 (2d Cir. 1972); *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2d Cir. 1971); *Quintel Corp., N. V. v. Citibank, N.A.*, 589 F. Supp. 1235, 1243 (S.D.N.Y. 1984).

Judged by these standards, plaintiffs' aiding and abetting claims against FR&O are hopelessly inadequate. Nowhere in the Amended Complaint lie any facts that give rise to a "strong inference" of fraudulent intent on the part of these defendants. Stripped to its essence, plaintiffs apparently seek to prop up their pleading by the simple fact that FR&O represented Bayou and thus allegedly learned of Bayou's fraudulent design. This tactic has been rejected by the New York courts as follows:

> Doubtless, in the course of representing a client, a lawyer gains access to information about his client's affairs, but the fact of legal representation, even as to transactions allegedly the subject of subsequent misrepresentations, does not itself support the inference of the high degree of scienter necessary to extend fraud liability on an aiding and abetting theory . . . where the actual assistance given the fraud is not clearly substantial. The allegations of scienter must be all the more detailed if the requisite connection of the purported aider and abettor with the fraud is to be made out. . .

*National Westminster Bank USA*, 124 A.D. 2d at 150.  *See also Hayden v. Feldman*, 753 F.

Supp. 116, 120 (S.D.N.Y. 1990); *Friedman v. Arizona World Nurseries Ltd. Ptrs.*, 730 F. Supp.

521, 524 (S.D.N.Y. 1990), *aff'd without op.*, 927 F.2d 584 (2d Cir. 1991); *Sable v.

Southmark/Envicon Capital Corp.*, 819 F. Supp. 324, 337 (S.D.N.Y. 1993).

No particularized allegations of fact support plaintiffs' baseless theory of liability against

FR&O.  Rule 9(b) will have failed in its purpose if conclusory generalizations such as those

asserted by plaintiffs will permit them to set off on a long and expensive discovery process in the

hope of obtaining a substantial settlement. *See Decker v. Massey-Ferguson, Ltd.*, 681 F. 2d 111,

116 (2d Cir. 1982).

### POINT V

### THE PLAINTIFFS CANNOT STATE A CLAIM FOR
### UNJUST ENRICHMENT BASED UPON FR&O'S RECEIPT
### OF LEGAL FEES FOR SERVICES RENDERED TO BAYOU

Finally the Complaint purports to state a claim for unjust enrichment against FR&O

based solely upon the allegation that FR&O "received monies in the form of legal fees and/or

other payments from Class member investment proceeds in connection with services as counsel

and agents for Bayou during all or some of the Class Period." Compl. ¶ 218. The remaining

boilerplate allegations that the <u>plaintiffs</u> "directly or indirectly" conferred compensation on all

Defendants, (Compl. ¶ 218) or that all Defendants benefited from their relationship with the

plaintiffs (Compl. ¶ 219) are contradicted by the plain fact, as plaintiffs concede, that FR&O

were retained by the Bayou entities, to provide legal services to the Bayou entities and received

legal fees for those services from the Bayou entities.  No claim for unjust enrichment can be

stated under these circumstances.

Under New York law, to state a claim for unjust enrichment, the plaintiff must plead and

prove that 1) the defendant benefited or was enriched; 2) that the enrichment was at the

21

plaintiff's expense; and 3) that equity and good conscience require restitution. *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (applying New York law); *Bazak International Corp. v. Tarrant Apparel Group*, 347 F. Supp. 2d 1, 3-4 (S.D.N.Y. 2004). Under Connecticut law, the elements are that 1) the defendants benefited; 2) the defendants unjustly did not pay the plaintiffs for the benefits; and 3) the failure of the payment was to the plaintiffs' detriment. *Vertex, Inc. v. City of Waterbury*, 2006 Conn. LEXIS 199, *25 (June 13, 2006).

No matter how stated, the essence of the unjust enrichment claim is that one party has parted with money or a benefit which has been received by another at the expense of the first party. *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (applying New York law); *United Coastal Industries, Inc. v. Clearheart Constr. Co., Inc.*, 71 Conn. App. 506, 512, 802 A.2d 901 (2002) *citing, Restatement (Third), Contracts, Restitution and Unjust Enrichment § 2*. The instant claim should be dismissed as payment of the Faust Rabbach legal fees was not a detriment to the plaintiffs and the plaintiffs have made no showing as to why FR&O should not be entitled to keep the fees earned in the representation of the Bayou entities.

### A.    FR&O Did Not Receive Any Unjust Direct Benefit From Plaintiffs

Unjust enrichment is designed to provide grounds for restitution of a benefit which has come to someone at the detriment of another. *Vertex*, 2006 Conn. LEXIS 199 at *25. Receipt of an indirect benefit from the plaintiff is not enough. The benefit received from the plaintiff must be "tangible," "specific" and "direct" in order to support an unjust enrichment claim. *Kaye*, 202 F.3d at 616; *Tribune Company v. Pucigliotti*, 869 F. Supp. 1076, 1102 (S.D.N.Y. 1994), *aff'd sub. nom.*, *Tribune Co. v. Abiola*, 66 F.3d 12 (2d Cir. 1995). No claim for unjust enrichment is stated unless plaintiff shows that defendant received something of value *which belongs to the plaintiff*. *Bazak International Corp.*, 347 F. Supp. 2d at 4. The plaintiff must have conferred

22

some benefit on the defendant for which he was not equitably compensated. *Stamboulis v. Sullivan*, 2001 Conn. Super. LEXIS 2173, \*10 (Sup. Ct. Hartford Dist. July 30, 2001).

