UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                             :
IN RE BAYOU HEDGE FUNDS INVESTMENT  :        No. 06 MDL 1755 (CM)
LITIGATION                                                  :
                                                             :
                                                             :
------------------------------------------------------------ X
                                                             :
THIS DOCUMENT RELATES TO:                       :
------------------------------------------------------------ X
                                                             :
BROAD-BUSSEL FAMILY LIMITED                  :        No. 06 Civ. 3026 (CM)
PARTNERSHIP, MARIE-LOUISE                       :
MICHELSOHN, MICHELLE MICHELSOHN, an  :
HERBERT BLAINE LAWSON, JR., Individually   :
and on Behalf of All Other Persons and Entities   :
Similarly Situated,                                          :
                                                             :
                        Plaintiffs,                          :
                                                             :
                - against -                                  :
                                                             :
BAYOU GROUP LLC, et al.,                           :
                                                             :
                        Defendants.                       :        ELECTRONICALLY FILED
                                                             :
------------------------------------------------------------ X


## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS FAUST RABBACH & OPPENHEIM LLP'S AND STEVEN OPPENHEIM'S MOTION TO DISMISS

BERGER & MONTAGUE, P.C.                    KOSKOFF, KOSKOFF & BIEDER, P.C.
Merrill G. Davidoff, Esq.                          William M. Bloss, Esq.
Lawrence J. Lederer, Esq.                         Neal A. DeYoung, Esq.
Lane L. Vines, Esq.                                  350 Fairfield Avenue
1622 Locust Street                                   Bridgeport, CT  06604
Philadelphia, PA  19103-6305                   Telephone:  (203) 336-4421
Telephone:  (215) 875-3000                      Fax:  (203) 368-3244
Fax:  (215) 875-4604


*Attorneys for Plaintiffs Broad-Bussel Family Limited Partnership, et al.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................... ii-vi

INTRODUCTION .......................................................... 1-5

SUMMARY OF PERTINENT FACTS .......................................... 5-9

    A.    The Fraudulent Bayou Hedge Funds ................................. 5-7

    B.    The Oppenheim Defendants ....................................... 7-9

ARGUMENT ........................................................... 10-25

    I.    Plaintiffs' Complaint Satisfies the Notice Pleading
           Requirement of FRCP 8(a) ..................................... 11-13

    II.    Plaintiffs State a Claim for Negligence ............................. 13-15

    III.    Plaintiffs Have Properly Pleaded Aiding
           and Abetting Fraud ........................................... 16-20

    IV.    Plaintiffs Have Properly Pleaded Aiding and
           Abetting Fiduciary Breaches and Negligence ....................... 20-24

    V.    Plaintiffs State a Claim for Unjust Enrichment ...................... 24-25

CONCLUSION ........................................................... 25

## TABLE OF AUTHORITIES

### *Federal Cases*

Acito v. IMCERA Group,
    47 F.3d 47 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Allied Irish Banks, P.L.C. v. Bank of America, N.A.,
    No. 03 Civ. 3748 (DAB), 2006 U.S. Dist. LEXIS 4270
    (S.D.N.Y. Jan. 31, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Atlanta Shipping Corp. v. Chemical Bank,
    818 F.2d 240 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Capitol Records, Inc. v. Wings Digital Corp.,
    218 F. Supp. 2d 280 (E.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Chambers v. Time Warner, Inc.,
    282 F.3d 147 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Chance v. Armstrong,
    143 F.3d 701 (2d Cir. 1998)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Chief Executive Officers Club v. CEO China Clubs China Ltd.,
    No. 02-14829 (SMB), 2006 Bankr. LEXIS 482
    (Bankr. S.D.N.Y. Mar. 8, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Cortec v. Sum Holding, L.P.,
    949 F.2d 42 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

DeMarco v. Nat'l Collector's Mint, Inc.,
    229 F.R.D. 73 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

Dover Ltd. v. A.B. Watley, Inc.,
    423 F. Supp. 2d 303 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

Dreieck Finanz Ag v. Sun,
    No. 89 Civ. 4347 (MBM), 1989 U.S. Dist. LEXIS 9623
    (S.D.N.Y. Aug. 14, 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Dubai Islamic Bank v. Citibank, N.A.,
    256 F. Supp. 2d 158 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Elektra Entm't Group, Inc. v. Santangelo,
    No. 05 Civ. 2414 (CM), 2005 U.S. Dist. LEXIS 30388
    (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Elliott Assocs., L.P. v. Hayes,
    141 F. Supp. 2d 344 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Foman v. Davis,
    371 U.S. 178, 83 S. Ct. 227 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Friedman v. Hartman,
    No. 94-4627, 1996 U.S. Dist. LEXIS 3404
    (S.D.N.Y. Mar. 23, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Ganino v. Citizens Utils. Co.,
    228 F.3d 154 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 18

Gmurzynska v. Hutton,
    355 F.3d 206 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Golden Pac. Bancorp v. FDIC,
    273 F.3d 509 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

In re Colonial Ltd. Partnership Litig.,
    854 F. Supp. 64 (D. Conn. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In re Leslie Fay Cos., Inc. Sec. Litig.,
    835 F. Supp. 167 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In re Gas Reclamation, Inc. Sec. Litig.,
    733 F. Supp. 713 (S.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In re Vivendi Universal, S.A. Sec. Litig.,
    No. 03 Civ. 2175 (RJH), 2004 U.S. Dist. LEXIS 7015
    (S.D.N.Y. Nov. 3, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Keaney v. Eastern Computer Exch., Inc.,
    No.3:03cv1893 (RNC), 2004 U.S. Dist. LEXIS 7040
    (D. Conn. Apr. 21, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Kingdom 5 KR 41, Ltd. v. Star Cruises PLC,
    No. 01 Civ. 2946 (AGS), 2002 U.S. Dist. LEXIS 4636
    (S.D.N.Y. Mar. 20, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Lerner v. Fleet Bank, N.A.,
    No. 05-5106-cv, 2006 U.S. App. LEXIS 20326
    (2d Cir. Aug. 8, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Lucente v. IBM,
    75 F. Supp. 2d 169 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

McLaughlin v. Anderson,
    962 F.2d 187 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Michelsen v. Brush,
    224 F. Supp. 951 (S.D.N.Y. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Neilson v. Union Bank of Cal., N.A.,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Ouaknine v. MacFarlane,
    897 F.2d 75 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Phelps v. Kapnolas,
    308 F.3d 180 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Phillips v. Girdich,
    408 F.3d 124 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Pierce v. Marano,
    No. 01 Civ. 3410 (JSR) (AJP), 2002 U.S. Dist. LEXIS 14870
    (S.D.N.Y. Aug. 13, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Plunket v. Estate of Conan Doyle,
    No. 99 Civ. 11006 (KMW), 2001 U.S. Dist. LEXIS
    (S.D.N.Y. Feb. 22, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Richardson v. Artrageous, Inc.,
    No. 93 Civ. 5221 (RPP), 1993 U.S. Dist. LEXIS 15567
    (S.D.N.Y. Nov. 4, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Rothman v. Gregor,
    220 F.3d 81 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Sable v. Southmark/Envicon Capital Corp.,
    819 F. Supp. 324 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Sathianathan v. Smith Barney, Inc.,
  No. 04 Civ. 7122 (DAB) (FM), 2006 U.S. Dist. LEXIS 9828
  (S.D.N.Y. Feb. 24, 2006) .................................................. 19

