UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE:  BAYOU HEDGE FUNDS INVESTMENT<br>LITIGATION | )<br>)<br>)<br>)<br>) | NO. 7:06-md-01755-CM |
| *Broad-Bussel Family LP, et al. v. Bayou Group,*<br>*LLC, et al., D. Connecticut, C.A. No. 3:05-1762* | )<br>)<br>)<br>)<br>)<br>) | |
| _____ | ) | |

**REPLY MEMORANDUM OF THE DEFENDANTS**
**FAUST RABBACH & OPPENHEIM LLP AND STEVEN OPPENHEIM**
**IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

RIVKIN RADLER LLP
Attorneys for Defendants
FAUST RABBACH & OPPENHEIM LLP and
STEVEN D. OPPENHEIM
926 Reckson Plaza
Uniondale, New York 11556-0926
(516) 357-3000

Shari Claire Lewis
Janice J. DiGennaro

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..........................................................................................ii

PRELIMINARY STATEMENT ................................................................... 1

POINT I

   PLAINTIFFS' CONCLUSORY ALLEGATIONS COUPLED
   WITH NEUTRAL FACTS DO NOT SATISFY THE FEDERAL
   PLEADING REQUIREMENTS .................................................... 1

POINT II

   PLAINTIFFS' OPPOSITION FAILS ENTIRELY TO ESTABLISH
   ANY BASIS FOR AIDER AND ABETTOR LIABILITY .......................... 5

   A.  The Opposition Fails To Allege The Requisite
     Knowledge By FR&O ........................................................... 5

   B.  Plaintiffs Fail To Allege That FR&O Lent "Substantial Assistance".. 7

POINT III

   PLAINTIFFS MISCHARACTERIZE THE STANDARD
   FOR ATTORNEY LIABILITY TO THIRD PARTIES ................................ 7

POINT IV

   PLAINTIFFS' OPPOSITION DOES NOT PROVIDE ANY
   BASIS TO SUSTAIN PLAINTIFFS' UNJUST ENRICHMENT
   CLAIM ................................................................................ 10

CONCLUSION ........................................................................................ 10

# TABLE OF AUTHORITIES

## CASES

*Calore v. Town of Stratford*, 2001 Conn. Super. LEXIS 73 (Conn. Super Ct., Jan. 5, 2001) ..................................................................................................................6

*Clark v. Nevis Capital Management, LLC*, 2005 U.S. Dist. LEXIS 3158 (S.D.N.Y. 2005) ...........7

*Continental Casualty Co. v. Pullman, Comley, Bradley & Reeves*, 929 F. 2d 103 (2d Cir. 1991) ..................................................................................................................8

*Fahlenbach v. TransPacific Capital(USA) Inc.*, 1996 U.S. Dist. LEXIS 385 (S.D.N.Y. 1996) ..................................................................................................................4

*Filler v. Hanvit Bank*, 339 F. Supp. 2d 553 (S.D.N.Y. 2004), *aff'd,* 156 Fed. Appx. 413 (2d Cir. 2005) ..................................................................................................6

*Friedman v. Arizona World Nurseries Ltd. Ptrs.*, 730 F. Supp. 521 (S.D.N.Y. 1990), *aff'd without op.*, 927 F.2d 594 (2d Cir. 1991) .................................................................4

*In re Gas Reclamation, Inc. Sec. Litigation*, 733 F. Supp. 713 (S.D.N.Y. 1990) ...........................6

*Gould v. Mellick and Sexton*, 263 Conn. 140, 819 A.2d 219 (2003) ...............................................9

*Gross v. New Balance Athletic Shoe, Inc.*, 955 F. Supp. 242 (S.D.N.Y. 1997).................................1

*Hamilton v. Beretta, Inc.*, 96 N.Y.2d 222, 727 N.Y.S.2d 7 (2001) .................................................8

*Hold Ampf v. A.C. & S., Inc.(In Re New York City Asbestos Litigation)*, 5 N.Y.3d 486, 806 N.Y.S.2d 146 (2005) ...................................................................................9

