UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

IN RE BAYOU HEDGE FUND INVESTMENT
LITIGATION

06 MDL No. 1755 (CM)

_____x

THIS DOCUMENT RELATES TO:
_____x

BROAD-BUSSEL FAMILY LIMITED
PARTNERSHIP, MARIE LOUISE
MICHELSOHN, MICHELLE MICHELSOHN AND
HERBERT BLAINE LAWSON, JR., individually
and on behalf of all other persons and entities
similarly situated,

06 Civ. 3026 (CM)(MDF)

       Plaintiffs,

  -against

BAYOU GROUP LLC, et al.,

       Defendants.
_____x

## NOTICE TO ALL PARTIES AND COUNSEL

McMahon, J.:

    The court has recently learned that I had a beneficial interest in 176 shares of Citicorp common stock at the time that I issued the decision dismissing Citibank N.A. as a defendant in the Broad-Bussel action.

    Rather than recite again the facts surrounding this conflict and my discovery thereof, I am attaching to this Notice a copy of the text attachment to an e-mail that was sent by me to The Hon. Gordon J. Quist, Chair of the Committee on Codes of Conduct of the Judicial Conference of the United States, on April 4, 2007, three days after I first learned of the possible conflict. It sets out in some detail the facts that led me to inquire whether I had a conflict of interest when I decided the Citibank motion. I was rather agitated when I prepared it, so it contains a few typographical errors (including the occasional conflation of the entities Citigroup and Citicorp; I have a hard time keeping track of all the names). However, Judge Quist was able to make sense of my inquiry, and this morning I received his response. As I had expected, he concluded that I

did have an actual and disqualifying conflict of interest at the time I rendered the decision dismissing the Broad-Bussel case against Citibank, by virtue of the fact that my father's estate (which had not yet been distributed, but in which I held a beneficial interest) held 176 shares of Citicorp stock.

I full responsibility for having created this situation, and I deeply apologize to the Broad Bussel plaintiffs, Citibank and their respective counsel. I am also tremendously embarrassed. In the seven and one half years preceding this incident, my in-chambers conflict checking system (which did not rely on the computerized conflict checking program that the Judicial Conference has recently ordered all judges to use) worked perfectly. I wish I had used that same system after my father died. The only thing I can say in my defense is that the need to check for conflicts in over 300 existing civil cases at a traumatic time was so daunting a task that running the names of his securities through a computer program designed to check for conflicts seemed the only feasible solution.[1] The information that had been given to the members of the court about how the Clerk's Office was conducting such checks (see details in the attachment) made that system seem reliable. Unfortunately, we were misinformed.

The Broad Bussel plaintiffs should feel free to move to vacate the dismissal of Citibank from the class action if they believe that course to be appropriate. I have been advised by judge Quist to refer any such motion to another judge and I will do so.

Dated: April 16, 2007

_____
U.S.D.J.

TO ALL COUNSEL AS FOLLOWS:

    Chambers to send directly to counsel for Broad Bussel and Citibank
    All other counsel to receive notification via ECF

---

[1] The Code of Judicial Conduct only imposes on judicial officers an obligation to keep informed about the financial holdings of their spouses and minor children residing in the judge's household (Canon 3(C)(2)). My father did not share the details about his financial holdings with his children, so until the time of his death, I had no access to information about what securities he owned.

| | | |
|---|---|---|
| **Colleen McMahon.** | To | Gordon J Quist/ |
| | cc | |
| 04/04/2007 01:01 PM | bcc | |
| | Subject | Committee on Codes of Conduct -- Request for Opinion |

📄 quist.request

Ex. 1

Dear Judge Quist:

     I am requesting a ruling on whether I had a conflict of interest when I issued an order dismissing a party from a case. The facts are as follows:

     Last May 25, my father died. Under the terms of his will, all securities owned by him were immediately transferred to an entity known as the John P. McMahon Revocable Trust ("JPMRT"). The JPMRT was to administer the assets until such time as my father's estate was wound up. At that time, the Trust's assets were to be split 1/3 to a marital trust in favor of my father's widow, Mary (my father's second wife, my mother having predeceased him), and 2/3 to his six children, via either direct bequests or trusts created in favor of those children.

