# EXHIBIT  G

1

6cemarqptp

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------------x

3   UNITED STATES OF AMERICA

4

5               v.                          06 Cr. 1138

6                                           Plea

    JAMES MARQUEZ,
7
                    Defendant.
8
    ------------------------------------x
9
                                            White Plains, N.Y.
10                                          December 14, 2006

11

12  Before:

13                    THE HONORABLE GEORGE A. YANTHIS,

14                                          Magistrate Judge

15

16

17

18                            APPEARANCES

19  MICHAEL J. GARCIA
         United States Attorney for the
20       Southern District of New York
    MARGERY FEINZIG
21       Assistant United States Attorney

22

23  STANLEY TWARDY, JR.
         Attorney for Defendant
24

25  *Proceedings recorded by electronic recording device.

                CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
                          (914)390-4103

6cemarqptp

1    THE DEPUTY CLERK:  United States of America against
2    James Marquez.
3    Is the government ready?
4    MS. FEINZIG:  The government is ready, Judge.  Good
5    morning, your Honor.  Margery Feinzig for the government.
6    THE COURT:  Good morning.
7    THE DEPUTY CLERK:  Is the defendant ready?
8    MR. TWARDY:  Yes.  Good morning, your Honor.  Stanley
9    Twardy, Jr. for the defendant.  With me is James Marquez, the
10   defendant.
11   THE COURT:  Good morning.
12   We're here for the waiver of indictment, the filing of
13   an information, and the entry of a plea.
14   Ms. Hilbert, please swear the defendant.
15   THE DEPUTY CLERK:  Certainly, Judge.
16   Please rise and raise your right hand.
17   (Defendant James Marquez sworn)
18   THE COURT:  Mr. Marquez, you are now under oath.  You
19   are sworn to tell the truth.  If you knowingly made a false
20   statement, you could be charged with perjury or making a false
21   statement.  Do you understand that?
22   THE DEFENDANT:  Yes, sir.
23   THE COURT:  For the record, what is your name?
24   THE DEFENDANT:  James G. Marquez.
25   THE COURT:  How old are you?

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

6cemarqptp

1          THE DEFENDANT:  Fifty-eight, your Honor.

2          THE COURT:  How far did you go in school?

3          THE DEFENDANT:  I have a Master's in business

4    administration.

5          THE COURT:  Do you read, write, speak and understand

6    the English language?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Are you currently under the influence of

9    any drugs, alcohol, medicine or pills?

10          THE DEFENDANT:  No, your Honor.

11          THE COURT:  Do you suffer from any physical or mental

12    problem which prevents you from understanding the proceedings?

13          THE DEFENDANT:  No, your Honor.

14          THE COURT:  You do have the absolute right to be

15    represented by an attorney at this and every stage of the

16    proceedings against you.  If you could not afford an attorney,

17    the Court would appoint you one.  And the right to an attorney

18    goes to every stage of the criminal proceeding, including trial

19    and appeal.  Do you understand that?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Are you satisfied with the services that

22    your attorney, Mr. Twardy, has provided to you so far in this

23    case?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  There is a waiver of indictment form?

4

6cemarqptp

1          THE DEPUTY CLERK:  Yes, Judge.

2          THE COURT:  Ms. Hilbert, please verify the signature

3   of the defendant.

4          THE DEPUTY CLERK:  You are James G. Marquez?

5          THE DEFENDANT:  Yes.

6          THE DEPUTY CLERK:  And that is your original

7   signature, signed today, December 14th, 2006?

8          THE DEFENDANT:  Yes, it is.

9          THE DEPUTY CLERK:  Before signing this waiver, had

10  your attorney explained it to you?

11         THE DEFENDANT:  Yes.

12         THE DEPUTY CLERK:  And have you signed this

13  voluntarily?

14         THE DEFENDANT:  Yes.

15         THE DEPUTY CLERK:  Do you understand you are under no

16  obligation to waive indictment?

17         THE DEFENDANT:  Yes.

18         THE DEPUTY CLERK:  Do you also understand if you don't

19  waive indictment and if the government wants to prosecute you,

20  they would have to present your case to a grand jury, which may

21  or may not indict you?

22         THE DEFENDANT:  Yes.

23         THE DEPUTY CLERK:  Do you understand what a grand jury

24  is?

