UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

IN RE BAYOU HEDGE FUND INVESTMENT   :     No. 06 MD 1755 (CM)
LITIGATION   :

-------------------------------------------------------- X

THIS DOCUMENT RELATES TO:

-------------------------------------------------------- X

BROAD-BUSSEL FAMILY LIMITED   :     No. 06 Civ. 3026 (CM)
PARTNERSHIP, ET. AL., Individually   :
And on Behalf of all Other Persons and Entities   :
Similarly Situated,   :
                   Plaintiffs,   :
     - against -   :
   :

BAYOU GROUP LLC, ET. AL.,   :
                   Defendants.   :

-------------------------------------------------------- X

BROAD-BUSSEL FAMILY LIMITED   :     No. 07 Civ. 2026 (CM)
PARTNERSHIP, ET. AL., Individually   :
And on Behalf of All Other Persons and Entities   :
Similarly Situated,   :
                   Plaintiffs,   :
     - against -   :
   :

HENNESSEE GROUP LLC, ET. AL.,   :
                   Defendants.   :

-------------------------------------------------------- X

---

Memorandum of Law of Hennessee Group LLC, Elizabeth Lee Hennessee and
Charles Gradante in Opposition to Plaintiffs' Motion for Class Certification

---

Bressler, Amery & Ross, P.C.
17 State Street, 34th Floor
New York, New York 10004
212-425-9300
212-425-9337 (fax)
Attorneys for Defendants
Hennessee Group LLC, Elizabeth Lee
Hennessee and Charles Gradante

On the Brief:  Bennett Falk (BF 5539)
                Matthew C. Plant (MP 0328)
                Matthew E. Wolper (MW 8835)

# Table of Contents

Introduction.................................................................................................................1

Summary of Argument ...............................................................................................1

Statement of Facts......................................................................................................2

Argument ...................................................................................................................4

    I.      PLAINTIFFS HAVE FAILED TO MEET THE NUMEROSITY
           REQUIREMENT OF FRCP 23(a)....................................................................4

    II.    PLAINTIFFS HAVE FAILED TO MEET THE PREDOMINANCE
           AND SUPERIORITY REQUIREMENTS OF FRCP 23(b)(3)...................14

Conclusion ...............................................................................................................22

## Table of Authorities

Ansari v. New York Univ. 179 F.R.D. 112, 114 (S.D.N.Y. 1998).....................................5

Bayridge Volvo American, Inc. v. Volvo Cars of North America, Inc.
2004 WL 1824379 *5 (S.D.N.Y. 2004)...........................................................................8

C1-Alexanders Laing & Cruickshank v. Goldfeld, 127 F.R.D. 454, 455 (S.D.N.Y. 1989)............5

Dannenberg v. Dorison, 603 F.Supp. 1238, 1243 (D.C.N.Y. 1985)...................................7

Haggerty v. Comstock Gold Company, L.P., 1986 WL 7797 *2 (S.D.N.Y. 1986) ......................7

Iglesias-Mendoza v. La Bella Farm, Inc., 239 F.R.D. 363, 370 (S.D.N.Y. 1/29/07) ....................4

Lively v. Dynegy, Inc., No. 05-cv-00063-MJR, 2007 U.S. Dist. LEXIS 14794 *21,
(S.D. Ill. Mar. 2, 2007)...................................................................................................7

Maiden v. Biehl, 582 F.Supp. 1209 (S.D.N.Y. 1984).......................................................7

Moscarelli v. Stamm, 288 F.Supp. 453, 463 (E.D.N.Y. 1968)...........................................7

Risk Management Alternatives Inc., Fair Debt Collections Practices Act Litigation,
208 F.R.D. 493, 506 (S.D.N.Y. 2002 ......................................................................14, 21

Robidoux v. Celani, 987 F.2d 931, 936 (2d. Cir. 1993) .................................................8

United States Fidelity and Guaranty Company v. Madison Financial Corporation,
2002 WL 31731020 *6 (S.D.N.Y. 2002)........................................................................4

Wade v. Indus. Funding Corp., 1993 WL 594019.........................................................7

### Other Authorities

Federal Rules of Civil Procedure 23(a), 23(b) and 23(b)(3).........................................4,5,14, 21, 22

## Introduction

Defendants Hennessee Group LLC, Elizabeth Lee Hennessee and Charles Gradante submit this Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification filed on July 16, 2007.

## Summary of Argument

In these actions, Plaintiffs seek to certify a small Subclass of Bayou Hedge Fund investors who entered into Investment Advisory Agreements with Hennessee Group. Contrary to Plaintiffs' assertions, Plaintiffs have failed to satisfy the numerosity requirement of FRCP Rule 23(a). Likewise, Plaintiffs have failed to satisfy the predominance and superiority requirements of FRCP Rule 23(b)(3). Therefore, the Court should deny Plaintiffs' Motion for Class Certification.

First, application of the factors considered by courts in this jurisdiction to determine whether the numerosity requirement of Rule 23(a) has been met, warrant denial of class certification in this case. Plaintiffs' proposed Hennessee Subclass is made up of—at the most— 21 members, and is insufficient to certify a class in this jurisdiction. Furthermore, as demonstrated below, Plaintiffs know the name and existence of the proposed Hennessee Subclass members, the proposed Hennessee Subclass members have the financial resources and ability to file individual suits, the proposed Hennessee Subclass members have substantial monetary incentive to protect their own interests, Plaintiffs do not seek prospective relief that may have an affect on future class members and class certification will not avoid multiple actions. As such, joinder is practicable and therefore the Court should not certify the proposed Hennessee Subclass.

