UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ------------------------------------------------------ X | | |
| IN RE BAYOU HEDGE FUNDS INVESTMENT LITIGATION | : : | No. 06 MDL 1755 (CM) |
| ------------------------------------------------------ X | | |
| THIS DOCUMENT RELATES TO: | | |
| ------------------------------------------------------ X | | |
| BROAD-BUSSEL FAMILY LIMITED PARTNERSHIP, ET AL., Individually and on Behalf of All Other Persons and Entities Similarly Situated, | : : : : | No. 06 Civ. 3026 (CM) |
| Plaintiffs, | : | |
| - against - | : : | |
| BAYOU GROUP LLC, ET AL., | : | |
| Defendants. | : | |
| ------------------------------------------------------ X | | |
| BROAD-BUSSEL FAMILY LIMITED PARTNERSHIP, ET AL., Individually and on Behalf of All Other Persons and Entities Similarly Situated, | : : : : | No. 07 Civ. 2026 (CM) |
| Plaintiffs, | : | |
| - against - | : : | |
| HENNESSEE GROUP LLC, ET AL., | : | **ORAL ARGUMENT REQUESTED** |
| Defendants. | : | ELECTRONICALLY FILED |
| ------------------------------------------------------ X | | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
BROAD-BUSSEL PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION**

KOSKOFF, KOSKOFF & BIEDER, P.C.
William M. Bloss, Esq.
Neal A. DeYoung, Esq.
350 Fairfield Avenue
Bridgeport, CT 06604
Telephone: (203) 336-4421
Fax: (203) 368-3244

BERGER & MONTAGUE, P.C.
Merrill G. Davidoff, Esq.
Lawrence J. Lederer, Esq.
Lane L. Vines, Esq.
1622 Locust Street
Philadelphia, PA 19103-6305
Telephone: (215) 875-3000
Fax: (215) 875-4604

*Attorneys for Broad-Bussel Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      ALL OF THE REQUIREMENTS OF RULE 23 ARE SATISFIED
        AND CLASS TREATMENT IS PLAINLY WARRANTED IN THE
        CIRCUMSTANCES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.      Rule 23(a) Numerosity is Sufficient . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        B.      Rule 23(b)(3) Predominance is Undoubtedly Satisfied as the Issue of Liability
                is Common to the Members of the Subclass . . . . . . . . . . . . . . . . . . . . . . . . 5

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

*Federal Cases*

Amchem Products, Inc. v. Windsor,
    521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Ansari v. New York Univ.,
    179 F.R.D. 112 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    105 F.R.D. 506 (S.D. Ohio 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

In re Bayou Hedge Fund Litig.,
    No. 06-CV-3026 (CM), 2007 U.S. Dist. LEXIS 60777
    (S.D.N.Y. Aug. 15, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

In re Blech Sec. Litig.,
    187 F.R.D. 97 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

In re EVCI Career Colleges Holding Corp. Sec. Litig.,
    Master File No. 05 Civ. 10240 (CM),
    2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) . . . . . . . . . . . . . . . . . . . . . . . 10

Iglesias-Mendoza v. La Belle Farm, Inc.,
    239 F.R.D. 363 (S.D.N.Y. Jan. 26, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Kline v. Wolf,
    702 F.2d 400, 402 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Lau v. Arrow Fin. Servs., LLC,
    No. 06 C 3141, 2007 U.S. Dist. LEXIS 40066
    (N.D.Ill. May 22, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Miller v. Wexler & Wexler,
    No. 97 C 6593, 1998 U.S. Dist. LEXIS 1382 (N.D. Ill. 1998) . . . . . . . . . . . . . . . . . . . . 3

In re Nassau County Strip Search Cases,
    461 F.3d 219 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

New Eng. Carpenters Health Benefits Fund v. First Databank, Inc.,
    No. 05-11148-PBS, 2007 U.S. Dist. LEXIS 63159
    (D. Mass. Aug. 27, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Philadelphia Electric Co. v Anaconda American Brass Co.</u>,
   43 F.R.D. 452 (E.D. Pa. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>In re Risk Mgmt. Alternatives, Inc.</u>,
   208 F.R.D. 493, 506-07 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Robidoux v. Celani</u>,
   987 F.2d 931 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