Essentially, plaintiffs speculate that FR&O was paid with money that they assume came from their investments in the hedge funds. Such payment is not a direct or tangible benefit from plaintiffs to FR&O. In fact, such payment for legal services is nothing more than an operating expense, no different than the services or goods provided by any vendor to any business. Plaintiffs are no more entitled to track their dollars through any Bayou entity to FR&O than to receive restitution from any other vendor who did business with Bayou.[9]

Moreover, the claim should be dismissed absent a showing that the benefit alleged must have been gained at the plaintiff's expense. *See, e.g.*, *Fed. Treasury Enterprise Sojuzplodoimport v. Spirits International N.V.*, 425 F. Supp. 2d 458 (S.D.N.Y. 2005); *Lieberman v. Emigrant Mortgage Co.*, 2006 U.S. Dist. LEXIS 40891, \*21(D. Conn. June 2, 2006); *Nolfi v. Melson*, 2000 Conn. Super. LEXIS 1521 \*21 (Sup. Ct. Bridgeport Dist. June 12, 2000). The mere fact that defendant receives some benefit does not state a claim for unjust enrichment unless it is shown that the plaintiff was harmed thereby. *See, e.g.*, *Beekman Investment Partners. L.P. v. Alene Candles, Inc.*, 2006 U.S. Dist. LEXIS 5341, \*24 (S.D.N.Y. Feb. 14, 2006) (Plaintiff's costs of investigation and due diligence incurred during negotiation of commercial contract could not be recovered under unjust enrichment theory despite the claim that the defendant was "free to enjoy" the resultant legal and financial analysis because although a benefit was incurred, it was not to plaintiffs' detriment).

Plaintiffs' conclusory claims of "direct or indirect" payment cannot establish that they conferred any direct benefit on FR&O to their detriment.

---

[9] Plaintiffs do not identify which Bayou entity they claim used their investment proceeds to pay for legal services.

**B.     Plaintiffs Cannot Demonstrate That FR&O
        Received A Benefit That They Are Not Entitled To Keep**

Under New York law, the essential question is whether it is "against equity and good conscience" to permit the defendant to retain what is sought to be recovered.  Therefore, a plaintiff must allege how the defendant's conduct in obtaining the benefit was effectively "tortious or fraudulent." *Elias v. United Nations Plaza Tower Associates LLP.*, 2000 U.S. Dist. LEXIS 11929, *25 (S.D.N.Y. Aug. 21. 2000) (dismissing unjust enrichment claim because allegation that defendant received allegedly wrongfully diverted funds did not establish that it engaged in fraudulent behavior in arranging to receive the benefit.)  Similarly, under Connecticut law, a plaintiff must show that the defendant will be unjustly enriched if he is permitted to maintain the plaintiff's money or services. *Fabri v. Untited Technologies International, Inc.*, 387 F.3d 109, 128 (2d Cir. 2004).

It is not enough for plaintiffs to allege that the defendant generally received compensation.  Rather, they must show that the defendant was enriched solely as a result of the fraudulent scheme. *Tribune Company v. Pucigliotti*, 869 F. Supp. 1076, 1102 (S.D.N.Y. 1994). Plaintiffs do not allege, let alone offer any factual support to establish, that funds received by FR&O resulted from their knowing participation in the Bayou Ponzi scheme. In fact, plaintiffs concede that the payments to FR&O were in the nature of compensation for legal services rendered to the Bayou entities.

In *Richardson v. Artrageous, Inc.*, 1993 U.S. Dist. LEXIS 15567 (S.D.N.Y. Nov. 4, 1993) the unjust enrichment claim was dismissed under analogous circumstances. In that case, plaintiff sued, *inter alia,* the attorney for the alleged defrauder under theories of fraud, aiding and abetting a fraud and unjust enrichment.  The claims were all dismissed. In regard to the unjust enrichment claim, the Court found that despite the fact that plaintiff had made at least one

24

payment directly to the defendant law firm, (a factor which is not present in the instant claim) nevertheless "[t]he pleadings do not state a claim for unjust enrichment because they allege no facts establishing why [defendant] was not entitled to retain money paid for services rendered by it." *Richardson*, 1993 U.S. Dist. LEXIS 15567 at *7.

The same conclusion is warranted here. Plaintiffs have not offered any reason that FR&O should be deprived of compensation for traditional legal services rendered to Bayou. Accordingly, no claim for unjust enrichment can be stated as a matter of law.

## CONCLUSION

For all the foregoing reasons, the motion by FR&O should be granted and an Order issued: (1) dismissing the Seventh, Twelfth, Thirteenth, Fourteenth and Fifteenth Claims for Relief pled against FR&O with prejudice; and (2) granting such other and further relief as to this Court seems just and proper.

Respectfully submitted,

RIVKIN RADLER LLP

By: _____
    Shari Claire Lewis (SCL-0527)
    Janice J. DiGennaro (JJD-9706)
926 Reckson Plaza
Uniondale, New York 11556-0926
(516) 357-3000

25