SEC v. Lybrand,
  200 F. Supp. 2d 384 (S.D.N.Y. 2002) ................................... 16, 17

Shields v. Citytrust Bancorp.,
  25 F.3d 1124 (2d Cir. 1994) ............................................. 18

S & K Sales Co. v. Nike, Inc.,
  816 F.2d 843 (2d Cir. 1987) ............................................. 21

Steinbrecher v. Oswego Police Officer Dickey,
  138 F. Supp. 2d 1103 (N.D. Ill. 2001) .................................. 12

Swierkiewicz v. Sorema N.A.,
  534 U.S. 506, 122 S. Ct. 992 (2002) .................................... 11

Thomas v. Ross & Hardies,
  9 F. Supp. 2d 547 (D. Md. 1998) ........................................ 23

UniCredito Italiano SpA v. JPMorgan Chase Bank,
  288 F. Supp. 2d 485 (S.D.N.Y. 2003) ................................... 16

Vertrue Inc. v. Meshkin,
  No. 3:05cv1809 (PCD), 2006 U.S. Dist. LEXIS 24844
  (D. Conn. Apr. 27, 2006) ............................................... 11

### *Federal Rules*

Fed.R.Civ.P. 8(a) ....................................................... *passim*

Fed.R.Civ.P. 9(b) ...................................... 5, 10, 12, 15, 18

Fed.R.Civ.P. 12(b)(6) .................................. 5, 10, 13, 15

### *State Cases*

Alleco Inc. v. Harry & Jeanette Weinberg Found.,
  665 A.2d 1038 (Md. App. 1995) ......................................... 23

Anstine v. Alexander,
        128 P.3d 249 (Col. App. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Biller Associates v. Peterken,
        849 A.2d 847 (Conn. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

Dudrow v. Ernst & Young,
        No. X01 CV98 0144211S, 1999 Conn. Super. LEXIS 2564
        (Sept. 15, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Eightway Corp. v. Dime Savings Bank,
        404 N.Y.S.2d 302, 307 (Civ. Ct. Queens Co. 1978),
        aff'd, 420 N.Y.S. 836 (N.Y. Supr. App. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Gould v. Mellick and Sexton,
        819 A.2d 219 (Conn. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Granewich v. Harding,
        985 P.2d 788 (Or. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Kurker v. Hill,
        689 N.E.2d 833 (Mass. App. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Krawczyk v. Stingle,
        543 A.2d 733 (Conn. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

National Westminster Bank, U.S.A. v. Weksel,
        124 A.D.2d 144, 511 N.Y.S.2d 626 (N.Y. Supr. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . 15

Old Republic Nat'l Title Ins. Co. v. Garrell,
        No. CV040411302, 2004 Conn. Super. LEXIS 3670
        (Dec. 8, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Palmieri v. Lee,
        No. 405641, 1999 Conn. Super. LEXIS 3201
        (Nov. 24, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Thornwood, Inc. v. Jenner & Block,
        799 N.E.2d 756 (Ill. App. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Plaintiffs Broad-Bussel Family Limited Partnership ("Broad-Bussel Family"), Marie-Louise Michelsohn, Michelle Michelsohn and Herbert Blain Lawson, Jr. (collectively, the "plaintiffs"), individually and on behalf of all other persons and entities similarly situated (the "Class"), respectfully submit this memorandum of law in opposition to the Motion to Dismiss filed by defendants Faust Rabbach & Oppenheim LLP ("FR&O") and Steven Oppenheim (the "Oppenheim Defendants").

## INTRODUCTION

This class action is brought by plaintiffs, who invested in hedge funds operated by one or more of the various Bayou entities (the "Bayou Hedge Funds" or the "Funds"),[1] against the

---

[1]     The Funds include Bayou Super Fund, LLC, Bayou No Leverage Fund, LLC, Bayou Affiliates Fund, LLC, Bayou Accredited Fund, LLC, Bayou Offshore Fund, LLC and Bayou Fund, LLC.

The proposed Class includes those who, during the period December 31, 1996 through August 25, 2005 (the "Class Period"), invested funds or maintained investments in the Bayou Hedge Funds, and suffered damages thereby. Plaintiffs also bring this action on behalf of the Hennessee Subclass, which includes all members of the Class who, during the Class Period, were advised to invest in the Bayou Hedge Funds pursuant an investment advisory relationship with the Hennessee Group LLC (the "Hennessee Group"), one of the primary firms which advised numerous investors to invest in the Bayou Hedge Funds.

Defendants Hennessee Group and its principals, defendants Elizabeth Lee Hennessee and Charles J. Gradante (the "Hennessee Defendants") and defendant Citibank, N.A. ("Citibank"), have also moved to dismiss plaintiffs' Amended Complaint; plaintiffs' oppositions to those motions were both filed on June 30, 2006.

Defendants Jeffrey D. Fotta, Eqyty Research and Management, LLC, Eqyty Research and Management, LTD, and James G. Marquez have already filed Answers. None of the Bayou Defendants has answered or moved against the plaintiffs' Amended Complaint. However, on May 30, 2006, the Bayou Defendants filed for protection under the federal bankruptcy laws, with the exception of defendants Samuel Israel, Daniel Marino, Bayou Securities LLC, Bayou Securities Ltd., Bayou Offshore Fund, LLC, IM Partners, and IMG, LLC, who are thus in default in these proceedings.

(continued...)

1

Oppenheim Defendants and other defendants for their role in facilitating one of the biggest and most audacious hedge fund frauds in history. Almost since their inception in 1996, the Connecticut-based Bayou Hedge Funds operated essentially as a massive financial sham and Ponzi scheme that was orchestrated principally by Bayou's principals, Samuel Israel, III ("Israel") and Daniel Marino ("Marino"). During the course of the Class Period, plaintiffs and members of the Class invested more than $450 million in the Bayou Hedge Funds.

In carrying out this massive fraud, Israel and Marino created and used various Bayou entities, including among others the Bayou Hedge Funds and Bayou Group LLC, Bayou Management LLC, Bayou Securities LLC, Bayou Securities, LTD, Bayou Partners LLC, Bayou Affiliates, LLC, Bayou Equities, LLC, IM Partners and IMG, LLC (collectively, "Bayou" or the "Bayou Defendants"). These Bayou entities were used to fraudulently lure investors to invest hundreds of million of dollars in the Bayou Hedge Funds through a scheme of improper acts and blatant misrepresentations regarding the Funds' financial results -- using wholly falsified investment results, phoney résumés and even a fictitious, purportedly "outside" auditing firm, Richmond-Fairfield Associates, CPA, PLLC ("Richmond-Fairfield") -- which in fact was actually owned exclusively by defendant Marino himself. However, it was simply not possible for the fraud here to have been accomplished without the active and substantial participation of Bayou's bankers, advisors and lawyers -- including specifically, the Oppenheim Defendants -- as

---

[1](...continued)

In addition, following a threat by the Bayou debtors' Receiver that the Class plaintiffs' pursuit of their litigation violated the bankruptcy stay of 11 U.S.C. § 362(a), on August 15, 2006 the Class plaintiffs filed papers in the Bayou bankruptcy proceedings, In re Bayou Group, LLC, et al., Case No. 06-22306 (ASH) (Bankr. S.D.N.Y.), seeking: (a) Declaratory Relief to continue to prosecute their claims; and (b) Partial Withdrawal of the Reference so that this Court may directly adjudicate those issues.

well as other third parties such as Citibank and the Hennessee Defendants.