*Jacobs v. Putnam Trust Company of Greenwich*, 1997 Conn. Super. LEXIS 2586 (Conn. Super. Ct. Sept. 23, 1997) .................................................................................6

*Kolbeck v. LIT Am.*, 939 F. Supp. 240 (S.D.N.Y. 1996), *aff'd. without op.,*  152 F. 3d 918 (2d Cir. 1998), *reported in full,* 1998 U.S. App. LEXIS 15308 (2d Cir. June 8, 1998) ..................................................................................................................2

*Lerner v. Fleet Bank, N.A.*, 2006 U.S. App. LEXIS 20326 ......................................................1, 6

*McCarthy v. Sturm Ruger & Co., Inc.*, 916 F. Supp. 366 (S.D.N.Y. 1996), *aff'd*, 119 F.3d 148 (2d Cir. 1997)...............................................................................................9

*Morin v. Trupin*, 711 F. Supp. 97 (S.D.N.Y. 1989)................................................................2, 7

*O'Brien v. Price Waterhouse*, 740 F. Supp. 276 (S.D.N.Y. 1990), *aff'd, O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 677 (2d Cir. 1991)...........................4

*Old Republic National Title Insurance Company v. Garrell*, 2004 Conn. Super. LEXIS 3670 (Conn. Super. Ct. Dec 8, 2004)....................................................................8

*Palmieri v. Lee*, 1999 Conn. Super. LEXIS 3201 (Conn. Super. Ct. Nov. 24, 1999), *aff'd*, 64 Conn. App. 902, 777 A. 2d 214 (2001) ............................................................6

*Prudential Insurance Co. v. Deway, Ballantine, Bushby, Palmer & Wood*, 80 N.Y.2d 377, 590 N.Y.S.2d 831 (1992).............................................................................8

*Renner v. Chase Manhattan Bank*, 2000 U.S. Dist. LEXIS 8552 (S.D.N.Y. June 16, 2000), *aff'd*, 85 Fed. Appx. 782 (2d Cir. 2004) ...................................................2

*Ross v. Mitsui Fudosan, Inc.*, 2 F. Supp. 2d 522 (S.D.N.Y. 1988)...................................1

*Sable v. Southmark/Evnican Capital Corp.*, 819 F. Supp. 324 (S.D.N.Y.) ....................2

*Sanders v. Bressler, Amery & Ross, P.C.*, 2006 U.S. Dist. LEXIS 8352 (E.D.N.Y. Feb. 10, 2006) ............................................................................................................8

*Sharp International Corp. v. State Street Bank, In re: Sharp Int'l. Corp.)*, 403 F.3d 43 (2d Cir. 2005 ............................................................................................................7

*Stoner v. Walsh*, 772 F.Supp. 790 (S.D.N.Y. 1991) .......................................................2

*Weston Funding LLC v. Consorcio G. Grupo Dina*, 2006 U.S. Dist. LEXIS 632313 (S.D.N.Y. Aug. 31, 2006) ..............................................................................5

## STATUTES

Fed. R. Civ. P. 8(a), 9(b).................................................................................................1

Defendants Faust Rabbach & Oppenheim LLP and Steven D. Oppenheim ("Oppenheim") (collectively "FR&O") submit this Reply Memorandum in response to the Plaintiffs' Opposition ("*Opposition*") and in further support of their motion to dismiss the Amended Class Action Complaint (the "Complaint") pursuant to Fed. R. Civ. P. 8(a), 9(b) and 12(b)(6).

## PRELIMINARY STATEMENT

Stripped of its verbiage, plaintiffs' opposition to FR&O's motion to dismiss ("Opposition") stands for the remarkable proposition that solely being a lawyer to an entity ultimately found to have been engaged in fraudulent conduct, while also having previously been an accountant, imposes limitless liability to unknown parties. Plaintiffs advance just such a claim here in the absence of a scintilla of facts demonstrating any involvement by FR&O in their clients' wrongful acts. Plaintiffs' proposition is "dead wrong."