     All the stocks were owned by the JPMRT, and my father did not designate that any particular asset should go to the children, as opposed to the wife. Under the trust indenture, this decision was entirely in the hands of the trustee of the JPMRT – my brother Barry G. McMahon – who had complete discretion as to how to allocate assets between the marital trust and the children's bequests, as well as whether to hold or dispose of trust assets in order to fund the various bequests.

     As early as June 2006 (within a month of my father's death), my brother, in his capacity as Trustee, had decided that the children's bequests would be satisfied with cash generated by the sale of assets, while the marital trust would be funded with securities that would generate income for the beneficiary (our step-mother). By mid-July, Barry completed his review of the securities owned by the JPMRT, and decided which were to be sold to generate the cash that would satisfy estate expenses and fulfill the bequests to the children, and which would be retained to fund the marital trust. He advises me that most of those sales were made within two months of my father's death. Ownership of the unsold securities remained in the JPMRT until recently, because the marital trust was not set up until the estate was completely settled and its tax obligations met. However, it was the fixed and firm intention of the Trustee that any securities he had designated for retention would become the property of the marital trust, and would not pass to my father's children.

     One of the stocks in the estate/JPMRT was Citicorp (176 shares). During the process of designating which securities would be sold and which retained for my stepmother's trust, my brother determined that the Citicorp stock should be retained and placed in the marital trust. He advises me that he had made this decision within a month or two after my father's death, or no later than mid-summer 2006.

     A subsidiary of Citigroup, Citibank N.A., was a party defendant in a case transferred to me well prior to my father's death by the Judicial Panel on Multi-District Litigation. I granted Citibank's motion to dismiss the complaint as against it in September 2006. Because of an unfortunate flaw (since corrected) in our clerk's offices procedures for conducting computerized conflict checks, I did not know that the JPMRT owned stock in the parent corporation of a party to one of my lawsuits. As I result, I issued the September 6 decision in blissful ignorance of any possible conflict.

Ex. 1 (text of e-mail sent 4/4/2007)

As soon as my father died, I began to worry about the potential for conflicts of interest that might result from my being a beneficiary of his estate. I had the attorney for the estate send a list of the securities owned by my father's estate to chambers. My secretary gave that list to the clerk's office to see if we had any cases involving any of those companies, because there was no way to check whether my father's estate assets created a conflict with one of my over 300 existing civil cases except by using the computer. (This, ironically, was my first experience using the computerized conflict checking program).

My secretary retained a copy of the "Ad Hoc Case Load Conflict Checking Report" that was generated by the Clerk's Office in connection with this special estate-related conflicts check. It shows four "hits" – Johnson & Johnson (a false positive, since I had no cases involving that corporation), Starwood Hotels, Verizon and Consolidated Edison. There was no "hit" for Citigroup, although the records from our clerk's office show that Citigroup was among the securities input into the system on May 31, 2006, for purposes of running this special conflict check. (More on this below)

My brother (in his capacity as Executor and Trustee), my personal lawyer, the lawyer for the estate and I discussed various ways of dealing with the identified conflicts. My brother and the attorney for the estate concluded that, because the period of estate administration was just beginning, the simplest solution was for the estate to sell the stocks that were creating the conflicts. My brother sold those stocks within two weeks of my father's death. I wrote letters notifying the parties in the Starwood, Verizon and Con Ed cases pending before me, advising them that I had acquired an interest in those companies through inheritance and that the estate had elected to sell the shares. I continued to preside over those cases. Since the JPMRT was only going to sell securities – not purchase them – I believed that the issue of conflicts emanating from the estate was closed.

Obviously, if I had known that there was a conflict arising from the estate's small interest in Citigroup, we would have followed the same procedure. But because the entry of Citigroup into the Clerk's Office computer had not yielded a "hit" for Citibank, we took no steps either to notify the parties or to eliminate that conflict.

I now know why we did not get a "hit" for Citibank during the conflict check Our clerk's office was only inputting the names of the actual parties to a case into the computer – not all the parents and subsidiaries whose names appeared on the Rule 1.7 statement! The judges of our court were not aware of this serious flaw in the computerized conflict checking procedure in June 2006, when my conflicts check was run. Indeed, we had been advised in March of 2005 that Rule 1.7 parties were included in all conflict checks. By the time we learned, on October 24, 2006, that the clerk's office had not been checking conflicts with parents, subsidiaries and affiliates of parties to lawsuits, Citibank was out of the MDL case and the whole issue of conflicts arising from my father's estate was out of my mind.