25         THE DEFENDANT:  Yes.

6cemarqptp

1          THE DEPUTY CLERK:  Have you seen a copy of this felony

2     information?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Mr. Marquez, unless you waive indictment,

5     you could not be charged with a felony unless a grand jury

6     finds probable cause that a crime has been committed and that

7     you committed it.  Do you understand that?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  A grand jury is composed of at least 16

10    and not more than 23 persons.  At least 12 grand jurors must

11    find probable cause to believe that a crime has been committed

12    before you could be indicted.  Do you understand that?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  If you waive indictment, this case will

15    proceed on the charges in the United States Attorney's

16    information just as though you had been indicted.  Do you

17    understand that?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  Now, have you had enough time to discuss

20    waiving your right to indictment by the grand jury with your

21    attorney?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  Have any threats or promises been made to

24    induce you to waive indictment?

25         THE DEFENDANT:  No, your Honor.

6

6cemarqptp

1        THE COURT:  And do you wish to waive your right to

2  indictment by the grand jury?

3        THE DEFENDANT:  Yes, your Honor.

4        THE COURT:  The Court finds that the defendant has

5  knowingly and voluntarily waived his right to indictment by the

6  grand jury.  The information will be accepted for filing.

7        The Court will enter a not guilty plea at this time

8  and direct the clerk to draw out the name of the assigned

9  district court judge.

10        THE DEPUTY CLERK:  This is a Wheel A matter.

11        THE COURT:  All right.

12        (Pause)

13        THE COURT:  The case has been assigned to Judge

14  Brieant.

15        I do advise you, Mr. Marquez, that you have the

16  absolute right to have this guilty plea proceeding conducted

17  before Judge Brieant, who is the district court judge that will

18  be imposing sentence in your case.  Do you understand that?

19        THE DEFENDANT:  Yes, your Honor.

20        THE COURT:  However, if you consent and agree, I will

21  conduct the guilty plea proceeding here today.  I will then

22  report and recommend to Judge Brieant as to whether or not your

23  guilty plea should be accepted.  I will make that

24  recommendation based on everything that is brought out during

25  the proceeding here today.

6cemarqptp

1          It is important for you to understand that the Court

2    need not accept your plea of guilty unless it's satisfied that

3    you are guilty and that you understand all your rights.  Do you

4    understand that?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Is it your wish that I conduct the guilty

7    plea proceeding here today?  Do you want me to do it?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  All right.

10         There is a consent form?

11         THE DEPUTY CLERK:  Yes, there is.

12         THE COURT:  Please verify the signature of the

13   defendant.

14         THE DEPUTY CLERK:  Once again, Mr. Marquez, that is

15   your original signature, signed today, December 14th, 2006?

16         THE DEFENDANT:  Yes, it is.

17         THE COURT:  Did anyone threaten you or coerce you or

18   promise you anything to get you to consent to proceed before me

19   here today?

20         THE DEFENDANT:  No, your Honor.

21         THE COURT:  And did you sign this consent form freely

22   and voluntarily?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  The Court finds that the defendant has

25   knowingly and voluntarily consented to proceed before a United

8

6cemarqptp

1    States Magistrate Judge on this felony plea allocution.

2          There is a plea agreement.

3          Ms. Hilbert, please verify the signature of the

4    defendant on the last page.

5          THE DEPUTY CLERK:  Certainly.

6          Finally, Mr. Marquez, that is your original signature,

7    signed today, December 14th, 2006?

8          THE DEFENDANT:  Yes, it is.

9          THE COURT:  The plea agreement will be marked as Court

10   Exhibit number 1.  It will remain in the custody of the United

11   States Attorney.

12         Now, Mr. Marquez, have you read this plea agreement?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  Have you discussed it with your attorney?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  Do you understand everything that is set

17   forth in the plea agreement?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  Did you read the plea agreement before you

20   signed it?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  Does the plea agreement contain the entire

23   understanding between you and the government in connection with

24   your case?

25         THE DEFENDANT:  Yes, your Honor.

6cemarqptp

1     THE COURT:  Did you sign the plea agreement freely and

2   voluntarily?

3     THE DEFENDANT:  Yes, your Honor.

4     THE COURT:  Did anyone force you or coerce you or

5   threaten you or promise you anything to get you to sign the

6   plea agreement other than what is set forth in the plea

7   agreement?

8     THE DEFENDANT:  No, your Honor.

9     THE COURT:  Do you understand the charges that are

10   pending against you?