Second, common issues of fact or law do not predominate and a class action with respect to the Hennessee Defendants is not superior to individual actions. Because any duty the Hennessee Defendants had to conduct due diligence, investigate and monitor (more than performance) had to have been created by oral agreement or in documents outside the standardized Investment Advisory Agreement, individual issues with respect to how and what duty was created predominate. Likewise, issues concerning the reliance of Subclass members on the Hennessee Defendants' alleged duty and the recommendation of the Bayou Hedge Funds are also individualized and not subject to Subclass-wide proofs. Therefore, common issues of law or fact do not predominate.

Lastly, the number and nature of separate actions being pursued by members of the proposed Hennessee Subclass demonstrate a high level of interest in individually controlling the prosecution of separate actions. As such, a class action is not superior.

## Statement of Facts

Plaintiffs' Motion seeks to certify, inter alia, a proposed Subclass of 29 members made up of Bayou Hedge Fund investors who entered into Investment Advisory Agreements with Hennessee Group. See Memorandum of Law in Support of Broad-Bussel Plaintiffs' Motion for Class Certification (hereinafter referred to as "Plaintiffs' Brief in Support") at pp. 12, 14 and 20. However, Plaintiffs' proposed Hennessee Subclass is actually much smaller than 29 members. In fact, it is made up of only 21 members.

In addition to the above-captioned actions, five additional individual actions were brought against one or more of the Hennessee Defendants. See Declaration of Matthew C. Plant (hereinafter the "Plant Dec.") at ¶ 2. Certain of these actions originally commenced in court (and consolidated before this Court), are being pursued in arbitration before the American Arbitration

Association (see Plant Dec. at ¶ 3) while certain of them were brought directly in arbitration before the American Arbitration Association (see Plant Dec. at ¶ 4).

Of the 29 proposed Hennessee Subclass members, seven have sued separately in those five individual actions. See Plant Dec. at ¶ 5. These seven proposed Hennessee Subclass members are: Sam A. Stephens Charitable Remainder Trust, Roger Hill, DePauw University, Ken Lingo, William H. Morris III, Alan Schottenstein and Yuengling Corp. See Plant Dec. at ¶ 5. These seven Subclass members each retained an attorney, filed an arbitration statement of claim (and in some cases a civil complaint as well), selected arbitrators, exchanged discovery, and scheduled final hearing dates. See Plant Dec. at ¶ 6. In fact, the final hearings in two such cases, which include five of these seven proposed Hennessee Subclass members, are scheduled to commence on September 5, 2007 and October 24, 2007, respectively. See Plant Dec. at ¶ 7.[1]

Additionally, Plaintiffs' proposed Hennessee Subclass members also includes Craig Bollman. See Plant Dec. at ¶ 8. However, the Court has already determined that Mr. Bollman was only the limited agent of an entity that invested in Bayou and that Mr. Bollman did not bind that entity to the Hennessee Group Investment Advisory Agreement he signed. See Plant Dec. at ¶ 8. In addition, one of the proposed Hennessee Subclass members previously notified the Court that he intends to opt-out of any Hennessee Subclass. See Plant Dec. at ¶ 9.

In addition, several allegations contained in Plaintiffs' Amended Complaint are relevant to and demonstrate why Plaintiffs' Motion for Class Certification should be denied. First, in paragraphs 92, 94, 96 and 150 of the Amended Complaint, Plaintiffs allege that the Hennessee Defendants represented that they provided due diligence and investigation services. However,

---

[1] It should be noted that the parties in the case scheduled to commence on September 5 have agreed in principal to an adjournment of those hearing dates for reasons unrelated to this putative class action.

the Investment Advisory Agreements that form the basis of Plaintiffs' proposed Subclass do not mention investigation or due diligence. See Exhibit M to Plaintiffs' Compendium of Documents in Support of Their Motion.

Plaintiffs also allege in paragraphs 5, 43, 51(b) and 107 - 109 of their Amended Complaint that, in retaining the Hennessee Defendants, Hennessee Subclass members relied on certain representations about the due diligence and investigation the Hennessee Defendants allegedly agreed to perform.

Lastly, Plaintiffs allege in paragraphs 5, 94 and 161 of the Amended Complaint that the Individual Hennessee Defendants personally solicited the purchases of the Bayou Hedge Funds and in paragraphs 97, 98, 99, 101, 102, 105 and 195 that the Hennessee Defendants made certain misstatements about the Bayou Hedge Funds in connection with recommending those hedge funds.

## **Argument**

### I.    **PLAINTIFFS HAVE FAILED TO MEET THE NUMEROSITY REQUIREMENT OF FRCP 23(a)**

To certify a proposed class, Plaintiffs must establish each of the requirements of Rule 23(a) of the Federal Rules of Civil Procedure. See Iglesias-Mendoza v. La Bella Farm, Inc., 239 F.R.D. 363, 370 (S.D.N.Y. 1/29/07) (J. McMahon).  The requirements of Rule 23(a) apply equally to the certification of a proposed subclass. See United States Fidelity and Guaranty Company v. Madison Financial Corporation, 2002 WL 31731020 *6 (S.D.N.Y. 2002) (J. McMahon).  An essential requirement is that "the class is so numerous that joinder of all members is impracticable. . . ." Iglesias-Mendoza, 329 F.R.D. 370.