<u>In re Veeco Instruments, Inc., Sec. Litig.</u>,
   235 F.R.D. 220 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>Umbriac v. American Snacks, Inc.</u>,
   388 F. Supp. 265, 275 (E.D. Pa. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>United States Fidelity and Guar. Co. v. Madison Financial Corp.</u>,
   No. 01 Civ.3998 CM, 2002 WL 31731020
   (S.D.N.Y. Dec. 4, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Watson v. Shell Oil Co.</u>,
   979 F.2d 1014 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## Federal Rules

Fed. R. Civ. P. 23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## Other Authorities

<u>Merriam-Webster's Dictionary of Law</u> (1996)
   (available at <<<u>http://dictionary.reference.com/browse/due%20diligence</u>>>) . . . . . . . . . 7

## INTRODUCTION

The Broad-Bussel Plaintiffs (or "Plaintiffs") submit this memorandum in reply to the opposition to class certification filed by defendant Hennessee Group LLC and its principals, defendants Elizabeth Lee Hennessee and Charles Gradante (collectively, the "Hennessee Defendants" or "Hennessee"), and in further support of Plaintiffs' motions for class certification.

Plaintiffs seek certification of a class consisting of all similarly situated investors who, during the period between December 31, 1996 and August 25, 2005 (the "Class Period"), purchased or maintained investment interests in one or more of the Bayou family of hedge funds (the "Bayou Hedge Funds"), and were damaged thereby (the "Class").[1] Plaintiffs further seek to certify a subclass consisting of all Class members who, during the Class Period, were advised to invest, or were placed, in the Bayou Hedge Funds pursuant an investment advisory relationship with the Hennessee Group LLC, and suffered damages thereby (the "Hennessee Subclass" or "Subclass").   In opposing certification, the Hennesee Defendants first resort to an improper "counting" argument to challenge the numerosity of the Hennessee Subclass -- while remaining silent as to obvious efficiencies that would accrue in maintaining the claims of the Subclass with those of the hundreds of investors that comprise the Bayou Class itself.  The Hennessee Defendants also refuse to recognize that their alleged misconduct in recommending and

---

[1]     The Bayou Hedge Funds include both the so-called on-shore funds (including Bayou Super Fund, LLC; Bayou No Leverage Fund, LLC; Bayou Affiliates Fund, LLC; Bayou Accredited Fund, LLC; Bayou Offshore Fund, LLC; and Bayou Fund, LLC) and the off-shore funds (including Bayou Offshore Fund A, LTD; Bayou Offshore Fund B, LTD; Bayou Offshore Fund C, LTD; Bayou Offshore Fund D, LTD; Bayou Offshore Fund E, LTD; Bayou Offshore Fund F, LTD; and Bayou Offshore Master Fund, LTD).  The proposed orders Plaintiffs originally submitted referenced only the Bayou on-shore funds and Plaintiffs are now submitting amended proposed orders to include the off-shore funds.  Plaintiffs respectfully note that both of these orders are proposed for entry and are not exclusive of the other.

facilitating improperly investments in the Bayou fraud is intricately intertwined with the

underlying misconduct of the principals and alleged aiders/abettors of that fraud.

The Hennessee Defendants also contend that individual issues will predominate over

common issues. This argument is misplaced because it ignores the fact that Hennessee's

investment advisory agreements with Subclass members include *standard and uniform* material

terms. The uncontroverted evidence Plaintiffs submitted with their motions indicates clearly that

those investment advisory agreements all similarly obligated the Hennessee Group to perform

basic due diligence investigations and ongoing monitoring of investments it recommended.

Further, the core claim in this case is that Hennessee similarly breached those duties by

recommending and placing the members of the Subclass into the fraudulent Bayou Hedge Funds.