In particular, throughout the Class Period, the Oppenheim Defendants served as the lawyers for the Bayou Hedge Funds and the related Bayou entities. In that capacity, the Oppenheim Defendants provided counsel and advice to defendants Israel and Marino in planning, forming and operating the fraudulent Bayou Hedge Funds. Significantly, several of the related Bayou entities, including Bayou's primary management arm -- Bayou Management LLC -- as well as Bayou Equities LLC and Bayou Advisors LLC, all maintained business offices directly at the law offices of defendant FR&O. Moreover, the Oppenheim Defendants are alleged to have provided not only legal and business counsel and assistance, but also drew on the vast and unique public accounting and auditing background of defendant Steven Oppenheim -- who just six years before the Bayou fraud began was the managing partner and an owner of the 15th largest accounting firm in the United States. Indeed, the Oppenheim Defendants' wealth of expertise is alleged to have assisted, facilitated and helped conceal the Bayou Defendants' massive Ponzi scheme and accounting fraud.

In support of their dismissal motion, the Oppenheim Defendants' attach a supposed copy of defendant Marino's self-described "Combined Confession and Suicide Letter" (the "Marino Confession"). See Exh. B of the Declaration of Shari Claire Lewis (the "Lewis Decl."). The Oppenheim Defendants seek to use the Marino Confession to place the blame solely on the conduct of others. For example, they cite the very first page of that letter to shield them from any responsibility by baldly claiming that "[t]hey knew nothing at all." Id. at p.1. But the Oppenheim Defendants' attempt to extricate themselves rests on the words of an admitted fraudster and convicted felon. In any event, such factual disputes cannot properly be adjudicated

3

on a motion to dismiss. The Oppenheim Defendants' use of the Marino Confession, however, does raise fertile questions for discovery, including how and when they came into possession of that letter; indeed, plaintiffs had understood that the letter had not been publicly disclosed. Moreover, the legalese format of that so-called "suicide letter" also raises curious issues as to its drafting -- indeed, *it ends with lines for a witness to sign and date the letter*.

Further, the Marino Confession undeniably provides additional evidence in support of plaintiffs' allegations that the Bayou Hedge Funds were a flat-out fraud from their inception. That document also further supports the fact that such an extensive and enduring scam could not have been accomplished without the knowing participation and substantial assistance and expertise, or at least a blind and reckless indifference to the underlying criminality, by others -- including the Oppenheim Defendants.

At bottom, it is beyond cavil that *if* the plaintiffs *prove* that the Oppenheim Defendants facilitated the underlying fraud consistent with the allegations in their Amended Complaint, there is a basis for liability. Here, plaintiffs seek to hold the Oppenheim Defendants liable for their own misconduct in aiding and abetting the Bayou Defendants' fraud and breaches of fiduciary duties. Plaintiffs also allege in the alternative that the Oppenheim Defendants have improperly profited from the Bayou fraud, such that it would be inequitable to allow those defendants to retain those monies, especially in light of the hundreds of millions of dollars in damages that the fraud has inflicted on plaintiffs and the other members of the Class.

Nevertheless, the sole issue before the Court now is whether plaintiffs would be entitled to relief should they prove that the Oppenheim Defendants aided and abetted the Bayou Defendants' misconduct as alleged. Indeed, this remains the test even if it may appear on the

4

face of the pleading that a recovery is very remote and unlikely -- something which is not the case here. Here, plaintiffs plainly allege sufficient facts to meet the applicable requirements of Federal Rules of Civil Procedure ("FRCP") 8(a), 9(b) and 12(b)(6). Accordingly, the Oppenheim Defendants' motion should be denied.

## SUMMARY OF PERTINENT FACTS[2]

### A.     The Fraudulent Bayou Hedge Funds

During the Class Period, defendants Israel and Marino solicited, sold and operated the Bayou Hedge Funds -- a family of hedge funds based in Stamford, Connecticut. ¶ 2. The Bayou Hedge Funds were touted and sold as legitimate investment vehicles, but were actually being operated as a massive financial sham and Ponzi scheme. ¶¶ 2, 73, 124. Specifically, Israel and Marino fraudulently lured investors to invest and maintain hundreds of millions of dollars in the Bayou Hedge Funds during the Class Period, through a scheme of improper acts and continuing misrepresentations and omissions regarding the business practices, financial results, operations and condition of Bayou. ¶¶ 86-88. Among other things, defendant Israel was a founder and served as Bayou's CEO and Chief Investment Officer. ¶ 26. By contrast, defendant Marino is a Certified Public Accountant and served as Bayou's CFO and Chief Operating Officer. ¶ 27.

Throughout the Class Period, the Bayou Defendants and third party investment advisors, such as the Hennessee Defendants, communicated wholly false financial and other information about Bayou and the Bayou Hedge Funds to the Class via weekly newsletters, monthly reports, quarterly reports, annual reports and investor conference calls, all of which also omitted material

---

[2]      The facts are taken from plaintiffs' Amended Complaint (the "complaint"), citations to which are referenced as " ¶ ___ ".

adverse information about Bayou and the Bayou Hedge Funds in order to mislead Class member

investors into believing the Bayou Hedge Funds were being operated properly and in accordance

with the law. ¶ 60. The Bayou Defendants then used their phoney outside accounting firm,

Richmond-Fairfield, in order to fraudulently certify the false financial data. ¶¶ 32, 62-63, 67, 72,

107. For example, during the Class Period, defendants Israel and Marino sent plaintiffs and other

members of the Class, on a monthly basis, Net Asset Valuations that purported to accurately

reflect Class members' contributions, withdrawals, and profits and losses for their investments in

the Bayou Hedge Funds. ¶¶ 30, 59. However, these Net Asset Valuation statements were false

and misleading because they did not reflect Class members' true financial interests in the Bayou

Hedge Funds and did not accurately portray the Bayou Hedge Funds' true financial position and

results. Id. Moreover, the Net Asset Valuation statements were also false because they omitted

to disclose, among other things, the massive trading losses that were being incurred by the Bayou

Hedge Funds, the true asset valuation of the Bayou Hedge Funds, and the fact that the Bayou

Defendants were unlawfully and secretly converting and otherwise dissipating -- indeed, outright

stealing -- millions of dollars of Class member funds. Id.

On or about July 27, 2005, defendant Israel sent Class member investors, including

plaintiffs, a letter which announced abruptly that the Bayou Hedge Funds would be closed at the

end of July 2005. ¶ 64. During the next couple of weeks, defendant Israel sent Class member

investors additional letters discussing the status of winding-up the Bayou Hedge Funds and

promising to return promptly all funds to the respective Class member investors. ¶¶ 65-68.

On August 25, 2005, the financial press began to reveal that Bayou had long been

operated as a fraud, with its principals having misappropriated literally millions of investor

6

dollars. ¶ 1. That day, *The New York Times* shocked Class members and other investors by reporting that "[s]tate and federal officials in Connecticut are investigating the possible collapse of the Bayou Group, a hedge fund and brokerage firm in Stamford that managed an estimated $400 million for its investors." ¶¶ 7, 69. On August 27, 2005, *The New York Post* reported that federal agents had seized boxes of records and other material from Bayou's offices in Stamford, Connecticut, amid fears that up to $500 million of its investors' money has "disappeared." ¶ 70.