## POINT I

## PLAINTIFFS' CONCLUSORY ALLEGATIONS COUPLED WITH NEUTRAL FACTS DO NOT SATISFY THE FEDERAL PLEADING REQUIREMENTS

In deciding a Rule 12(b)(6) motion, although reasonable inferences must be drawn from plaintiffs' well-pleaded facts, no such deference is owed to conclusory allegations that merely state general legal conclusions. *Ross v. Mitsui Fudosan, Inc.,* 2 F. Supp. 2d 522, 528 (S.D.N.Y. 1988). Even Rule 8(a) pleading requirements are not satisfied by "bare bones statement of the legal claim…" *Id*. 2 F. Supp. 2d at 528. "[I]n practice 'a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" *Gross v. New Balance Athletic Shoe, Inc.,* 955 F. Supp. 242, 244 (S.D.N.Y. 1997).

In regard to their aiding and abetting claims, plaintiffs must meet the even more stringent requirements of Rule 9(b). *See Lerner v. Fleet Bank, N.A.*, 2006 U.S. App. LEXIS 20326 *47.

(2d Cir. Aug. 8, 2006). (aiding and abetting a fraud must meet the particularity requirements of Rule 9(b)); *Kolbeck v. LIT Am.*, 939 F. Supp. 240, 245 (S.D.N.Y. 1996), *aff'd. without op.*, 152 F. 3d 918 (2d Cir. 1998), *reported in full*, 1998 U.S. App. LEXIS 15308 (2d Cir. June 8, 1998) (allegations of aiding and abetting a breach of fiduciary duty must meet the requirements of Rule 9(b) where the underlying breach is based on fraud). As such, plaintiffs' contention that FR&O confuse the pleading standard for primary and secondary liability is wrong as Rule 9(b) concerns are even more urgent when applied to aiding and abetting claims. *See e.g. Filler v. Hanvit Bank*, 156 Fed. Appx. 413, 417 (2d Cir. 2005); *Sable v. Southmark/Evnican Capital Corp.,* 819 F. Supp. 324 (S.D.N.Y.).

Here, plaintiffs' conclusory allegations are palpably inadequate to plead their aiding and abetting claims with the particularity requirements of Rule 9(b). *See Morin v. Trupin*, 711 F. Supp. 97 (S.D.N.Y. 1989) (conclusory assertions of aider-abettor liability which refer to the general charges of wrongdoing are insufficient); *Renner v. Chase Manhattan Bank*, 2000 U.S. Dist. LEXIS 8552 (S.D.N.Y. June 16, 2000), *aff'd*, 85 Fed. Appx. 782 (2d Cir. 2004).

The Plaintiffs must establish a "factual, as opposed to a rhetorical basis" for a claim. *Stoner v. Walsh,* 772 F. Supp. 790, 802 (S.D.N.Y. 1991)(claims dismissed because when plaintiff's "…allegations are shorn of rhetoric and such devises…to suggest a sinister meaning in otherwise neutral words, plaintiff alleges no fact that would suggest the existence of such conspiracy….")  At bar, shorn of rhetoric and hyperbole, the Complaint provides no basis to conclude that FR&O knew of, or aided, the effectuation of the Bayou Ponzi scheme. Plaintiffs reiteration of their mantra of conclusions, that FR&O were "directly or indirectly involved in planning, orchestrating and/or executing the alleged fraud," does not substitute for an adequately

pleaded claim. *See, e.g., Complaint* ¶ 4, 38, 203(b). *See also, Opposition,* pg. 3 (alleging "counsel and advise …in planning, forming, and operating" the funds.)

Nor is a claim stated by merely coupling the known facts regarding the fraudulent conduct of Bayou principals, Samuel Israel III ("Israel") and Daniel Marino ("Marino"), with neutral facts regarding FR&O. Nevertheless, that is exactly what the Opposition attempts to do. Relying in large part on Marino's Suicide Note and Confession,[1] plaintiffs allege facts only as to the Bayou Defendants' acts of fraud, including Israel's distribution of misleading financial statements and Marino's creation of a fictitious accounting firm for auditing purposes. *Opposition* pg. 1-7. Absent any factual basis to conclude that FR&O knew that the accounting firm was fictious or the financial statements were untrue, the participation of a purported public accounting firm and distribution of apparently reliable financial statements would logically provide the indicia of regularity to FR&O, just as it did to the sophisticated persons who invested millions of dollars with Bayou based on those same indicia.