I personally became aware of this potential conflict three days ago, when I received a list of the securities that were being used to fund the marital trust and saw Citicorp on it. I immediately remembered that I had issued a decision involving Citicorp in the MDL matter

during 2006, and a check of the docket revealed that it was after my father's death. I confess that I perused this week's list far more carefully than I did the original list that was sent to me last May, precisely because we judges now knew about the above-described flaw in our conflicts checking procedure (which, thankfully, has been corrected). I have to accept responsibility for relying too heavily on the computer when faced with the daunting task of checking conflicts in over 300 cases.

      I now need to ascertain whether I had a conflict of interest when I dismissed Citibank from the MDL lawsuit. The precise question on which I need a ruling is whether I would be deemed to have a contingent beneficial interest in the Citigroup stock owned by the JPMRT after my brother, in his capacity as Trustee, decided that this security would be used to fund my stepmother's marital trust (a decision made no later than mid-July). If my contingent beneficial interest in the Citigroup stock ended once that decision was made, then I believe that I did not have a conflict of interest at the time I issued the decision dismissing Citicorp from the MDL action (although I believe I should disclose the facts I have discovered in the last week to the parties). If, on the other hand, I am deemed to have a contingent beneficial ownership interest in the stock until the date when the marital trust was set up and the Citicorp stock actually placed therein, then I believe that I had an unwaivable conflict on September 6, 2006 – and I need some advice about what to do next. I must, of course, notify the parties to the matter that I have belatedly discovered a disqualifying conflict and explain the situation to them. I would imagine that the decision dismissing Citibank will have to be vacated, though perhaps not by me.

      However, recusing myself from the matter is complicated by the fact that Citibank was only one defendant in one case in a larger MDL litigation that is pending before me by order of the JPMDL. Must I recuse myself from all the MDL matters (none of the rest of which involves Citibank), or just from this one? Can I enter an order severing this case, which I consolidated with the other MDL cases (and with some related cases that were not on the MDL docket) for pre-trial purposes? Do I send this particular case back to Connecticut, from whence it came, or do I ask that it be reassigned to another judge in the Southern District of New York? (In this regard, you should know that the remaining parties in all the MDL actions recently agreed to avoid <u>Lexecon</u> problems by having me try their cases in New York). Finally, do I have to involve the JPMDL in any of this, since they entered the order placing this case on the MDL docket?

      If it should prove relevant to my future course of action, you should know that the Citicorp stock is now an asset of the Mary E. McMahon Marital Trust, in which I have absolutely no interest, direct or contingent.

      I view this matter with some urgency, and I hope that you will be able to give me some advice as soon as possible. Many thanks for your assistance.

                                              Sincerely,

                                                                   Colleen McMahon

cc:    J. Michael McMahon, Clerk of the Court

**COMMITTEE ON CODES OF CONDUCT**
**OF THE**
**JUDICIAL CONFERENCE OF THE UNITED STATES**
**UNITED STATES DISTRICT COURT**
**482 GERALD R. FORD FEDERAL BUILDING**
**110 MICHIGAN STREET, N.W.**
**GRAND RAPIDS, MI 49503-2363**

JUDGE JANICE ROGERS BROWN
JUDGE KAREN K. BROWN
JUDGE CAMERON McGOWAN CURRIE
JUDGE JAY A. GARCIA-GREGORY
JUDGE ANDREW S. HANEN
JUDGE FRANK MAYS HULL
JUDGE DENIS R. HURLEY
JUDGE RICHARD G. KOPF
JUDGE ALAN D. LOURIE
JUDGE JAMES F. McCLURE, JR.
JUDGE M. MARGARET McKEOWN
JUDGE THOMAS C. MUMMERT, III
JUDGE RUDOLPH T. RANDA
JUDGE RONALD A. WHITE

JUDGE GORDON J. QUIST
    CHAIRMAN

ROBERT DEYLING
COUNSEL

(202) 502-1100

Tel. (616) 456-2253
Fax (616) 456-2243
Email: quist@miwd.uscourts.gov

April 13, 2007

Honorable Colleen McMahon
United States District Court
Southern District of New York
640 Daniel Patrick Moynihan
    United States Courthouse
500 Pearl St.
New York, NY 10007-1312

    Re:    Docket No. 1939

Dear Judge McMahon:

Thank you for your inquiry.