11     THE DEFENDANT:  Yes, your Honor.

12     THE COURT:  Have you discussed those charges with your

13   attorney?

14     THE DEFENDANT:  Yes, your Honor.

15     THE COURT:  Do you understand that anything which is

16   not disclosed to me during this proceeding or which is not set

17   forth in the plea agreement will not be binding on the outcome

18   of your case?  Everything must be disclosed.  Do you understand

19   that?

20     THE DEFENDANT:  Yes, your Honor.

21     THE COURT:  Okay.

22     Ms. Feinzig, could you advise the defendant of the

23   maximum possible penalties that he faces.

24     MS. FEINZIG:  Yes, your Honor.

25     The maximum sentence is five years' imprisonment;

6cemarqptp

1    $250,000 or twice the gross pecuniary gain or loss from the

2    offense; three years of supervised release; a mandatory $100

3    special assessment; restitution of $6,256,650; and forfeiture.

4          THE COURT:  All right.

5          Mr. Marquez, did you hear what the Assistant U.S.

6    Attorney just said?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Do you understand that those are the

9    maximum possible penalties that you face on your plea of

10   guilty?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Do you understand that if you are

13   sentenced to a term of imprisonment, even if it was the maximum

14   term, and to a term of supervised release, and if you violate

15   the terms of supervised release, you could be sentenced to an

16   additional term of imprisonment for violating conditions of

17   supervised release?  Do you understand that?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  Do you understand that if that were to

20   occur, you would not receive credit against the additional

21   sentence for the jail time you had already served nor for the

22   time you had served on supervised release?  Do you understand?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  You are pleading guilty to a felony

25   offense.   Such adjudication my deprive you of valuable civil

6cemarqptp

1   rights, such as the right to vote, the right to hold public

2   office, the right to serve on a jury, the right to possess any

3   type of firearm, the right to possess certain professional

4   licenses.  And those are just examples.  Do you understand

5   that?

6           THE DEFENDANT:  Yes, your Honor.

7           THE COURT:  Are you a United States citizen?

8           THE DEFENDANT:  Yes, your Honor.

9           THE COURT:  Do you understand that what I've gone over

10  are the possible consequences of a plea of guilty?  These are

11  the things that could happen to you.

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Now, have you and your attorney talked

14  about how the sentencing guidelines may apply to your case?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  Do you understand that the sentencing

17  guidelines are not mandatory, but they must be considered by

18  the district court judge when imposing sentence in your case?

19  Do you understand that?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Do you understand that the Court will not

22  be able to determine the guideline range for your case until

23  after a presentence report has been completed?

24          You and the government would have an opportunity to

25  review that report.  You could challenge any facts in that

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

6cemarqptp

1   report.  And you could challenge the report's computation of

2   your sentencing guideline range.  Do you understand that?

3           THE DEFENDANT:  Yes, your Honor.

4           THE COURT:  Do you understand that, under certain

5   circumstances, both you and the government have the right to

6   appeal any sentence that the Court would impose, subject to the

7   terms of the plea agreement?  Do you understand that?

8           THE DEFENDANT:  Yes, your Honor.

9           THE COURT:  And Ms. Feinzig, are there any appeal

10  waiver provisions in the plea agreement?

11          MS. FEINZIG:  Yes, your Honor.  Under the plea

12  agreement, the defendant will waive his right to appeal a

13  sentence within the stipulated guidelines range, which will

14  either be 51 to 60 months' imprisonment or 41 to 51 months'

15  imprisonment.

16          THE COURT:  All right.

17          And Mr. Marquez, do you understand that?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Do you understand that parole has been

20  abolished?  If you are sentenced to a term of imprisonment, you

21  will not be eligible for an early release on parole.  Do you

22  understand that?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Do you understand that if you disagree

25  with the sentencing guideline determination made by the Court,

6cemarqptp

1   the range that the Court comes up with, that will not

2   constitute a basis for you to withdraw your plea of guilty?  Do

3   you understand that?