To determine whether the numerosity requirement has been met, courts in this jurisdiction typically look to the size of the proposed class or subclass: "'[g]enerally speaking,

courts will find that the 'numerosity' requirement has been satisfied when the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer.'" United States Fidelity and Guaranty Co., 2002 WL 31731020 *6 quoting Ansari v. New York Univ., 179 F.R.D. 112, 114 (S.D.N.Y. 1998). "Although no particular number define[s] the point at which a class action is deemed conclusively inappropriate, a small class militates against certification." Cl-Alexanders Laing & Cruickshank v. Goldfeld, 127 F.R.D. 454, 455 (S.D.N.Y. 1989) (internal citations omitted).

Here, Plaintiffs seek to certify a subclass comprised of Bayou investors who entered into Investment Advisory Agreements with Hennessee Group. In fact, Plaintiffs' claims are inextricably intertwined with the Investment Advisory Agreement that each proposed Subclass member signed. For example, in arguing commonality under Rule 23(a), Plaintiffs assert that:

> The Commonality requirement is also met as to the Hennessee Subclass because those investors entered into **standard investment advisory agreements that obligated the Hennessee Defendants to provide due diligence and on-going monitoring** of Subclass member investments, including concerning the Bayou Hedge Funds. Accord Trout Decl., at ¶¶29-31. The Hennessee Defendants' failure to provide **such due diligence and on-going monitoring** resulted in each of the members of the Hennessee Subclass to be similarly injured through their investments in the fraudulent Bayou Hedge Funds. Id. (discussing Hennessee's **standard investment advisory agreements**, samples of which are attached as Compendium, Exh. M)." See Plaintiffs' Brief in Support at p. 14. (emphasis added)

Likewise, in arguing predominance, Plaintiffs assert:

> Similarly, the members of the Hennessee Subclass **each entered into a standard investment advisory agreement with Hennessee Group LLC.** Accord Trout Decl., at ¶¶29-31. **As a result,** each of the Hennessee Defendants owed the same fiduciary and other duties to those investors, and each of those Hennessee Defendants violated **those duties** as a result of their failure to perform due diligence and monitoring of the Bayou Hedge Funds. Id." See Plaintiffs' Brief in Support at p. 20. (emphasis added)

The proposed Hennessee Subclass thus includes only those Bayou investors who entered into Investment Advisory Agreements with Hennessee Group. Plaintiffs assert that the proposed Subclass includes "at least some twenty-nine" members, yet they offer no other evidence, allegation or argument upon which the Court could conclude that the proposed subclass includes more than 29 members. In actuality, common sense dictates that the proposed Hennessee Subclass is made up of only 21 members.

As the Court is aware, certain proposed Hennessee Subclass members have brought individual suits against the Hennessee Defendants that were consolidated before this Court for pretrial proceedings. See Plant Dec. at ¶ 2. Several of these Subclass members have opted to pursue their claims in arbitration before the American Arbitration Association. See Plant Dec. at ¶ 3. In addition, several proposed Hennessee Subclass members brought claims directly in arbitration before the American Arbitration Association. See Plant Dec. at ¶ 4. Of the 29 proposed Hennessee Subclass members, seven proposed members have sued separately and this Court has already determined that one of the proposed Subclass members, Craig Bolman, did not invest in Bayou. See Plant Dec. at ¶¶ 5 and 8. The seven Subclass members that have brought individual actions will undoubtedly opt out of the Hennessee Subclass if one were certified. In fact, in one action the proposed Hennessee Subclass member has previously notified the Court of his desire to opt-out of any Hennessee Subclass. See Plant Dec. at ¶ 9. Each of these proposed members retained an attorney, filed an arbitration statement of claim (and in some cases a civil complaint as well), selected arbitrators, exchanged discovery and scheduled final hearing dates. See Plant Dec. at ¶ 6. In fact, in two cases (involving five of the seven proposed Hennessee Subclass members) the final hearing is scheduled to commence before Plaintiffs' Motion is likely to be decided. See Plant Dec. at ¶ 7. Clearly, these seven proposed subclass members,

who have been litigating their cases for more than a year, have elected, by their conduct, not to participate in this action, either individually or as a class action against the Hennessee Defendants. In fact, courts have taken into account the number of proposed class members who would potentially opt-out in evaluating numerosity. See Dannenberg v. Dorison, 603 F.Supp. 1238, 1243 (D.C.N.Y. 1985) and Haggerty v. Comstock Gold Company, L.P., 1986 WL 7797 *2 (S.D.N.Y. 1986).

Here, the Court is faced with a proposed subclass with a maximum of only 21 members, which is smaller than classes typically certified in this jurisdiction.