In sum, both of Hennessee's arguments are meritless, and neither is supported by the law

or the facts of record. Notably, no other defendants filed an opposition to class certification, and

the Hennessee opposition does not appear to oppose the certification of the Bayou Class itself.[2]

## ARGUMENT

I.    ALL OF THE REQUIREMENTS OF RULE 23 ARE SATISFIED
      AND CLASS TREATMENT IS PLAINLY WARRANTED IN THE
      CIRCUMSTANCES

A.    Rule 23(a) Numerosity is Sufficient

Hennessee does not challenge that the Bayou Class -- which allegedly includes hundreds

of injured investors -- lacks numerosity or should not proceed as a class action. Instead,

---

[2]    In fact, defendant James Marquez filed nothing in response to Plaintiffs' motions
(despite signing the stipulation extending defendants' time to respond), and the other principal
group of defendants, the Fotta/Eqyty defendants, supports class certification (as the parties are in
the process of proposing a settlement for the Class).

Hennessee contends that the Court should employ a magic threshold in order to find numerosity lacking as to the Hennessee Subclass. In fact, in trying to minimize that Subclass, Hennessee even attempts to single out certain Bayou investors that it believes might ultimately decide to opt-out of this class action.

In pressing this counting argument, Hennessee ignores the fundamental purposes for certifying a class or subclass, and the prevailing law of this and other Circuits. The Second Circuit has long interpreted Rule 23(a)(1) to require only a finding that joinder of all class members is *impracticable*, which in turn "depends on all the circumstances surrounding a case, not on mere numbers." Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993). Other Circuits are in accord. See, e.g., Watson v. Shell Oil Co., 979 F.2d 1014, 1022 (5th Cir. 1992) (affirming subclass of only 16 plaintiffs) (holding that Rule 23 "imposes no mechanical rules, turning instead on the practicability of joining all class members individually"); Lau v. Arrow Fin. Servs., LLC, No. 06 C 3141, 2007 U.S. Dist. LEXIS 40066 (N.D. Ill. May 22, 2007) (finding "that the 70 members of the Class and the 26 members of the Subclass are sufficient to demonstrate that the class is so numerous that joinder would be impracticable"); Miller v. Wexler & Wexler, No. 97 C 6593, 1998 U.S. Dist. LEXIS 1382, at *7-8 (N.D. Ill. 1998) (listing cases certifying classes with between 17 and 40 members and emphasizing that there is no "magical number at which the numerosity requirement is satisfied"). Courts should thus consider the judicial economy arising from the avoidance of a multiplicity of actions, the geographic dispersion of class members, the financial resources of class members, the ability of claimants to institute individual suits, and the feasibility of litigating individual claims in view of the relative amounts at stake. Robidoux v. Celani, 987 F.2d at 936.

3

Here, the claims alleged against Hennessee are "inextricably intertwined" with those alleged against the Bayou defendants, and their underlying fraud and other misconduct. <u>Accord</u> <u>In re Bayou Hedge Fund Litig.</u>, No. 06-CV-3026 (CM), 2007 U.S. Dist. LEXIS 60777, at *11-16 (S.D.N.Y. Aug. 15, 2007) (denying Rule 54(b) judgment; stating that plaintiffs' claims against Citibank are likewise "inextricably intertwined" with those against Bayou). Further, the Hennessee Subclass is comprised of a significant subset (ranging between at least 21 investors even under Hennessee's view and at least 29 investors based on the documents Hennessee produced to Plaintiffs) of the overall Bayou Class who, like the Class, are geographically dispersed throughout the United States. <u>Accord</u> Hennessee Opp. at p.13; Trout Decl., at ¶¶ 10, 21, 29-31. Moreover, the relative size of each Subclass member's claim also supports certification. Indeed, certification of the Class and Subclass is particularly appropriate in the circumstances here where many investors were similarly damaged by investing in what ultimately was revealed to be nothing but a classic Ponzi scheme.

Absent class treatment, multiple duplicative litigations would unnecessarily consume the resources of the parties and the Court, risk conflicting rulings and judgments, and compete for the same limited resources of Bayou and the other defendants. In fact, the Hennessee Defendants themselves have repeatedly contacted directly plaintiff Broad-Bussel to say, among other things, that they lack the resources and insurance to satisfy a judgment in this case. The fact that the Bayou defendants are in bankruptcy and the apparent limited resources of the other defendants, including potentially the Hennessee Defendants, further support class certification.