Since Bayou's shocking collapse, numerous investigations have been commenced by state, federal and regulatory agencies, several lawsuits have been filed, and Bayou's two principals, defendants Israel and Marino, have pleaded guilty to multiple criminal counts, and now face long prison sentences. ¶¶ 2, 8, 85. Although some $101 million in suspected Bayou investor funds have been seized by the Arizona Attorney General, millions of dollars in other Class member investment proceeds remain missing. ¶¶ 8, 84.

**B.    The Oppenheim Defendants**

On August 29, 2005, following the initial public disclosures of Bayou's collapse, *The Wall Street Journal* reported that a "suicide note and confession" had been found at offices of defendant Bayou Management. ¶¶ 7, 71, 72. That document, the Marino Confession, was reportedly written by defendant Marino, directly implicated defendants Marino, Israel and others, and provided a six-page account of some of the supposed details of financial fraud that had been conducted by the Bayou Defendants and others since in or about 1996. Id. Notably, the Marino Confession specifically identified Steve Oppenheim as a lawyer that Marino "worked with" during the course of committing a self-described "fraud of great magnitude". See Lewis Decl., Exh. B, at p.1. Although Marino's initial statements in that letter make a bald assertion that

7

defendant Steven Oppenheim and certain other persons *knew nothing*, the underlying facts and the inferences to be drawn from those facts concerning the extensive and enduring Bayou fraud over the past decade demonstrate clearly just the opposite.

As alleged, defendant FR&O is a law firm and limited liability partnership located in Manhattan. ¶ 36. During the Class Period, FR&O served as counsel for Bayou and was otherwise substantially involved in facilitating the formation and operations of various of the Bayou entities. Also during the Class Period, at least three of the Bayou entities, including defendants Bayou Management, Bayou Advisors and Bayou Equities, actually maintained their business address at FR&O's law offices. ¶¶ 36, 38.

Defendant Steven Oppenheim is a partner and member of FR&O. ¶ 37. Notably, defendant Steven Oppenheim has also been a CPA since 1965. In fact, just six years before the Bayou fraud began in 1996, defendant Steven Oppenheim was the managing partner of the former public accounting firm Spicer & Oppenheim -- an eight-office, 100-partner accounting firm that had been the nation's 15th largest accounting firm. Id.[3] Accordingly, the Oppenheim Defendants possessed both expert legal knowledge and expertise in accounting and auditing.

In rendering services to Bayou, the Oppenheim Defendants were privy to non-public information and documents concerning the true structure, operations and finances of the Bayou Hedge Funds. ¶ 38. Among other things, the Oppenheim Defendants helped organize various of the Bayou entities; prepared papers, filings and other documents for those entities; rendered tax,

---

[3]        Prior to his involvement with Bayou, defendant Marino worked in the audit departments at Spicer & Oppenheim. ¶ 27. Following the dissolution of Spicer & Oppenheim, defendant Steven Oppenheim and most of his New York office joined the accounting firm of Grant Thornton, which later served as Bayou's auditor until in or about 1998. Id. In late 1991, Steven Oppenheim left Grant Thornton to join the predecessor firm of FR&O as a tax lawyer. Id.

8

accounting and legal advice to those entities; received fees, compensation and other payments from those entities; and advised defendants Israel, Marino and other Bayou personnel regarding the operations of those entities.  Id.

Further, given defendant Steven Oppenheim's extensive legal, accounting and auditing knowledge and background, defendant FR&O and defendant Steven Oppenheim knew or recklessly disregarded various aspects of the fraud and other misconduct that was being committed by the Bayou Defendants.  Id.  At the same time that the Oppenheim Defendants were facilitating the fraud of Bayou, they were also receiving money that came from plaintiffs' contributions to the fraudulent funds.  ¶¶ 159, 218.

For example, the Oppenheim Defendants knew or ignored non-public information regarding numerous hallmarks of the Bayou Defendants' massive fraud and other misconduct -- including, in particular, that Bayou had purportedly been audited by an independent accounting firm when, in fact, that phoney firm been established and owned by defendant Marino solely to facilitate the fraud; the "whistle-blower" lawsuits filed by a former principal and a former employee of Bayou; conflicts of interests in Bayou's operations; falsified corporate résumés for certain Bayou entities; a falsified professional résumé for defendant Israel; Bayou's prior regulatory violations; and the non-existence of any independent verification or confirmation as to the Bayou Hedge Funds' asset balances or securities transactions.  See ¶¶ 38, 107.  In sum, the Oppenheim Defendants are alleged to have aided and abetted the Bayou Defendants' now-admitted fraud.

9

## ARGUMENT

In ruling on a motion to dismiss under Fed R. Civ. P. Rule 12(b)(6), courts are to accept all factual allegations in the complaint as true, as well as draw all reasonable inferences in the plaintiffs' favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). At the motion to dismiss stage, the issue is "'not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" Phelps v. Kapnolas, 308 F.3d 180, 184-85 (2d Cir. 2002) (quoting Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998)). Accordingly, the court's role in ruling on a Rule 12(b)(6) motion is "'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Pierce v. Marano, No. 01 Civ. 3410 (JSR) (AJP), 2002 U.S. Dist. LEXIS 14870, at *3 (S.D.N.Y. Aug. 13, 2002) (citation omitted). Although allegations of fraud must meet the particularity requirements of Fed. R. Civ. P. 9(b), "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Ganino v. Citizens Utils. Co., 228 F.3d 154, 169 (2d Cir. 2000). Further, Rule 9(b) "must be read together with rule 8(a)". Ouaknine v. MacFarlane, 897 F.2d 75, 79 (2d Cir. 1990).

Morever, as counsel to the Connecticut-based Bayou defendants, the substantive law of Connecticut is applicable to claims asserted. Because this case was originally brought in Connecticut federal court, Connecticut choice of law principles apply in this, the transferee, forum. See Lucente v. IBM, 75 F. Supp. 2d 169 (S.D.N.Y. 1999) (McMahon, J.). Under Connecticut choice of law analysis, "the court should apply the law of the state which, *with respect to the tort(s) at issue here*, has the most significant relationship to the occurrence and the

10

parties." <u>Vertrue Inc. v. Meshkin</u>, No. 3:05cv1809 (PCD), 2006 U.S. Dist. LEXIS 24844, at *65 (D. Conn. Apr. 27, 2006) (emphasis added).

Here, the actual clients of the Oppenheim Defendants were the Bayou Hedge Funds and the various related Bayou entities -- all of which were based in and primarily operated from Stamford, Connecticut. In addition, the Oppenheim Defendants' tortious misconduct at issue in this case occurred in and caused damage in the State of Connecticut. Nevertheless, regardless of whether Connecticut or New York law is applied the result is the same -- plaintiffs' claims are adequately pleaded, and the Court should permit plaintiffs to proceed with discovering the facts in their case and amassing evidence to prove their claims.

## I.    PLAINTIFFS' COMPLAINT SATISFIES THE NOTICE PLEADING REQUIREMENT OF FRCP 8(a)

Tellingly, the Oppenheim Defendants' lead argument is one that is often saved as a last-ditch throwaway point -- to wit, that plaintiffs have failed to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief" consistent with FRCP 8(a). In making this argument, the Oppenheim Defendants rely on <u>Michelsen v. Brush</u>, 224 F. Supp. 951 (S.D.N.Y. 1963). However, that case, like the instant one, was pleaded properly because plaintiffs "set out the primary fundamental facts, which, if true, would require the defendant to account." <u>Id.</u> at 954.