Plaintiffs' declaration that "it is simply not possible for the fraud here to have been accomplished without the substantial participation of Bayou's bankers and lawyers…" (*Opposition* pg. 8) or that FR&O "cannot reasonably deny that they were aware of the facts concerning the fraud" (*Opposition* pg. 17) is without legal significance.[2] Similarly inadequate are plaintiffs' conclusory claims, such as that FR&O were privy to unidentified "non-public information and documents" or represented Bayou in unidentified litigation, which are devoid of

---

[1] As a document relied on by the plaintiffs in the Complaint and Opposition, the *entire* contents of Marino's suicide note is properly considered. Plaintiffs should not be permitted to selectively rely on those portions which describe the Bayou fraud and distance themselves from those that unambiguously exculpate FR&O. Plaintiffs' insinuation of some improper involvement by FR&O in Marino's suicide letter are without a scintilla of evidence and otherwise below further commentary.

[2] In dismissing all claims against Citibank, this Court has already concluded that it was *possible* for the Bayou fraud to proceed without the participation of Citibank .

particularity as to the subject of those matters, their relationship to the fraud, or when FR&O was purported to have had access thereto. *See Opposition* pg. 8-9.

All of plaintiffs claims rely merely on FR&O's status as counsel for one of more of the Bayou Defendants. *See, e.g., Opposition,* pg. 11 ("…the actual clients of the Oppenheim Defendants were the Bayou Hedge Funds and the various related Bayou entities…"[3]) However, the existence of the attorney-client relationship is, in and of itself, an insufficient basis for fraudulent knowledge. *Fahlenbach v. TransPacific Capital(USA) Inc.,* 1996 U.S. Dist. LEXIS 385 *12 (S.D.N.Y. 1996) (dismissal warranted in the absence of any factual basis to conclude that outside counsel was aware that his statements concerning the financial strength of the client were erroneous at the time that they were made.) It is not "assumed that clients … communicate their fraudulent schemes…to their attorneys." *Friedman v. Arizona World Nurseries Ltd. Ptrs.*, 730 F. Supp. 521 (S.D.N.Y. 1990), *aff'd without op.*, 927 F.2d 594 (2d Cir. 1991). At bar, as with Citibank, plaintiffs offer no particularized allegations from which one could infer that FR&O was aware that Bayou was anything other than a legitimate fund.  See, *Citibank Decision* pg. 6.

Plaintiffs also depend on the irrational inference that Oppenheim's prior status as an accountant equates to knowledge of the Bayou Ponzi scheme.  Tellingly, plaintiffs do not claim that Oppenheim provided any accounting services to the Bayou Defendants. Indeed, even had plaintiffs so alleged, the mere fact that an accountant provided services to an allegedly fraudulent investment scheme is insufficient to create an inference of knowledge of the fraud. *See, O'Brien v. Price Waterhouse*, 740 F. Supp. 276, 281 (S.D.N.Y. 1990), *aff'd, O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 677 (2d Cir. 1991) (The absence of particulars regarding the

---

[3] For purpose of this pleading motion, only, FR&O accepts this assertion as true, but reserves the right to prove which Bayou entity was its actual client should any portion of the action survive this motion.

source of accountant's alleged knowledge is "the very type of unsubstantiated allegation that Rule 9(b) prohibits.").