You have requested an opinion from the Committee on Codes of Conduct ("the Committee") regarding whether you had a conflict of interest when you issued an order dismissing a party from a case. First, we recap the situation you described.

Your father passed away in May of 2006, and according to his will, all of his securities were transferred to a revocable trust ("the Trust"). The Trust was to administer the assets until your father's estate was distributed. The Trust's assets were then to be split 1/3 to your father's wife (your stepmother) and 2/3 to his six children. No specific assets were left to the children. Your brother was the Trustee and had complete discretion in allocating the assets between the marital trust and the children's bequests, including whether to hold or dispose of Trust assets in order to fund the various bequests. Within a month of your father's death, the Trustee decided that the children's bequests would be satisfied with cash generated by the sale of assets, while the marital trust would be funded with securities. By mid-July, the Trustee decided which securities would be sold to generate the cash to fulfill the bequests to the children and which would be retained to fund the marital trust. Most of the sales were made within two months of your father's death.

Ex. 2

Ownership of the unsold securities remained in the Trust until recently when a separate marital trust was established for your father's widow. It was always the fixed and firm intention of the Trustee that the retained securities would become the property of a separate marital trust and would not pass to your father's children.

One of the stocks retained for the marital trust was Citicorp. Citibank, a subsidiary of Citicorp, was a defendant in a case transferred to you before your father's death by the Judicial Panel on Multi-District Litigation. You granted Citibank's motion to dismiss in September 2006. Because of a glitch in the computerized conflicts checks in your clerk's office, you were not notified of any possible conflict. As soon as you became aware of the potential conflict, you sent us your request for an opinion regarding the situation. Your precise question is whether you would be deemed to have had a contingent beneficial interest in the Citicorp or Citigroup stock owned by the Trust after your brother, the Trustee, decided that this security would be used to fund your stepmother's marital trust.

Your question implicates Canon 3C of the Code of Conduct for United States Judges ("the Code").[1] Canon 3C(1) requires a judge to recuse when the "judge's impartiality might reasonably be questioned." Canon 3C(1)(c) provides that a judge shall disqualify herself when "the judge knows that the judge, individually or as a fiduciary . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be affected substantially by the outcome of the proceeding." Financial interest is defined in Canon 3C(3)(c) as "ownership of a legal or equitable interest, however small . . . ." Also, Canon 3C(2) states that a "judge should keep informed about the judge's personal and fiduciary financial interests . . . ."

The Committee has previously advised that "[w]hen the judge . . . has a beneficial interest in, or the judge is a fiduciary of, a trust or estate, the judge is disqualified from cases in which a corporation in which the trust holds stock or a similar ownership interest is a party." Compendium § 3.1-1(a) (2005). Under your father's will, you were a beneficiary of the Trust; thus, you had a beneficial interest therein. The Trust owned stock in Citicorp. You were, therefore, disqualified from presiding over a case in which Citicorp was a party. You were also disqualified from a case in which Citibank, a subsidiary of Citicorp, was a party. *See* Advisory Opinion No. 57.

Compendium § 3.1-1(a-1) through (a-4) carve out certain exceptions. Section 3.1-1(a-2) and (a-3) states:

---

[1] Your decision must also be governed by the recusal statutes, 28 U.S.C. §§ 455 and 144, and the case law interpreting them, particularly such decisions by your circuit court. In this regard, you may find useful a monograph published in 2002 by the Federal Judicial Center entitled *Recusal: Analysis of Case Law Under 28 U.S.C. §§ 455 and 144*. You may obtain a copy of the monograph from the Information Services Office of the Federal Judicial Center. The monograph is also available for download on the Center's World Wide Web Site at www.fjc.gov. Click on publications. Although the Committee on Codes of Conduct is not authorized to render advisory opinions interpreting Sections 455 and 144, Canon 3C of the Code of Conduct for United States Judges closely tracks the language of Section 455, and the Committee is authorized to render advisory opinions regarding the application of that Canon.