4           THE DEFENDANT:  Yes, your Honor.

5           THE COURT:  Do you understand that you do not have to

6   plead guilty in this matter?  You have the absolute right to

7   have this matter tried.  If you chose to plead not guilty,

8   you're entitled to a speedy and public trial.  And your case

9   could be decided by a jury.  Do you understand that?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Also, if both you and the government

12  agreed, your case could be decided by a judge alone, without a

13  jury.  Do you understand that?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  If there was a trial, the presumption of

16  innocence would remain in your favor throughout the entire

17  trial.  The government would have the burden at any trial of

18  proving your guilt beyond a reasonable doubt as to each and

19  every element of the crime charged.  And if tried by a jury,

20  the government would have to prove your case to the unanimous

21  satisfaction of each and every member of the jury before you

22  could be found guilty.  Do you understand that?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  If there was trial, you would have the

25  right, with the assistance of your attorney, to cross-examine

6cemarqptp

1  and confront the witnesses against you, you would have the

2  right to call witnesses to testify on your behalf, and you

3  would have the right to have subpoenas issued to compel

4  witnesses to give testimony on your behalf.

5       You would also have the right at any trial to testify

6  on your own behalf, but only if you wished. You could not be

7  compelled to testify. And if you chose not to testify, no

8  unfavorable inference would be drawn against you because of

9  that. Do you understand?

10       THE DEFENDANT: Yes, your Honor.

11       THE COURT: If there was a trial, you would be

12  entitled to the assistance of your attorney and to have an

13  attorney assigned to represent you without cost if you could

14  not afford an attorney. Do you understand?

15       THE DEFENDANT: Yes, your Honor.

16       THE COURT: Do you understand, Mr. Marquez, that, by

17  pleading guilty to the charges here today, you are giving up

18  your right to a trial? There would not be a trial in this

19  matter.

20       THE DEFENDANT: Yes, your Honor.

21       THE COURT: Ms. Feinzig, what are the elements of the

22  offense, and what would the government be prepared to prove if

23  this matter did proceed to trial?

24       MS. FEINZIG: Your Honor, the elements of the

25  conspiracy charge are as follows:

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

6cemarqptp

1          First, that two or more persons entered into the

2    unlawful agreement charged in the information; second, that the

3    defendant knowingly and willfully became a member of the

4    conspiracy; third, that one of the members of the conspiracy

5    knowingly committed at least one of the overt acts charged in

6    the information; and, fourth, that the overt acts which are

7    found to have been committed were committed to further some

8    objective of the conspiracy.

9          In order to establish these elements of this crime,

10   the government would prove at trial, based on documentary

11   evidence and the testimony of witnesses, that from in or about

12   July 1996 to on or about October 10th, 2001, James Marquez and

13   his co-conspirators, Samuel Israel and Daniel Marino,

14   perpetrated a fraud on investors and potential investors in two

15   hedge funds, the Bayou Fund, LLC and Bayou Fund Ltd., by

16   misrepresenting the value of the hedge funds' assets and

17   causing these misrepresentations to be disseminated to current

18   and prospective investors in the Southern District of New York

19   and elsewhere.  These false and misleading statements and

20   misrepresentations induced new investors to invest in the funds

21   and lulled existing investors into retaining their investments

22   in the funds.

23          The evidence would establish that Mr. Marquez, who

24   founded the original two hedge funds with Samuel Israel, was

25   responsible for executing trades, investment management and

6cemarqptp

1    operations of funds.  He and his co-conspirators caused to be

2    mailed quarterly reports to investors that contained fictitious

3    rates of return on trading in the funds and annual financial

4    statements that contained fictitious rates of return on trading

5    and inflated net asset value.  The evidence would establish

6    that Mr. Marquez and Mr. Israel made up numbers.  All of these

7    communications to investors made it appear that Bayou was

8    earning profits on trading when, in fact, it was not.

9            In furtherance of this scheme, and because Bayou could

10   not use an actual certified public accounting firm to audit the

11   funds and certify the funds' annual financial statements, in or

12   about 1998, Mr. Marquez, Mr. Israel and Mr. Marino devised a

13   plan to form a phony accounting firm.  Thereafter, Mr. Marino

14   created Richmond-Fairfield Associates, a fake accounting firm,

15   and year after year, between 1999 and 2001, the co-conspirator

16   had Bayou's false financial statements sent out with a

17   fictitious certification by Richmond-Fairfield Associates that

18   the funds had been audited and the financial statements were

19   accurate.

20           As a result of these false statements, investors

21   invested more than $10 million during the time period.

22           THE COURT:  All right, Mr. Marquez, did you hear what

23   the Assistant U.S. Attorney just said?

24           THE DEFENDANT:  Yes, your Honor.

25           THE COURT:  Do you agree with that?

6cemarqptp

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Have you clearly and fully understood

3    everything that has happened here today so far?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Do you have any questions of your attorney

6    or the Court before I continue?