Although Plaintiffs have cited cases for the proposition that small classes have been certified in the past, none of them are Southern District of New York cases. The one case Plaintiffs cite as being from this jurisdiction, Wade v. Indus. Funding Corp., 1993 WL 594019, is a Northern District of California case.[2] Here, as Judge Mukasey aptly noted in denying certification of a proposed class of at most 25 members, "[c]ourts in this circuit have repeatedly refused to certify classes as large as or larger than this one. See, e.g., Haggerty v. Comstock Gold Co., L.P., [1986-87 Transfer Binder] Fed.Sec.L.Rep. (CCH) 92,813 at 93,980, 1986 WL 7797 (S.D.N.Y. July 3, 1986) and cases cited therein; Dannenberg v. Dorison, 603 F.Supp. 1238, 1243 (S.D.N.Y.1985) (denying certification to class with maximum size of 33); Maiden v. Biehl, 582 F.Supp. 1209 (S.D.N.Y.1984) (denying certification to proposed 28-member class of investors in private placement); Moscarelli v. Stamm, 288 F.Supp. 453, 463 (E.D.N.Y.1968) (denying certification to proposed class of approximately 25 members; court noted that '[j]oinder has been held preferable [to class certification] where the number of prospective members lies between 30

---

[2]    Interestingly, most of the cases Plaintiffs cite concerning small classes did not even involve small classes, rather, they involved much larger classes (in one case 2,300 or more, Lively v. Dynegy, Inc. No. 05-cv-00063-MJR, 2007 U.S. Dist. LEXIS 14794, at *21 (S.D. Ill. Mar. 2, 2007)) but the courts happened to mention older cases that had certified small classes.

and 40')." Cl-Alexanders Laing & Cruickshank, 127 F.R.D. at 456; see also Bayridge Volvo American, Inc., v. Volvo Cars Of North America, Inc., 2004 WL 1824379 *5 (S.D.N.Y. 2004) (denying class certification of a proposed class of at most twenty-seven members) and Ansari v. New York Univ., 179 F.R.D. 112 (S.D.N.Y. 1998) (denying class certification of a proposed class of 35 members). Undoubtedly, the weight of authority in this jurisdiction dictates denial of Plaintiff's Motion.

The Ansari case illustrates the absence of numerosity in this case. In Ansari, the court was faced with a proposed class of 35 foreign dental students in a class action against NYU. Plaintiff sought damages in connection with NYU's alleged failure to fulfill certain oral and written promises to these students. Given the size of the proposed class, the Ansari court evaluated each of the foregoing factors and ultimately denied certification for many of the same reasons this Court should deny Plaintiffs' Motion.

The court articulated the five factor test as follows: "[i]n deciding [the issue of practicability of joinder], particularly in cases falling into the gray area between 21 and 40 class members, courts must consider factors other than class size. These factors include: (1) the judicial economy that will arise from avoiding multiple actions; (2) the geographic dispersion of members of the proposed class; (3) the financial resources of those members; (4) the ability of the members to file individual suits; and (5) requests for prospective relief that may have an effect on future class members." Ansari v. New York Univ., 179 F.R.D. 112, 114 – 115, citing Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993). Although the Ansari court addressed the issues of plaintiff's knowledge of the names and existence of the potential class members and the amount of each potential class member's individual claim in connection with factors 2 and 4

above, subsequent cases have broken these two issues out as separate factors. See United States Fidelity and Guaranty Co., 2002 WL 31731020 *6.

As to the first factor, the court found that there was "no evidence that permitting this suit to go forward as a class action is necessary to avoid a multiplicity of redundant lawsuits. This is not a situation where individual members of the prospective class have filed or threatened to file their own actions." Ansari, 179 F.R.D. at 115. The court went on to note that more than two years had passed and no other dental students had filed suit against NYU.

As to the second factor, the court found that "although the proposed class is geographically dispersed, and this dispersion weighs in favor of finding that joinder is impracticable, dispersion is not dispositive." Ansari, 179 F.R.D. at 115. The court also noted that "Ansari was a classmate of the individuals he seeks to represent and currently has or is capable of obtaining recent addresses of most if not all of them. Although knowledge of the whereabouts of proposed class members does not automatically make joinder practicable, it should provide comfort to Ansari who, if he so chooses, can contact each of his former classmates, apprise each of his lawsuit, and invite each to join." Ansari, 179 F.R.D. at 115 (internal references omitted).

As to the third factor, the court stated that "there is no evidence that the prospective class members lack financial resources to participate in Ansari's lawsuit. Each of the students that took place in the program is a licensed dentist who had the resources both to study abroad and to pay the $30,000 tuition for the program. One can reasonably infer that, like Ansari, each has the wherewithal to retain an attorney either to join in the pending action or to file a separate suit, should he or she wish to do so." Ansari, 179 F.R.D. at 115.

With respect to the fourth factor, the court stated that "for similar reasons, the prospective class members have the ability to bring individual suits, should they choose to do so. This is not a situation where the class members are incarcerated, unsophisticated, or elderly. Rather, the prospective class consists of educated professionals who, although foreigners, spent at least a year living and studying in the United States." Ansari, 179 F.R.D. at 115 (internal citations omitted). The court also relied on its determination that this was not "a case where the prospective class members lack a monetary incentive to protect their own interests. . . . A potential award of around $90,000 is hardly the type of de minimis recovery that would discourage individual class members from joining Ansari's suit or from filing suits in their own behalf." Ansari, 179 F.R.D. at 115 - 116.