The cases cited by Hennessee are factually dissimilar. <u>See</u> <u>United States Fidelity and</u> <u>Guar. Co. v. Madison Financial Corp.</u>, No. 01 Civ.3998 CM, 2002 WL 31731020 (S.D.N.Y.

Dec. 4, 2005) (movant did not even provide "estimates of the proposed subclasses' numerical size"; Court rejected proposed 23 subclasses that ranged from six to zero members).  Further, Ansari v. New York Univ., 179 F.R.D. 112 (S.D.N.Y. 1998) did not even involve the issue of whether to certify a subclass.  Absent certifying the Hennessee Subclass, Subclass members would be forced into the untenable position of litigating their claims against the Hennessee Defendants separately and perhaps even on two fronts -- something that truly would amount to an unnecessary complication and waste.

As another court aptly held, "while 23 [members give or take] may not be a large number when compared to other classes that have been certified, it is a large number when compared to a single unit; there is no reason to encumber the judicial system with 23 consolidated lawsuits when one will do."  Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 105 F.R.D. 506, 508 (S.D. Ohio 1985) (certifying class of 23 persons) (citing Philadelphia Electric Co. v Anaconda American Brass Co., 43 F.R.D. 452 (E.D. Pa. 1968)).

**B.    Rule 23(b)(3) Predominance is Undoubtedly Satisfied as the Issue of Liability is Common to the Members of the Subclass**

The Hennessee Defendants' second argument is that the claims of the Subclass do not satisfy the predominance requirement of Rule 23(b)(3).  Notably, however, Hennessee makes no challenge as to certifying the Bayou Class itself.  Instead, Hennessee says that individual issues will predominate only as to the Subclass, and that class action treatment is not superior to individual litigation.  Hennessee is wrong on both points.

In considering predominance under Rule 23(b)(3), the court's inquiry is focused on "whether the issue of liability is common to the members of the class"; however, "it does not require that there be an absence of individual issues".  In re Veeco Instruments, Inc., Sec. Litig.,

5

235 F.R.D. 220, 240 (S.D.N.Y. 2006) (citing In re Blech Sec. Litig., 187 F.R.D. 97, 107

(S.D.N.Y. 1999)).  The predominance inquiry is concerned with whether there is a "common

nucleus of operative facts and issues".  In re Nassau County Strip Search Cases, 461 F.3d 219,

228 (2d Cir. 2006).  As many courts have pointed out, "[i]n adding 'predominance' and

'superiority' to the qualification-for-certification list, the [Federal Rules] Advisory Committee

sought to cover cases 'in which a class action would achieve economies of time, effort, and

expense, and promote … uniformity of decision as to persons similarly situated, without

sacrificing procedural fairness or bringing about other undesirable results.'" New Eng.

Carpenters Health Benefits Fund v. First Databank, Inc., No. 05-11148-PBS, 2007 U.S. Dist.

LEXIS 63159, at *27-28 (D. Mass. Aug. 27, 2007) (quoting Amchem Products, Inc. v. Windsor,

521 U.S. 591, 615, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)).

Here, the members of the Hennessee Subclass each entered into a *standard* investment

advisory agreement with Hennessee Group LLC that contained *uniform* material terms.  Accord

Trout Decl., at ¶¶ 29-31.  Consequently, Hennessee owed the same fiduciary and other duties to

those investors, and the Hennessee Defendants are alleged to have similarly violated those duties

as a result of their failure to perform due diligence and monitoring of the Bayou Hedge Funds.