As this Court recently held in <u>Elektra Entm't Group, Inc. v. Santangelo</u>, No. 05 Civ. 2414 (CM), 2005 U.S. Dist. LEXIS 30388, at *4 (S.D.N.Y. 2005), the purpose of FRCP 8(a) is simply to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." <u>Accord</u> <u>Gmurzynska v. Hutton</u>, 355 F.3d 206, 209 (2d Cir. 2004); <u>Swierkiewicz v.</u>

11

Sorema N.A., 534 U.S. 506, 122 S. Ct. 992 122 S. Ct. 992 (2002). "With the exception of claims for fraud and mistake, the sufficiency of a complaint is judged by the 'liberal system of notice pleading' set up by the federal rules." Elektra Entm't Group, Inc. v. Santangelo, 2005 U.S. Dist. LEXIS 30388, at *4 (citation omitted). Moreover, the Oppenheim Defendants' entire FRCP 8(a) argument must take into consideration that plaintiffs have certainly pleaded primary fraud claims as to the Bayou Defendants with the specificity required by FRCP 9(b) -- indeed, defendant Israel and Marino have pleaded guilty to criminal fraud.

Also, contrary to the Oppenheim Defendants' contentions, "it is of no consequence that Plaintiffs plead on 'information and belief,' rather than setting forth specific evidentiary facts to support their allegations." Id. (citing Steinbrecher v. Oswego Police Officer Dickey, 138 F. Supp. 2d 1103, 1109-10 (N.D. Ill. 2001) ("Pleading 'upon information and belief' is sufficient to satisfy federal notice pleading under Fed.R.Civ.P. 8(a).").

Instead, FRCP 8 requires only that plaintiffs "give notice of the claim, leaving 'factual details and evidentiary issues [to be] developed during discovery.'" Id. (quoting Capitol Records, Inc. v. Wings Digital Corp., 218 F. Supp. 2d 280, 284 (E.D.N.Y. 2002)). Accord Plunket v. Estate of Conan Doyle, No. 99 Civ. 11006 (KMW) 2001 U.S. Dist. LEXIS 2001, at *18 (S.D.N.Y. Feb. 22, 2001) (holding that plaintiff need not specify in the complaint each infringing act, as "discovery is likely to provide many of the details of the allegedly infringing acts and much of this information may be exclusively in defendant's control"). Moreover, the Second Circuit has recently confirmed that: "All complaints must be read liberally; dismissal on the pleadings never is warranted unless the plaintiff's allegations are doomed to fail under any available legal theory." Phillips v. Girdich, 408 F.3d 124, 128 (2d Cir. 2005).

12

In fact, this Court recently rejected a similar FRCP 8(a) argument. See DeMarco v. Nat'l Collector's Mint, Inc., 229 F.R.D. 73, 79 (S.D.N.Y. 2005) (McMahon, J.) ("Defendants' contention that this Complaint fails to meet [the 'incredibly lenient standard' of FRCP 8(a)] is belied by Defendants' own motion to dismiss"; "[a]pparently, they were able to discern enough about what they were alleged to have done wrong to respond to the motion to dismiss with a 19 page brief and exhibits."; denying defendants' motion to dismiss and noting that defendants' FRCP 8(a) argument was "frivolous").

## II.    PLAINTIFFS STATE A CLAIM FOR NEGLIGENCE

The Oppenheim Defendants argue that they cannot be held liable for negligence because, as attorneys, they supposedly owed no duty to non-clients such as plaintiffs and the other members of the Class who invested with the Bayou Defendants. The Oppenheim Defendants generalized denial is incorrect and, in any event, procedurally improper in the context of a Rule 12(b)(6) motion.

Under Connecticut law, a claim of negligence is actionable against the Oppenheim Defendants because it was *foreseeable* that their misconduct in facilitating the Bayou Defendants' fraud and other misconduct would cause the damages suffered by plaintiffs and the other investors in the Bayou hedge funds. On point is the decision in Old Republic Nat'l Title Ins. Co. v. Garrell, No. CV040411302, 2004 Conn. Super. LEXIS 3670 (Dec. 8, 2004) (denying dismissal motion to permit both negligence and breach of fiduciary duty claims to be maintained by the non-client buyer's agents against the lawyers for the seller).

In Old Republic Nat'l Title Ins., the defendant attorneys failed to satisfy a lien on the real property during a closing transaction. Hence, the buyer's title insurer instead had to satisfy the

13

lien. The Court refused to dismiss the action against the attorney and his law firm even though

the legal services rendered at the closing were "not for the sole benefit of the [buyers] but rather

for the mutual benefit of both parties." Id. at *13. In permitting the claims to proceed, the Court

relied upon the Connecticut Supreme Court's holding in Krawczyk v. Stingle, 543 A.2d 733

(Conn. 1988), stating:

> Determining when attorneys should be held liable to parties with
> whom they are not in privity is a question of public policy . . . In
> addressing this issue, courts have looked principally to whether the
> primary or direct purpose of the transaction was to benefit the third
> party . . . Additional factors considered have included the
> foreseeability of harm, the proximity of the injury to the conduct
> complained of, the policy of preventing future harm and the burden
> on the legal profession that would result from the imposition of
> liability . . . Courts have refrained from imposing liability when
> such liability had the potential of interfering with the ethical
> obligations owed by an attorney to his or her client." (Citations
> omitted.) Id., 245-46.

Id. at *12-13. Here, there is no conflict between the duty the attorney owes to his or her client

and the duty the attorney owes to intended beneficiaries. To the contrary, providing proper legal

advice to the Bayou Defendants would not have created any conflict and may have potentially

prevented or mitigated fraudulent conduct.

Moreover, the duty element of negligence involves a ***highly factual inquiry*** inappropriate

for resolution on a motion to dismiss. For example, in the case relied upon by the Oppenheim

Defendants, Gould v. Mellick and Sexton, 819 A.2d 219 (Conn. 2002), the Connecticut Supreme

Court was actually addressing the appeal of cross-motions for summary judgment. Further, the

holding in Gould was expressly limited, as the retention and the role of the defendant attorneys

had been open for discovery. Id. at 155. The Oppenheim Defendants' reliance on Biller

14

Associates v. Peterken, 849 A.2d 847 (Conn. 2004) is likewise misplaced because that case involved an appeal of a trial court's judgment against an attorney defendant following a full trial of the matter.

The New York cases relied upon by the Oppenheim Defendants are not to the contrary. The decision in Friedman v. Hartman, No. 94-4627, 1996 U.S. Dist. LEXIS 3404 (S.D.N.Y. Mar. 23, 1994), exemplifies the distinctions. There, the Court addressed motions for summary judgment as to plaintiffs' fraud claim which was brought directly against the attorney defendant and her firm. In denying dismissal, the Court noted that the defendants' earlier motions under Rules 9(b) and 12(b)(6) had been denied and that defendants had properly waited to seek dismissal after "[a] fuller record having developed after discovery" had been obtained. Id. at *11. The Court also found inapposite another case relied upon by the Oppenheim Defendants, National Westminster Bank, U.S.A. v. Weksel, 124 A.D.2d 144, 511 N.Y.S.2d 626 (N.Y. Supr. 1987), which the Court distinguished on the same factual grounds as present here: "In the instant case, [the defendant attorney] was indisputably involved in some way -- the extent of which is disputed -- in the creation of the fraudulent agreement. Thus, the actions by the [attorney] defendants can not be said, on any version of the facts before this Court, to constitute 'mere inaction.'" Id. at *13. Here, the allegations in plaintiffs' complaint as against the Oppenheim Defendants go far beyond "mere inaction".