Finally, plaintiffs allege that "three Bayou entities, actually maintained their business address at FR&O's law office." *See, Opposition* pg. 8.  Incredibly, plaintiffs' Exhibit "A" to the *Opposition*, flatly contradicts this allegation. The documents from the State of Connecticut demonstrate that the subject entities were located not at FR&O's New York City offices, but in Stamford Connecticut, and merely designated that official correspondence and process be sent "c/o" FR&O. Indeed, plaintiffs concede that all Bayou Defendants were located in Connecticut. Compare, *Opposition,* pg. 11 and *Opposition,* Exh. "A." Where the allegations of the Complaint are flatly contradicted by documents on which the Complaint relies, the Court need not accept such allegations as true. *See, Weston Funding LLC v. Consorcio G. Grupo Dina,* 2006 U.S. Dist. LEXIS 63231*3 (S.D.N.Y. Aug. 31, 2006).

In sum, that a Bayou entity may designate official communication to be sent "care of" FR&O, that FR&O were legal counsel or that Oppenheim was previously an accountant do not individually or collectively state any claim for relief.

### POINT II

### PLAINTIFFS' OPPOSITION FAILS ENTIRELY TO ESTABLISH ANY BASIS FOR AIDER AND ABETTOR LIABILITY

**A.    The Opposition Fails To Allege The Requisite Knowledge By FR&O**

Plaintiffs do not allege any facts on which to find that FR&O has *actual knowledge* of the fraud or fiduciary breach by the Bayou Defendants. Instead, through conclusory allegations that FR&O "ignored" or "recklessly disregarded" or "turned a blind eye" to the fraud, plaintiffs proffer a constructive knowledge standard, plainly at odds with both New York and Connecticut law. *See Opposition* pg.  9, 17, and 22.

Plaintiffs are required to provide evidence that the defendant knew or was "generally aware of [his] participation in the wrongful activity." *Palmieri v. Lee*, 1999 Conn. Super. LEXIS 3201 (Conn. Super. Ct. Nov. 24, 1999), *aff'd,* 64 Conn. App. 902, 777 A. 2d 214 (2001). General awareness is not the same as "should have known," as the Court in *Calore v. Town of Stratford*, 2001 Conn. Super. LEXIS 73 (Conn. Super Ct., Jan. 5, 2001) made clear.

> The alternative pleading of 'knew or should have known' would allow a common law claim for aiding and abetting to be maintained if the defendants were negligent in not knowing the conduct of the other party constituted a breach of its duties. . . The Restatement does not authorize liability on that basis.

*Id*. at *16. *See also, Palmieri*, 1999 Conn. Super LEXIS 3201 at *19. ("'imputed knowledge' does not rise to the level of being generally aware."); *Jacobs v. Putnam Trust Company of Greenwich*, 1997 Conn. Super. LEXIS 2586 (Conn. Super. Ct. Sept. 23, 1997). Likewise, New York has not adopted a constructive knowledge standard for imposing aiding and abetting liability. *Filler v. Hanvit Bank,* 339 F. Supp. 2d 553, 557 (S.D.N.Y. 2004), *aff'd,* 156 Fed. Appx. 413 (2d Cir. 2005) As recently as last month, the Second Circuit reaffirmed that there must be actual knowledge of the underlying fraud or fiduciary breach in order to sustain aiding and abetting claims. *Lerner v. Fleet Bank, N.A.*, 2006 U.S. App. LEXIS 20326 (2d Cir. Aug. 8, 2006). *See also, this Court's Decision dismissing Citibank*, dated September 6, 2006. Plaintiffs mere claim that FR&O should have been alerted to the possibility of the fraud is insufficient to establish actual knowledge and dismissal is warranted.

Plaintiffs also cannot escape their burden to establish actual knowledge by their unsupported inferences of recklessness. As the cases cited by the plaintiffs establish, recklessness will only suffice if there is a fiduciary duty owed by the alleged aider and abettor to the defrauded party. *See e.g., In re Gas Reclamation, Inc. Sec. Litigation*, 733 F. Supp. 713, 720

(S.D.N.Y. 1990). Plaintiffs expressly concede that FR&O was not their fiduciary. *Opposition,* pg. 20. Accordingly, the Opposition wholly fails to adequately plead the facts necessary to establish FR&O's actual knowledge of the scheme.