2

> (a-2) A judge does not have a "financial interest" and thus has no duty to keep informed about the underlying securities held by a trust in which the judge has only a contingent remainder interest, *i.e.*, one that could be divested by the judge's parent by the exercise of a special power of appointment. . . .
>
> (a-3) Same where the judge is only a potential beneficiary of the exercise by an independent trustee of its sole and absolute discretion to distribute income or corpus and where it is unlikely the judge will actually receive such distributions.

In the advisory opinions giving rise to these sections of the Compendium, the judges had only remainder interests in trusts. The difference in your situation is that you had a present beneficial interest in the Trust. You had a beneficial interest in your sixth of the 2/3 left to your father's children. While the Trustee decided that the Citicorp stock would benefit only the 1/3 of the Trust going to your stepmother, until he implemented that decision, *i.e.*, you were paid your portion such that you no longer had a beneficial interest in the Trust or the stock was transferred to the separate marital trust, you still had a beneficial interest therein. A conflict, therefore, did exist.

Moreover, Canon 3C(1)(d)(iii) requires a judge to recuse when a person related within the third degree of relationship "is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding." Canon 3C(3)(a) defines a parent and most step relatives as being within the third degree of relationship. Thus, if your stepmother's interest could have been substantially affected by the outcome of the case, a conflict existed. That conflict still exists if the marital trust still owns the Citicorp stock and her interest could be substantially affected by the outcome of the Citibank case. You should recuse from any case in which her interest could be substantially affected.[2]

You advise that you will notify the parties to the matter that you have belatedly discovered a disqualifying conflict, and you ask for further advice on what to do next. After you notify the parties, the plaintiffs may move for your order dismissing Citibank to be vacated. In the past we have advised:

> After you make such a disclosure, it is possible that one or more parties in one or more of the cases may seek to reopen the matter because of your disqualification. If that situation arises, the Committee recommends that another judge decide the motion because one or more of the parties might reasonably question whether a judge can be impartial while sitting in judgment of his or her own prior acts made while disqualified.

*See* Compendium § 3.7(f), (g). Thus, you may want to ask another judge to decide any motion to vacate.

---

[2] We leave to you the question of whether her interest could have been or could be substantially affected by the outcome of the Citibank case. You should consider the size of the case, the number of shares owned by the Trust/the marital trust, the potential impact on the stock, etc.

      However, the Committee does not believe that you must recuse from the entire MDL case based on the one party since dismissed and in which you no longer have any financial interest. We believe your idea of severing the Citibank case, which you consolidated with the other MDL cases, would allow you to recuse from that case and continue to preside over the remaining litigation. The Committee does not see any reason why this would be in violation of the Code.

      In fact, Canon 3C(4) states:

> Notwithstanding the preceding provisions of this Canon, if a judge to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he or she individually or as a fiduciary . . . has a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the judge . . . divests . . . herself of the interest that provides the grounds for the disqualification.

Given that you no longer have any financial interest in Citicorp and you have spent over a year on this case, Canon 3C(4) would allow you to remain on the entire case if your order dismissing Citibank as a party is vacated and Citibank is reinstated as a party (so long as your interest in Citicorp was not substantially affected by the outcome of the Citibank case at the time you entered the order dismissing Citibank). Of course, if your stepmother's interest could be substantially affected by the outcome of the Citibank case, you should not preside over the Citibank case. Please read Advisory Opinion No. 69 for further guidance on Canon 3C(4).

      As to your other questions regarding how to proceed – whether you should transfer the case back to Connecticut or reassign it to another judge in the Southern District of New York, and whether you must involve the JPMDL – these are beyond the scope of the Code and our expertise, so we leave these to you.

      The Committee treats all inquiries and responses as confidential and will disclose information about them only in the narrow circumstances described in the Committee's confidentiality policy (set forth in paragraph two of the Preface to Volume 2, *Guide to Judiciary Policies and Procedures*).

      We hope this response has been helpful. If you have any further question, please call or write.

                                 For the Committee,

                                 Gordon J. Quist
                                 Chairman