7          THE DEFENDANT:  No, your Honor.

8          THE COURT:  All right.  I'm going to have the Clerk of

9    the Court read paragraph 6 of the information and the overt

10   acts, and I will then take your plea.

11         THE DEPUTY CLERK:  From in or about July 1996 to on or

12   about October 10th, 2001, in the Southern District of New York

13   and elsewhere, James G. Marquez, the defendant, Samuel Israel,

14   III and Daniel E. Marino unlawfully, willfully and knowingly

15   did combine, conspire, confederate and agree together and with

16   each other to commit offenses against the United States, to

17   wit, investment advisor fraud, in violation of Title 15, United

18   States Code, Sections 80b-6 and 80b-17 and, (b), mail fraud, in

19   violation of Title 18, United States Code, Section 1341.

20         It was a part and object of the conspiracy that James

21   G. Marquez, the defendant, along with --

22         THE COURT:  You can go back, right to the overt acts.

23         THE DEPUTY CLERK:  Oh, I'm sorry, Judge.

24         THE COURT:  Yes, on paragraph 9.

25         THE DEPUTY CLERK:  Paragraph 9?

6cemarqptp

1          THE COURT:  Yes.

2          THE DEPUTY CLERK:  In furtherance of said conspiracy

3    and to effect the illegal objects thereof, the following overt

4    acts, among others, were committed in the Southern District of

5    New York and elsewhere:

6          A.  At various times from in or about July 1996

7    through on or about October 10th, 2001, Marquez and Israel

8    traded securities on behalf of Bayou through computers located

9    in Westchester County, New York and at Bayou's office in

10   Stamford, Connecticut.

11         B.  At various times between July 1996 and October

12   10th, 2001, Marquez, Israel and Marino had quarterly and/or

13   monthly reports and annual financial statements mailed to

14   investors located in the Southern District of New York and

15   elsewhere.

16         c.  In or about 1999, Marquez, Israel and Marino

17   devised a plan in which Marino formed a sham certified public

18   accounting firm named Richmond-Fairfield Associates and

19   maintained an office for Richmond-Fairfield Associates in

20   Manhattan.

21         D.  During the relevant time period, in annual

22   financial statements, Marquez, Israel and Marino had Bayou

23   falsely assert that Richmond-Fairfield Associates was an

24   independent auditor that had audited Bayou and certified its

25   financial statements.

6cemarqptp

1        In violation of Title 18, United States Code, Section

2   371.

3        THE COURT:  To that charge, how do you plead, guilty

4   or not guilty?

5        THE DEFENDANT:  I plead guilty, your Honor.

6        THE COURT:  All right, now, as concerns the forfeiture

7   allegations, I'm not going to have them read; however, you

8   agree to the forfeiture allegations that are set forth in the

9   information?  You agree to that?

10        THE DEFENDANT:  Yes, your Honor.

11        THE COURT:  All right.

12        Now, has anyone made any promises to you, other than

13   what is set forth in the plea agreement, in order to induce you

14   to plead guilty?

15        THE DEFENDANT:  No, your Honor.

16        THE COURT:  Has anyone threatened you or coerced you

17   to get you to plead guilty?

18        THE DEFENDANT:  No, your Honor.

19        THE COURT:  Has anyone put any pressure on you or did

20   anything improper to you to get you to plead guilty?

21        THE DEFENDANT:  No, your Honor.

22        THE COURT:  Has anyone made any specific promises to

23   you about what your sentence will be in this matter?

24        THE DEFENDANT:  No, your Honor.

25        THE COURT:  All right, Mr. Marquez, in your own words,

6cemarqptp

1  you are now going to have to tell me what you did in connection

2  with this charge that you're pleading guilty to.

3       THE DEFENDANT:  Your Honor, during the period of time

4  alleged in the information, I acted in the position of a

5  portfolio manager for Bayou Fund where I helped formulate the

6  trading strategy for the fund.  I had general knowledge of the

7  financial status of the fund and became aware, after a period

8  of time, that the fund was sustaining losses.

9       Together with others, I caused documents to be sent

10  via U.S. Mail to investors that contained inaccurate financial

11  information about the Bayou Fund.  Specifically, such mailings

12  contained false financial information that made it appear that

13  the fund was more successful than it actually was.