As to the final factor, the court found that "Ansari does not seek prospective relief of the sort that will have an effect on 'future class members.'" Ansari, 179 F.R.D. at 116.

As in the Ansari case, application of these factors (and those applied by later court decisions) to the proposed Hennessee Subclass precludes the grant of class certification here. First, although other actions have been filed against the Hennessee Defendants in connection with Bayou, denying class certification will not result in further multiplicity of redundant lawsuits. As is stated above, it is likely that the proposed class members who have already commenced separate actions will opt out of this class (if it were certified) and continue to proceed with their own ongoing cases. Therefore, certifying this class will not reduce the number of actions that are pending. Likewise, no new cases have been filed since June 2, 2006, over 14 months ago. Given the fact that Bayou's collapse occurred over two years ago and was well publicized in national publications such as *The New York Time* and *The Wall Street Journal*

immediately thereafter, see Amend. Compl. ¶¶ 7, 69 – 72[3], it is likely that the Hennessee Group clients who would file suit have already done so.

Second, although the Hennessee Defendants concede that the proposed Hennessee Subclass members are geographically dispersed, "dispersion is not dispositive." Ansari, 179 F.R.D. at 115. Plaintiffs have in their possession the Hennessee Investment Advisory Agreements upon which they base their proposed Subclass. Each Agreement identifies the client's name and address. Therefore, Plaintiffs know the names and existence of the potential Subclass members. Like the plaintiff in Ansari, Plaintiffs are free to contact each of the remaining 19 proposed Subclass members, apprise each of their lawsuits, and invite each to join. Courts have found this to be a critical factor in evaluating numerosity. As the court in Bayridge Volvo American, Inc., v. Volvo Cars Of North America, Inc., 2004 WL 1824379 *5 (S.D.N.Y. 2004) stated, "[k]nowledge of names and existence of members has been called the 'most important' factor, precisely because it renders joinder practicable." (internal citation omitted).

Third, the prospective class members do not lack the financial resources to participate in Plaintiffs' lawsuit. The Bayou Subscription Agreements, which were "uniform for the Bayou Hedge Fund Class member investors" (see Amend. Compl. ¶ 56), limited the offering of investments in the Bayou funds to "Accredited Investors" or "Qualified Purchasers". See Exhibit I to Plaintiffs' Compendium of Documents in Support of Their Motion. The lowest monetary threshold needed to qualify as an Accredited Investor is income of $200,000 in the preceding two years and as a Qualified Purchaser is owning $5,000,000 in investments. See

---

[3]    As the Court is aware, Plaintiffs have filed two actions against the Hennessee Defendants; Nos. 06 Civ. 3026 (CM) and 07 Civ. 2026 (CM). The allegations contained in Complaints in each action are virtually identical and Plaintiffs' Motion for Class Certification is applicable to both actions. Rather than burden the Court with paragraph references to both Complaints, the Hennessee Defendants' references will be to the paragraph numbers of the Amended Class Action Complaint in the earlier case, No. 06 Civ. 3026 (CM).

Regulation D of the Securities Act of 1933 and Rule 501 promulgated thereunder and Section 2(a)(51)(A) of the Investment Company Act of 1940.  The proposed Hennessee Subclass is uniformly comprised of wealthy members that each have the financial resources necessary to retain an attorney to file their own suit against the Hennessee Defendants or join in Plaintiffs' lawsuit.

Fourth, the members of the proposed class have the ability to file suit against the Hennessee Defendants and Plaintiffs have not alleged otherwise.  The proposed Subclass members are sophisticated investors who invested millions of dollars in Connecticut-based hedge funds.  The amount of each potential class member's individual claim is in fact its own factor to be considered.  This is not a case where the potential recovery that each of the proposed Subclass members might expect to recover is de minimis, and thereby would discourage filing suit.  Quite the contrary, Plaintiffs concede that the Hennessee Subclass "invested millions of dollars in the Bayou Hedge Funds" (see Amend. Compl. ¶ 51(a)).  Plaintiffs further argue that Broad-Bussel invested $1,250,000 and Caroline Glass invested $1,140,000 (see Plaintiffs' Brief in Support, p. 18).  With respect to the balance of the proposed Hennessee Subclass, as Plaintiffs allege, it is made up of investors who were still invested in the Bayou Hedge Funds when they collapsed.  Even Plaintiffs concede that "the minimum investment Bayou required of its investors was $250,000".  See Amend. Compl. ¶ 107j.  Plaintiffs further allege in their Amended Complaint that:

> 137.  During the Class Period, Plaintiffs and other members of the Class transferred hundreds of millions of dollars to the Bayou Defendants as investments in the Bayou Hedge Funds.
>
> 138.  Plaintiffs and the Class have, actually or constructively, requested the return of **their investments and all other related interest, profits, income or other appreciation**.

139. The Bayou Defendants have not returned to Plaintiffs and the Class **these proceeds, but have instead deprived Plaintiffs and the Class of their rightful investment proceeds**. . .

140. The Bayou Defendants were not authorized to withhold and withdraw Plaintiffs' and the Class' **original investments** and other monies.