Id.  Hennessee does not dispute that the investment advisory agreements are uniform.  Hennessee

also admits that those uniform agreements obligated Hennessee to render so-called "Structuring

Services" and monitoring services to the members of the Hennessee Subclass.  Hennessee Opp.

at p.15.  Indeed, these commonalities are precisely what Plaintiffs' have alleged.  For example,

in ¶ 95 of the Amended Complaint (No. 06 Civ. 3026 CM) and ¶ 92 of the Complaint (No. 07

Civ. 2026 CM), Plaintiffs allege as follows:

6

[T]hose investment advisory agreements obligated the Hennessee Group to perform due diligence investigations and ongoing monitoring of investments recommended by the Hennessee Group, including, among other things, as follows (emphasis added):

a.      "*provid[e] advice* to Client concerning investments in one or more private investment partnerships (each a "Hedge Fund" and collectively, the "Portfolio'). These services include the *initial selection* of each Hedge Fund and *ongoing monitoring* of the performance of the Portfolio";

b.      "*perform search, evaluation, selection, and introduction services* (collectively, "Structuring Services") and introduce Client to one or more Hedge Fund(s) that Hennessee *reasonably believes* would be appropriate investment vehicles for Client to use based upon the investment objectives of Client"; and

c.      provide "Ongoing Services to the Client, such as its obligation to "*monitor* the performance of the Portfolio selected by Client and provide *continuous and ongoing* Hedge Fund investment advice".[3]

Strangely, after acknowledging the existence of such obligations, the Hennessee

Defendants simply assert that the uniform agreements say "nothing regarding a required level of

due diligence or even investigation". Hennessee Opp. at 15. But this is besides the point.

Although the requisite level of due diligence, investigation and monitoring Hennessee was

obligated to undertake is ultimately an issue for the jury based on a full record, it is crystal clear

that the factual and legal issues presented by this question are common to all Subclass members.

_____

[3]      Although Hennesee appears to quibble with Plaintiffs' use of the term "due diligence", the Merriam-Webster's Dictionary of Law (1996) (available at <<http://dictionary.reference.com/browse/due%20diligence>>) defines that term as involving "the examination and evaluation of risks affecting a business transaction" and "the process of investigation carried on usually by a disinterested third party ... on behalf of a party contemplating a business transaction (as a corporate acquisition or merger, loan of finances, or esp. purchase of securities)". Such tasks are clearly descriptive of certain of Hennessee's obligations here.

7

Here, Plaintiffs allege that the Hennessee Defendants uniformly failed to comply with their investigative and monitoring obligations.  For example, Plaintiffs allege:

> The Hennessee Defendants failed to conduct a proper due diligence review of the Bayou Hedge Funds, Bayou Management and Bayou's principal officers, including in particular, defendants Israel and Marino....  In failing to conduct proper due diligence reviews and ongoing monitoring of the Bayou Hedge Funds, Bayou Management and Bayou's principal officers, the Hennessee Defendants failed to uncover or ignored numerous "red flags" (the "Red Flags") that were either indicative of the Bayou Defendants' misconduct, or should have led the Hennessee Defendants to investigate further and timely communicate adverse information to the members of the Hennessee Subclass.

Amended Complaint (No. 06 Civ. 3026 CM), at ¶ 107; Complaint (No. 07 Civ. 2026 CM), at ¶ 104.  Whether Hennessee failed to meet those uniform obligations does not present individual issues but confirms the commonality, and predominance, of the issue of Hennessee's alleged liability to the members of the Hennessee Subclass.  The sole case cited by Hennessee is not to the contrary and actually granted class certification.  See In re Risk Mgmt. Alternatives, Inc., 208 F.R.D. 493, 506-07 (S.D.N.Y. 2002) (McMahon, J.) (holding that, like here, "there are many common issues of law and fact in this case" and [o]nce the common question of liability is resolved, all that will remain is the determination of damages suffered by each Class member").

Hennessee attempts to draw attention from the commonality of the Subclass's claims by raising unnecessary individual questions.  Hennessee posits that the members of the Hennessee Subclass may have retained Hennessee based on differing representations about the quality of Hennessee's services, and questions what specifically may have motivated individual Subclass members to retain Hennessee.  Such inquiries, however, are not at issue in this litigation.  More importantly, even if they were relevant, such individual questions do not defeat Rule 23(b)(3)

8

predominance.  Accord Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 373 (S.D.N.Y.