Hence, whether under New York or Connecticut law, plaintiffs' claim for negligence should not be dismissed.

15

### III.   PLAINTIFFS HAVE PROPERLY
### PLEADED AIDING AND ABETTING FRAUD

The Oppenheim Defendants also seek to dismiss plaintiffs' secondary liability claims.

However, the allegations in plaintiffs' complaint plead sufficiently the Oppenheim Defendants'

knowing participation and substantial assistance in the Bayou Defendants' now-admitted fraud

and other misconduct.

"[T]o sustain a cause of action for aiding and abetting, a plaintiff is required to plead and

prove (1) the party whom the defendant aids must perform a wrongful act that causes an injury;

(2) the defendant must be *generally aware* of his role as part of an overall illegal or tortious

activity at the time that he provides the assistance, and (3) the defendant must knowingly and

substantially assist the principal violation." Palmieri v. Lee, No. 405641, 1999 Conn. Super.

LEXIS 3201, at *13-14 (Nov. 24, 1999) (emphasis added). Accord In re Colonial Ltd.

Partnership Litig., 854 F. Supp. 64, 102-03 (D. Conn. 1994); UniCredito Italiano SpA v.

JPMorgan Chase Bank, 288 F. Supp. 2d 485, 502 (S.D.N.Y. 2003).

"Courts in this district have also held that *recklessness* satisfies the scienter requirement"

where the plaintiffs' reliance on the defendant's misconduct was foreseeable or where the

defendant owed a duty of disclosure to the defrauded party. SEC v. Lybrand, 200 F. Supp. 2d

384, 400 (S.D.N.Y. 2002) (emphasis added). Accord In re Leslie Fay Cos., Inc. Sec. Litig., 835

F. Supp. 167, 175 (S.D.N.Y. 1993); In re Gas Reclamation, Inc. Sec. Litig., 733 F. Supp. 713,

720 (S.D.N.Y. 1990). Moreover, the requisite element of assistance exists where "(1) a

defendant affirmatively assists, helps conceal, or by virtue of failing to act when required to do so

enables the fraud to proceed, and (2) the actions of the aider/abettor proximately caused the harm

16

on which the primary liability is predicated." Id.

Here, plaintiffs sufficiently allege that the Oppenheim Defendants had knowledge of the Bayou Defendants' misconduct. For example, the Oppenheim Defendants are alleged to have aided and abetted the Bayou Defendants' fraud by "directly or indirectly participating in planning, orchestrating and/or executing, approving or ignoring the alleged fraud, including but not limited to the *creation and operation* of several of the Bayou Defendants." ¶ 203(b) (emphasis added). See also ¶¶ 36-38.

The requisite inference of knowledge of the underlying misconduct arises here clearly from the fact, standing alone, that the Bayou fraud over a multi-year period was accomplished in significant part through the use of a *phoney public accounting firm*. Given defendant Steven Oppenheim's experience and knowledge of public accounting, auditing and related law, it cannot be denied reasonably that the Oppenheim Defendants were unaware of at least certain of the underlying misconduct including facts concerning Richmond Fairfield. At the very least, the Oppenheim Defendants consciously turned a blind eye, and their recklessness, combined with the fact that the plaintiffs were third parties whose reliance was foreseeable, is more than sufficient to state a cognizable aiding and abetting claim in the circumstances. Accord SEC v. Lybrand, 200 F. Supp. 2d at 400.

In addition, the Marino Confession provides further evidence that defendant Steven Oppenheim "worked with" Marino and others during the course of committing "a fraud of great magnitude." See Lewis Decl., Exh. B, at p.1. Although Marino also attempts to deny the Oppenheim Defendants had a role in the Bayou fraud, the very fact that Marino felt the need to deflect suspicion from the Oppenheim Defendants actually supports the opposite conclusion.

17

For now, however, the point is not to resolve these factual disputes, but to move this case along in discovery so both sides can amass evidence in support of their respective positions.

Here, plaintiffs have more than adequately pleaded the Bayou Defendants' underlying fraud. See, e.g., ¶¶ 52-88. Moreover, both of Bayou's primary principals, defendants Israel and Marino, have pleaded guilty to criminal fraud. And while plaintiffs bring direct fraud claims against the Bayou Defendants, they have brought only narrowly tailored aiding and abetting claims against the Oppenheim Defendants (and a direct claim for negligence on the facts here). The Oppenheim Defendants' motion to dismiss conflates the concepts of primary and secondary liability, leading not only to a mischaracterization as to the non-fraud *gravamen* of the claims that are pleaded against them, but also the applicable pleading standards.

Indeed, the Oppenheim Defendants readily admit that "fraudulent intent may be averred generally". See Oppenheim Defs Brief, at p.19; accord Ganino v. Citizens Utils. Co., 228 F.3d 154, 169 (2d Cir. 2000) (under Rule 9(b)'s heightened pleading requirements, "conditions of the mind", such as allegations of knowledge, may be averred generally). However, the Oppenheim Defendants' further assertion that plaintiffs need to "allege facts that give rise to a strong inference of fraudulent intent" is grossly misplaced. Id. at 19-20. The cases the Oppenheim Defendants cite in support of such a requirement are not applicable to aiding and abetting claims, but instead are part of a *statutory requirement for alleging direct primary fraud violations of the federal securities laws*, including under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). See, e.g., Acito v. IMCERA Group, 47 F.3d 47, 51 (2d Cir. 1995) (statutory claims under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b)); Shields v. Citytrust Bancorp., 25 F.3d 1124 (2d Cir. 1994) (same); Dover Ltd. v. A.B. Watley, Inc., 423

F. Supp. 2d 303 (S.D.N.Y. 2006) (same). <u>See also e.g.</u>, <u>McLaughlin v. Anderson</u>, 962 F.2d 187,

191 (2d Cir. 1992) (primary fraud violations under RICO); <u>Sathianathan v. Smith Barney, Inc.</u>,

No. 04 Civ. 7122 (DAB) (FM) 2006 U.S. Dist. LEXIS 9828 (S.D.N.Y. Feb. 24, 2006) (same).

Further, the Oppenheim Defendants' attempt to cloak themselves from liability based on

the fact that they are attorneys is unavailing. <u>See</u> Oppenheim Defs Brief, at p.20. Indeed, most

of the cases cited by the Oppenheim Defendants do not concern claims against lawyers, or even

aiding and abetting claims. <u>See, e.g.</u>, <u>Sable v. Southmark/Envicon Capital Corp.</u>, 819 F. Supp.

324, 337 (S.D.N.Y. 1993) (primary allegations of fraud); <u>Chief Executive Officers Club v. CEO</u>

<u>China Clubs China Ltd.</u>, 2006 Bankr. LEXIS 482, at *22 (Bankr. S.D.N.Y. Mar. 8, 2006)

(primary fraud claims against business executives, not lawyers).