**B.    Plaintiffs Fail To Allege That FR&O Lent "Substantial Assistance"**

The Opposition also fails to identify any affirmative act by FR&O which substantially assisted Bayou's primary violations. Accordingly, by their silence, plaintiffs concede that no affirmative act by FR&O assisted the Bayou scheme. *See e.g., Clark v. Nevis Capital Management, LLC,* 2005 U.S. Dist. LEXIS 3158 *56 (S.D.N.Y. 2005) (plaintiffs' silence acts as a concession as to no misrepresentation.)

Nor can plaintiffs satisfy the substantial assistance element of aider and abettor liability based upon FR&O's alleged failure to act. The mere inaction of an alleged aider and abettor is insufficient unless the alleged aider and abettor owes a fiduciary duty directly to the Plaintiff. *See Sharp International Corp. v. State Street Bank, In re: Sharp Int'l. Corp.)*, 403 F.3d 43 (2d Cir. 2005). *See also, Morin v. Trupin,* 711 F. Supp. 97 113 (S.D.N.Y. 1989) (neither a lawyer nor an accountant has a duty to disclose information about his client to others.) Inasmuch as plaintiffs expressly disclaim any fiduciary relationship between them and FR&O, (*Opposition,* pg. 20), FR&O's mere inaction can never satisfy the substantial assistance element of aiding and abetting liability.

## POINT III

### PLAINTIFFS MISCHARACTERIZE THE STANDARD
### FOR ATTORNEY LIABILITY TO THIRD PARTIES

Despite the absence of any claim of privity or contact with FR&O, plaintiffs sue FR&O for negligence, solely because FR&O are alleged to have been lawyers for the Bayou Defendants. Plaintiffs do so by erroneously equating duty with foreseeability. However, the

existence of a duty is the threshold question for negligence, in the absence of which, the issue of foreseeability never arises. *See, Hamilton v. Beretta, Inc.,* 96 N.Y.2d 222, 232, 727 N.Y.S.2d 7 (2001)(foreseeability does not define duty but determines the scope of the duty owed once it is determined to exist.)

Plaintiffs' erroneous argument is based on a gross distortion of *Old Republic National Title Insurance Company v. Garrell,* 2004 Conn. Super. LEXIS 3670 *12 (Conn. Super. Ct. Dec 8, 2004). In *Old Republic,* the Court identified a limited exception to the general rule that attorneys are not liable in negligence to non-clients based upon the attorneys performance of a specific act, (payoff of a mortgage) for which the non-client demonstrated he was the *intended* beneficiary. *Id.* The *principal* question was not foreseeability, as plaintiffs claim, but whether "the primary or direct purpose of the transaction was to benefit the third party…"    Indeed, "Connecticut . . . has been cautious in  expanding attorney liability and has expressed a continuing concern over the chilling effect of third party intrusion into an attorney's primary duty of loyalty to the best interests of his or her client." *Continental Casualty Co. v. Pullman, Comley, Bradley & Reeves,* 929 F. 2d 103, 105 (2d Cir. 1991).

Connecticut law is in accord with that of New York, which likewise requires privity or a relationship approaching privity. *See Prudential Insurance Co. v. Deway, Ballantine, Bushby, Palmer & Wood,* 80 N.Y.2d 377, 590 N.Y.S.2d 831 (1992).  In the absence of "linking conduct", that is, some direct communication between the plaintiff and the professional as is herein lacking, no claim for negligence can be stated as a matter of law. *See, Sanders v. Bressler, Amery & Ross, P.C.,*  2006 U.S. Dist. LEXIS 8352 (E.D.N.Y. Feb. 10, 2006)(dismissal of negligence and third party beneficiary claims despite allegations that lawyers knew that their services would

directly benefit plaintiffs, as well as corporate client, as plaintiffs were mere "incidental beneficiaries" of the retainer and therefore not entitled to recover.)