14       I was also aware that Richmond-Fairfield was formed to

15  handle the audits for the Fund with the intent that the true

16  financial status of the Fund not be disclosed to investors.

17       I am deeply and genuinely sorry for my own actions and

18  for my failure to stop others from acting.  I know that I have

19  caused a calculable hardship to Bayou investors and irreparable

20  sorrow and harm to my own family.  And I apologize with all my

21  heart to those I have hurt.

22       THE COURT:  All right.  Are you pleading guilty to

23  this charge because you're, in fact, guilty of the crime

24  charged?

25       THE DEFENDANT:  Yes, your Honor.

6cemarqptp

1    THE COURT:  Now, the acts that you just mentioned and

2 the ones that are set forth in the charges in the information,

3 did you do those acts knowingly and willfully?  You knew what

4 you were doing?

5    THE DEFENDANT:  Yes, your Honor.

6    THE COURT:  Did anyone force you or coerce you or

7 threaten you or pressure you to do those acts?

8    THE DEFENDANT:  No, your Honor.

9    THE COURT:  All right.

10    Let me ask, are both counsel satisfied with the state

11 of the record?

12    Ms. Feinzig?

13    MS. FEINZIG:  Yes, your Honor.

14    THE COURT:  Okay.

15    Mr. Twardy?

16    MR. TWARDY:  Yes, your Honor.

17    THE COURT:  Mr. Twardy, do you know of any reason why

18 the Court should not accept a plea of guilty?

19    MR. TWARDY:  No, your Honor.

20    THE COURT:  Mr. Marquez, have you clearly and fully

21 understood everything that has happened here today?

22    THE DEFENDANT:  Yes, your Honor.

23    THE COURT:  Upon this allocution, the Court finds that

24 the defendant is fully competent and capable of entering an

25 informed plea of guilty, the plea is knowing and voluntary, and

6cemarqptp

1    the plea is supported by an independent factual basis for each

2    and every element of the crime charged.

3              Accordingly, I report and recommend to Judge Brieant

4    that the plea be accepted and that the defendant be adjudged

5    guilty of the crime charged.

6              I direct that a presentence investigation be conducted

7    by the United States Probation Office.

8              I further direct the Clerk of the Court to provide a

9    transcript of these proceedings which sets forth my report and

10   recommendation to Judge Brieant within 30 days.

11             The matter will be adjourned for sentencing until?

12             THE DEPUTY CLERK:  March 19th, 2007, 9 a.m.

13             THE COURT:  March 19th, 2007, 9 a.m. sentencing before

14   Judge Brieant.

15             Now, this is the defendant's first appearance?  We

16   need to --

17             MS. FEINZIG:  It is, your Honor.

18             THE COURT:  -- set conditions of release.

19             What's the government's recommendation?

20             MS. FEINZIG:  Your Honor, the government's

21   recommendation, having spoken with Mr. Twardy, is that the

22   defendant be placed on a $500,000 personal recognizance bond to

23   be cosigned by two financially responsible persons; that travel

24   be restricted to Connecticut and New York --

25             MR. TWARDY:  And Massachusetts.  And would it be

6cemarqptp

1    possible to include all of New England because of family things

2    going on?  And, obviously, if there's some other times where we

3    have to work with you for such travel -- New England and New

4    York.

5              THE COURT:  Okay.  You have to mention the states.

6              MR. TWARDY:  Right.  I'll go through it.  My geography

7    is worse.

8              Vermont, New Hampshire, Rhode Island, Massachusetts,

9    Connecticut and New York.

10             THE DEFENDANT:  And Maine.

11             MR. TWARDY:  And Maine.  Thank you.

12             THE COURT:  Okay.

13             No objection from the government?

14             MS. FEINZIG:  No objection, your Honor.

15             Also, that he have Pretrial Services supervision; that

16   he surrender his passport, which he has already done.

17             THE COURT:  All right.

18             Any comment on any of those, Mr. Twardy?

19             MR. TWARDY:  That's acceptable, your Honor, again,

20   with the understanding that there are -- he has -- Mr. Marquez

21   has family in California and Louisiana and in Florida and may

22   be traveling.  But we will work that through --

23             THE COURT:  Yes, you can make a request for travel

24   outside of those areas that we just mentioned.

25             MR. TWARDY:  January 2nd to get the signatures,

6cemarqptp

1    please, your Honor.  So probably January 5th, your Honor.