141. The Bayou Defendants' unauthorized withholding and misappropriation of Plaintiffs' and the Class' **original investments and other monies was a substantial, direct and proximate cause of damages suffered** by Plaintiffs and the Class. (emphasis added)

Therefore, based on Plaintiffs' own allegations, the minimum claim of any individual proposed class member is their "original investment" in a Bayou Hedge Fund -- i.e. at least $250,000 -- not counting the alleged "interest, profits, income or other appreciation" and "other monies". In short, each of the proposed Hennessee Subclass members has a substantial monetary incentive to protect their own interests.

Finally, Plaintiffs do not seek any prospective relief that would affect any future class members. Not only do Plaintiffs exclusively seek monetary damages (see Amend. Compl. Prayer for Relief) but there will be no new investors in Bayou, since it is now defunct.

Thus, at a minimum, six out of the seven factors discussed above demonstrate that joinder is practicable. The only factor not squarely in the Hennessee Defendants' favor is the geographic dispersion of the proposed class. However, "dispersion is not dispositive, especially where the absolute number of class members (here, subclass members) is small to begin with." United States Fidelity and Guaranty Company, 2002 WL 31731020 *7 (internal citation omitted). In fact, dispersion among 11 different countries outside the United States, well beyond anything alleged here, did not salvage the class in Ansari. As joinder is practicable with respect to the proposed Hennessee Subclass (regardless of whether it is made up of 21 or 29 proposed

members), Plaintiffs have failed to meet their burden of proving numerosity and the Court should therefore deny Plaintiffs' Motion for Class Certification.

## II.   PLAINTIFFS HAVE FAILED TO MEET THE PREDOMINANCE AND SUPERIORITY REQUIREMENTS OF FRCP 23(b)(3)

This Court has held, "[i]n addition to meeting the prerequisites of Rule 23(a), an action must satisfy at least one of the three conditions of subdivision (b) of Rule 23." Risk Management Alternatives Inc., Fair Debt Collections Practices Act Litigation, 208 F.R.D. 493, 506 (S.D.N.Y. 2002) (J. McMahon).  Contrary to Plaintiffs' assertion that they have met the conditions of Rule 23(b) with respect to the proposed Hennessee Subclass by satisfying the conditions of Rule 23(b)(3), said Rule ". . . permits class certification if 'the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy.'" Risk Management Alternatives, 208 F.R.D. at 506.

Plaintiffs contend that Rule 23(b)(3) has been satisfied because "[t]his action is dominated by the Class-wide issues, in sum, . . . whether the Hennessee Defendants wrongfully steered certain of the class members into investing in the Bayou fraud." See Plaintiffs' Brief in Support, p. 19.  Plaintiffs also assert that "the members of the Hennessee Subclass each entered into a standard investment advisory agreement with Hennessee Group LLC.  As a result, each of the Hennessee Defendants owed the same fiduciary and other duties to those investors, and each of those Hennessee Defendants violated those duties as a result of their failure to perform due diligence and monitoring of the Bayou Hedge Funds." See Plaintiffs' Brief in Support, p. 20 (internal citations omitted).

Plaintiffs then argue that common issues predominate because the Hennessee Group Investment Advisory Agreement created a duty for the Hennessee Defendants to conduct due diligence and based upon Hennessee Group's due diligence the Hennessee Subclass invested in the Bayou Hedge Funds.   Contrary to these assertions, however, common issues do not predominate; rather, individual issues abound and require the denial of class certification.

To begin with, the Hennessee Group Investment Advisory Agreement says nothing regarding a required level of due diligence or even investigation -- it only addresses a specific type of monitoring.   Section II of the Agreement, which is entitled Hedge Fund Advisory Services, states in pertinent part:

> Hennessee agrees to provide the following services:
>
> (a)  Structuring and Ongoing Services
>
> Hennessee will perform **search, evaluation, selection, and introduction services** (collectively, "Structuring Services") and introduce Client to one or more Hedge Fund(s) that Hennessee reasonably believes would be appropriate investment vehicles for Client to use based upon the investment objectives of Client, as specified by Client orally or in writing. Included in the Structuring Services, Hennessee (at the request of Client) will evaluate any Hedge Fund(s) identified by Client as being of interest.  Hennessee will also provide the services below listed ("Ongoing Services"):
>
> (i) Hennessee will **monitor the performance** of the Portfolio selected by Client and provide continuous and ongoing Hedge Fund investment advice.
>
> See Exhibit M to Plaintiffs' Compendium of Documents in Support of Their Motion (emphasis added).

Accordingly, any duty to conduct "due diligence," "investigation" or "monitoring" beyond performance of the portfolio, had to have been created by oral agreement or outside and separate from the standardized Agreement.   The following allegations in the Amended Complaint support such a conclusion:

92.    The Hennessee Group also **touted** its services specifically to plaintiff Broad-Bussel Family and the members of the Hennessee Subclass based on the supposedly superior research, **due diligence and monitoring services** that it provides [Plaintiffs then quote from Hennessee Group's website].

94.    [D]efendants Lee Hennessee and Gradante . . . **personally purported to investigate** Bayou for plaintiff Broad-Bussel Family and the members of the Hennessee Subclass . . . Absent the purported reputation, skill and expertise of defendants Lee Hennessee and Gradante and their **alleged experience in properly investigating hedge fund investments**, plaintiff Broad-Bussel Family and members of the Hennessee Subclass would not have sough advisory services and hedge fund recommendations from the Hennessee Defendants.