Jan. 26, 2007) (McMahon, J.) ("Some factual variation among the circumstances of the various

class members is inevitable and does not defeat the predominance requirement.").  What is

relevant is that the Hennessee Subclass members entered into uniform investment advisory

agreements with Hennessee, and that the Subclass claims that the Hennessee Defendants

similarly breached their uniform obligations under these agreements by recommending and

placing the members of the Subclass into the fraudulent Bayou Hedge Funds.

Finally, Hennessee asserts that certifying the Hennessee Subclass is somehow inferior to

forcing Subclass members into filing and litigating individually their own claims.  But this is

clearly inapt.  That alternative would require over two dozen widely dispersed plaintiffs to

individually prosecute suits, potentially in multiple venues, with separate counsel against the

same defendants on the same theories.  Each such suit would necessarily involve increased costs,

including even the injured plaintiffs fronting hundreds of thousands of dollars in legal fees to

individually establish liability against the Hennessee Defendants in cases where the aggregate

individual losses may also be in or not far above the six figure range.  On the other hand, through

the class action mechanism, such claims can be resolved in one action and the entire class will be

well-represented by the named plaintiffs and their counsel whose experience and competence is

unchallenged.

"It is in the nature of the motion practice on class determination issues that defendants,

who naturally have no interest in the successful prosecution of the class suit against them, are

called upon to interpose arguments in opposition to class determination motions verbally

grounded upon a concern for the 'best' representation for the class while the implicit, but

9

nonetheless real, objective of their vigorous legal assaults is to insure 'no' representation for the class." Umbriac v. American Snacks, Inc., 388 F. Supp. 265, 275 (E.D. Pa. 1975). Accord Kline v. Wolf, 702 F.2d 400, 402 (2d Cir. 1983). Particularly given the scope and longevity of the alleged Bayou fraud, Hennessee's position here would be particularly costly and unfair to the injured investors, and would promote waste of resources for all involved, including the judicial system. Whether a handful of Bayou investors have commenced individual proceedings or whether certain such investors will ultimately decide to opt-out of the Class or Subclass does not defeat the clear superiority of certification here.

At bottom, certifying both the Class and the Hennessee Subclass is plainly appropriate and is infinitely better than the alternative -- namely, leaving the hundreds of investor putative Class members, and over two dozen Hennessee Subclass members, each of whom has already lost significant investment funds, to pursue costly individual actions. Accord In re EVCI Career Colleges Holding Corp. Sec. Litig., Master File No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) (McMahon, J.) (holding that securities fraud suits "inflict economic injury on large numbers of geographically dispersed persons to such an extent that the cost of pursuing individual litigation to seek recovery against well-financed, multiple adversaries is not feasible").

## CONCLUSION

Plaintiffs request respectfully that the Court certify the Class and Hennessee Subclass in this litigation in accordance with Fed. R. Civ. P. 23.

Dated:  September __28__, 2007                    Respectfully submitted,
           New York, NY

KOSKOFF, KOSKOFF & BIEDER, P.C.                BERGER & MONTAGUE, P.C.
William M. Bloss, Esq.
Neal A. DeYoung, Esq.                          ___/s/  Merrill G. Davidoff_____
350 Fairfield Avenue                           Merrill G. Davidoff, Esq.
Bridgeport, CT  06604                          Lawrence J. Lederer, Esq.
Telephone:  (203) 336-4421                     Lane L. Vines, Esq.
Fax:  (203) 368-3244                           1622 Locust Street
                                               Philadelphia, PA  19103
                                               Telephone:  (215) 875-3000
                                               Fax:  (215) 875-4604


*Attorneys for Broad-Bussel Plaintiffs*


418197

## CERTIFICATE OF SERVICE

I, Lane L. Vines, hereby certify that I caused today the foregoing Reply Memorandum of Law in Further Support of Broad-Bussel Plaintiffs' Motion for Class Certification to be electronically filed with the Clerk of Court by using the ECF System. The foregoing filing will be served on counsel electronically through the Court's ECF System, and by U.S. First Class mail or electronic mail on any counsel that has not signed up for electronic service. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

Dated: September  28 , 2007                          /s/ Lane L. Vines
                                                        Lane L. Vines