Curiously, while the Oppenheim Defendants concern themselves with supposed harm to

their professional reputation as a result of this litigation, those defendants have done nothing to

distance themselves from their publicly-filed records that show plainly that defendant FR&O

actually hosted at least three of the fraudulent Bayou entities, by permitting those entities to use

FR&O's business address as their business address; indeed those entities appear still at present to

list FR&O's office as their business address.[4]

Further, "'one may not use his license to practice law as a shield to protect himself from

---

[4]      Attached as Exhibit A is a true and correct copy of online records from the
Connecticut Secretary of State's Commercial Recording Division for Bayou Management LLC,
Bayou Equities LLC and Bayou Advisors LLC, as downloaded on August 15, 2006 -- nearly one
year since the Bayou fraud was first publicly reported. On a motion to dismiss, "the court may
also consider documents, while not explicitly incorporated into the complaint, that 'plaintiffs
either possessed or knew about and upon which they relied in bringing the suit.'" <u>Elliott Assocs.,
L.P. v. Hayes</u>, 141 F. Supp. 2d 344, 352 (S.D.N.Y. 2000) (citing <u>Rothman v. Gregor</u>, 220 F.3d
81, 88 (2d Cir. 2000)).

the consequences of his participation in an unlawful or illegal conspiracy.'" Thornwood, Inc. v. Jenner & Block, 799 N.E.2d 756, 768 (Ill. App. 2003) (reinstating claims against law firm for aiding and abetting fraud) (quoting Wahlgren v. Bausch & Lomb Optical Co., 68 F.2d 660, 664 (7th Cir. 1934)). "The same policy should prevent an attorney from escaping liability for knowingly and substantially assisting a client in the commission of a tort." Id.

## IV. PLAINTIFFS HAVE PROPERLY PLEADED AIDING AND ABETTING FIDUCIARY BREACHES AND NEGLIGENCE

Defendants again conflate the standards for primary and secondary liability as to fiduciary duty and negligence claims. Plaintiffs *do not* claim that the Oppenheim Defendants breached any fiduciary duties that the Oppenheim Defendants allegedly owed to the plaintiffs directly. Nor do plaintiffs contend that the Oppenheim Defendants were even fiduciaries to the plaintiffs. Instead, plaintiffs' claims are focused narrowly on the Oppenheim Defendants' alleged roles as aiders and abettors of the Bayou Defendants' underlying breaches.

Significantly, moreover, "there is no requirement that an aider and abettor owe a fiduciary duty, or any other duty of care, to a party injured by the principal's breach." Anstine v. Alexander, 128 P.3d 249, 256 (Colo. App. 2005) (affirming jury verdict that company's lawyers aided and abetted breach of fiduciary duty that was owed by the company's president). Indeed, "the law does not insulate aiders and abettors from liability simply because they acted in the course of fulfilling separate and distinct duties as lawyers." Id. Accord Dudrow v. Ernst & Young, No. X01 CV98 0144211S, 1999 Conn. Super. LEXIS 2564, at *25-26 (Sept. 15, 1999) (denying summary judgment as to aiding and abetting claims against company lawyers).

Claims for aiding and abetting a breach of fiduciary duty require an allegation as to the

20

defendants' knowledge of the breach and participation in aiding the primary breach. <u>Dubai</u>

<u>Islamic Bank v. Citibank, N.A.</u>, 256 F. Supp. 2d 158, 165 (S.D.N.Y. 2003). <u>See, e.g.</u>, <u>S & K</u>

<u>Sales Co. v. Nike, Inc.</u>, 816 F.2d 843 (2d Cir. 1987) (holding that "the tort of participation in a

fiduciary's breach of duty simply does not require proof of an intent to harm").

The Second Circuit's recent decision in <u>Lerner v. Fleet Bank, N.A.</u>, No. 05-5106-cv,

2006 U.S. App. LEXIS 20326 (2d Cir. Aug. 8, 2006), which reversed dismissal and reinstated a

claim for aiding and abetting fiduciary duty against a bank by plaintiff investors whose funds are

deposited in accounts maintained by fiduciaries, is on point. There, the Court clarified that the

knowledge requirement for a claim for aiding and abetting a fiduciary breach "does not depend

on such knowledge of outright theft", but instead knowledge of only a fiduciary breach itself. <u>Id.</u>

at *52. The Second Circuit also held that knowledge of "red flags" regarding the underlying

breach may very well constitute the requisite knowledge. <u>Id.</u> (finding that the underlying

"commingling of funds was not only an indication of a breach of fiduciary duty -- it was, in and

of itself, a breach").

Here, the Oppenheim Defendants are alleged to at least have had knowledge of hallmarks

of the Bayou Defendants' massive fraud and other misconduct, *e.g.*: that Bayou was using a

phoney public accounting firm; that several "whistle-blower" lawsuits had been filed against

Bayou; that Bayou's operations were organized with blatant conflicts of interest that allowed

Israel and Marino to loot the Bayou Hedge Funds at will; that Bayou falsified corporate and

personal résumés for Bayou and its principals; and the lack of any independent verification or

confirmation as to the Bayou Hedge Funds' asset balances or securities transactions. <u>See</u> ¶ 107.

As plaintiffs here allege, the Bayou Defendants indisputably were fiduciaries for the

21

plaintiff Class. Also, indisputably, the Bayou Defendants blatantly -- and admittedly --
undertook their underlying fraudulent conduct in misrepresenting the Bayou Hedge Funds and
converting the fiduciary investment funds that they solicited and received from plaintiffs and the
other members of the Class. See, e.g., ¶¶ 52-88. Hence, the Oppenheim Defendants must
concede that the plaintiffs have alleged sufficiently the Bayou Defendants' underlying fiduciary
breaches. See Oppenheim Defs Brief, at p.3 (conceding the "detailed allegations against the
Bayou Defendants").

Moreover, however, plaintiffs have also alleged sufficient claims against the Oppenheim
Defendants for aiding and abetting those breaches. As legal counsel for Bayou, the Oppenheim
Defendants were privy to non-public information and documents concerning the true structure,
operations and finances of the Bayou Hedge Funds. ¶ 38. Further, given defendant Steven
Oppenheim's legal, accounting and auditing expertise, and given the Oppenheim Defendants'
roles in helping establish and advise those entities and defendants Israel and Marino, the
Oppenheim Defendants at the very least knew or consciously turned a blind eye from core
aspects of the Bayou Defendants' misconduct. Id. Indeed, one of the most glaring examples of
the Oppenheim Defendants' inferred knowledge arises from the fact that during most of the Class
Period, Bayou purported to be audited by a Manhattan public accounting firm, which in reality
was nothing more than a fiction on paper. ¶ 32. In sum, the scale and magnitude of the fraud
here simply could not have been possible without the substantial and active assistance of the
Oppenheim Defendants on the facts alleged here.