Assuming arguendo plaintiffs' claim even rises to the level of "incidental beneficiary," it nevertheless is inadequate as a matter of law.[4] To the extent that any basis for plaintiffs' claim can be discerned, it is that, as investors, they benefited from FR&O's legal services as those legal services theoretically contributed to the funds' financial health and conversely, they are harmed if negligent legal counsel caused financial harm to the funds. A claim for negligence under these circumstances effectively eliminates any privity requirement and exposes attorneys to unlimited liability of unknowable magnitude. This is simply not the law.

In a final futile effort to evade dismissal, plaintiffs claim that the "duty element of negligence involves a highly factual inquiry inappropriate for a motion to dismiss" without citation to a single case in support of the proposition. *Opposition* pg. 14. Again, plaintiffs are wrong. The question of whether a duty exists is a question of law, which should be decided by the Court. *See, Gould v. Mellick and Sexton*, 263 Conn. 140, 153, 819 A.2d 219 (2003); *McCarthy v. Sturm Ruger & Co., Inc.*, 916 F. Supp. 366 (S.D.N.Y. 1996), *aff'd*, 119 F.3d 148 (2d Cir. 1997); *Hold Ampf v. A.C. & S., Inc.(In Re New York City Asbestos Litigation),* 5 N.Y.3d 486, 493, 806 N.Y.S.2d 146 (2005)(a specific duty is necessary lest a defendant be subjected to limitless liability to an indeterminate class of persons conceivably injured by negligent acts.) Plaintiffs cannot merely wish away controlling precedents that establish there is no claim for

---

[4] Plaintiffs dismiss policy concerns as to the conflict between the duties owed by FR&O to its client and the plaintiffs because "proper legal advise would not have created a conflict and may have potentially prevented or mitigated fraudulent conduct." *Opposition,* pg. 14. However, it can neither be assumed that Bayou did not have legitimate legal interests separate from those of their investors with whom they engaged in arms-length transactions nor that any "improper legal advise" resulted in the Bayou defendants' fraudulent scheme.

negligence against an attorney by those who are not in privity, because *some* of the cases cited dismissed the claims in later stages of the action.

## POINT IV

### PLAINTIFFS' OPPOSITION DOES NOT PROVIDE ANY BASIS TO SUSTAIN PLAINTIFFS' UNJUST ENRICHMENT CLAIM

Although plaintiffs recite the requirements of an unjust enrichment claim, plaintiffs do not address the many failures of their claim which mandate its dismissal. Indeed, the most that plaintiffs argue is that based upon their inadequate allegations of aiding and abetting, FR&O were paid for their legal services "from monies that could have only have come from plaintiffs' ..." investments in the Bayou funds. *Opposition* pg. 24. However, as demonstrated in the moving papers, such an indirect benefit is an inadequate predicate for the claim as a matter of law. Plaintiffs do not otherwise demonstrate any basis for their claim that FR&O should be deprived of compensation that they duly earned for the legal services provided to their clients.

## CONCLUSION

The shocking absence of any factual predicate for plaintiff's claim demonstrates that the action was commenced  and  is being continued without any basis in fact and law,  but with the sole motivation that its *in terrorem* effect will compel payment without liability.   Based upon the foregoing and as more fully set forth in the moving papers, it is respectfully requested that the motion by FR&O be granted in its entirety and the Plaintiffs' complaint be dismissed, and for whatever further and different relief that to the Court may seem just proper and equitable.[5]

---

[5] In a last ditch effort, plaintiffs' request, in a footnote, that they be permitted to amend the Complaint if FR&O's motion is granted. However, plaintiffs have already amended this complaint, as well as presumably presented their best case in opposition to the instant motion, without identifying an adequate factual basis for any cognizable claim for relief against FR&O. Under such circumstances, and as this Court stated in its decision dismissing the claim against Citibank, "There is no reason to believe that the plaintiffs will be able to plead a proper claim on their third try." Accordingly, further amendment would be futile and leave should be denied.

Respectfully submitted,

RIVKIN RADLER LLP


By:  /s/Shari Claire Lewis
     Shari Claire Lewis (SCL-0527)
     Janice J. DiGennaro (JJD-9706)
926 Reckson Plaza
Uniondale, New York 11556-0926
(516) 357-3000