2           THE COURT:  Okay.

3           No objection?

4           MS. FEINZIG:  No objection, your Honor.

5           THE COURT:  Okay.

6           I am going to -- I have reviewed the report.  I am

7    going to generally accept the recommendations that have been

8    made as to conditions of release.  Bail will be set in the

9    amount of a $500,000 personal recognizance bond to be cosigned

10   by two financially responsible persons.  Defendant will have

11   until January -- what was the date?  The 5th?

12          MR. TWARDY:  The 5th?

13          MS. FEINZIG:  The 5th.

14          THE COURT:  -- January 5th, 2007, to present the two

15   financially responsible persons acceptable to the United States

16   Attorney.  Travel will be restricted to the Southern District

17   of New York, Eastern District of New York -- well, I'll say the

18   State of New York.  And I'm not going to try to remember all

19   those states.

20          Did you get them all down?  Did you get them?

21          THE DEPUTY CLERK:  I think I did.  Connecticut,

22   Massachusetts, Vermont, New Hampshire, Rhode Island,

23   Connecticut, Maine.

24          THE COURT:  Okay.

25          Did we get them all?

6cemarqptp

1        MR. TWARDY:  Got them all that time.

2        THE COURT:  Okay.  Travel will be --

3        MR. TWARDY:  By consensus, your Honor, I think we've

4    got them all.

5        THE COURT:  Travel restricted to the states just named

6    by the Clerk of the Court.

7        Do you have a passport?

8        MS. FEINZIG:  He's already surrendered it, your Honor.

9        THE COURT:  Your passport has been surrendered.

10       I will direct that you not make application for any

11   other passport or travel document while you're on release on

12   the case.

13       You will be subject to pretrial supervision as deemed

14   necessary by the Pretrial Services Office.

15       What that means, Mr. Marquez, is that if they tell you

16   to do something, it's just like the Court telling to you do it,

17   and you have to do it.  Do you understand that?

18       THE DEFENDANT:  Yes, your Honor.

19       THE COURT:  Okay.

20       MR. TWARDY:  Your Honor, if I might interrupt.  I

21   apologize.

22       THE COURT:  Yes.

23       MR. TWARDY:  Mr. Marquez just mentioned to me that

24   business does take him to New Jersey on a relatively regular

25   period of time.  Might we add New Jersey to our list of states

6cemarqptp

1    to which he can travel?

2          THE COURT:  All right.

3          No objection to New Jersey?

4          MS. FEINZIG:  No objection.

5          THE COURT:  Okay.  We'll add New Jersey for your

6    travel.

7          The following conditions are also imposed:

8          You shall not commit any offense in violation of

9    federal, state or local law while on release.  You shall

10   immediately advise the Court, defense counsel and the U.S.

11   Attorney, in writing, prior to any change of address or

12   telephone number.  You shall appear at all proceedings as

13   required.  You shall refrain from possessing a firearm,

14   destructive device or other dangerous weapon.  You shall

15   refrain from excessive use of alcohol.  You shall refrain from

16   any use or unlawful possession of a narcotic drug or other

17   controlled substance unless prescribed by a licensed medical

18   practitioner.

19         I do advise you, Mr. Marquez, that if you violate any

20   conditions of release, you could be brought back into court,

21   and your bail could be revoked.  Do you understand that?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  Also, if you do not show up in court as

24   required, you could face a separate charge of bail jumping and

25   face additional penalties, including imprisonment, fines or

6cemarqptp

1    both.   Do you understand that?

2            THE DEFENDANT:  Yes, your Honor.

3            THE COURT:  All right.

4            Once the necessary papers are signed, the defendant

5    will be free to go.

6            However, before you leave the building, Mr. Twardy, if

7    you and your client could go to the Probation Office on the

8    ground floor to begin the presentence investigation process.

9            MR. TWARDY:  Yes, your Honor.

10           THE COURT:  Okay.

11           Anything further from either side?

12           MS. FEINZIG:  Judge, could I have one moment, your

13    Honor?

14           THE COURT:  Yes.

15     (Pause)

16           THE COURT:  Has the defendant been processed already

17    by the marshals?

18           MR. TWARDY:  We have to return to the marshals for a

19    few minutes, your Honor, and then we'll do probation after

20    that.

21           THE COURT:  Okay.  Very good.

22           Matter adjourned.  Thank you.

23

24                     - - - -

25