96.    By virtue of the Hennessee Defendants' superior knowledge and expertise, **their representations to the members of the Hennessee Subclass,** their roles in rendering financial and advisory services to the members of the Hennessee Subclass and their status as registered investment advisors with purportedly expert knowledge about the hedge fund industry, the Hennessee Defendants owed fiduciary and other duties to the members of the Hennessee Subclass. **These duties included, among other things, the obligations to: investigate the business practices and financial condition of the investments they recommend; monitor those recommended investments which are made by their clients;** render honest and properly investigated financial advice regarding investments by the members of the Hennessee Subclass; and assist Hennessee Subclass member investors in good faith in managing their investment funds.

150.    . . . Plaintiff Broad-Bussel Family and the members of the Hennessee Subclass reasonably reposed trust and confidence in the integrity, fidelity and adequacy of the Hennessee Defendants' business practices, **including but not limited to the Hennessee Defendants' purported due diligence and monitoring of Bayou and the Bayou Hedge Funds.**

Plaintiffs' allegations make clear that any duty that the Hennessee Defendants allegedly undertook to perform due diligence, investigation or monitoring more than performance was outside the Investment Advisory Agreement.  Plaintiffs do not allege that any representations by the Hennessee Defendants to undertake such duties were made orally or in writing on a Subclass-

wide basis. Nor do Plaintiffs allege that these duties were agreed to in a group setting with all Subclass members present. The only conclusion that can be reached is that to the extent such duties were undertaken, they were undertaken in one-on-one meetings and/or conversations. What was said and done in these meetings and conversations will naturally vary from Subclass member to Subclass member. Ultimately, any determination of whether a duty was breached will necessarily depend on what duty was created in these individual meetings and conversations. Therefore, individual issues will predominate over common issues of fact and law.

Similarly, Plaintiffs assert allegations of reliance on the Hennessee Defendants' alleged duty to conduct "due diligence" and "investigation." These allegations also highlight the predominance of individual issues. Plaintiffs made the following allegations in the Amended Complaint:

> 5.    Plaintiff Broad-Bussel Family and other Class member investors retained the Hennessee Defendants for the **express purpose of properly conducting such due diligence**.

> 43.    Indeed, plaintiff Broad-Bussel Family and other such investors **specifically relied** upon the Hennessee Defendants to perform properly such investigation and monitoring.

> 51(b). Plaintiff Broad-Bussel Family and all members of the Hennessee Subclass similarly **relied on the veracity of the Hennessee Defendants' acts and practices in properly investigating the Bayou Hedge Funds,** and were similarly damaged as a result.

> 107.    The Hennessee Defendants failed to conduct a proper due diligence review of the Bayou Hedge Funds, Bayou Management and Bayou's principal officers, including in particular, defendants Israel and Marino. Similarly, the Hennessee Defendants failed to properly monitor and advise members of the Hennessee Subclass concerning their investments in the Bayou Hedge Funds, **despite the fact that plaintiff Broad-Bussel Family and other Hennessee Subclass member investors specifically retained them to perform properly such an investigation.** . . .

108. The Hennessee Defendants were obligated to reasonably investigate the operations, finances and history of the Bayou Hedge Funds that they recommended to the plaintiff Broad-Bussel Family and the Hennessee Subclass. **Indeed, they were hired and paid by plaintiff Broad-Bussel Family and the Hennessee Subclass expressly for this purpose.**

109. In addition to the foregoing Red Flags, the Hennessee Defendants also had the ability to inspect the books and records of the Bayou Hedge Funds. Indeed, an inspection of such records should be part of any reasonable **investigation for which plaintiff Broad-Bussel Family and the other members of the Hennessee Subclass retained** and paid the Hennessee Defendants. . . .

Why individual proposed Subclass members retained the Hennessee Defendants and what agreed upon duties they relied upon in retaining them will inevitably vary by Subclass member. What motivated one Subclass member may have very well played no role in other Subclass members' decisions in this regard. Therefore, this issue is not one that is subject to Subclass-wide proofs. Rather, individual issues will predominate.

Likewise, Plaintiffs' assertion as to the Hennessee Defendants improperly steering (i.e. recommending) the Subclass members into the Bayou Hedge Funds fails to satisfy the predominance requirement. Plaintiffs' allegations regarding the recommendation of the Bayou Hedge Funds are by their very nature not Subclass-wide and are dominated by individual issues. Plaintiffs do not allege a uniform written recommendation was distributed to all proposed Subclass members. Nor do Plaintiffs allege that the Hennessee Defendants' recommendation of the Bayou Hedge Funds was made in a group setting with all proposed Subclass members present. To the Contrary, Plaintiffs allege the following in their Amended Complaint with respect to the Individual Hennessee Defendants' personal solicitations:

5. . . .The principals of defendant Hennessee Group, defendants Lee Hennessee and Gradante, are liable because they were the alter egos and controlled the acts of defendant Hennessee Group;

> **personally solicited and recommended Bayou investments to plaintiff Broad-Bussel Family and other investors** . . . .
>
> 94.     . . . Further defendants **Lee Hennessee and Gradante personally solicited plaintiff Broad Bussel Family and the members of the Hennessee Subclass to make investments in the Bayou Hedge Funds** . . . .
>
> 161.     Defendants Lee Hennessee and Gradante . . . **personally recommended** that plaintiff Broad-Bussel Family and other Hennessee Subclass members not only invest in the Bayou Hedge Funds, **but also liquidate other existing investments and redirect such funds as investments in the Bayou Hedge Funds**; and continued to recommend that plaintiff Broad-Bussel Family and other Hennessee Subclass members maintain and **even increase their Bayou investments** . . . .