Again, the Oppenheim Defendants conflate primary and secondary tort liability by
misstating plaintiffs' claims as being an "accusation of fraud" against the Oppenheim

22

Defendants. Oppenheim Defs Brief, at p.20. To the contrary, no direct fraud claims have even been brought against the Oppenheim Defendants, and "the complaint clearly identifies the misconduct with which [the Oppenheim Defendants are] charged, and provides sufficient information to enable [them] to prepare an adequate defense. More is not required." Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1132 (C.D. Cal. 2003). Accord Kurker v. Hill, 689 N.E.2d 833, 837 n.5 (Mass. App. 1988) (reinstating on appeal against lawyers aiding and abetting claim, which was deemed subsumed within the civil conspiracy claim); Granewich v. Harding, 985 P.2d 788, 793-94 (Or. 1999) (reinstating aiding and abetting claims against company's lawyers; holding that "one who knowingly aids another in the breach of a fiduciary duty is liable to the one harmed thereby .... [t]hat principle readily extends to lawyers").

    In addition, the Oppenheim Defendant's suggestion that aiding and abetting claims are novel is baseless, even if in the context of claims for aiding and abetting negligence which several courts have recognized. See, e.g., Thomas v. Ross & Hardies, 9 F. Supp. 2d 547, 559 (D. Md. 1998) (recognizing aiding and abetting negligence; holding that defendant is liable if he encourages, incites, aids, or abets the acts of the direct perpetrator of the tort; denying motion to dismiss because resolution of such claims involve questions of fact); Alleco Inc. v. Harry & Jeanette Weinberg Found., 665 A.2d 1038, 1050 (Md. App. 1995) (citing additional cases from Arkansas, Kansas, West Virginia and Wisconsin). Although we have found no case under Connecticut or New York law recognizing explicitly a claim for aiding and abetting negligence, New York, like Maryland and most every other jurisdiction, has long recognized aiding and abetting tort liability and the various claims that may flow from that basic concept. See, e.g., Atlanta Shipping Corp. v. Chemical Bank, 818 F.2d 240, 251 (2d Cir. 1987) ("New York

23

common law recognizes a cause of action for aiding and abetting wrongful diversion of funds.").

## V.    PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT

To prevail on a claim of unjust enrichment, plaintiffs must establish:  (1) that the

defendants were enriched; (2) that the enrichment was at the plaintiffs' expense; and (3) that the

circumstances are such that in equity and good conscience the defendants should return the

money or property to the plaintiffs.  Golden Pac. Bancorp v. FDIC, 273 F.3d 509, 519 (2d Cir.

2001); Keaney v. E. Computer Exch., Inc., No.3:03cv1893 (RNC), 2004 U.S. Dist. LEXIS 7040,

at *7 (D. Conn. Apr. 21, 2004).  At the pleading stage, a notice pleading of these elements is all

that is required.  Kingdom 5 KR 41, Ltd. v. Star Cruises PLC, No. 01 Civ. 2946 (AGS), 2002

U.S. Dist. LEXIS 4636 (S.D.N.Y. Mar. 20, 2002).

Here, plaintiffs plead that at the same time that the Oppenheim Defendants were enabling

the fraud of Bayou, they were also receiving fees and other monies that could only have come

from plaintiffs' fiduciary fund investments to the fraudulent Bayou Hedge Funds.  ¶¶ 159, 218.

Accordingly, through its inequitable conduct, the Oppenheim Defendants obtained fees,

compensation and other emoluments and benefits which they did not properly earn and were not

rightfully entitled to, and have thus been unjustly enriched.  Accordingly, Plaintiffs allege, but

only in the alternative to obtaining full relief via their other claims, that it would be inequitable

for the Oppenheim Defendants to retain such benefits under the circumstances here.  Accord

Allied Irish Banks, P.L.C. v. Bank of America, N.A., No. 03 Civ. 3748 (DAB), 2006 U.S. Dist.

LEXIS 4270 (S.D.N.Y. Jan. 31, 2006) (sustaining claim of unjust enrichment where Citibank and

others aided and abetted a fraud committed by plaintiffs' fiduciary).  "Moreover, to make out a

case of unjust enrichment, plaintiff need not necessarily prove that defendant's conduct was

24

unlawful or wrongful." <u>Dreieck Finanz Ag v. Sun</u>, No. 89 Civ. 4347 (MBM), 1989 U.S. Dist.

LEXIS 9623 (S.D.N.Y. Aug. 14, 1989). <u>Accord</u> <u>Eightway Corp. v. Dime Savings Bank</u>, 404

N.Y.S.2d 302, 307 (Civ. Ct. Queens Co. 1978), <u>aff'd</u>, 420 N.Y.S. 836 (N.Y. App. Div. 1979).

Defendants' cases do not suggest otherwise. <u>See, e.g.</u>, <u>Richardson v. Artrageous, Inc.</u>,

No. 93 Civ. 5221 (RPP), 1993 U.S. Dist. LEXIS 15567 (S.D.N.Y. Nov. 4, 1993) (dismissing

unjust enrichment claim where plaintiff did <u>not</u> state a claim for aiding and abetting). Here, by

contrast, plaintiffs allege sufficient facts demonstrating why the Oppenheim Defendants are not

entitled to retain the monies they received from Bayou -- including their direct facilitation of the

Bayou Defendants' underlying misconduct. These allegations are more than sufficient to state a

claim for unjust enrichment claim for purposes of Rule 8(a). <u>Accord</u> <u>In re Vivendi Universal,</u>

<u>S.A. Sec. Litig.</u>, No. 03 Civ. 2175 (RJH), 2004 U.S. Dist. LEXIS 7015, at *41 (S.D.N.Y. Nov. 3,

2003) ("While plaintiffs have not explicitly linked the factual allegations in the complaint to their

unjust enrichment claim, however, the Court finds that the complaint alleges sufficient facts that,

if true, would support a claim of restitution under an unjust enrichment theory.").

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court deny the

Oppenheim Defendants' Motion to Dismiss.[5]

---

[5]     If for any reason the Court were inclined to grant the Oppenheim Defendants'
motion, plaintiffs request an opportunity to amend. <u>See</u> <u>Cortec v. Sum Holding</u>, 949 F.2d 42, 48
(2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to
replead."); <u>Foman v. Davis</u>, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962) (holding that "refusal
to grant the leave without any justifying reason appearing for the denial is ... merely abuse of that
discretion and inconsistent with the spirit of the Federal Rules").

Dated: August 18, 2006
New York, New York

Respectfully submitted,

BERGER & MONTAGUE, P.C.


   /s  Lane L. Vines
Merrill G. Davidoff, Esq.
Lawrence J. Lederer, Esq.
Lane L. Vines, Esq.
1622 Locust Street
Philadelphia, PA  19103
Telephone:  (215) 875-3000
Fax:  (215) 875-4604

KOSKOFF, KOSKOFF & BIEDER, P.C.
William M. Bloss, Esq.
Neal A. DeYoung, Esq.
350 Fairfield Avenue
Bridgeport, CT  06604
Telephone:  (203) 336-4421
Fax:  (203) 368-3244


*Attorneys for Broad-Bussel Family Limited
Partnership, Marie-Louise Michelsohn, Michelle
Michelsohn and Herbert Blaine Lawson, Jr.*

## CERTIFICATE OF SERVICE

I, Lane L. Vines, hereby certify that I caused today the following to be electronically filed with the Clerk of Court by using the ECF System:  Plaintiffs' Memorandum of Law in Opposition to Defendants Faust Rabbach & Oppenheim LLP's and Steven Oppenheim's Motion to Dismiss.  The foregoing filing will be served on counsel electronically through the Court's ECF System, and by U.S. First Class mail on any counsel that has not signed up for electronic service.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

Dated: August 18, 2006                   s/  Lane L. Vines