Plaintiffs allege the following in their Amended Complaint with respect to the statements made about the Bayou Hedge Funds in connection with recommending those hedge funds:

> 97.     In rendering their services to the Hennessee Subclass, the **Hennessee Defendants recommended that members of the Hennessee Subclass invest in the Bayou Hedge Funds, even if making such an investment required a withdrawal of funds from an existing investment previously recommended by the Hennessee Defendants or other parties**. In response to and reliance upon such recommendations, plaintiff Broad-Bussel Family and the members of the Hennessee Subclass invested in the Bayou Hedge Funds.
>
> 98.     In making these investment recommendations, the **Hennessee Defendants provided the members of the Hennessee Subclass with false information regarding the Bayou Hedge Funds' purported financial results, operations and condition**.
>
> 99.     For example, the **Hennessee Defendants touted the business model and operations of the Bayou Hedge Funds, including the Bayou Super Fund.** The Hennessee Defendants also advised **that the recommended Bayou Super Fund was a relatively liquid investment vehicle and that fund withdrawals can be made on a monthly basis simply with a 15 day advance notice.** The Hennessee Defendants advised the Hennessee Subclass as to **the total assets of that fund and that the personal investment commitment in that Fund by the portfolio**

manager, e.g., defendants Bayou Management and Israel, was "Significant."

101.    The Hennessee Defendants **represented to the Hennessee Subclass that the Bayou Super Fund was based on an "Opportunistic" style** . . . The Hennessee Defendants represented that the **Bayou Super Fund had a "Low/Moderate" expected volatility**.

102.    The **Hennessee Defendants also touted the historical financial performance of the Bayou Super Fund**, providing non-publicly available monthly and annual investment returns for the years 1997 through 2003 . . . .

105.    Following the time the members of the Hennessee Subclass invested in the Bayou Hedge Funds, **the Hennessee Defendants transmitted other false and misleading information**, all of which omitted to disclose adverse material facts about Bayou and the Bayou Hedge Funds, including as described more fully below.

195.    . . . Among other things, the Hennessee Group **touted that it performed proper due diligence and ongoing monitoring in connection with the Bayou investments** it recommended to plaintiff Broad-Bussel Family and the Hennessee Subclass. . . . (emphasis added)

By the very nature of these allegations, they are individualized and do not apply equally or collectively to all Subclass members. For instance, whether or not the Individual Hennessee Defendants personally recommended the investments will vary by Subclass member, as will the particular Bayou Hedge Fund recommended and in turn what information was provided to the particular Subclass member.  Ultimately, what was represented to each Subclass member and therefore whether or not it was improper will be individualized and not subject to Subclass-wide proof.

As demonstrated above, it is evident that this case will be dominated by individual issues of fact and law.  Therefore, Plaintiffs have failed to meet the predominance requirement of Rule 23(b)(3).

In addition to predominance, Plaintiffs must show that class treatment is superior. Plaintiffs cannot make such a showing. "Factors relevant to the superiority of a class action under Rule 23(b)(3) include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." Risk Management Alternatives, 208 F.R.D. at 506.

As stated above, several separate actions have been filed against the Hennessee Defendants concerning the Bayou Hedge Funds. The proposed Subclass members involved in these separate actions have engaged counsel, filed pleadings, selected arbitrators, exchanged discovery and scheduled final hearing dates. It is clear from the number of proposed Subclass members who have pursued individual actions, there is a high level of interest in individually controlling the prosecution of separate actions. These actions demonstrate that a class action is not "superior to other available methods for fair and efficient adjudication of the controversy" Risk Management Alternatives, 208 F.R.D. at 506, and class certification should be denied.

## **Conclusion**

Based on the foregoing, Plaintiffs have failed to satisfy the numerosity requirement of Rule 23(a). Likewise, Plaintiffs have failed to satisfy the predominance and superiority requirements of Rule 23(b)(3). Therefore, the Court should deny Plaintiffs' Motion for Class Certification.

Dated: August 31, 2007

Respectfully submitted,

By: _____/S/_____
Bennett Falk (BF 5539)
Matthew C. Plant (MP 0328)
Matthew E. Wolper (MW 8835)
BRESSLER, AMERY & ROSS
17 State Street, 34th Floor
New York, New York 10004
P: (212) 425-9300
F: (212) 425-9337
bfalk@bressler.com
Attorney for Defendants
Hennessee Group, LLC, Elizabeth Lee
Hennessee and Charles Gradante

865564_1

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2007, a copy of the *Memorandum of Law of Hennessee Group LLC, Elizabeth Lee Hennessee and Charles Gradante in Opposition to Plaintiffs' Motion for Class Certification* was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court' s CM/ECF System.

_____/S/_____

Matthew C. Plant (MP 0328)

865564_1